# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **NETLIST, INC.,** | |
| **Plaintiff,** | |
| **v.** | |
| | **Civil Action No. 1:22-CV-00136-LY** |
| **MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS LLC,** | |
| **Defendants.** | |

## DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., Micron Technology Texas, LLC ("Micron" or "Defendants") submit this Answer, Affirmative Defenses, and Counterclaims in response to Plaintiff Netlist, Inc.'s ("Netlist" or "Plaintiff") Complaint.

The numbered paragraphs below correspond to the numbered paragraphs in the Complaint and constitute Defendants' responsive admissions, denials, and allegations thereto.  Except as otherwise Defendants admit expressly below, Defendants deny each and every allegation contained in the Complaint, including, without limitation, the headings, subheadings, footnotes, diagrams, and tables contained in the Complaint.

Defendants reserve the right to amend or supplement their Answer and Affirmative Defenses.

## THE PARTIES

1.      Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 1 of the Complaint and therefore denies the same.

1

2.      Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 2 of the Complaint and therefore denies the same.

3.      Micron Technology, Inc. ("MTI") admits that it is a Delaware corporation with a principal place of business at 8000 South Federal Way, Boise, Idaho 83716. Except as expressly admitted, Micron denies the remaining allegations in paragraph 3.

4.      Micron Semiconductor Products, Inc. ("MSP") admits that it is an Idaho corporation with a principal place of business at 8000 South Federal Way, Boise, Idaho 83716. MSP admits that it leases a property located at 101 West Louis Henna Boulevard, Suite 210, Austin, Texas 78728. MSP admits that it is registered to do business in Texas. MSP admits that it can be served with certain process through its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Except as expressly admitted, Micron denies the remaining allegations in paragraph 4.

5.      Micron Technology Texas, LLC ("Micron Texas") admits that it is an Idaho limited liability company with a place of business at 8000 South Federal Way, Boise, Idaho 83716. Micron Texas admits that it can be served with certain process through its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Except as expressly admitted, Micron denies the remaining allegations in paragraph 5 of the Complaint.

6.      Micron admits that MSP and Micron Texas are wholly owned subsidiaries of MTI. Micron admits that MTI currently does not separately report revenue from MSP or Micron Texas in its public filings submitted to the Securities Exchange Commission. Except as expressly admitted, Micron denies the remaining allegations in paragraph 6.

7.      Micron denies the allegations of paragraph 7.

## JURISDICTION

8.      Paragraph 8 contains conclusions of law and not averments of fact to which the rules require an answer, but insofar the rules require an answer, Micron admits that the Complaint purports to assert an action under the patent laws of the United States, 35 U.S.C. § 271 *et seq.*, and that this Court has subject matter jurisdiction over actions for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

9.      Based solely on the allegations in the Complaint, and assuming (without admitting) them to be true, Micron does not contest personal jurisdiction in this district in this case.  Except as expressly admitted, Micron denies the remaining allegations in paragraph 9.

10.     MSP admits that it leases a property located at 101 West Louis Henna Boulevard, Suite 210, Austin, Texas 78728.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 10.

11.     Micron denies the allegations of paragraph 11.

12.     Micron denies the allegations of paragraph 12.

13.     Micron denies the allegations of paragraph 13.

14.     Micron denies the allegations of paragraph 14.

15.     Micron denies the allegations of paragraph 15.

## FACTUAL BACKGROUND

16.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and therefore denies the same.

17.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and therefore denies the same.

18.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and therefore denies the same.

19.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and therefore denies the same.

20.     Micron admits that memory modules can be implemented as printed circuit boards that contain various components including DRAM (Dynamic Random-Access Memory) integrated circuits.  Micron also admits that memory modules can be installed into memory slots on computer motherboards and serve as memory for computer systems.  Micron lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 20 of the Complaint and therefore denies the same.

21.     Micron admits that JEDEC is the standard setting organization that promulgates standards for server memory modules.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 21.

22.     Micron admits that LRDIMM is an acronym for "load-reduced dual inline memory module."   Micron lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 22 of the Complaint and therefore denies the same.

23.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and therefore denies the same.

24.     Micron admits that, in August 2019, JEDEC released standard JESD82-31A entitled "DDR4 Registering Clock Driver Definition (DDR4RCD02)," which was a revision of JESD82-31 published in August 2016.  Micron lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 24 of the Complaint and therefore denies the same.

25.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 25 of the Complaint and therefore denies the same.

26.    Micron admits that Netlist is presently a member of JEDEC.  Micron also admits that Netlist committed several patents, including the asserted patents, to various JEDEC standards pursuant to the JEDEC Patent Policy, which sets certain obligations for owners of patents (like the Asserted Patents) that it reasonably believes are essential to one or more JEDEC standards. Micron additionally admits that the JEDEC Patent Policy, as set forth in the JEDEC Manual of Organization and Procedure, states that "[a] license will be offered, to applicants desiring to utilize the license for the purpose of implementing the JEDEC Standard under reasonable terms and conditions that are free of any unfair discrimination . . .."  Except as expressly admitted, Micron lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 26 of the Complaint and therefore denies the same.

27.    Micron admits that it received a letter from Netlist dated April 28, 2021, regarding a license offer for the asserted patents.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 27.

## THE ASSERTED PATENTS

### A.    U.S. Patent No. 10,489,314 (the "'314 Patent")

28.    Micron admits that, according to the face of the document, the '314 Patent was filed as Application No. 15/857,519 on December 28, 2017, and issued on November 26, 2019.  Micron also admits, according to the face of the document, that the '314 Patent purports a claim to priority to five provisional applications: No. 60/645,087 filed on January 19, 2005; No. 60/588,244 filed on July 15, 2004; No. 60/550,668 filed on March 5, 2004; No. 60/575,595 filed on May 28, 2004; and No. 60/590,038 filed on July 21, 2004.  Micron lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 28 of the Complaint and therefore denies the same.

29.    Micron admits that, according to the face of the document, the '314 Patent is

entitled "Memory Module with Data Buffering." Micron also admits that the Abstract states "[t]he logic is configured to respond to a first memory command by providing first control signals to the data buffer to enable communication of at least one first data signal between the first memory integrated circuits and the memory controller through the data buffer, and is further configured to respond to a second memory command by providing second control signals to the data buffer to enable communication of at least one second data signal between the second memory integrated circuit and the memory controller through the data buffer." Except as expressly admitted, Micron denies the remaining allegations of paragraph 29.

30.      Micron denies the allegations of paragraph 30.

**B.      U.S. Patent No. 9,824,035 (the "'035 Patent")**

31.      Micron admits that, according to the face of the document, the '035 Patent was filed as Application No. 15/426,064 on February 7 and issued on November 21, 2017. Micron also admits, according to the face of the document, that the '035 Patent purports a claim to priority to a provisional application No. 61/676,883 filed on July 27, 2012. Micron lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 31 of the Complaint and therefore denies the same.

32.      Micron admits that, according to the face of the document, the '035 Patent is entitled "Memory Module with Timing-Controlled Data Paths in Distributed Data Buffers." Except as expressly admitted, Micron denies the remaining allegations of paragraph 32.

33.      Micron denies the allegations of paragraph 33.

**C.      U.S. Patent No. 10,268,608 (the "'608 Patent")**

34.      Micron admits that, according to the face of the document, the '608 Patent was filed as Application No. 15/820,076 on November 21, 2017, and issued on April 23, 2019. Micron also admits that the '608 Patent purports to be a continuation of the '035 patent. In addition, Micron

admits that the '608 Patent purports to claim priority to provisional application No. 61/676,883 filed on July 27, 2012. Micron lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 34 of the Complaint and therefore denies the same.

35.     Micron admits that, according to the face of the document, the '608 Patent is entitled "Memory Module with Timing-Controlled Data Paths in Distributed Data Buffers." Except as expressly admitted, Micron denies the remaining allegations of paragraph 35.

36.     Micron denies the allegations of paragraph 36.

**ALLEGEDLY INFRINGING TECHNOLOGY**

37.     Micron admits that it designs and manufactures memory and storage products including DRAM, NAND, and Multichip Packages. Except as expressly admitted, Micron denies the remaining allegations of paragraph 37.

38.     Micron denies the allegations of paragraph 38.

39.     Micron denies the allegations of paragraph 39.

40.     Micron denies the allegations of paragraph 40.

**COUNT I:  ALLEGED INFRINGEMENT OF U.S. PATENT NO. 10,489,314**

41.     Micron repeats and incorporates by reference its responses to the allegations of the foregoing paragraphs of the Complaint as described above.

42.     Micron denies the allegations of paragraph 42.

43.     Micron denies the allegations of paragraph 43.

44.     Micron denies the allegations of paragraph 44.

45.     Micron denies the allegations of paragraph 45.

46.     Micron admits that the image included in paragraph 46 appears to have been taken from a Micron data sheet (referred to as Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data          Sheet)          available          at          https://media-www.micron.com/-

/media/client/global/documents/products/data-

sheet/modules/lrdimm/ddr4/ass72c8gx72lz.pdf?rev=9cd25a3a18c84a98bf57e0ba5c691cec

Micron denies the remainder of paragraph 46 to the extent that it does not accurately quote this

document and any remaining allegation.

47.    Micron admits that the image included in paragraph 47 appears to have been taken

from JEDEC Standard No. 21C (Aug. 2015), page 4.20.26-5. Micron denies the remainder of

paragraph 47 to the extent that it does not accurately quote this document and any remaining

allegation.

48.    Micron admits that the images included in paragraph 48 appears to have been taken

from JEDEC Standard No. 79-4B (June 2017), pages 98 and 119.  Micron denies the remainder of

paragraph 48 to the extent that it does not accurately quote this document and any remaining

allegation.

49.    Micron denies the allegations of paragraph 49.

50.    Micron admits that paragraph 50 cites to websites that identify compliance with the

JEDEC DDR4DB02 and JEDEC DDR4RCD02 specification.   The remaining allegations in

paragraph 50 contain conclusions of law and not averments of fact to which the rules require an

answer, but insofar the rules require an answer Micron denies the remaining allegations of

paragraph 50.

51.    Micron admits that the image included in paragraph 51 appears to have been taken

from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 5.  Micron denies the

remainder of paragraph 51 to the extent that it does not accurately quote this document and any

remaining allegation.

52.    Micron admits that the image included in paragraph 52 appears to have been taken

from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10. Micron denies the remainder of paragraph 52 to the extent that it does not accurately quote this document and any remaining allegation.

53.     Micron admits that the image included in paragraph 53 appears to have been taken from JEDEC Standard No. 82-31A (Aug. 2019), page 66. Micron denies the remainder of paragraph 53 to the extent that it does not accurately quote this document and any remaining allegation.

54.     Micron admits that the images included in paragraph 54 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10. Micron denies the remainder of paragraph 54 to the extent that it does not accurately quote this document and any remaining allegation.

55.     Micron denies the allegations of paragraph 55.

56.     Micron admits that the image included in paragraph 56 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10. Micron denies the remainder of paragraph 56 to the extent that it does not accurately quote this document and any remaining allegation.

57.     Micron denies the allegations of paragraph 57.

58.     Micron admits that the image included in paragraph 58 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10. Micron denies the remainder of paragraph 58 to the extent that it does not accurately quote this document and any remaining allegation.

59.     Paragraph 59 lacks any source or citation supporting the allegation and therefore Micron lacks knowledge as to what specifically is being alleged and denies the allegations of

paragraph 59.

60.     Micron admits that the images included in paragraph 60 appears to have been taken from JEDEC Standard No. 82-32A (August 2019), pages 13-14. Micron denies the remainder of paragraph 60 to the extent that it does not accurately quote this document and any remaining allegation.

61.     Micron denies the allegations of paragraph 61.

62.     Micron denies the allegations of paragraph 62.

63.     Micron admits that it received a letter from Netlist dated April 28, 2021, identifying the asserted patents.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 63.

64.     Micron denies the allegations of paragraph 64.

65.     Micron admits that the image included in paragraph 65 appears to have been taken from (https://www.micron.com/solutions/server). Micron denies the remainder of paragraph 65 to the extent that it does not accurately quote this document and any remaining allegation.

66.     Micron denies the allegations of paragraph 66.

67.     Micron denies the allegations of paragraph 67.

68.     Micron admits that it received a letter from Netlist dated April 28, 2021, that referred to the '314 Patent.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 68.

69.     Micron denies the allegations of paragraph 69.

70.     Micron denies the allegations of paragraph 70.

71.     Micron admits that paragraph 71 purports "Plaintiff seeks monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a

reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court."  Except as expressly admitted, Micron denies the allegations in paragraph 71.

### COUNT 2:  ALLEGED INFRINGMENT OF U.S. PATENT NO. 9,824,035

72.    Micron repeats and incorporates by reference its responses to the allegations of the foregoing paragraphs of the Complaint as described above.

73.    Micron denies the allegations of paragraph 73.

74.    Micron denies the allegations of paragraph 74.

75.    Micron denies the allegations of paragraph 75.

76.    Micron denies the allegations of paragraph 76.

77.    Micron admits that the image included in paragraph 77 appears to have been taken from a datasheet (referred to as Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet) available               at               https://www.micron.com/products/dram-modules/lrdimm/part-catalog/mta72ass8g72lz-2g9.  Micron denies the remainder of paragraph 77 to the extent that it does not accurately quote this document and any remaining allegation.

78.    Micron admits that the image included in paragraph 78 appears to have been taken from JEDEC Standard No. 21C (Aug. 2015), page 4.20.27-5. Micron denies the remainder of paragraph 78 to the extent that it does not accurately quote this document and any remaining allegation.

79.    Micron admits that the image included in paragraph 79 appears to have been taken from JEDEC Standard No. 21C (Aug. 2015), page 4.20.27-17.  Micron denies the remainder of paragraph 79 to the extent that it does not accurately quote this document and any remaining allegation.

80.    Micron admits that the image included in paragraph 80 appears to have been taken

from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 4.  Micron denies the remainder of paragraph 80 to the extent that it does not accurately quote this document and any remaining allegation.

81.     Micron denies the allegations of paragraph 81.

82.     Micron denies the allegations of paragraph 82.

83.     Micron admits that the images included in paragraph 83 appears to have been taken from JEDEC Standard No. 82-31A (Aug. 2019), pages 14 and 66, as well as JEDEC Standard No. 82-32A (Aug. 2019), page 14.  Micron denies the remainder of paragraph 83 to the extent that it does not accurately quote this document and any remaining allegation.

84.     Micron admits that the image included in paragraph 84 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10.  Micron also admits that the other images included in paragraph 84 appears to have been taken from JEDEC Standard No. 82-32A (Aug. 2019), pages 4 and 14, as well as JEDEC Standard No. 82-31A (Aug. 2019), page 14.  Micron denies the remainder of paragraph 84 to the extent that it does not accurately quote this document and any remaining allegation.

85.     Micron admits that the image included in paragraph 85 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10.  Micron denies the remainder of paragraph 85 to the extent that it does not accurately quote this document and any remaining allegation.

86.     Micron admits that the image included in paragraph 86 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10.  Micron denies the remainder of paragraph 86 to the extent that it does not accurately quote this document and any remaining allegation.

87.     Micron admits that the image included in paragraph 87 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10.  Micron denies the remainder of paragraph 87 to the extent that it does not accurately quote this document and any remaining allegation.

88.     Micron admits that the images included in paragraph 88 appears to have been taken from Micron JEDEC Standard No. 82-32A (Aug. 2019), pages 14 and 95.  Micron denies the remainder of paragraph 88 to the extent that it does not accurately quote this document and any remaining allegation.

89.     Micron denies the allegations of paragraph 89.

90.     Micron admits that the images included in paragraph 90 appears to have been taken from Micron JEDEC Standard No. 82-32A (Aug. 2019), pages 27, 29, and 32 (text image).  Micron denies the remainder of paragraph 90 to the extent that it does not accurately quote this document and any remaining allegation.

91.     Micron admits that the images of text included in paragraph 91 appears to have been taken from Micron JEDEC Standard No. 82-32A (Aug. 2019), pages 32 (text image) and 33 (text image).  Micron denies the remainder of paragraph 91 to the extent that it does not accurately quote this document and any remaining allegation.

92.     Micron denies the allegations of paragraph 92.

93.     Micron denies the allegations of paragraph 93.

94.     Micron admits that it received a letter from Netlist dated April 28, 2021, regarding a license offer for the asserted patents.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 94.

95.     Micron denies the allegations of paragraph 95.

96.     Micron admits that the image included in paragraph 96 appears to have been taken from (https://www.micron.com/solutions/server). Micron denies the remainder of paragraph 96 to the extent that it does not accurately quote this document and any remaining allegation.

97.     Micron denies the allegations of paragraph 97.

98.     Micron denies the allegations of paragraph 98.

99.     Micron admits that it received a letter from Netlist dated April 28, 2021, that referred to the '035 Patent.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 99.

100.    Micron denies the allegations of paragraph 100.

101.    Micron denies the allegations of paragraph 101.

102.    Micron admits that paragraph 102 purports "Plaintiff seeks monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court."  Except as expressly admitted, Micron denies the allegations in paragraph 102.

## COUNT 3:  ALLEGED INFRINGMENT OF U.S. PATENT NO. 10,268,608

103.    Micron repeats and incorporates by reference its responses to the allegations of the foregoing paragraphs of the Complaint as described above.

104.    Micron denies the allegations of paragraph 104.

105.    Micron denies the allegations of paragraph 105.

106.    Micron denies the allegations of paragraph 106.

107.    Micron denies the allegations of paragraph 107.

108.    Micron admits that the image included in paragraph 108 appears to have been taken from a datasheet (referred to as Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet)

14

available           at           https://www.micron.com/products/dram-modules/lrdimm/part-catalog/mta72ass8g72lz-2g9.  Micron denies the remainder of paragraph 108 to the extent that it does not accurately quote this document and any remaining allegation.

109.    Micron admits that the image included in paragraph 109 appears to have been taken from JEDEC Standard No. 21C (Aug. 2015), page 4.20.27-5. Micron denies the remainder of paragraph 109 to the extent that it does not accurately quote this document and any remaining allegation.

110.    Micron admits that the image included in paragraph 110 appears to have been taken from JEDEC Standard No. 21C (Aug. 2015), page 4.20.27-17. Micron denies the remainder of paragraph 110 to the extent that it does not accurately quote this document and any remaining allegation.

111.    Micron admits that the image included in paragraph 111 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 4.  Micron denies the remainder of paragraph 111 to the extent that it does not accurately quote this document and any remaining allegation.

112.    Micron denies the allegations of paragraph 112.

113.    Micron admits that the images included in paragraph 113 appears to have been taken from JEDEC Standard No. 82-31A (Aug. 2019), page 14, as well as JEDEC Standard No. 82-32A (Aug. 2019), pages 4 and 14.  Micron denies the remainder of paragraph 113 to the extent that it does not accurately quote this document and any remaining allegation.

114.    Micron admits that the image included in paragraph 114 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10.  Micron denies the remainder of paragraph 114 to the extent that it does not accurately quote this document and

any remaining allegation.

115.   Micron admits that the images included in paragraph 115 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10.  Micron denies the remainder of paragraph 115 to the extent that it does not accurately quote this document and any remaining allegation.

116.   Micron admits that the image included in paragraph 116 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10.  Micron denies the remainder of paragraph 116 to the extent that it does not accurately quote this document and any remaining allegation.

117.   Micron denies the allegations of paragraph 117.

118.   Micron admits that the image included in paragraph 118 appears to have been taken from Micron 64GB DDR4 LRDIMM MTA72ASS8G72LZ Data Sheet, page 10.  Micron denies the remainder of paragraph 118 to the extent that it does not accurately quote this document and any remaining allegation.

119.   Micron admits that the image included in paragraph 119 appears to have been taken from JEDEC Standard No. 82-32A (Aug. 2019), pages 95. Micron denies the remainder of paragraph 119 to the extent that it does not accurately quote this document and any remaining allegation.

120.   Micron denies the allegations of paragraph 120.

121.   Micron denies the allegations of paragraph 121.

122.   Micron denies the allegations of paragraph 122.

123.   Micron denies the allegations of paragraph 123.

124.   Micron admits that it received a letter from Netlist dated April 28, 2021, regarding

a license offer for the asserted patents.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 124.

125.    Micron denies the allegations of paragraph 125.

126.    Micron admits that the image included in paragraph 126 appears to have been taken from (https://www.micron.com/solutions/server).  Micron denies the remainder of paragraph 126 to the extent that it does not accurately quote this document and any remaining allegation.

127.    Micron denies the allegations of paragraph 127.

128.    Micron denies the allegations of paragraph 128.

129.    Micron admits that it received a letter from Netlist dated April 28, 2021, that referred to the '608 Patent.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 129.

130.    Micron denies the allegations of paragraph 130.

131.    Micron denies the allegations of paragraph 131.

132.    Micron admits that paragraph 132 purports "Plaintiff seeks monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court."  Except as expressly admitted, Micron denies the allegations in paragraph 132.

## **PRAYER FOR RELIEF**

Micron denies that Netlist is entitled to any relief in this action, as requested in paragraphs (A) through (F) of Netlist's Prayer for Relief or otherwise.

## **DEMAND FOR A JURY TRIAL**

Micron admits that the Complaint purports to demand a trial by jury on all issues so triable.

## MICRON'S AFFIRMATIVE DEFENSES

Subject to its responses above, and upon information and belief, Micron alleges and asserts these defenses in response to the allegations in the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated.  In addition to the affirmative defenses described below, subject to the responses above, Micron reserves all rights to allege additional defenses pursuant to any scheduling order, that become known through the course of discovery, or otherwise.

### FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

1.      Netlist has failed to plead its claims with sufficient specificity or factual support to place Micron on notice of the claims Netlist is asserting against it, such that Netlist has failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE – NON-INFRINGEMENT

2.      Micron has not infringed and does not infringe (i) directly, either literally or under the doctrine of equivalents, (ii) indirectly by contributing to infringement by others, either literally or under the doctrine of equivalents, and/or (iii) indirectly by inducing others to infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents, willfully or otherwise.

### THIRD AFFIRMATIVE DEFENSE – INVALIDITY

3.      One or more claims of the Asserted Patents are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### FOURTH AFFIRMATIVE DEFENSE – PROSECUTION HISTORY ESTOPPEL

4.      One or more claims are limited by the text of the Asserted Patents and prosecution histories of the Asserted Patents and related patents such that Netlist is estopped, or otherwise

precluded, from asserting that the claim is infringed by Micron, literally or by equivalents.

### FIFTH AFFIRMATIVE DEFENSE – WAIVER AND ESTOPPEL

5.      Netlist's claims for relief, in whole or in part, are barred by the doctrines of waiver and/or equitable estoppel.

### SIXTH AFFIRMATIVE DEFENSE – LICENSE AND COVENANT NOT TO SUE

6.      Netlist's claims for relief, in whole or in part, are precluded to the extent any of the claims of the Asserted Patents are subject to a license and covenant not to sue, express and/or implied.

### SEVENTH AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

7.      Netlist's recovery for any infringement of the Asserted Patents that it might establish is limited to any established infringement occurring no more than six years before the filing of this lawsuit, pursuant to 35 U.S.C. § 286.

### EIGHTH AFFIRMATIVE DEFENSE – LACK OF MARKING

8.      Netlist's recovery for alleged infringement of the Asserted Patents, if any, is limited to alleged infringement committed after Netlist provided actual or constructive notice of infringement under 35 U.S.C. § 287.

### NINTH AFFIRMATIVE DEFENSE – NO WILLLFUL INFRINGEMENT

9.      Netlist fails to state a claim for relief against Micron for enhanced or increased damages for willful infringement.

### TENTH AFFIRMATIVE DEFENSE – NO EXCEPTIONAL CASE

10.     Netlist fails to state a claim for relief against Micron for exceptional case under 35 U.S.C. § 285.

### ELEVENTH AFFIRMATIVE DEFENSE – NO COSTS

11.     Netlist is barred by 35 U.S.C. § 288 from recovering any costs associated with this

lawsuit.

## TWELFTH AFFIRMATIVE DEFENSE – LACK OF STANDING

12.     To the extent that Netlist was not the sole and total owner of all substantial rights in any of the Asserted Patents as of the filing date of the Complaint, Netlist lacks standing to bring one or more claims in this lawsuit.

## THIRTEENTH AFFIRMATIVE DEFENSE – EXHAUSTION

13.     Netlist's claims are barred, in whole or in part, by the doctrine of patent exhaustion.

## FOURTEENTH AFFIRMATIVE DEFENSE – ABSENCE OF DAMAGES

14.     Netlist has not suffered and will not suffer any injury or damages as a result of Micron's alleged conduct.

## FIFTEENTH AFFIRMATIVE DEFENSE – LACHES AND UNCLEAN HANDS

15.     Netlist is barred, in whole or in part, under principles of equity, including laches, prosecution laches, and/or unclean hands.  Netlist is also barred by issue preclusion from reasserting or altering its positions on factual and legal issues that were previously adjudicated.

## SIXTEENTH AFFIRMATIVE DEFENSE – 28 U.S.C. § 1498

16.     Netlist's recovery for alleged infringement of the Asserted Patents, if any, is limited pursuant to 28 U.S.C. § 1498 to the extent that any alleged infringement, in whole or part, is attributable to the United States government.

## SEVENTEENTH AFFIRMATIVE DEFENSE – BREACH OF RAND LICENSING OBLIGATION

17.     Netlist's claims for injunctive relief are barred, in whole or in part, because of its failure to offer Micron a license to the Asserted on reasonable terms and conditions that are demonstrably free of unfair discrimination (i.e., "RAND terms").

18.     Netlist is presently a member of JEDEC.  Netlist committed the Asserted Patents

to various JEDEC standards pursuant to the JEDEC Patent Policy, which sets certain obligations for owners of patents (like the Asserted Patents) that it reasonably believes are essential to one or more JEDEC standards. The JEDEC Patent Policy, as set forth in the JEDEC Manual of Organization and Procedure, states in relevant part that "[a] license will be offered, to applicants desiring to utilize the license for the purpose of implementing the JEDEC Standard under reasonable terms and conditions that are free of any unfair discrimination . . .."

19.     Netlist has asserted in its letter dated April 28, 2021, that the Asserted Patents must be practiced to implement standards relating to memory technologies promulgated by the leading standard-setting organization in the memory technology field, JEDEC. Netlist therefore asserts that the Asserted Patents are "essential" to the implementation of the JEDEC standards in question. (Such allegedly standard "essential" patents are referred to herein as "SEPs".) JEDEC's semiconductor memory standards enable interoperability—that is, the ability of memory products made by different manufacturers to work together and with computer and electronic devices made by others.  JEDEC standards are widely implemented and, for many types of semiconductor memory products, it is imperative that they comply with JEDEC standards in order to be commercially viable.

20.     Netlist has participated in the development of standards relating to memory technologies in JEDEC.  Pursuant to JEDEC's Patent Policy, Netlist submitted a "License Assurance/Disclosure Form" applicable to each of the Asserted Patents pursuant to which it has (a) disclosed each of those patents, or patents claiming priority to the same filing as the Asserted Patents, to be potentially essential to certain JEDEC standards and (b) committed to offer to license any claim of the Asserted Patents that is essential to the implementation of relevant JEDEC standards to those wishing to implement those JEDEC standards on RAND terms.

21.     Moreover, pursuant to the JEDEC Patent Policy, which is binding upon Netlist, simply by virtue of its membership on the committees that developed the standards to which Netlist asserts the claims of the Asserted Patents are essential, Netlist is obligated to offer to license those claims to all potential licensees like Micron on RAND terms.

22.     Netlist has breached its obligations to offer to license the Asserted Patent on RAND terms by, among other things: (a) failing to offer to license its SEPs to Micron on terms that are reasonable and (b) seeking injunctive relief against Micron based upon its alleged infringement of the Asserted Patent despite Micron's willingness to engage in discussions about licensing any claim shown to be valid and infringed on RAND terms.  To date, and despite Micron's attempts to obtain such a showing, Netlist has failed to show that any asserted claim is valid and infringed.

## RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES

Micron reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses at law or in equity that may exist now or that may be available in the future based on discovery and further factual investigation in this action.

## COUNTERCLAIMS

Micron, by and through its undersigned counsel, incorporates its answers and affirmative defenses as set forth above, and alleges counterclaims against Plaintiff/Counter-Defendant Netlist for invalidity and non-infringement of the Asserted Patents, for non-infringement of U.S. Patent Nos. 10,860,506 (the "'506 Patent"), 10,949,339 (the "'339 Patent"), 11,016,918 (the "'918 Patent"), 11,232,054 (the "'054 Patent"), 7,619,912 (the "'912 Patent"), 11,093,417 (the "'417 Patent"), and 9,858,215 (the "'215 Patent") (collectively, the "Related Patents") (Exhibits 1-7), and for unenforceability of the '035, '608, '506, and '912 Patents due to inequitable conduct and unclean hands, as follows:

## BACKGROUND

1.      According to the allegations set forth in its Complaint, Netlist claims to be the assignee and owner of the Asserted Patents.  Dkt. 1 ¶¶ 2, 28, 31, 34.  On information and belief, Netlist also claims to be the assignee and owner of the Related Patents.

2.      Netlist has accused Micron of infringing the Asserted Patents.  Micron denies that any of its products infringe any valid and enforceable claim in the Asserted Patents.

3.      Netlist also has accused Micron of infringing the Related Patents.  *See Netlist Inc. v. Micron Technology, Inc.*, Civil Action No. 2:22-CV-00203-JRG-RSP (E.D. Tex.) (the "EDTX Litigation"); and *Netlist Inc. v. Micron Technology, Inc.*, Civil Action No. 2:22-CV-00294-JRG (E.D. Tex.) (the "EDTX-2 Litigation").  Micron denies that any of its products infringe any valid and enforceable claim in the Related Patents.

4.      An actual case and controversy exists between Micron and Netlist concerning the alleged infringement of one or more claims of the Asserted Patents and one or more claims of the Related Patents, and that controversy is ripe for adjudication.

## PARTIES

5.      Counterclaim-Plaintiff MTI is a Delaware corporation with its principal place of business at 8000 S. Federal Way, Boise, Idaho 83716.

6.      Counterclaim-Plaintiff Micron Texas is an Idaho limited liability company with its principal office at 8000 S. Federal Way, Boise, Idaho 83716.

7.      Counterclaim-Plaintiff MSP is an Idaho corporation with its principal office at 8000 S. Federal Way, Boise, Idaho 83716.

8.      Counterclaim-Defendant Netlist alleges it is a Delaware corporation with its principal place of business at 175 Technology Drive, Suite 150, Irvine, California 92618.  *See* Dkt. 1 ¶ 1.

## JURISDICTION AND VENUE

9.       This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.  This Court has subject matter jurisdiction over these Counterclaims under §§ 1331 and 1338(a).  These Counterclaims arise under the patent laws of the United States.

10.      This Court has personal jurisdiction over Netlist, at least because by initiating this lawsuit, Netlist has submitted to this District's jurisdiction.

11.      Venue for these Counterclaims is proper under this District under 28 U.S.C. §§ 1391 and 1400.

## MICRON DOES NOT INFRINGE THE RELATED PATENTS

12.      Substantial overlap exists between the Asserted Patents and the Related Patents. For example, the '506 Patent is a continuation of two of the Asserted Patents in this case, namely the '608 Patent and the '035 Patent, and the '417 Patent is a continuation of the other patent asserted in this case, namely the '314 Patent.  Moreover, the '314 Patent is a continuation of the '215 Patent.  Additionally, the '918 and '054 Patents are continuations of U.S. Patent No. 8,301,833 (the "'833 Patent"), by way of several intermediate continuation and continuation-in-part applications.  The '833 Patent is asserted in the parallel case before this Court (case no. 1:22-CV-00134-LY) that is being litigated together with this case.  Accordingly, the '918 and '054 Patents share disclosures found in another patent (the '833 Patent) that is being litigated together with this case.  Additionally, all five parent patent applications from which the '912 Patent purports to claim priority are also parent patent applications from which the '314 Patent that is asserted in this case also purports to claim priority.  Accordingly, the '506 Patent, the '417 Patent, the '912 Patent, and the '215 Patent all share disclosures found in the Asserted Patents in this case.  In addition, as detailed below, devices that Netlist accuses the Related Patents of infringing, *i.e.*, DDR4/DDR5 LRDIMMs, are the same as (or very similar to) the devices that Netlist accuses the

Asserted Patents of infringing.

**A.     The '506 Patent**

13.     The '506 Patent relates to "multi-rank memory modules and methods of operation." Ex. 1 ('506 Patent) at 1:37–39.  As shown in Figure 2C, below, "the control circuit 116 transmits registered C/A and clock signals to the memory devices 112, and transmits module control signals and a registered clock signal . . . to the isolation device 118."  *Id.* at 8:22–26.



FIG. 2C

14.     Figure 2C illustrates that data buffers 118 and their associated memory devices 112 are distributed across the memory module at varying distances from the module control device 116.  "In some conventional memory systems, the memory controllers include leveling mechanisms for write and/or read operations to compensate for unbalanced wire lengths and memory device loading on the memory module."  *Id.* at 2:28–36.  The '506 Patent alleges, however, that "such leveling mechanisms are also insufficient to insure [sic] proper timing of the control and/or data signals received and/or transmitted by the memory modules."  *Id.* at 2:32–36.

15.     The '506 Patent describes "isolation devices" in which "each isolation device[] includes signal alignment circuits that determine, during a write operation, a time interval between

25

a time when one or more module control signals are received from the module control signal 116 and a time when a write strobe or write data signal is received from the MCH 101." *Id.* at 10:7–21, 15:14–35.  "This time interval is used during a subsequent read operation to time the transmission of read data to the MCH 101, such that read data follows a read command by a read latency value associated with system 100." *Id.* at 10:11–21, 15:23–35.

16.    Netlist alleges that Micron's DDR4 LRDIMMs directly infringe at least one claim of the '506 Patent.  *See* EDTX Litigation, D.I. 1, ¶¶ 66–74.  Netlist further alleges that Micron indirectly infringes the '506 Patent "by inducing infringement by others, such as Micron's customers and end users" and by "contributing to direct infringement committed by others, such as customers and end users."  *Id.* ¶¶ 75–76.

**B.    The '339 Patent**

17.    The '339 Patent relates to a "memory module" that purportedly solves the problem that prior art memory modules "require[d] that the memory system slow down operation speed if the memory subsystem is populated with more memory devices to provide high density memory cards."  Ex. 2 ('339 Patent) at 2:18–22.  Figure 3A purports to illustrate a memory module of the '339 Patent:



**FIG. 3A**

18.    The memory modules (402) include a "control circuit" (430), a plurality of "memory devices" (412), and a plurality of "data transmission circuits" (416).  *Id.* at 7:44–53.  The claims of the '339 Patent use the term "byte-wise buffer" to refer to the "data transmission circuit." *See, e.g.*, *id.* at 13:31–32 ("In certain embodiments, the data transmission circuit 416 comprises or functions as a byte-wise buffer."); *id.* at claim 1.

19.    The data transmission circuit (416) is illustrated in Figure 5:



**FIG. 5**

20.    The memory devices are arranged in a plurality of "ranks."  *Id.* at 1:37–39.  The data transmission circuit includes multiple data paths and includes logic to switch between

27

different data paths depending on which rank of the memory is being accessed.  *Id.* at 15:26–60. In Figure 5, the data transmission circuit has two data paths, which the '339 Patent calls "path A and path B."  *Id.* at 15:44–48.  Path A connects the computer to ranks A and C of the memory module, while path B connects the computer to ranks B and D of the memory module.  *Id.* at 15:48–58.  During a write operation, for example, "the control logic circuitry 502 selects either path A or path B to direct the data."  *Id.* at 16:7–11; *id.* at 17:53–18:24.

21.     The '339 Patent distinguishes the claimed memory modules from prior art memory modules that "combine[] chip-select signals with an address signal to increase the number of physically addressable memory spaces."  *Id.* at 4:22–26.  The '339 Patent asserts that this approach has "several shortcomings," including that "a heavier load is presented to the output of the system controller and the outputs of the memory devices, resulting in a slower system."  *Id.* at 4:27–31. According to the '339 Patent, this approach also "results in higher power dissipation" and "introduc[es] uneven signal propagation delay between the data signal paths and control signal paths."  *Id.* at 4:31–47.

22.     Netlist alleges that Micron's DDR4 LRDIMMs directly infringe at least one claim of the '339 Patent.  *See* EDTX Litigation, D.I. 1, ¶¶ 78-88.  Netlist further alleges that Micron indirectly infringes the '339 Patent "by inducing infringement by others, such as Micron's customers and end users" and by "contributing to direct infringement committed by others, such as customers and end users."  *Id.* ¶¶ 89-90.

**C.     The '918 and '054 Patents**

23.     The '918 and '054 Patents both relate to "Flash-DRAM Hybrid Memory Modules" that supply power to the memory system from a system power supply when the memory module is in the first state, and from an on-board power supply when the memory module is in a second state.  *See* Ex. 3 ('918 Patent) at 25:54–58.  Figure 12 of the '918 Patent illustrates a memory

28

module disclosed in the '918 and '054 Patents:



FIG. 12

24.    The memory module (1010) includes a volatile memory subsystem (1030), a non-volatile memory subsystem (1040), and a controller (1062) coupled to the non-volatile memory subsystem.  *Id.* at 21:14–20.  The on-board power supply (1080) can be implemented as a power module (1100) that provides multiple voltages to the circuitry on the memory module.  Figure 16 of the '918 Patent illustrates the power module disclosed in the '918 and '054 Patents:



FIG. 16

25.     The '918 Patent states "[t]he power module has a conversion element (1120) that can comprise at least one or more buck converters (1122, 1124) and at least one buck-boost converter (1126)."  *Id.* at 29:18–19.

26.     Netlist alleges that Micron DDR5 memory modules, including DDR5 LRDIMMs, directly infringe at least one claim of the '918 Patent.  *See* EDTX Litigation, D.I. 1, ¶¶ 92–100.

27.     Netlist also alleges that Micron DDR5 memory modules, including DDR5 LRDIMMs, directly infringe at least one claim of the '054 Patent.  *See* EDTX Litigation, D.I. 1, ¶¶ 101-109.

**D.     The '912 Patent**

28.     The '912 Patent relates to memory modules that purportedly have the capability of expanding the number of memory devices that can be accessed by a computer.  The '912 Patent provides:

> The memory capacity of a memory module increases with the number of memory devices. The number of memory devices of a

> memory module can be increased by increasing the number of
> memory devices per rank or by increasing the number of ranks. For
> example, a memory module with four ranks has double the memory
> capacity of a memory module with two ranks and four times the
> memory capacity of a memory module with one rank.

Ex. 5 ('912 Patent) at 2:23-30.

29.    A given total amount of module memory (e.g., 4GB) may be provided by using a

small number of high-density memory devices or a large number of low-density memory devices.

The '912 patent states:

> Market pricing factors for DRAM devices are such that higher-
> density DRAM devices (e.g., 1Gb DRAM devices) are much more
> than twice the price of lower-density DRAM devices (e.g., 512 Mb
> DRAM devices). In other words, the price per bit ratio of the higher-
> density DRAM devices is greater than that of the lower density
> DRAM devices.

*Id.* at 4:59–64.

30.    Figure 1A illustrates an exemplary memory module with four ranks of memory

devices.  The memory module 10 includes a logic element 40 and a register 60.  *Id.* at 5:6–21.

Input control signals, such as a row/column address signal ($A_{n+1}$), bank address signal ($BA_0$-$BA_m$),

and chip select signals ($CS_0$ and $CS_1$), are received by logic element 40.  *Id.* at 6:55–61.  In response

to the set of input control signals, the logic element 40 generates a set of output control signals,

which includes address signals and a command signal.  *Id.* at 6:61–63.  Figure 1A shows a system

configured for two ranks of memory per memory module (using chip select signals $CS_0$ and $CS_1$),

even though the memory module 10 is arranged in four ranks of memory devices.  *Id.* at 6:64–

7:53.  "Thus, in certain embodiments, even though the memory module 10 actually has the first

number of ranks of memory devices 30, the memory module 10 simulates a virtual memory module

by operating as having a second number of ranks of memory devices 30."  *Id.* at 7:9–13.



*Id.* at FIG. 1A.

31.     Netlist alleges that Micron's DDR4 LRDIMMs and RDIMMs that employ per DRAM addressability ("PDA") directly infringe at least one claim of the '912 Patent.  *See* EDTX-2 Litigation, D.I. 11, ¶¶ 38–39.

**E.     The '215 and '417 Patents**

32.     The '215 and '417 Patents, like the asserted '314 Patent, both relate to "Memory Module[s] with Data Buffering" that are described in terms of single in-line memory modules ("SIMMs"), DIMMs, and other types of memory cards of various sizes.  *See* Ex. 7 ('215 Patent), 5:44-6:3.  The memory modules are described as a "printed circuit board" containing "edge connectors" for coupling to a "module slot of a computer system."  *Id.*  The memory modules communicate with a host computer's "memory controller" through this module slot and via a "memory bus."  *Id.* at 3:11-14.

33.     The memory modules include "memory devices," such as random access memory, DRAM, and other types of commercially available devices.  *Id.* at 6:4-23.  The modules are

arranged in ranks, e.g., Fig. 9B depicts two ranks (32a-32b) and Fig. 9A depicts four ranks (32a-32d):



FIG. 9B                                    FIG. 9A

*Id.* at Figs. 9A-9B.

34.     As depicted in Figs. 9A-9B, the memory devices are coupled to "circuit" 40 and "register" 230.  Circuit 40 "receives a set of input address and command signals" and "generates a set of output address and command signals in response." *Id.* at 14:28-36.  Register 230 "receives and buffers a plurality of command signals and address signals." *Id.* at 14:46-47.  Also depicted is "SPD" 240 which communicates data regarding various attributes of the memory module to the "basic input/output system (BIOS) of the computer system so that the computer system is informed of the memory capacity." *Id.* at 17:50-56.

35.     Netlist alleges that Micron's DDR4 LRDIMMs directly infringe at least one claim of the '417 Patent.  *See* EDTX-2 Litigation, D.I. 11, ¶¶ 41-50.  Netlist further alleges that Micron indirectly infringes the '417 Patent "by inducing infringement by others, such as Micron's customers and end users" and by "contributing to direct infringement committed by others, such as customers and end users." *Id.* at ¶¶ 51–52.

36.     Netlist also alleges that Micron's DDR4 LRDIMMs directly infringe at least one

claim of the '215 Patent. *See id.* at ¶¶ 55-63. Netlist further alleges that Micron indirectly infringes the '215 Patent "by inducing infringement by others, such as Micron's customers and end users" and by "contributing to direct infringement committed by others, such as customers and end users." *Id.* ¶¶ 64–65.

## NETLIST'S INEQUITABLE CONDUCT AND UNCLEAN HANDS RENDERS THE 035, '608, '506, AND '912 PATENTS UNENFORCEABLE

37.     Individuals substantively involved in the prosecution of the '035, '608, and '506 Patents knew about material and non-cumulative prior art by virtue of their participation in JEDEC standards meetings. On information and belief, these individuals specifically intended to deceive the Patent Office into believing that the claims of the '035, '608, and '506 Patents were patentable by withholding the relevant art from the examiner during prosecution of the '035, '608, and '506 Patents.

38.     Individuals substantively involved in the reexamination of the '912 Patent made false and misleading statements to the Patent Office and the Federal Circuit that were material to the patentability of the amended claims. On information and belief, these individuals specifically intended to deceive the Patent Office and the Federal Circuit into believing that the amendment of certain claims in the '912 Patent were "narrowing" in scope, thereby distinguishing those claims from the prior art. On information and belief, these individuals misrepresented the intended effect of the amendments in order to secure allowance of the amended claims, knowing that Netlist would later adopt the position in litigation that the amendments were in fact not "narrowing" at all, but rather recited "inherent functions" that were already required by the original claims.

## COUNTERCLAIM 1

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '314 PATENT)

39.     Micron incorporates by reference the admissions, denials, and allegations set forth

in the preceding paragraphs of this Answer as if fully set forth herein.

40.     An actual controversy exists between Micron and Netlist as to whether Micron infringes the '314 Patent, as Netlist contends, or does not do so, as Micron contends.

41.     Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

42.     By this Counterclaim, Micron seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '314 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration.

43.     A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '314 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

44.     This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 2

## (DECLARATORY JUDGMENT OF INVALIDITY OF THE '314 PATENT)

45.     Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

46.     An actual controversy exists between Micron and Netlist as to whether the '314 Patent is valid, as Netlist contends, or is invalid for failure to comply with the requirements of patentability of the Patent Laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 115, 116, 119, 132, 251, 256, and/or 282, as Micron contends.

47.     For example, U.S. Patent No. 6,446,184 to Dell et al. ("Dell"), attached as Exhibit 12, was filed on January 31, 2001, and issued on September 3, 2002, and is therefore prior art

under at least § 102 (a) (2).  Similarly, U.S. Patent No. 6,070,217 to Connolly et al. ("Connolly"), attached as Exhibit 13, was filed on May 12, 1998, and issued on May 30, 2000, and is therefore prior art under at least § 102 (a) (2).

48.     Dell and/or Connolly anticipate or render obvious one or more claims of the '314 Patent.

49.     By this Counterclaim, Micron seeks a declaration that the claims of the '314 Patent are invalid.  A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '314 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

50.     This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 3

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '035 PATENT)

51.     Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

52.     An actual controversy exists between Micron and Netlist as to whether Micron infringes the '035 Patent, as Netlist contends, or does not do so, as Micron contends.

53.     Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

54.     By this Counterclaim, Micron seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '035 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration.

55.     A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '035 Patent and with respect to any past,

present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

56.     This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 4

## (DECLARATORY JUDGMENT OF INVALIDITY OF THE '035 PATENT)

57.     Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

58.     An actual controversy exists between Micron and Netlist as to whether the '035 Patent is valid, as Netlist contends, or is invalid for failure to comply with the requirements of patentability of the Patent Laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 115, 116, 119, 132, 251, 256, and/or 282, as Micron contends.

59.     For example, U.S. Patent Application Publication No. 2010/0309706 to Saito et al. ("Saito"), attached as Exhibit 14, was filed on June 3, 2010, and is therefore prior art under at east § 102 (a) (2).   U.S. Patent No. 8,020,022 to Tokuhiro, attached as Exhibit 15, was filed on September 12, 2008, and issued on September 13, 2011, and is therefore prior art under at least § 102 (a) (2).

60.     Saito in view of Tokuhiro renders obvious one or more claims of the '035 Patent.

61.     By this Counterclaim, Micron seeks a declaration that the claims of the '035 Patent are invalid.  A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '035 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

62.     This is an exceptional case entitling Micron to an award of its attorneys' fees

incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 5

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '608 PATENT)

63.     Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

64.     An actual controversy exists between Micron and Netlist as to whether Micron infringes the '608 Patent, as Netlist contends, or does not do so, as Micron contends.

65.     Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

66.     By this Counterclaim, Micron seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '608 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration.

67.     A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '608 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

68.     This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 6

## (DECLARATORY JUDGMENT OF INVALIDITY OF THE '608 PATENT)

69.     Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

70.     An actual controversy exists between Micron and Netlist as to whether the '608 Patent is valid, as Netlist contends, or is invalid for failure to comply with the requirements of

patentability of the Patent Laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 115, 116, 119, 132, 251, 256, and/or 282, as Micron contends.

71.    For example, U.S. Patent Application Publication No. 2010/0309706 to Saito et al. ("Saito") (Exhibit 14) was filed on June 3, 2010, and is therefore prior art under at least § 102 (a) (2).  U.S. Patent No. 8,020,022 to Tokuhiro (Exhibit 15) was filed on September 12, 2008, and issued on September 13, 2011, and is therefore prior art under at least § 102 (a) (2).

72.    Saito in view of Tokuhiro renders obvious one or more claims of the '608 Patent.

73.    By this Counterclaim, Micron seeks a declaration that the claims of the '608 Patent are invalid.  A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '608 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

74.    This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 7

## (DECLARATORY JUDGMENT OF RAND TERMS FOR A LICENSE TO NETLIST'S ASSERTED PATENT)

75.    Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

76.    To the extent that the claims of the Asserted Patents are found valid and infringed, Netlist has an obligation to offer Micron a license on RAND terms and conditions.

77.    A definite and concrete dispute between Micron and Netlist exists, however, regarding what constitutes RAND royalties for a license to Netlist's patents essential to JEDEC standards.

78.     Unless and until RAND royalties for a license to Netlist's patents essential to JEDEC standards are determined, Micron will continue to be harmed by the potential disruption of its business, ongoing litigation and threat of potential litigation, threat of injunctions against Micron's products, imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

79.     Micron is therefore entitled to a declaratory judgment setting forth the RAND terms and conditions for a license to Netlist's patents essential to JEDEC standards including the applicable royalty rate, to which Netlist is entitled.

80.     Micron is further entitled to a declaratory judgment that it has a right to obtain a license to Netlist's patents essential to JEDEC standards under the RAND terms and conditions to be determined by the Court.

81.     Upon a showing that the claims of the Asserted Patents are found valid and infringed, Micron is willing to take a license to Netlist's patents essential to JEDEC standards on the RAND terms and conditions as determined by the Court (subject to any applicable right of appeal).

**COUNTERCLAIM 8**

**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '506 PATENT)**

82.     Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

83.     An actual controversy exists between Micron and Netlist as to whether Micron infringes the '506 Patent, as Netlist contends, or does not do so, as Micron contends.

84.     Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

85.     By this Counterclaim, Micron seeks a declaration that it has not infringed and does

40

not infringe any valid and enforceable claim of the '506 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration. In particular, Micron has not directly or indirectly infringed any claim of the '506 Patent, either literally or under the doctrine of equivalents, at least because the Micron DDR4 LRDIMMs do not employ, incorporate, or otherwise make use of all of the limitations of the claims of the '506 Patent.

86.     A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '506 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

87.     This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 9

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '339 PATENT)

88.     Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

89.     An actual controversy exists between Micron and Netlist as to whether Micron infringes the '339 Patent, as Netlist contends, or does not do so, as Micron contends.

90.     Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

91.     By this Counterclaim, Micron seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '339 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration. In particular, Micron has not directly or indirectly infringed any claim of the '339 Patent, either literally or under the doctrine of equivalents, at least because the Micron DDR4 LRDIMMs do not employ, incorporate, or otherwise make use of all of the limitations of the claims of the '339 Patent.

92.     A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '339 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

93.     This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 10

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '918 PATENT)

94.     Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

95.     An actual controversy exists between Micron and Netlist as to whether Micron infringes the '918 Patent, as Netlist contends, or does not do so, as Micron contends.

96.     Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

97.     By this Counterclaim, Micron seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '918 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration.  In particular, Micron has not directly or indirectly infringed any claim of the '918 Patent, either literally or under the doctrine of equivalents, at least because the Micron DDR5 memory modules do not employ, incorporate, or otherwise make use of all of the limitations of the claims of the '918 Patent.

98.     A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '918 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

99.     This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 11

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '054 PATENT)

100.    Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

101.    An actual controversy exists between Micron and Netlist as to whether Micron infringes the '054 Patent, as Netlist contends, or does not do so, as Micron contends.

102.    Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

103.    By this Counterclaim, Micron seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '054 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration.  In particular, Micron has not directly or indirectly infringed any claim of the '054 Patent, either literally or under the doctrine of equivalents, at least because the Micron DDR5 memory modules do not employ, incorporate, or otherwise make use of all of the limitations of the claims of the '054 Patent.

104.    A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '054 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

105.    This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 12

## (DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '035, '608, AND '506 PATENTS DUE TO INEQUITABLE CONDUCT & UNCLEAN HANDS)

106.    Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

107.     An actual controversy exists between Micron and Netlist as to whether the '035, '608, and '506 Patents are enforceable, as Netlist contends, or is not enforceable, as Micron contends.

108.     Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

109.     By this Counterclaim, Micron seeks a declaration that the '035, '608, and '506 Patents are unenforceable due to inequitable conduct and unclean hands and is entitled to a declaration.

110.     A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '035, '608, and '506 Patents and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

111.     This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

**A.     Background on the Alleged Invention, the Prosecution Histories of the Relevant Patents, and Relevant Events**

**1.     Patents Related to the '035 Patent**

112.     The '035 Patent issued from a series of continuation applications: 14/846,993 (U.S. Patent No. 9,563,587); and 13/952,599 (U.S. Patent No. 9,128,632).  This chain of continuation applications ultimately claims priority to U.S. Provisional Patent Application No. 61/676,883, which was filed on July 27, 2012.  All of the applications name Hyun Lee and Jayesh R. Bhakta as the inventors.

113.     The '035 Patent incorporates by reference a number of Netlist's other patent applications including U.S. Patent Application Nos. 14/715,486 (U.S. Patent No. 9,858,821);

13/970,606 (U.S. Patent No. 9,606,907); 12/504,131 (U.S. Patent No. 8,417,870); 12/761,179 (U.S. Patent No. 8,516,185); 13/287,042 (U.S. Patent No. 8,756,364); and 13/287,081 (U.S. Patent No. 8,516,188).

114.    Netlist filed a terminal disclaimer for the '035 Patent on August 30, 2017, over the '587, and '632 patents.

### 2.    Patents Related to the '608 Patent

115.    The '608 Patent issued from a series of continuation applications including the '035 patent: 15/426,064 (U.S. Patent No. 9,824,035); 14/846,993 (U.S. Patent No. 9,563,587); and 13/952,599 (U.S. Patent No. 9,128,632)—and claims priority to U.S. Provisional Patent Application No. 61/676,883, which was filed on July 27, 2012.  All of the applications name Hyun Lee and Jayesh R. Bhakta as the inventors.

116.    The '608 Patent incorporates by reference a number of Netlist's other patent applications including U.S. Patent Application Nos. 14/715,486 (U.S. Patent No. 9,858,821); 13/970,606 (U.S. Patent No. 9,606,907); 12/504,131 (U.S. Patent No. 8,417,870); 12/761,179 (U.S. Patent No. 8,516,185); 13/287,042 (U.S. Patent No. 8,756,364); and 13/287,081 (U.S. Patent No. 8,516,188).

117.    Netlist filed a terminal disclaimer for the '608 Patent on April 5, 2018, over the '035, '587, and '632 patents.

### 3.    Patents Related to the '506 Patent

118.    The '506 Patent issued from a series of continuation applications including the '608 and '035 patents: U.S. Patent Application Nos. 15/820,076 (U.S. Patent No. 10,268,608); 15/426,064 (U.S. Patent No. 9,824,035); 14/846,993 (U.S. Patent No. 9,563,587); and 13/952,599 (U.S. Patent No. 9,128,632).  This chain of continuation applications ultimately claims priority to U.S. Provisional Patent Application No. 61/676,883, which was filed on July 27, 2012.  All of the

applications name Hyun Lee and Jayesh R. Bhakta as the inventors.

119.    The '506 Patent incorporates by reference a number of Netlist's other patent applications including U.S. Patent Application Nos. 14/715,486 (U.S. Patent No. 9,858,821); 13/970,606 (U.S. Patent No. 9,606,907); 12/504,131 (U.S. Patent No. 8,417,870); 12/761,179 (U.S. Patent No. 8,516,185); 13/287,042 (U.S. Patent No. 8,756,364); and 13/287,081 (U.S. Patent No. 8,516,188).

120.    Netlist filed a terminal disclaimer for the '506 Patent on April 10, 2020, over the '608, '035, '587, and '632 patents.

### 4.    Hyun Lee's and Jayesh Bhakta's Alleged Conception and Reduction to Practice, and Regular Attendance at JEDEC Meetings

121.    Hyun Lee continued to regularly attend JEDEC meetings for at least the JC-40 committee and the JC-45 committee in 2011 and 2012, as well as before and after that timeframe. For instance, on information and belief, Hyun Lee attended at least the following JC-40 meetings: No. 168, Dec. 8, 2011; No. 169, Mar. 5, 2012; and No. 170, June 4, 2012.  And, on information and belief, Hyun Lee attended at least the following JC-45 meetings: No. 33, Dec. 7-8, 2011; No. 34, Mar. 5, 2012; and No. 35, June 4, 2012.

122.    By virtue of his attendance at those meetings, active involvement in JEDEC and otherwise, on information and belief, Hyun Lee was aware of the draft and final specifications for DDR4 LRDIMMs being considered and voted upon by those committees, including JESD82-32, dated November 2016, as well as prior drafts of it.  For example, Intel presented and discussed Committee Item Number 158.01 ("DDR4 LRDIMM Proposal") at the December 8, 2011 meeting of JC-40, Committee Item Number 0311.14 ("Proposed DDR4 DB Training Modes") at the March 25, 2012 meeting of JC-40, and Committee Item Number 0311.12 ("Proposed DDR DB Buffer Control Words") at the June 4, 2012 meeting of JC-40.

123.    A true and correct copy of JESD82-32 is attached as Exhibit 8.  On information and belief, this standard was circulated at or before, and discussed at and voted on at or before, JC-40 and JC-45 committee meetings that Hyun Lee attended.

124.    A true and correct copy of Committee Item Number 158.01 from the December 2011 meeting is attached as Exhibit 9.  On information and belief, this draft was created by employees of Intel Corp. and circulated at or before, and discussed at, the JC-40 committee meeting on December 8, 2011 that Hyun Lee attended.

125.    A true and correct copy of Committee Item Number 0311.14 from the March 2012 meeting is attached as Exhibit 10.  On information and belief, this draft was created by employees of Intel Corp. and circulated at or before, and discussed at, the JC-40 committee meeting on Mar. 5, 2012 that Hyun Lee attended.

126.    A true and correct copy of Committee Item Number 0311.12 from the June 2012 meeting is attached as Exhibit 11.  On information and belief, this draft was created by employees of Intel Corp. and circulated at or before, and discussed at, the JC-40 committee meeting on June 4, 2012 that Hyun Lee attended.

127.    By virtue of his attendance at those meetings, active involvement in JEDEC and otherwise, on information and belief, Hyun Lee was aware of the draft and final specifications for DDR4 LRDIMMs being considered and voted upon by those subcommittees.

128.    Draft specifications, ballots and presentations distributed to the members of the JC-40 and/or JC-45 committees of JEDEC were distributed to many (20+) key members of the interested public with the expectation they would be freely disclosed to and discussed with others. As such, they are prior art under 35 U.S.C. § 102 at least as of those distribution dates.

129.    Distributed specifications, such as JESD82-32, are prior art under 35 U.S.C. § 102

47

at least as of their release dates.

130.    The provisional application to which the '035, '608, and '506 Patents claim priority was filed on July 12, 2012, naming Hyun Lee as the inventor.  Jayesh R. Bhakta was named as a co-inventor after the provisional was filed.

131.    On information and belief, and based on Netlist's apparent view of the scope of the alleged invention, each of the draft DDR4 LRDIMM drafts and presentations disclose materially the same structure and functionality that Netlist accuses of infringing the claims of '035, '608, and '506 Patents.

132.    On information and belief, after attending the June 4, 2012 meeting and listening to these ideas from other members of JEDEC, Hyun Lee returned to Netlist and hurriedly completed drafting the provisional application to which the '035, '608, and '506 Patents claim priority, naming himself as the inventor, and had a provisional application filed on July 27, 2012. Netlist filed a request to correct inventorship on September 26, 2012, adding Jay R. Bhakta as a coinventor.

### 5.    '035 Patent Prosecution and Corresponding Events

133.    Netlist filed the application, No. 15/426,064, that issued as the '035 Patent on February 7, 2017.

134.    On June 2, 2017, the examiner issued a Non-Final Rejection rejecting then-pending claims 1–20 for obviousness-type double patenting.

135.    On August 30, 2017, Netlist filed an Amendment and Request for Reconsideration after Non-Final Rejection.  Netlist's response included a Terminal Disclaimer and amended claims 1, 3–4, 6–9, 11, 13–16, 18, and 20.  Netlist added claims 21–22.

136.    On September 21, 2017, the examiner issued a Notice of Allowance for the application that issued as the '035 Patent.

137.   On September 28, 2017, Netlist filed an Amendment after Allowance and amended claims 6, 8, 10, 12–13, and 20, and on October 5, 2017, Netlist paid the issue fee for the application that issued as the '035 Patent.

138.   On October 18, 2017, the examiner entered the Amendment after Allowance.

139.   On November 1, 2017, the examiner issued an issue date notification for the application that issued as the '035 Patent.  That notification specified an issue date of November 21, 2017.

140.   Netlist took no action to withdraw the application that issued as the '035 Patent from issuance, or to otherwise continue prosecution of that application, and the application issued as the '035 Patent on November 21, 2017.

141.   Netlist did not file an information disclosure statement at any time during its prosecution of '035 patent.

**6.   '608 Patent Prosecution and Corresponding Events**

142.   Netlist filed the application, No. 15/820,076, that issued as the '608 Patent on November 21, 2017.

143.   On January 25, 2018, the examiner issued a Non-Final Rejection rejecting then-pending claim 1 for obviousness-type double patenting.

144.   On May 24, 2018, Netlist filed an Amendment and Request for Reconsideration after Non-Final Rejection.  Netlist's response included a Terminal Disclaimer and canceled claim 1.  Netlist added claims 2–12.

145.   On July 3, 2018, the examiner issued a Notice of Allowance for the application that issued as the '608 Patent.

146.   On October 3, 2018, Netlist filed a Request for Continued Examination along with two Information Disclosure Statements (IDS).  The cited references include numerous entire

prosecution histories for other Netlist applications. JEDEC DDR LRDIMM drafts and specifications were not included in the IDS.

147.    On November 11, 2019, the examiner issued another Notice of Allowance for the application that issued as the '608 Patent that stated that "there were many Non-Patent Literature Documents and Foreign Patent Documents that were listed throughout without any corresponding copy of these documents attached to review. As such, these listings were not considered as Examiner had no copy of these documents."

148.    On February 19, 2019, Netlist filed an Amendment after Allowance and amended claims 1 and 10, and on September 19, 2019, Netlist paid the issue fee for the application that issued as the '608 Patent.

149.    On February 28, 2019, the examiner entered the Amendment after Allowance.

150.    On April 3, 2019, the examiner issued an issue date notification for the application that issued as the '608 Patent. That notification specified an issue date of April 23, 2019.

151.    Netlist took no action to withdraw the application that issued as the '608 Patent from issuance, or to otherwise continue prosecution of that application, and the application issued as the '608 Patent on April 23, 2019.

152.    Netlist did not submit additional copies of the Non-Patent Literature and Foreign Patent Documents mentioned in the Examiner's Notice of Allowance dated November 11, 2019 and as indicated by the Information Disclosure Statements initialed by the examiner.

**7.      '506 Patent Prosecution and Corresponding Events**

153.    Netlist filed the application, No. 16/391,151, that issued as the '506 Patent on April 22, 2019.

154.    On August 20, 2019, Netlist filed an Information Disclosure Statement (IDS) Form containing seven sheets. JEDEC DDR LRDIMM drafts and specifications were not included.

155.    On January 8, 2020, Netlist filed an Information Disclosure Statement (IDS) Form containing twenty-two sheets.  The cited references include numerous entire prosecution histories for other Netlist applications.  JEDEC DDR LRDIMM drafts and specifications were not included.

156.    On January 10, 2020, the examiner issued a Non-Final Rejection rejecting then-pending claim 1 for obviousness-type double patenting and as anticipated by U.S. Patent No. 8,565,033 ("Manoharajah").

157.    On April 10, 2020, Netlist filed an Amendment and Request for Reconsideration after Non-Final Rejection.  Netlist's response included a Terminal Disclaimer and canceled claim 1.  Netlist added claims 2–21.

158.    On July 23, 2020, the examiner issued a Notice of Allowance for the application that issued as the '506 Patent.

159.    On October 16, 2020, Netlist filed an Amendment after Allowance, and on October 22, 2020, Netlist paid the issue fee for the application that issued as the '506 Patent.

160.    On November 11, 2020, the examiner accepted the Amendment.

161.    On November 18, 2020, the examiner issued an issue date notification for the application that issued as the '506 Patent.  That notification specified an issue date of December 8, 2020.

162.    Netlist took no action to withdraw the application that issued as the '506 Patent from issuance, or to otherwise continue prosecution of that application, and the application issued as the '506 Patent on December 8, 2020.

**B.      Netlist's Failure to Disclose the Drafts and Presentations for DDR4 LRDIMMs from the Dec. 8, 2011, Mar. 5, 2012, and June 4, 2012 JEDEC JC-40 Meetings Attended by Hyun Lee, and False Portrayal of Hyun Lee and Jayesh R. Bhakta as Inventors.**

163.    At least according to Netlist's characterizations of the inventive aspects of the

disclosure and claims of the '035, '608, and '506 Patents, the draft specifications and related presentations for DDR4 LRDIMMs that were presented at the Dec. 8, 2011, Mar. 5, 2012, and June 4, 2012 meetings disclose the key allegedly inventive aspects of the claims of the '035, '608, and '506 Patents.  These draft specifications and presentations include Committee Item Number 158.01 from the December 2011 meeting (Ex. 9), Committee Item Number 0311.14 from the March 2012 meeting (Ex. 10), and Committee Item Number 0311.12 from the June 2012 meeting (Ex. 11).

164.    Even though at least Hyun Lee was present at the JEDEC meeting at which those presentations were made, witnessed those presentations, and was present for the discussions that occurred about them, and immediately thereafter drafted the provisional application to which the '035, '608, and '506 Patents claim priority, on information and belief, Hyun Lee did not disclose any of these drafts and the presentations to the examiner of the applications that issued as the '035, '608, and '506 Patents.

165.    Those drafts and presentations are prior art under 35 U.S.C. § 102 at least as of the meeting in which they were presented and discussed, and are not cumulative of other art or information before the examiner of the application that issued as the '035, '608, and '506 Patents.

166.    Those drafts and presentations also illustrate that Hyun Lee falsely portrayed himself and Jayesh R. Bhakta as the inventors of the alleged inventions claimed in the '035, '608, and '506 Patents.  At a minimum, those drafts and presentations illustrate that Hyun Lee, based on Netlist's infringement allegations, derived at least portions of the allegedly inventive aspects of the claimed inventions from others in attendance at the JC-40 meetings, who made those presentations on behalf of Intel, among others.

167.    The Patent Office would not have allowed at least one claim of the '035, '608, and

'506 Patents to issue had it been aware of those drafts and presentations, at least because it would have found the claims obvious over those drafts and presentations (either in combination with the knowledge of one of ordinary skill, in combination with art disclosing the basic architecture and functionality of DDR4 LRDIMMs), that there are joint inventors that were not properly named on the applications that issued as the '035, '608, and '506 Patents, and/or that the alleged inventions claimed therein had been derived in whole or in part from another.

168.    The drafts and presentations that Hyun Lee failed to disclose to the Patent Office were not cumulative of other art before the examiner.  For the '035 and '608 patents, the examiner stated that he allowed the claims because the art of record did not teach or suggest:

> a memory module system with a plurality of buffers mounted in positions corresponding to the respective set of data / strobe signal lines, each buffer providing data paths between the data / strobe signal lines and a set of memory devices and including logic that responds to control signals by enabling the data paths corresponding to memory operations between the data / strobe signal lines and the memory devices, wherein the logic is configured to obtain timing information based on signals received by the buffers during a second memory operation prior to the first memory operation and to control timing of the data and strobe signals on the data paths in accordance with the obtained timing information as claimed.

'035 Patent, Notice of Allowability at 2–3; '608 Patent, Notice of Allowability at 2–3.  And for the '506 Patent, the examiner similarly stated that he allowed the claims because the art of record did not teach or suggest:

> a memory controller system with memory modules having control and address signal lines implemented to be used corresponding to memory read operations to and from memory devices of the memory module that are arranged in multiple ranks with data buffers couple to memory devices, where memory read operations output read data and read strobes associated with memory read operations, and where the data buffer implemented delaying of a first read strobe by a predetermined amount, i.e. generating a delayed read strobe, sampling the first section of read data using the delayed read strobe, and transmitting the section of read data to a data bus, where the predetermined amount of delay is based at least on signals received by the data buffer [during one or more previous operations] as claimed.

Notice of Allowability at 3–4.  The withholding of drafts and presentations for DDR4 LRDIMM explained the structure and operation of DDR4 LRDIMM devices, which Netlist argues practice the claims of the '035, '608, and '506 Patents.  For example, Committee Item Number 158.01 (Ex. 9), shows the accused DDR4 LRDIMM's structure.  Ex. 9 at 2.  Moreover, the draft specifications explain DDR LRDIMM's training modes, including "Read Delay Training."  *See, e.g.*, Ex. 10 (Committee Item No. 311.14) at 8–9.

169.    On information and belief, Hyun Lee specifically intended to deceive the Patent Office into believing that Hyun Lee and Jayesh R. Bhakta were the sole inventors of the '035, '608, and '506 Patents, and/or that the claims of those patents are otherwise patentable, by withholding those drafts and presentations from the patent examiner during prosecution of the applications that issued as the '035, '608, and '506 Patents.  On information and belief, Hyun Lee engaged in this conduct as part of a scheme to monetize Netlist's patents through litigation against the industry.

170.    <u>Inequitable Conduct</u>: Any one or more acts set forth above are sufficient in and of itself/themselves to demonstrate that Netlist committed inequitable conduct during the prosecution of the '035, '608, and '506 Patents that renders the '035, '608, and '506 Patents unenforceable.

171.    <u>Unclean Hands</u>: Furthermore, any one or more acts set forth above are sufficient in and of itself/themselves to demonstrate that Netlist has unclean hands in relation to its assertion of the '035, '608, and '506 Patents that renders the '035, '608, and '506 Patents unenforceable.

## <u>COUNTERCLAIM 13</u>

## <u>(DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '912 PATENT)</u>

172.    Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

173.    An actual controversy exists between Micron and Netlist as to whether Micron

infringes the '912 Patent, as Netlist contends, or does not do so, as Micron contends.

174.     Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

175.     By this Counterclaim, Micron seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '912 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration.  In particular, Micron has not directly or indirectly infringed any claim of the '912 Patent, either literally or under the doctrine of equivalents, at least because Micron's DDR4 LRDIMMs and RDIMMs do not employ, incorporate, or otherwise make use of all of the limitations of the claims of the '912 Patent.

176.     A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '912 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

177.     This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 14

## (DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '912 PATENT DUE TO INEQUITABLE CONDUCT & UNCLEAN HANDS)

178.     Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

179.     An actual controversy exists between Micron and Netlist as to whether the '912 Patent is enforceable, as Netlist contends, or is not enforceable, as Micron contends.

180.     Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

181.     By this Counterclaim, Micron seeks a declaration that the '912 Patent is

unenforceable due to inequitable conduct and unclean hands and is entitled to a declaration.

182.    A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '912 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

183.    This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

A.    **Netlist Individuals Substantively Involved in the '912 Reexamination**

184.    On information and belief, at least the following people associated with Netlist were substantively involved in the *inter partes* reexamination proceedings with respect to the '912 Patent: Gail Sasaki, Mehran Arjomand, and David S. Kim (collectively "Netlist Individuals Substantively Involved in the '912 Patent Reexamination").

185.    On information and belief, Gail Sasaki was, during the reexamination proceedings for the '912 Patent, an employee and/or contractor for Netlist who signed the power of attorney appointing counsel of record to prosecute the reexamination proceeding on behalf of Netlist.

186.    Mehran Arjomand and David S. Kim served as counsel of record for Netlist in connection with the *inter partes* reexamination proceedings for the '912 Patent.

187.    On information and belief, the Netlist Individuals Substantively Involved in the '912 Patent Reexamination withheld information that they knew to be material to the patentability of the '912 Patent with the specific intent to deceive the Patent Office in order to secure allowance of certain amended claims.

188.    On information and belief, each of the Netlist Individuals Substantively Involved in the '912 Reexamination is an individual associated with the prosecution of the '912 Patent during the *inter partes* reexamination proceedings, which ultimately led to the issuance of an *Inter Partes* Reexamination Certificate on February 8, 2021.

**B.      Netlist Made Narrowing Amendments to Claims During Reexamination**

189.      The '912 Patent was originally filed in the United States on September 27, 2007 by inventors Jayesh R. Bhakta and Jeffrey C. Solomon.  The '912 Patent, titled "Memory Module Decoder," issued on November 17, 2009.  Netlist claims to own all rights, title, and interest in the '912 patent.

190.      On April 20, 2010, a first request for *inter partes* reexamination of claims 1–51 of the '912 Patent was filed by third party requester Inphi.  The Patent Office assigned this request control No. 95/001,339 ("'339 proceeding") and ultimately ordered the reexamination of claims 1–51 of the '912 Patent on September 1, 2010.

191.      On October 20, 2010, a second request for *inter partes* reexamination of claims 1, 6, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 Patent was filed by third party requester SMART Modular Technologies (WWH), Inc. ("SMART").  The Patent Office assigned this request control No. 95/000,578 ("'578 proceeding") and ordered reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 Patent on January 14, 2011.

192.      On October 21, 2010, a third request for *inter partes* reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent was filed by Google.  The Patent Office assigned this request control No. 95/000,579 ("'579 proceeding") and ordered reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 Patent on January 18, 2011.

193.      The Examiner in the '578, '579, and '339 proceedings agreed with Inphi, SMART, and Google that the proposed combination of Micron, DDR SDRAM RDIMM, MT36VDDF12872 & MT36VDDF28672 Data Sheet, 2002 ("Micron") in view of U.S. Patent Application Publication No. 2006/0117152 ("Amidi") presented a substantial new question of

patentability and that "a reasonable examiner would consider the teaching of Micron and Amidi important in deciding the patentability of" the challenged claims.  *See* January 14, 2011 Reexamination Order.

194.    On February 25, 2011, the PTO *sua sponte* merged the '578, '579, and '339 proceedings into a single matter, as all three proceedings were pending, had yet to be terminated, and involved overlapping claims of the same patent.

195.    After the merger, Netlist argued against the pending rejections of the existing claims and added new claims 52–118.  *See* Netlist's July 5, 2011 Response to Office Action in *Inter Partes* Reexamination Communication Mailed April 4, 2011.  For example, Netlist argued that the phase-lock loop device disclosed in Amidi was not "operatively coupled" to its CPLD. Netlist narrowed the scope of the "operatively coupled" feature by arguing that in the context of the '912 Patent the phrase means that "the operations of the logic element 40 are clocked either directly or indirectly (e.g., through a clock buffer) by the output of the PLL 50" and that "the output of the PLL 50 controls the operation of the logic element 40."

196.    Google responded by explaining how Micron and Amidi rendered obvious both the original and new claims.  *See* August 29, 2011 Response.  Google also explained how Micron, Amidi, U.S. Patent No. 5,926,827 ("Dell 2"), and Double Data Rate (DDR) SDRAM Specification, JEDEC Standard No. 79C, March 2003 ("JEDEC 79C") rendered obvious the new claims.  *Id.* The Examiner adopted some aspects of the grounds raised by Google, rejected other aspects, and declined to adopt other grounds.  *See* October 14, 2011 Non-Final Office Action.  Netlist responded by canceling some of its claims, amending most of the remaining claims, and adding new claims 119–136.  *See* January 14, 2012 Netlist's Response After Non-Final Action.  Google again responded by continuing to argue, among other things, that Micron, Amidi, Dell 2, and/or JEDEC

79C rendered obvious a set of the pending claims.  *See* February 23, 2012 Google's Response.

197.    The Examiner then adopted additional grounds for rejection and maintained certain earlier rejections.  *See* November 13, 2012 Non-Final Action.  Netlist responded by canceling certain claims, further amending other claims, and arguing against the rejections.  *See* January 14, 2013 Netlist's Response After Non-Final Action.  Google again explained why various combinations of Micron, Amidi, Dell 2, and JEDEC 79C (among other references) rendered the claims obvious.  *See* February 13, 2013 Google's Response.

198.    The Examiner issued an Action Closing Prosecution, which maintained several rejections, withdrew others, and found certain rejections moot due to Netlist canceling certain claims.  *See* March 21, 2014 Action Closing Prosecution.  The Examiner issued a Right of Appeal Notice, and Google appealed the Examiner's unadopted portions of certain grounds.  *See* July 18, 2014 Google's Notice of Appeal.  Netlist cross-appealed on the grounds of rejection the Examiner maintained.  *See* July 30, 2014 Netlist's Notice of Cross Appeal.

199.    The PTAB, in its first appeal decision, affirmed the Examiner's adoption of certain aspects of the ground involving Micron in view of Amidi, reversed the Examiner's refusal to adopt other aspects of this ground, reversed the Examiner's refusal to adopt the ground involving Micron in view of Amidi and Olarig, and declined to reach the merits on the ground involving Micron in view of Amidi, Dell 2, and JEDEC 79C.  *See* June 6, 2016 Decision on Appeal.

200.    Netlist then requested that the PTO reopen prosecution, canceling certain claims and amending most of the remaining claims.  *See* July 31, 2016 Netlist's Response Requesting to Reopen Prosecution.  It was in this set of amendments in which Netlist amended claim 1 and several other claims to include the following language:

- "wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock

signal to the plurality of DDR memory devices, the logic element, and the register" ("PLL device limitation");

- "wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices" ("register limitation"); and

- "wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal." ("logic element limitation").

201.   Netlist asserted that these three amendments were "principal amendments to overcome the new grounds of rejection" and further stated that "[t]o address the Board's rejection, Patent Owner narrowed the claim to include" the above identified three amendments. *Id.* Netlist then referenced the above identified "claim amendments [to] highlight at least two differences between the '912 invention and the prior art." *Id.* Below are the two differences that Netlist highlighted to the PTAB:

> First, the claim amendments now require: In response to signals received from the computer system, the phaselock loop (PLL) device transmit a PLL clock to the plurality of DDR memory devices, the logic element, and the register. Amidi transmits a PLL clock signal to the register and memory, but not the CPLD. Thus, Amidi does not disclose the PLL device transmitting the PLL clock to the logic element; the output of PLL 606 is neither directly nor indirectly transmitted to the CPLD 604. Additionally, a POSITA would not be motivated or inclined to transmit the PLL clock to CPLD 604.

> Second, the amended claims now also require that the logic element generates certain output signals (e.g., gated column access strobe (CAS) signals or chip-select signals recited in claim 1) in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal. Amidi's CPLD 604 never receives bank address signals and

hence Amidi's control signals cannot be generated based on bank address signals. Instead, the control signals (rcs0a, rcs0b, rcs1a, rcs1b, rcs2a, rcs2b, rcs3a, and rcs3b) are based on the row address signals and chip-select signals. Thus, Amidi does not disclose the CPLD generating the gated CAS signals or chip-select signals in response to the bank address signals. Moreover, since the output of PLL 606 is neither directly nor indirectly transmitted to the CPLD 604, a POSITA would understand that the PLL clock does not control the operation of CPLD 604. Thus, Amidi is further deficient by failing to disclose the CPLD generating the gated CAS signals or chip-selected signals in response to the PLL clock signal.

*Id.* (internal citations omitted).

202.    Netlist went on to further explain how the specific amendments above were the

distinguishing factors over Amidi:

As amended, the claims require that the logic element receives at least one row address signal and bank address signals, and require that the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmit the buffered plurality of DDR memory devices. The claims also require the plurality of row/column address signals received by the register are separate from the at least one row address signal received by the logic element. In other words, in the confirmation recited by the claims, the bank address signals are received by the logic element, the register and the plurality of memory devices. Under such circumstances, Amidi does not use bank address signals to generate control signals (and certainly not the bank address signals and the at least one row address signal.) The claims, however, require generating CAS signals or chip-select signals based on a row address signal and bank address signals.

Based on the above, it would not be obvious to a POSITA to combine Amidi and Dell 2 to reach the claimed invention, as amended. For the sake of argument, however, even the proposed combination of Amidi and Dell 2 fails to disclose the claimed invention. Therefore, even in combination, Amidi in view of Dell 2 fails to disclose all of the claim recitations of the claims.

*Id.* (internal citations omitted).

203.    Following Google's response to Netlist's amendments and response, the PTAB

remanded the case to the Examiner and the Examiner maintained the PTAB's new grounds of

rejection as well as one additional ground.  *See* October 3, 2017 Examiner's Determination Under 37 C.F.R. § 41.77(d).

204.    The PTAB then issued its second appeal decision, affirming several prior rejections but withdrawing many of the rejections the PTAB and the Examiner had previously maintained. *See* July 27, 2018 Decision on Appeal.  The withdrawn rejections corresponded to the combination of Micron in view of Amidi and Micron in view of Amidi and Olarig.  *Id.*  Google sought rehearing, which the PTAB denied.  *See* January 31, 2019 Decision on Rehearing.  Google then appealed the PTAB's decision to the Federal Circuit.

205.    In its responsive appeal brief to the Federal Circuit, Netlist repeatedly stated that "it narrowed its claims to define its precise inventive contributions over the prior art."  December 12, 2019 Netlist Response Brief.  Therefore, in statements to the PTAB and the Federal Circuit, Netlist reiterated that the amendments identified above are narrowing, and that it was these narrowing amendments that were Netlist's basis for arguing that the prior art at issue does not disclose the asserted claims.  It was in response to these statements that the PTAB withdrew its rejections of the asserted claims and the Federal Circuit affirmed the PTAB's decision on June 15, 2020.

206.    The *Inter Partes* Reexamination Certification for the '912 Patent issued on February 8, 2021.

**C.    After the Claims Issued with the Narrowing Amendments, Netlist Argued in Litigation that the Amendments Did Not Change the Scope of the Claims**

207.    After the *Inter Partes* Reexamination Certification for the '912 Patent issued on February 8, 2021, Netlist resumed its litigation against Google.

208.    On information and belief, Gail Sasaki is involved in overseeing Netlist's litigation against Google.

209.    On July 30, 2021, Google filed a Motion for Summary Judgment on the Issue of Absolute Intervening Rights.  *See Netlist, Inc. v. Google LLC*, No. 4:09-cv-05718-SBA, D.I. 155.

210.    On September 3, 2021, Netlist filed its Opposition to Google's Motion for Summary Judgement on the Issue of Absolute Intervening Rights.  *See id.*, D.I. 196.  In the opposition, Netlist argued, in direct contradiction to what it argued to the PTAB and the Federal Circuit during reexamination proceedings, that the above identified claim amendments were not narrowing.  Instead, Netlist now argues that "the language added during reexamination clarified what was inherent in the original claims."  D.I. 196 at 17; *see also id.* at 16–24.

211.    If the above identified amendments were in fact inherent, as Netlist now contends to overcome intervening rights, then Netlist knowingly misled the PTAB and the Federal Circuit when it distinguished the amended claims from the prior art during reexamination.

212.    Had the PTAB and the Federal Circuit known that the amendments were in fact not "narrowing" but instead just "made express the inherent functions of the [original limitation]," the PTAB and the Federal Circuit would have found these claims obvious and not allowed them to issue.  For example, if the newly added functions were inherent in the original claim limitation, as Netlist now contends, these functions also would have been inherent in the prior art, thus rendering the claims obvious and invalid.

213.    On information and belief, Netlist Individuals Substantively Involved in the '912 Patent Reexamination knowingly misrepresented the amendments in its arguments to the PTAB and the Federal Circuit.   Netlist Individuals Substantively Involved in the '912 Patent Reexamination had a duty of candor and good faith in dealing with the PTAB and the Federal Circuit during reexamination of the '912 patent.  That duty of candor and good faith included a duty to disclose to the PTAB and the Federal Circuit its intention not to narrow the claims at all in

order to distinguish the prior art.  Instead, Netlist Individuals Substantively Involved in the '912 Patent Reexamination chose to tell both the PTAB and the Federal Circuit the opposite to convince the PTAB and the Federal Circuit to allow the claims.  This information is material to the patentability of the claims.  By misrepresenting the intended effect of the above identified amendments to the claims to the PTAB and the Federal Circuit, Netlist Individuals Substantively Involved in the '912 Patent Reexamination breached its duty of candor and good faith and showed specific intent to deceive the PTAB and the Federal Circuit.

214.   <u>Inequitable Conduct</u>: Any one or more acts set forth above are sufficient in and of itself/themselves to demonstrate that Netlist committed inequitable conduct during the reexamination of the '912 Patent that renders the '912 Patent unenforceable.

215.   <u>Unclean Hands</u>: Furthermore, any one or more acts set forth above are sufficient in and of itself/themselves to demonstrate that Netlist has unclean hands in relation to its assertion of the '912 Patent that renders the '912 Patent unenforceable.

## COUNTERCLAIM 15

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '417 PATENT)

216.   Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

217.   An actual controversy exists between Micron and Netlist as to whether Micron infringes the '417 Patent, as Netlist contends, or does not do so, as Micron contends.

218.   Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

219.   By this Counterclaim, Micron seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '417 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration.  In particular,

Micron has not directly or indirectly infringed any claim of the '417 Patent, either literally or under the doctrine of equivalents, at least because the Micron DDR4 LRDIMMs do not employ, incorporate, or otherwise make use of all of the limitations of the claims of the '417 Patent.

220.    A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '417 Patent and with respect to any past, present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

221.    This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM 16

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '215 PATENT)

222.    Micron incorporates by reference the admissions, denials, and allegations set forth in the preceding paragraphs of this Answer as if fully set forth herein.

223.    An actual controversy exists between Micron and Netlist as to whether Micron infringes the '215 Patent, as Netlist contends, or does not do so, as Micron contends.

224.    Micron has been damaged by Netlist's filing of a lawsuit against Micron based on a patent that Micron does not infringe.

225.    By this Counterclaim, Micron seeks a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '215 Patent either directly or indirectly, literally or under the doctrine of equivalents, or willfully, and is entitled to a declaration.  In particular, Micron has not directly or indirectly infringed any claim of the '215 Patent, either literally or under the doctrine of equivalents, at least because the Micron DDR4 LRDIMMs do not employ, incorporate, or otherwise make use of all of the limitations of the claims of the '215 Patent.

226.    A judicial declaration is necessary and appropriate at this time such that Micron may ascertain its rights and duties with respect to the '215 Patent and with respect to any past,

present, or future manufacture, use, importation, distribution, sale, or offer for sale of its products.

227.   This is an exceptional case entitling Micron to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## JURY DEMAND

228.   Pursuant to Federal Rule of Civil Procedure 38(b), Micron demands a trial by jury on all issues so triable.

## MICRON'S PRAYER FOR RELIEF

WHEREFORE, Micron prays for judgment as follows:

A.   For dismissal of Netlist's Complaint with prejudice, and that Netlist shall take nothing against Micron;

B.   For a judgment and declaration that Micron does not infringe each and every claim in the Asserted Patents or the Related Patents;

C.   For a judgment and declaration that the Asserted Patents, and each and every claim thereof, are invalid;

D.   For a judgment and declaration that the '035, '608, '506, and '912 Patents are unenforceable due to inequitable conduct and unclean hands;

E.   For a judgment, pursuant to 35 U.S.C. § 285, that Netlist's conduct renders this case exceptional and that the Court award Micron its attorneys' fees and costs;

F.   The Court award Micron's costs of suit; and

G.   For such other and further relief as the Court deems just and proper.

Dated: September 2, 2022                    Respectfully submitted,

                                           By:  */s/ Michael Rueckheim*
                                                Thomas M. Melsheimer
                                                State Bar No. 13922550

TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
Barry K. Shelton
State Bar No. 24055029
BShelton@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400


Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins
*Pro Hac Vice*
State Bar No. 1500598
MHopkins@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036-3506
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

Juan C. Yaquian
*Pro Hac Vice*
State Bar No. 24110559
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

**Attorneys for Defendants**
**Micron Technology, Inc.,**

**Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC**