# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG SEMICONDUCTOR, INC.,

                         Plaintiffs;

                                                    Civil Action No. 21-1453-RGA

                v.

NETLIST, INC.,

                         Defendant.

MEMORANDUM OPINION

Jack B. Blumenfeld, Rodger D. Smith II, MORRIS, NICHOLS, ARSHT & TUNNELL LLP,
Wilmington, DE; Brian Nester, COVINGTON & BURLING LLP, Washington, DC; Alice J.
Ahn, COVINGTON & BURLING LLP, San Francisco, CA;

        Attorneys for Plaintiffs.

Karen E. Keller, SHAW KELLER LLP, Wilmington, DE; Yanan Zhao, Michael Tezyan, Jason
Sheasby, IRELL & MANELLA LLP, Los Angeles, CA;

        Attorneys for Defendant.

August 1, 2022

*Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Samsung's Motion for Leave to File Second Amended Complaint (D.I. 18),

Netlist's Motion to Dismiss the First Amended Complaint (D.I. 24), and Samsung's Motion for

Leave to File Sur-Reply Brief (D.I. 29). I have considered the parties' briefing. (D.I. 19, 21, 22,

25, 27, 28, 29, 30, 31). For the following reasons, Samsung's motion to amend (D.I. 18) is

DENIED, Netlist's motion to dismiss (D.I. 24) is GRANTED-IN-PART and Samsung's motion

for leave to file a sur-reply (D.I. 29) is DISMISSED AS MOOT.

## I. BACKGROUND

On October 15, 2021, Samsung sued Netlist seeking declaratory judgment of

noninfringement and unenforceability of U.S. Patent Nos. 10,217,523; 10,474,595; 9,858,218;

7,619,912 (the "'523, '595, '218, and '912 Patents," and together, "the Declaratory Judgment

Patents").[1] (D.I. 1). Samsung also alleges breach of contract as a third-party beneficiary to

Netlist's contractual obligations to license its standard essential patents on reasonable and non-

discriminatory ("RAND") terms. (*Id.* ¶¶ 306–315). On January 18, 2022, Samsung filed a First

Amended Complaint adding three patents, U.S. Patent Nos. 10,860,506; 10,949,339; 11,016,918

(the "'506, '339, '918 Patents," and together, "the Texas Patents").[2] (D.I. 14, "FAC"). One

week later, Samsung moved for leave to amend its complaint to include the newly issued U.S.

Patent No. 11,232,054 ("the '054 patent").[3] (D.I. 18).

Netlist's patents are standard essential patents ("SEPs"). (FAC ¶ 53). In 2015, Samsung

licensed those patents through a Joint Development License Agreement ("JDLA"). (*Id.* ¶ 2). In

---

[1] It appears that the '595 and '218 Patents are in one family, and the other two are each part of a
separate family, so that the original complaint asserts patents from three families.

[2] It appears that the Texas Patents are from three different families, none of which are the same
as the families of the Declaratory Judgment Patents.

[3] The '054 Patent is in the same family as the '918 Patent.

2020, Netlist accused Samsung of breaching the agreement and sued Samsung in California. (*Id.* ¶ 26–27). At that time, Netlist terminated the agreement and sent Samsung a notice of infringement. (*Id.* ¶ 28). On summary judgment, the California court ruled that (1) Samsung had breached the contract and (2) Netlist properly terminated the agreement. (*Id.* ¶ 34; *Netlist Inc. v. Samsung Electronics Co.*, No. 8:20-cv-00993-MCS, D.I. 186 (C.D. Cal.), app. pending, No. 22-55247 (9th Cir.)). The day after losing on summary judgment, Samsung filed the present lawsuit. (D.I. 1).

## II.   LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").  There must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## III.   DISCUSSION

### A. The '523, '595, and '218 Patents

A party may file a declaratory judgment action when the complaint alleges facts that show a "substantial controversy [between] parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007). Samsung licensed Netlist's patents in 2015. Netlist accused Samsung of breaching that agreement and sued Samsung in California for breach of contract. The FAC alleges that, after filing the lawsuit, Netlist sent Samsung notice that it was terminating the agreement. (FAC ¶¶ 27–28). In October 2020, Netlist sent Samsung a notice of infringement that cited the '523, '595, and '218 patents. (*Id.* ¶ 31). Netlist contends that this notice is too far in the past for there to be an immediate controversy as to these patents. (D.I. 25 at 6).

I disagree. At the time Netlist sent the notice of infringement, the parties were still litigating the contract that Samsung claimed gave it a license to Netlist's patents. (FAC ¶¶ 27–34). When Samsung lost, Netlist's threats became more immediate. The next day, Samsung filed the present action.

Netlist argues in passing that Samsung's declaratory judgment claims were compulsory counterclaims in the California action. (D.I. 25 at 11). A counterclaim is compulsory only if "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) (citation omitted). Here, the facts and legal issues are different. The California action concerned the JDLA, a contract between Samsung and Netlist. (FAC ¶¶ 21–27). The contract at issue here is the JEDEC[4] Patent Policy. (*Id.* ¶ 440).

---

[4] Once, the Joint Electron Device Engineering Council.

4

The time period is also different—Samsung's assertions here only relate to the period following the termination of the JDLA. Accordingly, I do not think that Samsung's claims here were compulsory in the California action.

I find that Samsung has sufficiently alleged jurisdiction for the '523, '595, and '218 patents. (FAC, Counts I–III). I reject Netlist's corollary arguments regarding Counts VIII–IX and XII,[5] which are based on the assumption that there is no jurisdiction over Samsung's declaratory judgment claims. (D.I. 25 at 9–10).

### B. The '912 Patent

The '912 Patent was first asserted in a long-running lawsuit against Samsung's customer, Google. (D.I. 36-1 at 2; *Netlist, Inc. v. Google Inc.*, No. 09- cv-05718 (N.D. Cal.) ("Google Action")). The Google Action was stayed in 2010 pending reexamination, which resulted in the amendment of all asserted claims, with the reexamination certificate being issued in 2021. (*Id.*). On June 18, 2021, Netlist asserted that Google's use of Samsung's DDR4 LRDIMM and RDIMMs infringes claim 16 of the '912 patent. (FAC ¶40). The Google Action was stayed for ninety days on July 13, 2022, pending resolution of the present motion to dismiss. (D.I. 36-1 at 16–17).

Netlist argues that I do not have subject matter jurisdiction over the '912 Patent, and, in the alternative, that I should discretionarily decline to exercise jurisdiction. Because I decline to exercise jurisdiction over the declaratory judgment claims relating to the '912 Patent, I will not decide the subject matter jurisdiction issue. Samsung's motion for leave to file a sur-reply (D.I.

---

[5] Netlist also argues that Samsung has not pled standing to bring a claim on behalf of Google. (D.I. 25 at 10). Samsung responds that it is asserting the claim on account of its own injury in fact. (D.I. 27 at 20 n.11).

29), which is based on new arguments made by Netlist in its reply brief regarding subject matter jurisdiction for the '912 patent, is dismissed as moot.

"As long as the district court acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, it has broad discretion to refuse to entertain a declaratory judgment action." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361–62 (Fed. Cir. 2020) (cleaned up). The '912 Patent has been the subject of litigation in another district for over a decade. Claim 16 of the '912 Patent has been at issue for over a year. Another judge has decided issues related to the patent. (*See* D.I. 36-1 at 4). The infringement and inequitable conduct claims are essentially the same in the two cases. Given this background, I do not think that Samsung's declaratory judgment action is an efficient use of judicial resources.

Declining to exercise jurisdiction in this case does not subvert the purposes of the Declaratory Judgment Act, which, "in patent cases[,] is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Commc'ns Test Design*, 952 F. 3d at 1362. Samsung's customer is litigating the same claims against the same patentee in another forum. Samsung can likely achieve certainty regarding its legal rights by moving to intervene in that case.

I will therefore dismiss Counts IV and X.

### C. The Texas Patents and the '054 Patent

In December 2021, Netlist sued Samsung in the Eastern District of Texas for infringement of the Texas Patents and alleged that it would add U.S. Patent No. 11,232,054 (the '054 patent) once it issued. (FAC ¶ 46; *Netlist, Inc. v. Samsung Electronics Co., Ltd.*, No. 2:21-cv-00463, D.I. 1 (E.D. Tex.) (the "Texas Action")). On January 18, 2022, Samsung amended its

6

complaint in Delaware as a matter of right to include the Texas Patents. (D.I. 14). One week later, the '054 patent issued, and Samsung moved to amend the Delaware complaint to include it. (D.I. 18). On May 3, 2022, Netlist amended its Texas complaint to include the '054 patent. (Texas Action, D.I. 23). The parties dispute whether this action is the first-filed as to the Texas Patents and the '054 patent.

The pendency of the Texas Action with roughly parallel motions being filed about where the issues should be tried requires that one court take the lead in deciding the overlapping issues. Inasmuch as the Delaware case was filed before the Texas Action, that Court should be Delaware.[6]

"When one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a double dose of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action *and* discretion when considering and applying the first-to-file rule and its equitable exceptions." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362–63 (Fed. Cir. 2020) (cleaned up). In this case, I decline to exercise jurisdiction over the patents that were originally filed in the Texas Action.

Samsung argues, "Because the original Complaint in the present case was filed first, this case is the first filed action as to both the original claims and all claims added by amendment—regardless of whether those claims relate back." (D.I. 27 at 12). Some courts adopt this perspective. *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 987 (N.D. Cal. 2011) (collecting cases). "Other courts have applied the relation back doctrine to determine which case is filed first." *Id.* Absent binding precedent, I will apply the relation back doctrine. The

---

[6] I have discussed the matter with Judge Gilstrap, the presiding judge in the Texas Action, and he is in accord with this conclusion.

7

question is whether Samsung's allegations regarding the Texas Patents and the '054 Patent in the amended complaints relate back to the Declaratory Judgment Patents in Samsung's original complaint.

Samsung amended its complaint to include different patents from different patent families. This is permitted where "the general factual situation or the aggregate of operative facts underlying the original claim for relief [gives] notice to [the other party] of the nature of the allegations it was being called upon to answer." *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1369–70 (Fed. Cir. 2019). The Federal Circuit has instructed courts to consider (1) "the overlap of parties," (2) "the overlap in the accused products," (3) "the underlying science and technology," (4) the "time periods" of alleged infringement, and (5) "any additional factors that might suggest a commonality or lack of commonality between the two sets of claims." *Id.* at 1369.

Some factors favor Samsung. There is significant overlap in the time periods of infringement—Netlist's termination of Samsung's license started the clock for all asserted patents. Another factor favoring relation back is that Samsung's RAND-based breach of contract claim relates to all patents and arises out of Samsung's loss in the California contract action. Samsung also points to an overlap in witnesses and documents produced during discovery. (D.I. 19 at 17).

The overlap of the parties slightly favors Samsung. There is one additional party in the Texas Action, Samsung Electronics America ("SEA"). The parties dispute whether SEA is necessary to provide complete relief. (D.I. 25 at 16; D.I. 27 at 14). I address this issue below as a separate reason to dismiss the Texas Patents, but I understand the *Anza* factors to consider the degree of overlap in the parties. Here, there is significant but not perfect overlap of the parties.

The other two factors—overlap in the accused products and the underlying science and technology—favor Netlist.

The '918 and '054 Patents have no product overlap with the Declaratory Judgment Patents. (*Compare* FAC ¶¶ 214–20 (alleging that DDR5 Memory Modules do not infringe the '918 Patent), *and* D.I. 18-1 ¶¶ 222–32 (same as to the '054 Patent), *with* D.I. 1 ¶¶ 83–127 (alleging DDR4 Memory Modules do not infringe the Declaratory Judgment Patents)). "[I]t is improbable that allegations regarding different products, involving different patents, would have a common core of operative facts." *Anza Tech.*, 934 F.3d at 1372–73.

The '339 and '506 Patents, have some product overlap but there would be "a substantially different evidentiary showing to prove infringement." *Anza*, 934 F.3d at 1371. The limitations at issue in the '339 and '506 Patents relate to data buffers. (*See* FAC ¶¶ 195, 205). The Declaratory Judgment Patents relate to different aspects of the accused products. "The '523 patent relates to a self-testing memory module for testing a plurality of memory devices mounted thereon." (D.I. 1 ¶ 34). The '595 and '218 Patents relate to methods of handshaking between the system memory controller and the memory subsystem controller. (*Id.* ¶ 39). The '912 Patent "describes memory modules that . . . have the capability of expanding the number of memory devices" by a memory device ranking system. (*Id.* ¶ 46, 48).

As for the underlying science and technology, it is true that all patents broadly relate to memory module technology. While there is some overlap in inventors, the Texas Patents are from different families. Netlist argues, "the patents are directed to distinct aspects of memory module technologies." (D.I. 25 at 17). Samsung replies, "The relevant factor is the similarity of the 'underlying science and technology,' not hyper-technical and granular details." (D.I. 27 at 15). Technology such as memory modules can be described with varying levels of granularity.

9

Some descriptions are so broad as to be meaningless. Others are so technical that every patent is distinguishable. In this case, I think that Samsung's characterization of the underlying technology as "computer memory modules" is too broad to support relation back. (D.I. 19 at 14). As Netlist argues, "under Samsung's theory its original complaint would sweep in every patent that Netlist ever obtains relating to memory modules." (D.I. 28 at 10).

Upon consideration of the *Anza* factors as a whole, I think that the Texas Patents and the '054 Patent do not relate back to Samsung's original complaint.

There is another reason to dismiss the Texas Patents and the '054 Patent from the present action. Netlist has alleged that SEA is necessary for complete resolution of its claims. SEA is a Samsung manufacturing facility located in Texas. (D.I. 21-13). According to Netlist, Delaware does not have jurisdiction over SEA. (D.I. 25 at 12–13). In Texas, Netlist has accused SEA of infringing the Texas Patents through its use of infringing products. (D.I. 21-2 ¶10). Samsung argues that this makes SEA "no different than any other Samsung customer." (D.I. 27 at 11). I disagree. SEA is a Samsung entity. Netlist has offered a theory under which it can obtain damages from SEA based on the benefits of use. (D.I. 28 at 9 (citing *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007)). It remains to be seen whether Netlist's damages theory against SEA is viable, but on the available evidence, I decline to treat SEA as merely another Samsung customer.

Accordingly, I will dismiss Counts V–VII, which seek declarations of non-infringement as to the Texas Patents. I will also dismiss Samsung's claims of inequitable conduct and unclean hands regarding the '506 Patent. (FAC, Count XI). For the same reasons, Samsung's motion to amend (D.I. 18) is DENIED.

**D. Inequitable Conduct and Unclean Hands**

In regard to the Declaratory Judgment Patents, Netlist argues that the inequitable conduct claims must be dismissed because Samsung "fails to plead with particularity: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." (D.I. 25 at 18 (citations omitted)). In a footnote, Netlist notes, "Samsung's unclean hands allegations are also insufficient for the same reasons." (*Id.* at 18 n.5). "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076, n.6 (3d Cir. 1997). The defense of unclean hands is governed by a different standard than inequitable conduct. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). Netlist's arguments are directed to inequitable conduct. I consider Netlist's unclean hands arguments waived.

Netlist argues that Samsung fails to plead but-for materiality. (D.I. 25 at 18). According to Netlist, the FAC only "vaguely alleges that the prior art is not cumulative, without any attempt to compare it to any prior art Netlist had presented before the examiner." (*Id.* at 18–19). The FAC describes the contents of the prior art that was not before the examiner. For instance, the FAC alleges that the Ellsbery prior art reference "discloses memory modules with distributed data buffers ('data handlers') between the memory devices and data edge connections on the module, as well as the details of conventional module components/interconnections called for by the '523 patent claims." (FAC ¶ 270). The FAC further alleges that the prior art of record did not teach such modules. (*Id.*). In support, the FAC references the attached IPR petition and the PTAB decision instituting review of the '523 patent based on the relevant references. (FAC ¶¶ 270–76, Exs. 28, 29).

11

Samsung's allegations are similar for the '218 and '595 Patents. (*Id.* ¶¶ 328–34, 342–47, Exs. 36–41). For those references that are not the subject of IPR proceedings, the FAC has detailed allegations that the references are material to patentability. (*Id.* ¶¶ 335–40, 348–53, 355–59).

Netlist also argues that the FAC fails to plead specific intent to deceive the PTO because the FAC does not allege sufficient facts to support a reasonable inference of specific intent. (D.I. 25 at 19–20). Samsung points to facts alleged in the FAC that specific named inventors and/or prosecuting attorneys "(1) learned about relevant prior art during prosecution of related Netlist patents or attendance at JEDEC meetings, (2) were aware of the materiality of the prior art to the then-pending claims, and (3) deliberately withheld the prior art from the Patent Office to ensure issuance of the patent, as part of a scheme to monetize Netlist's patents through litigation against the industry." (D.I. 27 at 19).

For instance, the FAC alleges that Hyun Lee, a named inventor of the '523 Patent, knew about the Jeddeloh752 reference through his regular attendance at JEDEC meetings, at which Jeddeloh752 was presented. (FAC ¶¶ 234–36, 273). The FAC further alleges that Jeddeloh752 is material to patentability, and that Hyun Lee recognized its materiality but withheld the art from the examiner during prosecution as a part of a scheme to monetize Netlist's patents through litigation. (FAC ¶¶ 274–76). This case is therefore distinguishable from *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009), where, "The pleading . . . provide[d] no factual basis to infer that any specific individual, who owed a duty of disclosure in prosecuting the '685 patent, knew of the specific information in the [withheld prior art] that is alleged to be material to the claims of the '685 patent."

The other counts are pled with similar specificity. (*See* FAC ¶¶ 269–72, 273–76, 335–41,

12

342–47, 348–54, 355–60, 361–67, 430–36). Thus, I reject Netlist's arguments that Samsung has failed to plead inequitable conduct.

### E.  Breach of Contract

Netlist offers some conclusory arguments as to why Samsung has failed to plead a breach of contract.  (D.I. 25 at 20).  I find none of them persuasive, especially where, as Samsung argues, "Netlist does not dispute that Count XII—which pleads a claim for breach of contract resulting from Netlist's failure to offer a license to its alleged SEPs on RAND terms—alleges each element of a breach of contract claim."  (D.I. 27 at 19).  Thus, I will not dismiss Samsung's breach of contract claim.

## IV.  CONCLUSION

An appropriate order will issue.