██████████

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| NETLIST, INC.,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | Case No. 2:22-cv-203-JRG |
| vs.  ) | |
| ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; MICRON  ) | |
| SEMICONDUCTOR PRODUCTS, INC.;  ) | ██████████ |
| MICRON TECHNOLOGY TEXAS LLC,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF
NETLIST, INC.'S OPPOSED MOTION FOR LEAVE
TO SUPPLEMENT P.R. 3-1 AND 3-2 DISCLOSURES**

██████████

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................... 1

II. FACTUAL BACKGROUND ................................................................................ 1

    A. Netlist improperly withheld the identity of its embodying products and its purported conception documents in the parallel Samsung case. ............................ 1

    B. Netlist also improperly withheld the identity of its embodying products and its purported conception documents in this case. ...................................................... 2

    C. Netlist refused to provide information necessary for Micron to consider the potential prejudice from Netlist's late productions and disclosures. ....................... 3

III. LEGAL STANDARD ............................................................................................ 3

IV. ARGUMENT ........................................................................................................... 4

    A. Netlist's lack of diligence favors denying leave because it failed at every opportunity for nearly a year to identify and produce over 30,000 pages of its own documents related to alleged conception dates and embodying products. ................................................................................................................. 5

    B. Netlist's proposed amendments will prejudice Micron because they will give Netlist an undue advantage and will require Micron to re-investigate its defenses based on new purported priority dates. ..................................................... 8

    C. A continuance will not cure the prejudice to Micron. ............................................ 10

V. CONCLUSION ...................................................................................................... 10

██████████

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
    2009 WL 81874 (E.D. Tex. Jan. 12, 2009) ................................................................10

*Harris Corp. v. Huawei Device USA, Inc.*,
    2019 WL 4247067 (E.D. Tex. Sept. 6, 2019) .............................................................10

*MASS Engineered Design, Inc. v. Ergotron, Inc.*,
    250 F.R.D. 284 (E.D. Tex. 2008) ............................................................................9, 10

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ...................................................................................8

*Realtime Data, LLC v. Packeteer, Inc.*,
    WL 2590101 (E.D. Tex. Aug. 18, 2009) ............................................................ *passim*

*Tactile Feedback Tech. LLC v. Samsung Elecs. Am., Inc.*,
    2015 WL 13469637 (E.D. Tex. July 31, 2015) .........................................................10

*Traxcell Techs., LLC v. AT&T, Inc.*,
    2018 WL 6329385 (E.D. Tex. Dec. 4, 2018) ............................................................10

*United Services Auto. Ass'n v. Wells Fargo Bank, N.A.*,
    2019 WL 6878880 (E.D. Tex. Dec. 17, 2019) ..........................................................10

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

The Court should deny Netlist leave to amend its preliminary infringement contentions. Netlist wants to add information to its contentions about conception and reduction to practice and putative practicing products based on over 30,000 pages of its own documents that it did not produce with its preliminary infringement contentions. Netlist's Motion admits it had identified the purported relevance of these documents by at least November 2022, when it produced them to Samsung in parallel litigation. Yet Netlist withheld them from Micron for two more months, waiting until the end of January 2023 to produce them, after it had the benefit of reviewing Micron's invalidity contentions. Netlist offers no excuse for its delay. Nor does it suggest any remedy for the prejudice to Micron, which suffered the burden of investigating defenses and preparing preliminary invalidity contentions based on the disclosures and documents that Netlist actually provided. Retreading that ground, based on (at best) Netlist's inexcusable inadvertence in collecting its own documents, or (worse) its strategic decision to withhold them, is a prejudice that a continuance will not cure. Micron thus respectfully requests that the Court deny Netlist leave.

## II.   FACTUAL BACKGROUND

### A.   Netlist improperly withheld the identity of its embodying products and its purported conception documents in the parallel Samsung case.

Six months before Netlist filed this case against Micron in June 2022 (*see* ECF No. 1), it filed a parallel suit against Samsung in December 2021, asserting the same patents. ECF No. 57-7 (Sohi Decl.) ¶¶ 3–4. Netlist served preliminary infringement contentions to Samsung in May 2022, but it did not disclose the alleged embodying products that it seeks to add in its case. *See id.* Nor did it produce the documents it now contends support earlier invention dates. *See id.*

Nearly a year after filing its initial suit, Netlist finally identified to Samsung (in November 2022 interrogatory responses) the identity of purported embodying products, and it

1

produced documents related to an alleged "invention story" for the asserted patents that Netlist contends entitles the claims to earlier priority dates. *See id.* ¶¶ 9, 7. The volume of documents that Netlist had withheld for the first year of these litigations was astounding: the November production to Samsung included over 30,000 pages of documents, many related to the issues Netlist now seeks to interpose into this case. *See* ECF No. 57-4 (Mot. Hr'g Tr., Jan. 19, 2023) at 49:12–21. Netlist did not make corresponding disclosures to Micron, nor did it produce the withheld conception documents. In January 2023, the Court struck Netlist's late disclosures in the Samsung case and denied Netlist's related motion for leave to amend its contentions there. *See id.* at 57:16–58:9.

> **B.    Netlist also improperly withheld the identity of its embodying products and its purported conception documents in this case.**

Netlist filed this case in June 2022. ECF No. 1. Five months later, in September 2022, Netlist served preliminary infringement contentions on Micron. ECF No. 57-3 (Netlist's PICs) at 11. As in the Samsung Case, Netlist did not disclose the alleged embodying products that it seeks to add now, and it did not produce the documents that it now contends support an earlier priority date. *See id.* at 9 (omitting conception disclosures), 10 (omitting embodying products).

On November 21, 2022, Micron served its preliminary invalidity contentions on Netlist. Micron prepared the preliminary invalidity contentions without any of the information that Netlist seeks to rely on now, such as the identity of the purportedly embodying products or the alleged earlier priority dates of the asserted patents. This was so because Netlist had not disclosed that information or those documents to Micron, despite admitting to having had the information and documents ready at least by that time in the Samsung case. *See* ECF No. 57-7 ¶¶ 9, 7.

Only after Netlist realized the Court was not going to give it *carte blanche* to amend its infringement contentions later based on its own untimely productions did Netlist finally disclose this information and produce its long-withheld documents to Micron, in late January 2023. *See*

2

ECF No. 57-8 at (email from Netlist's counsel, Jan. 21, 2023) (describing withholding purported conception and reduction to practice documents for two months after they were produced in the parallel litigation as an "error" and noting intent to supplement its preliminary infringement contentions to include the untimely information). On February 3, 2023, more than four months after Netlist served its preliminary infringement contentions on Micron, it served proposed amended infringement contentions, identifying for the first time the purported embodying products.

### C. Netlist refused to provide information necessary for Micron to consider the potential prejudice from Netlist's late productions and disclosures.

Micron immediately asked which invention dates Netlist intended to assert based on the previously withheld documents. Micron asked on February 6 and again on February 15. Ex. 1 at 1-2. Micron needed to know to assess the potential impact to Micron's case, including on invalidity and claim construction, and to determine whether it could reach a compromise on the proposed amendment. *See id.* at 2. Netlist did not meaningfully respond until a month later. *Id.* at 1. Thus, by the time Netlist finally disclosed the new asserted invention dates, the parties were weeks from beginning claim construction. This did not leave Micron a meaningful opportunity to conduct new prior-art searches based on Netlist's late-asserted priority dates. Nor did it leave Micron sufficient time to form new claim-construction strategies based on those dates. Micron thus notified Netlist on March 9 that it opposed leave. *Id.*

### III. LEGAL STANDARD

This Court has "high expectations as [to] the plaintiffs' preparedness before bringing suit." *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-CV-144, 2009 WL 2590101, at *2 (E.D. Tex. Aug. 18, 2009) (denying leave to amend infringement contentions). That high expectation for a plaintiff's pre-suit investigation is reflected in local patent rules that require the plaintiff to provide its theories of the case at the outset in its infringement contentions. *See id.*

3

The plaintiff's obligations in the pre-suit investigation include identifying documents relevant to the conception and reduction to practice of the purported inventions in the asserted patents and identifying any purported patent-practicing products, the production and/or disclosure of which must be made with the preliminary infringement contentions. *See* P.R. 3-1 (requiring identification of patent-practicing products); P.R. 3-2 (requiring production of "[a]ll documents evidencing the conception, reduction to practice, design, and development").

Absent good cause for an amendment, the Court deems a plaintiff's preliminary infringement contentions to be final. *See Realtime Data*, 2009 WL 2590101, at *2 (citing P.R. 3-6(a)). When deciding whether good cause exists, courts consider four nonexclusive factors: "1) the explanation for the failure to meet the deadline; 2) the importance of the amendments; 3) potential prejudice in allowing the amendments; and 4) the availability of a continuance to cure such prejudices." *Id.* However, the proposed amendments' importance alone is not enough to show good cause when the delay was inexcusable and prejudicial. *See id.* at *7.

## IV.  ARGUMENT

At best, Netlist has shown extraordinary inadvertence at every relevant stage of this case by failing to identify its own purported embodying products and to produce its own documents related to conception and reduction to practice. This includes failing to do so as part of its pre-suit investigation, as part of preparing its preliminary infringement contentions, and in failing to make these disclosures and productions to Micron for two months after it finally did so in the parallel Samsung case. At worst, Netlist has withheld these disclosures and documents strategically, waiting to spring them on Micron at the end of fact discovery, as it attempted to do to Samsung.

Either way, Netlist is wrong that it is entitled to the advantage of amending its preliminary infringement contentions and ambushing Micron with new alleged priority dates and putatively practicing products simply because it claims to have failed to investigate its own documents for

nearly a year after filing the first of these parallel litigations. Whatever putative importance Netlist attaches to identifying alleged earlier priority dates for the asserted patents (after having the benefit of Micron's preliminary invalidity contentions) or identifying purported embodying products, the other factors—Netlist's lack of diligence, the potential prejudice to Micron, and the inability of a stay to cure the prejudice—outweigh that putative importance for the reasons explained below.

    **A.    Netlist's lack of diligence favors denying leave because it failed at every opportunity for nearly a year to identify and produce over 30,000 pages of its own documents related to alleged conception dates and embodying products.**

Netlist's various excuses for failing to produce its documents related to conception and reduction to practice and for failing to disclose purported embodying products are misdirection. As to conception, Netlist is wrong that its neglect is excusable because it misunderstood whether it needed to "disclose a specific prior conception or reduction to practice date" under P.R. 3-1(e) in its preliminary infringement contentions. Mot. at 6. Setting aside what Netlist should have disclosed under P.R. 3-1(e), it is indisputable that Netlist had a duty to produce with its preliminary infringement contentions "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention." P.R. 3-2(b). As it turns out, there were over 30,000 pages of relevant Netlist documents that it did not produce until January 2023 (ECF No. 57-4 at 49:12–23, 57:21–23), four months after they were due to Micron under P.R. 3-2(b).

And there is no doubt that Netlist was obligated to identify any alleged embodying product in its September preliminary infringement contentions. The local rules could not be clearer: "If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party must identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim." P.R. 3-1(f). Yet as before, Netlist did not produce its underlying

5

documents until four months later, in January 2023; did not identify its alleged theory of conception and its purported embodying products until five months later, in February 2023; and did not identify its new alleged priority dates until six months later, in March 2023.

Netlist's excuses for these failures are hollow. It unsuccessfully tries to blame ███████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* ECF No. 57-7 ¶ 6. Public records, however, show ███████████████████████████████████. *See* Ex. 2. Both were thus ███████████████████████████████████████████████████████████████. ███████████████████████████████████████ did not absolve Netlist of its duty to investigate its claims before filing suit, including to identify relevant documents related to conception and reduction to practice and alleged embodying products. *See Realtime Data*, 2009 WL 2590101, at *2 (explaining "the Patent Rules demonstrate high expectations as the plaintiffs' preparedness before bringing suit"). ███████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 3. Nor does Netlist's ███████████████████████ excuse it from performing a reasonable investigation before filing suit so it can provide disclosures in accordance with the Court's local rules. *See Realtime Data*, 2009 WL 2590101, at *2.

Rather, this Court has consistently explained (including to Netlist) that plaintiffs know where they are filing their actions and must be prepared to make timely disclosures:

> I understand the argument that [Netlist's] system is somewhat unconventional and it was burdensome and took a long time to discover all of this, but at the end of the day Netlist chose this Court, it chose this Court knowing this Court's local rules, it could have anticipated those local rules and begun the production process earlier than it did.

ECF No. 57-4 at 58; *Realtime Data*, 2009 WL 2590101, at *6 ("When Plaintiff filed the instant lawsuit, it should have been prepared for the aggressive discovery and trial schedule necessitated

6

▆▆▆▆▆▆▆▆▆▆

by filing a multi-party, multi-patent case in this District. Thus, … Plaintiff has not shown diligence, nor a reasonable explanation for the lack thereof in filing the instant Motion.").

Netlist's lack of diligence here is more egregious than it was in the parallel Samsung case. There, Netlist at least produced the conception and reduction to practice documents and disclosed the purported embodying products in November 2022, when it claims to have finally located them. *See* ECF No. 57-7 at 2–3. Here, Netlist waited *another* two months before producing the P.R. 3-2(b) documents to Micron in January 2023, claiming it neglected to produce over 30,000 pages of relevant documents because of "an error in [Netlist's] production." ECF No. 57-8. Coincidentally, Netlist communicated that error in the same email where it first raised an intention to amend its preliminary infringement contentions based on the unproduced documents. *See id.*

The *Realtime Data* Court found a plaintiff's failure inexcusable under less drastic facts. There, the plaintiff sought leave to amend based on materials it had obtained during discovery, arguing that its delay was based in part on the complexity of the case. *See Realtime Data*, 2009 WL 2590101, at *3. The *Realtime Data* Court reasoned that complexity "cuts both ways" because it increases the imperative on avoiding surprises for the defendant. *See id.* Here, Netlist is seeking leave based on its own materials and arguing that its delay in producing them was based in part on ▆▆▆▆▆▆▆▆▆▆. This argument similarly cuts both ways because if Netlist was aware of ▆▆▆▆▆▆▆▆▆▆, then it should have been more diligent in investigating those issues before filing suit, or at least should have made the Court and Micron aware of its limitations earlier in the case so that they could be addressed in the schedule from the outset.

Netlist tries to sidestep these issues by contending (incorrectly) that Micron is responsible for its delay in seeking leave. However, Netlist waited over four months after serving its

7

preliminary infringement contentions to produce its own documents allegedly showing conception and reduction to practice, to disclose its own putatively embodying products, and to raise an intent to amend its infringement contentions for the first time. *See* ECF No. 57-8. It waited two months to do so after it had made the same disclosures and productions in the Samsung case. *See id.* Netlist provides no reasonable explanation for these delays, other than ███████████████ ███████████████████████ and blaming its own "error in production" in failing to provide it to Netlist when it did so for Samsung. Netlist's delay tactics did not stop there. After Netlist had finally provided its proposed infringement contentions, it still withheld its asserted priority dates for an additional month, information critical for Micron to assess the potential impacts on its case. Netlist's delays are accordingly sufficient to demonstrate Netlist's lack of diligence, and this factor weighs in favor of denying leave. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (affirming denial of leave based on a three-month delay).

    **B.**    **Netlist's proposed amendments will prejudice Micron because they will give Netlist an undue advantage and will require Micron to re-investigate its defenses based on new purported priority dates.**

Netlist is wrong that amending now after waiting until January 2023 to produce its conception and reduction to practice documents and disclose its alleged embodying products will not prejudice Micron. Multi-patent litigation in this district requires the parties to be "prepared for the aggressive discovery and trial schedule" anticipated by the local rules. *See Realtime Data*, 2009 WL 2590101, at *6. This necessitates early and accurate disclosures by the plaintiff, which ensures that the defendant has an opportunity to formulate its defenses within the framework of the local rules' compressed schedule. *See generally id.* at *2, *5. Given that framework of disclosures, Netlist's proposed amendments would severely prejudice Micron. Claim construction is underway, and the parties have already exchanged their proposed preliminary constructions. *See* ECF No. 43. The parties' Joint Claim Construction Statement is due in less than 10 days. *Id.* Netlist's belated

8

amendment, if allowed, would deprive Micron of any real opportunity to develop defenses based on the newly asserted priority dates, including to search for and analyze additional prior art and adjust claim-construction strategies.

Despite boldly suggesting in its Motion that **Micron** "should not be rewarded for its lack of diligence" (ECF No. 57 at n.4), Netlist is asking for just such a reward for itself. It asks the Court to create a loophole through which a plaintiff may withhold its own relevant conception and reduction to practice documents until it reviews the defendant's invalidity contentions and then determine which earlier priority date, if any, is necessary to overcome the asserted prior art. But "[t]he Local Patent Rules 'exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush.'" *MASS Engineered Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 287 (E.D. Tex. 2008) (denying leave to amend invalidity contentions). Rewarding Netlist with a second bite at the apple based on its own inadvertence in collecting and producing documents would prejudice any defendant, including Micron.

Granting Netlist leave will also prejudice Micron by exposing it to more burden and expense based on Netlist's inadvertence and failures. Given new putative priority dates, including as they relate to the conception and reduction to practice of new alleged embodying products, Micron will undoubtedly need to investigate additional prior art and undertake preparing its own amended invalidity contentions, with a more compressed timeline for any necessary discovery, including third-party discovery, than the local rules contemplate.

Netlist cites several cases to suggest Micron's prejudice is not substantial. All are distinguishable because none involves a party who created the prejudice by withholding its own documents. *See, e.g.*, *Harris Corp. v. Huawei Device USA, Inc.*, 2019 WL 4247067, at *2 (E.D.

9

Tex. Sept. 6, 2019) (amending based on discovery); *Traxcell Techs., LLC v. AT&T, Inc.*, 2018 WL 6329385, at *2 (E.D. Tex. Dec. 4, 2018) (amending based on error); *Tactile Feedback Tech. LLC v. Samsung Elecs. Am., Inc.*, 2015 WL 13469637, at *1 (E.D. Tex. July 31, 2015) (amending based on investigation); *United Services Auto. Ass'n v. Wells Fargo Bank, N.A.*, 2019 WL 6878880, at *2 (E.D. Tex. Dec. 17, 2019) (amending based on corrected source code).

Further, given Netlist's lack of diligence, the Court need not find substantial prejudice to determine that good cause does not exist. *See Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 WL 81874, *5 (E.D. Tex. Jan. 12, 2009) ("Although the prejudice to Weatherford may not be substantial, Davis-Lynch has no reasonable explanation for its lack of diligence. After consideration of all the relevant factors, the Court finds that Davis-Lynch has failed to demonstrate good cause to amend its PICs to include the additional products."). And allowing Netlist to use its inadvertence to its advantage would contradict the local rules' spirit and be inherently prejudicial. *See MASS Engineered Design*, 250 F.R.D. at 287. This factor weighs in favor of denying leave.

### C. A continuance will not cure the prejudice to Micron.

A continuance would not solve the prejudice that Micron has identified above. Netlist would still have gained an advantage in the litigation based on getting a mulligan on its priority dates after reviewing Micron's invalidity contentions, and Micron would still suffer the burden and expense of investigating new prior art based on Netlist's late-disclosed priority dates and purported practicing products. This factor accordingly weighs in favor of denying leave.

### V. CONCLUSION

For the foregoing reasons, Micron respectfully requests that the Court deny Netlist's motion for leave to amend its preliminary infringement contentions.

| | |
|---|---|
| Dated: April 17, 2023 | Respectfully submitted,<br><br>By: */s/ Michael R. Rueckheim*<br>Thomas M. Melsheimer (State Bar No. 13922550)<br>TMelsheimer@winston.com<br>Natalie Arbaugh (State Bar No. 24033378)<br>NArbaugh@winston.com<br>Barry K. Shelton (State Bar No. 24055029)<br>BShelton@winston.com<br>WINSTON & STRAWN LLP<br>2121 N. Pearl Street, Suite 900<br>Dallas, TX 75201<br>Telephone: (214) 453-6500<br>Facsimile: (214) 453-6400<br><br>Michael R. Rueckheim (State Bar No. 24081129)<br>MRueckheim@winston.com<br>WINSTON & STRAWN LLP<br>255 Shoreline Drive, Suite 520<br>Redwood City, CA 94065<br>Telephone: (650) 858-6500<br>Facsimile: (650) 858-6559<br><br>Matthew Hopkins (*Pro Hac Vice*. State Bar No. 1500598)<br>MHopkins@winston.com<br>WINSTON & STRAWN LLP<br>1901 L Street, N.W.<br>Washington, D.C. 20036-3506<br>Telephone: (202) 282-5000<br>Facsimile: (202) 282-5100<br><br>Juan C. Yaquian (*Pro Hac Vice*. State Bar No. 24110559)<br>JYaquian@winston.com<br>WINSTON & STRAWN LLP<br>800 Capital Street, Suite 2400<br>Houston, TX 77002-2925<br>Telephone: (713) 651-2600<br>Facsimile: (713) 651-2700<br><br>Wesley Hill (State Bar No. 24032294)<br>wh@wsfirm.com<br>andrea@wsfirm.com<br>Charles Everingham IV (State Bar No. 00787447)<br>ce@wsfirm.com<br>WARD, SMITH & HILL, PLLC<br>1507 Bill Owens Parkway<br>Longview, TX 75604<br>Telephone: (903) 757-6400<br>Facsimile: (903) 757-2323<br><br>***Attorneys for Defendants***<br>***Micron Technology, Inc.,***<br>***Micron Semiconductor Products, Inc., and***<br>***Micron Technology Texas, LLC*** |

## CERTIFICATE OF SERVICE

I certify that, on April 17, 2023, a copy of the foregoing was served on all counsel of record via the Court's ECF system and by email.

/s/ Michael R. Rueckheim
Michael R. Rueckheim

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

/s/ Michael R. Rueckheim
Michael R. Rueckheim