# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:21-cv-463-JRG ) |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., | ) JURY TRIAL DEMANDED ) ) ) ) ) |
| Defendants. | ) |

## NETLIST INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF THE REBUTTAL EXPERT REPORT OF PHILIP KLINE (DKT. 206)

Samsung's opposition conflates two notions: 1) that Mr. Kline believes the charts reflecting the results of Dr. Groehn's analysis are inaccurate; and 2) that Mr. Kline states that the underlying sales data Dr. Groehn used in his report is inaccurate.  Netlist only seeks to prevent Mr. Kline from stating #2 before the jury, as it is not based in fact.  There is no dispute that Dr. Groehn and Mr. Kline relied on the same underlying data, and that Mr. Kline does not believe that data is inaccurate.  Indeed, Mr. Kline confirmed at deposition that Dr. Groehn relied on the same sales data **and** Mr. Kline conceded he did not identify a single error in Dr. Groehn's analysis itself.

First, Mr. Kline admitted that Dr. Groehn's analysis started from the same underlying sales data as Mr. Kline:



Ex. 1 [Kline Depo. Tr.] at 104:14-17.

Second, Mr. Kline admitted that he did not identify any errors with Dr. Groehn's assignment of density or speed to the Samsung sales data:



*Id.* at 104:18-25.

Third, Mr. Kline admitted that he did not identify any errors with Dr. Groehn's exportation of his coding into SQL:

- 1 -

*Id.* at 105:1-11.

Fourth, Mr. Kline admits he did not identify any errors in the Mathematica code Dr. Groehn produced:



*Id.* at 105:17-22.

Fifth, Mr. Kline could not identify a single error in Dr. Groehn's actual analysis:



*Id.* at 106:9-107:11.

Thus, Mr. Kline has identified no errors or inaccuracies in Dr. Groehn's data or his analysis. This is why it would be improper for him to tell the jury Dr. Groehn relied on "inaccurate data"—because such a statement would have no basis in any analysis performed by Mr. Kline. Instead, Mr. Kline's complaint is that he is unable to explain how the charts in Dr. Groehn's report look different than how Mr. Kline perceives the sales data in this case. There is a simple explanation: Mr. Kline did not have the capability to run Dr. Groehn's code because he does not know how to use the basic commercial software Dr. Groehn used in his regression. Neither Mr. Kline nor Samsung took it upon themselves to find someone who actually knows how to use Mathematica:



*Id.* at 107:12-108:4.

Samsung claims in a footnote that Dr. Groehn "failed to produce detailed work papers" and this "is one of the (numerous) grounds" on which it based its *Daubert* motion as to Dr. Groehn. Dkt. 260 at 3 n.1. This is wrong. Dr. Groehn's work papers were produced. Samsung's lawyers were unable to understand them because it waited until Dr. Groehn's deposition—a month and a half after he served his report—to actually download the free Mathematica product and review his code. Ex. 2 [Groehn Depo. Tr. (Rough)] at 152:16-17 (                                                                    ). This is likely why Samsung did not actually move to strike Dr. Groehn's report on the basis that the underlying code was not produced. *See, e.g.*, Dkt. 203 [Samsung's Motion to Strike Dr. Groehn] (Table of Contents not listing failure to produce work papers as a ground for its motion to strike). Samsung's argument is also belied by the very first paragraph of its opposition, which states that "[s]pecifically, after reviewing Dr. Groehn's ten page report **and supporting materials**, Mr. Kline performed a detailed analysis[.]" Dkt. 260 at 1 (emphasis added).

As set out in Netlist's motion, it is appropriate for one expert to disagree with another, or for an expert to explain why he or she believes the other expert's analysis is methodologically deficient in some manner. It is not appropriate, and it is highly prejudicial, to tell a jury that Dr. Groehn's analysis started with inaccurate sales data when it is wrong and there is no evidence supporting that statement whatsoever.

- 3 -

|  |  |
|---|---|
| Dated: February 24, 2023 | Respectfully submitted,<br><br>*/s/ Jason G. Sheasby*<br><br>Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>Texas State Bar No. 24012906<br>jtruelove@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street Suite 300<br>Marshall, TX 75670<br>Telephone: (903) 923-9000<br>Facsimile: (903) 923-9099<br><br>Jason Sheasby (*pro hac vice*)<br>jsheasby@irell.com<br>Annita Zhong, PhD (*pro hac vice*)<br>hzhong@irell.com<br>Thomas C. Werner (*pro hac vice*)<br>twerner@irell.com<br>Andrew Strabone (*pro hac vice*)<br>astrabone@irell.com<br>Yanan Zhao (*pro hac vice*)<br>yzhao@irell.com<br>Michael W. Tezyan (*pro hac vice*)<br>mtezyan@irell.com<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel. (310) 277-1010<br>Fax (310) 203-7199<br><br>Rebecca Carson (*pro hac vice*)<br>rcarson@irell.com<br>**IRELL & MANELLA LLP**<br>840 Newport Center Drive, Suite 400<br>Newport Beach, CA 92660<br><br>**Attorneys for Plaintiff Netlist, Inc.** |

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 24, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao