# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:22-CV-203-JRG ) |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS INC., MICRON TECHNOLOGY TEXAS LLC, | ) JURY TRIAL DEMANDED ) ) ▮▮▮▮▮ ) ) ) |
| Defendants. | ) |

**PLAINTIFF NETLIST, INC.'S MOTION TO COMPEL PRODUCTION OF SALES, FINANCIALS, AND MARKETING DOCUMENTS RELATING TO MICRON'S ACCUSED PRODUCTS**

This case commenced 11 months ago on June 10, 2022. As of the filing of this Motion to Compel, Micron has not produced a single sales record, financial document, or marketing material relating to the accused products. Netlist repeatedly asked to meet and confer with Micron on this issue, which Micron ignored. It was not until Netlist sent Micron a copy of this motion that it agreed to a lead to lead meet and confer. *See* Ex. 2.

Netlist respectfully requests that Micron be compelled to comply with this Court's Discovery Order to produce documents relevant to the parties' claims and defenses in this Action, and in particular, the following categories of documents:

1. Sales records with respect to each of the Accused Products, including but not limited to, invoices and other documents sufficient to show at least the product number, product name, product type, any other tracked product identifier, date of each sale, volume, price, revenue, final customer, recipient, the country from which the product is shipped, the country to which the product is shipped, cost of goods sold, margin, the location of the customer and Micron employee that negotiated the sale, and any other information Micron tracks with respect to the sale of the Accused Products in the ordinary course of business.

2. For each customer that has purchased any of the Accused Products, the individual(s) at those customers with whom Micron has negotiated the sale, the qualification of the product, or had any other discussions regarding the sale and/or use of the Accused Products. This is necessary to determine if the product was offered for sale or sold in the United States.

3. Documents relevant to the contracts or agreements entered by each Micron defendant with its customers in connection with the Accused Products. This includes relevant documents sufficient to show: (1) the identity of each party involved; (2) location(s) where any contract, pricing, and projected demand were negotiated; (3) location(s) where any contract, pricing, and projected demand were executed; (4) location(s) where requests for proposal or bids are submitted; (5) location(s) where each Micron Accused Product was shipped from; (6) location(s) where each Micron Accused Product was shipped to; (7) location(s) where title of Micron Accused Products was transferred or other locations where Micron and the purchaser agreed that a transfer takes places; (8) billing addresses; (9) locations where each Micron Accused Product was manufactured, assembled, and tested; (10) locations where the payment was made. This is necessary to determine if the product was offered for sale or sold in the United States.

4. Documents, including internal and external monthly, quarterly, and annual financial statements, profit and loss reports, studies of profitability, gross margin, turnover, price lists and price books, quotations, tax returns, and other related documents sufficient to determine, for each Micron Accused Infringing Product, total gross and net revenues, total average monthly revenue per device, fixed costs, variable costs, cost of goods sold, selling, general, and administrative ("SGA") expenses, variance from standard costs, gross and net

      profits, any non-standard costs or expenses, and accounting methods used with respect to the Micron Accused Infringing Products.

5. Documents relating to any market forecasts concerning sales or usage of each Micron Accused Infringing Product.

6. Documents relating to any calculation of expected or actual attachment rates, relationships, or sales ratios between Micron Accused Infringing Products sales and Micron's convoyed sales, derivative sales, follow-on sales, tag-along sales, or any other sales made with any of these products.

7. Advertisements, marketing documents, sales documents, and internet web pages, made by or on behalf of Micron relating to incorporating power management and voltage regulation modules onto the DDR5 modules' printed circuit boards, distributed buffer load reduction, multiple LRDIMMs per channel, and the features in its HBM2/2E products

8. Studies and evaluations performed by Micron or third parties related to performance improvement or cost savings by incorporating power management and voltage regulation modules onto the DDR5 modules' printed circuit boards, distributed buffer load reduction, multiple LRDIMMs per channel, and the features in its HBM2/2E products.

Categories 2-3, as well as 7-8 are foundational, in that they are necessary to identify what third party subpoenas have to be served. As a result, this is not a situation in which it is reasonable or proportional to make any production until the time for substantial competition of document discovery.

After the lead to lead meet and confer, Netlist sent another revised copy of this motion and asked Micron to agree to a definitive date certain to produce the above documents. Micron declined to do so.

## I. BACKGROUND

Netlist filed its complaint on June 10, 2022, asserting six patents-in-suit against Micron Technology, Inc., Micron Semiconductor Products Inc., and Micron Technology Texas LLC (collectively "Defendants" or "Micron"). Specifically, Netlist asserted that Micron's DDR4 LRDIMMs, DDR5 RDIMMs, DDR5 LRDIMMs, DDR5 SODIMMs, DDR5 UDIMMs, HBM2, HBM2E, HBM3, and HBMnext products (collectively the "Accused Products") infringe one or more claims of Netlist's U.S. Patent Nos. 10,949,339 (the '339 patent); 10,860,506 (the '506 patent);

11,016,918 (the '918 patent); 11,232,054 (the '054 patent); 8,787,060 (the '060 patent) and 9,318,160 (the '160 patent).

On November 10, 2022, Netlist provided Micron with a letter detailing the categories of documents relevant to Netlist's claims in this Action. Among others, Netlist identified Micron's sales, financial, marketing, and patent licensing documents. ██████████████ ██████████████████████████████████████████ Micron provided no response until two months later on January 10, 2023, claiming that ████████████ ████████████████████████████████ ████████████████████

On January 11, 2023, Netlist served an interrogatory on Micron. ████████████ ████████████████

████████████████████████████
████████████████████████████
████████████████████████████

Micron failed to provide any such information in its written discovery responses and did not produce any relevant documents.

On March 9, 2023, Netlist wrote to Micron raising the deficiencies in its interrogatory responses. Micron responded on March 14 claiming that ████████████████ ████████████████████████████

Without receiving any such production, Netlist followed up with Micron on March 16, 2023, demanding that Micron comply with the Discovery Order. Micron remained silent for two more weeks and only after that Micron committed to providing sales information by April 28, 2023. ██ ████████████████

Netlist followed up again on April 5, 2023, asking Micron to make prompt document production. Micron simply ignored the letter. When the deadline of April 28 came, Micron failed to produce the relevant documents or supplement its interrogatory responses. Neither did Micron ever provide any explanation for its delay.

On May 2, 2023, Netlist reached out again, informing Micron that it had not met the deadline it committed to and failed to respond to Netlist's correspondence on this issue. Netlist also requested that Micron produce responsive documents by May 4 or otherwise identify a time to meet and confer. Micron did not respond and did not produce any documents. ███████████████████

On May 5, 2023, Netlist followed up again with Micron for the fifth time, asking for the relevant sales, marketing, and financial documents. Micron remained silent and refused to engage in any meet and confer with Netlist. ███████████████

Without hearing any response from Micron, on May 7, Netlist's counsel sent Micron a draft motion to compel and asked Micron to provide its availability for a lead/local meet and confer. █ ███████████████ Only after that did Micron agree to meet and confer with Netlist on May 8, 2023. During the meet and confer, Micron could not provide a certain date by which it will complete production of the relevant documents requested in Netlist's discovery letters and draft motion to compel. Instead, Micron committed that it would provide a date certain within a few days. Netlist followed up another time with Micron after the meet and confer, but Micron did not provide a sufficient response or document production. Instead, on May 11, 2023, Micron vaguely stated that it ████████████████████████████████████████ without providing a date certain or explaining what specific categories of documents it will or will not produce.

As of today, Micron has not produced a single document showing information on the sales, marketing, or financials relating to any of Micron's accused DDR4, DDR5, or HBM products.

-4-

Micron's woeful discovery deficiency is further exacerbated by its repeated failure to comply with its own discovery commitments and refusal to engage in good faith meet and confers with Netlist.

According to the Court's docket control order, Micron is required to substantially complete document production by June 7, 2023. Dkt. 43 at 4. The deadline is not set for Micron to "start" its document production. Indeed, fact discovery closes on September 5, 2023, the same date when opening expert reports are due. Micron's inexcusable discovery delay has improperly impeded Netlist's right in prosecuting this Action. For example, Micron refused to disclose any sales, marketing, and financial documents, which are critical to Netlist's preparation of expert reports. As another example, Micron failed to produce information or documents relating to the identity of its customers. As such, Netlist will not have sufficient time to seek third-party discovery from these customers, particularly on potentially disputed issues such as whether certain of Micron's sales of the accused products are U.S. sales.

Netlist moves to compel Micron to comply with the Court's Discovery Order, Dkt. 41.

## II.  LEGAL STANDARD

The Court's Discovery Order and local rules make it clear: Micron must "produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action. . . ." Dkt. 41 at 3.

## III.  NETLIST'S REQUESTED DOCUMENTS ARE RELEVANT AND PROPORTIONAL

Netlist's requested documents are relevant and proportional. The requested documents are necessary for Netlist's damages claims. For example, the sales, financial, and marketing documents are important for Netlist to identify the damages base, calculate the economic benefits Micron received from its accused infringing products, and determine the reasonable royalties Netlist is entitled to.

As detailed above, Netlist repeatedly requested that Micron produce relevant sales documents—on at least five occasions. However, Micron has not explained why it could not make the timely production of such requested documents, what steps it has taken to collect and produce the documents, nor why it could not even meet its committed deadline of April 28, 2023. Micron also declined to provide a date certain of when it will produce the requested documents.

Micron appears to suggest that it can meet the discovery obligation as long as it starts to produce relevant documents before June 7, 2023. However, Micron's improper delay will cause and has caused unfair prejudice to Netlist, including impeding Netlist's right to seek third-party discovery. For example, Micron has not conceded that any or all of the Accused Products are or were made, sold, or offered for sale within the United States. Thus, depending on the sales information Micron produces, Netlist may need to seek discovery from Micron's customers to identify how many of those Micron Accused Products ended up in the United States. As of today, Micron has not identified its customers of the Accused Products.

## IV.    CONCLUSION

For reasons discussed above, Netlist's motion to compel should be granted.

Dated: May 12, 2023

Respectfully submitted,

/s/ Jason G. Sheasby

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)

jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF CONFERENCE

I hereby certify that, on May 8, 2023, the lead and local counsel of each side met and conferred. Micron refused to provide any date certain when it would produce the requested documents. The parties thus are at an impasse.

*/s/ Jason Sheasby*
Jason Sheasby

## CERTIFICATE OF SERVICE

I hereby certify that, on May 12, 2023, a copy of the foregoing was served to all counsel of record via the Court's ECF system.

*/s/Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be

-8-

filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao
