```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF TEXAS
 2                    MARSHALL DIVISION

 3   NETLIST, INC.,              )
                                 )
 4            Plaintiff,         )  Case No. 2:22-cv-203
                                 )
 5   vs.                         )
                                 )  May 30, 2023
 6                               )
     MICRON TECHNOLOGY, INC.,    )
 7   MICRON SEMICONDUCTOR        )  2:02 p.m.
     PRODUCTS INC., MICRON       )
 8   TECHNOLOGY TEXAS LLC,       )
                                 )  Marshall, Texas
 9            Defendants.        )
     ------------------------------------------------------
10              TRANSCRIPT OF MOTION HEARING
                BEFORE THE UNITED STATES
11           MAGISTRATE JUDGE ROY S. PAYNE
     ------------------------------------------------------
12   APPEARANCES:

13   FOR THE PLAINTIFF:     MR. JASON G. SHEASBY
                            MS. YANAN ZHAO
14                          Irell & Manella LLP
                            1800 Avenue of the Stars
15                          Suite 900
                            Los Angeles, California 90067
16                          jsheasby@irell.com
                            yzhao@irell.com
17
     FOR THE DEFENDANTS:    MR. MICHAEL RUECKHEIM
18                          Winston & Strawn LLP
                            255 Shoreline Drive
19                          Suite 520
                            Redwood City, California 94065
20                          mrueckheim@winston.com

21                          MR. WESLEY HILL
                            Ward, Smith & Hill, PLLC
22                          1507 Bill Owens Parkway
                            Longview, Texas 75604
23                          wh@wsfirm.com

24
            *********************************************
25
```

2

1   Proceedings reported by stenotype.  Transcript produced

2           by computer-aided transcription.

3                      ---oOo---

4           THE COURT:  Good afternoon.  Please be

5   seated.

6           For the record, we're here for the motion

7   hearing in *Netlist v. Micron Technology, et al.*,

8   Case No. 2:22-203 on our docket.

9           Would counsel state their appearances for the

10  record?

11          MR. SHEASBY:  Your Honor, Jason Sheasby and

12  Yanan Zhao for Netlist.

13          Mr. Baxter is upstairs with Judge Gilstrap,

14  and he asked permission that he be allowed to not attend

15  today.

16          And Ms. Truelove had to leave for an

17  obligation.

18          THE COURT:  All right.  I understand that.

19  And that's fine, Mr. Sheasby.

20          Thank you.

21          MR. HILL:  Good afternoon, your Honor.

22  Wesley Hill and Mike Rueckheim on behalf of the Micron

23  defendants.

24          THE COURT:  All right.

25          MR. HILL:  And we're ready for our hearing.

3

1            THE COURT:  Thank you, Mr. Hill.

2            It is the plaintiff's motion, so I'll turn it

3  over first to counsel for plaintiff.

4            MR. SHEASBY:  Your Honor, there are two

5  motions that are pending.  One relates to technical

6  documents.  One relates to financial documents.  There's

7  just in the last minute been a late breaking resolution

8  of the technical document motion.  Literally, it

9  happened five seconds before you came onboard.  And I

10  can recite that into the record, with your Honor's

11  permission.

12            THE COURT:  All right.  I'm willing to donate

13  another five seconds, if it will take care of the other

14  one.

15            MR. SHEASBY:  Yes, your Honor.

16            So the outstanding issue on the technical

17  motions was they have agreed to search for and produce

18  all third-party technical documents relating to the

19  components and the modules.

20            There was an ambiguity about what it means

21  for all simulation data that needed to be produced.  And

22  we understand their concern about that and to obviate

23  it, we flagged testing, evaluation, and simulation data

24  in RFPs 23, 27, 39, 52, and 68.  And there's been a

25  commitment by Micron to produce in response to that --

4

1  to do searches for those -- within those categories and

2  produce.

3          THE COURT:  So in your joint notice that was

4  filed recently -- yesterday, I guess -- there was

5  indication as to what remained -- what -- what part of

6  that is affected by this agreement.

7          MR. SHEASBY:  So the beginning of it lists

8  Nos. 1, 2, and 3.  And Nos. 1 and 2 are resolved by the

9  resolution I just recited.

10          THE COURT:  All right.

11          MR. SHEASBY:  And, your Honor, my colleague

12  Ms. Zhao is going to handle the financial issues.

13          I would ask one point of permission, which is

14  Judge Gilstrap wanted me to appear again in front of him

15  at 2:30.

16          If the hearing's not over, do I have your

17  permission to exit at 2:25 so that I can make that

18  appearance?

19          THE COURT:  You certainty do, Mr. Sheasby.

20          MR. SHEASBY:  Thank you, your Honor.

21          THE COURT:  I wouldn't want to deprive the

22  chief of the pleasure of your company.

23          MR. RUECKHEIM:  Your Honor, if I can --

24  Mike Rueckheim on behalf of Micron.  And just with

25  respect to the resolution, I want just to throw in the

1  caveat -- and I hate doing this, as I'm sure your Honor

2  might feel the same way -- just to throw in the caveat

3  of proportional and relevant.  And I think Mr. Sheasby

4  said we're going to produce all documents relating to

5  third-party technical features for these products.  And,

6  of course, we're looking at certain patents here, but

7  maybe that's where the -- you know, the devil is in the

8  details.  And we produced a lot of these already, and

9  I'm sure we can meet and confer further, if Netlist has

10  an issue with what we've produced as far as sufficiency.

11         MR. SHEASBY:  Well, I can make this easy.

12  It's -- the third-party chips are for the distributed

13  buffer, for the PMIC, for the SPD, and for the RCD.

14         THE COURT:  All right.  Well, I'll note both

15  sides' comments on that and hope that it resolves it

16  all.

17         Let me see.

18         Ms. Zhao, do you want to address what

19  remains?

20         And remind me, again, how to make sure I

21  pronounce your last name right.

22         MS. ZHAO:  That's right.  You did it

23  perfectly.

24         THE COURT:  All right.

25         MS. ZHAO:  Zhao.  Thank you, your Honor.

1                I think we laid out most of this in the
2    status report, but the main focus of this discussion as
3    of today is we have received no production of documents
4    regarding any sales, financials --
5                THE COURT:  And will you pull the microphone
6    toward you?
7                Thank you.  That will help.
8                MS. ZHAO:  Is this better?
9                THE COURT:  Yes.
10               MS. ZHAO:  Thank you.
11               So we've received no single production of
12   those types of documents, including sales, financials,
13   or marketing materials.  We understand that Micron on
14   Friday last week provided supplemental interrogatory
15   responses that listed certain stock information for its
16   products.  We believe there's missing some HBM product
17   information, but even -- it covers all of the types of
18   products accused in this case, but supplemental rog
19   responses does not give us the complete answer to the
20   outstanding issues.
21               For example, we don't have sales records.  We
22   don't have the native files to verify the information
23   provided.  And we don't have -- based on the rog
24   responses, it appears that Micron only provided
25   information of sales they believe are the U.S. sales,

1  shipment to the U.S. states.  But we need additional

2  documents and information to verify whether a specific

3  sale occurred in the United States or not to decide

4  whether it's proper damages bases for our case.

5           So we listed in our motion -- some of them

6  basically -- exact -- the same wording of our request

7  letter as to the specific information we're requesting

8  for production.  So I may direct your Honor to our

9  motion on Page 1.  As of today, we haven't received

10  anything with respect to the Item Nos. 2, 3, 4, and 6.

11  And there's some information provided in the rog

12  responses with respect to Item 1, but it's not complete.

13  For example, there's no information showing Micron

14  employees involved, where those employees are located,

15  and the specific documents showing pricing of those

16  products and the shipment records that's relevant for us

17  to decide where the sales actually occurred.

18           THE COURT:  All right.  I'm looking at your

19  Category 1 on Page 1 of your motion, which is

20  Document 73.

21           What part of that do you contend has not been

22  satisfied?

23           MS. ZHAO:  To be clear, we received no

24  document production.  So we should get document

25  production for all of the requested information.  Some

1   of them -- and some information in the rog responses

2   supplied the information, but we still need the

3   documents to verify them.

4           But specifically here we have no information

5   regarding the revenue, the final -- sorry -- excuse

6   me -- the country from which the product shipped, cost

7   of goods sold, margin, the location of the customer and

8   Micron employees that negotiated the sales.

9           THE COURT:  All right.  So those four items

10  you just mentioned are the primary items that are

11  missing in terms of document production?

12          MS. ZHAO:  That's the information we need and

13  not supplied by the rog responses.

14          THE COURT:  And how would that be identified?

15          MS. ZHAO:  We believe if Micron produces the

16  native sales files, that potentially can give us answer

17  to some of those questions, but we just haven't seen it.

18          THE COURT:  Are the interrogatory responses

19  attached to your motion?

20          MS. ZHAO:  No, your Honor.  I'm sorry.  There

21  is a page limit.  And we only received the rog responses

22  last Friday.  So it was after the motion was filed.  But

23  I'm happy to provide your Honor a copy, if you'd like to

24  see it.

25          THE COURT:  Well, I have found over the years

1  that if we're not very specific, we don't get a

2  resolution.  So I am just trying to see what I can look

3  at to know, so that when I hear from the defendants,

4  there'll be specificity about what is in and what is

5  out.

6          MS. ZHAO:  And let me clarify for your Honor.

7  So we need all of the native sales documents for the

8  Item 1.  And we also need supplemental rog responses as

9  to information from the -- the fourth line starting at

10 the country from which the product is shipped.

11         THE COURT:  The cost of goods sold, margin,

12 and the location of the customer.

13         MS. ZHAO:  That's right, your Honor.

14         THE COURT:  All right.  And you mentioned you

15 need certain native files.

16         Which ones are those?

17         MS. ZHAO:  Their sales records.

18         THE COURT:  The sales records.  Is that what

19 you said?

20         MS. ZHAO:  Yes, your Honor.

21         THE COURT:  And what is it that you're

22 seeking by way of a supplemental interrogatory response?

23         MS. ZHAO:  Sorry.  The -- from -- the

24 information about where the country of the products

25 shipped.  We can take either -- yeah.  If Micron

1   supplements interrogatory responses with respect to that

2   information, that will be responsive to our rog requests

3   as well.

4   　　　　　THE COURT:  All right.  So you're saying that

5   can be either document production or a supplemental

6   interrogatory response?

7   　　　　　MS. ZHAO:  I would say we need both.  And the

8   native files is helpful to verify the information

9   provided.

10   　　　　　THE COURT:  All right.  So whether we're

11   talking document production or interrogatory response,

12   it is the four items you mentioned that are in the

13   middle of Paragraph 1 there that you say are at issue on

14   this first category?

15   　　　　　MS. ZHAO:  Yes, your Honor.

16   　　　　　THE COURT:  Okay.  Thank you, Ms. Zhao.

17   　　　　　MR. RUECKHEIM:  Your Honor, Mike Rueckheim,

18   again, on behalf of Micron.

19   　　　　　So I'm glad we're getting pretty close here

20   out of a list of eight -- it looks like eight topics

21   with multiple subparts down to a narrow set.  And the

22   good news is we -- there's no impasse.  We're happy to

23   produce and search for the information, which we have

24   been doing.

25   　　　　　As far as the statement that Netlist needs

1 both interrogatories and documents for these requests, I

2 disagree. I think parties in litigation often just use

3 interrogatories for information such as financial

4 information. And primarily because the information

5 they're looking for is hard. It's all from these

6 databases, and the exhibit -- I think it's Exhibit B1 to

7 our interrogatory responses -- that exhibit is a big

8 Excel sheet that was taken from various databases. So

9 as far as getting the shipping record for each of the

10 products here that have been accused of infringing,

11 we're talking about a lot of discrete components and

12 records -- that sounds very difficult to me. And I'm

13 not sure it's necessary. But this is the first, you

14 know, occasion that we've had that really discussed the

15 factor as to why the interrogatory response itself --

16 which, of course, is verified as a signed pleading --

17 would be somehow insufficient.

18          But we're very happy to update that

19 interrogatory response as far as shipping location --

20 where the product is shipped from. The request for

21 location of the individual Micron employees who are

22 involved with each one of these transactions sounds

23 harder. That's been something we've been looking for --

24 we know it's harder. Again, it is something we've been

25 looking for as far as documents, but we can update the

1   interrogatory.  That's probably the best way or through

2   deposition to provide that information.

3            And then cost and profit margin, of course,

4   we want to collect that information.  We are collecting

5   that information and hope to do so very soon.

6            THE COURT:  Mr. Rueckheim, I can start this

7   off by expressing a little bit of frustration that on

8   the eve of the hearing we're still hearing that this is

9   in the process of being produced.  And I see in your

10  briefing that you have talked about the fact that we

11  haven't yet reached the date for the -- what is the term

12  I'm looking for?

13           MR. RUECKHEIM:  The substantial completion of

14  document production?

15           THE COURT:  Yes.  Substantial completion.

16           And I, perhaps, don't understand that date

17  the way you do.  I don't think that it is the goal to

18  deliver the discovery just before the date for

19  substantial completion of discovery.  And it does appear

20  that what we're talking about here is a set of

21  requests -- admittedly a large set -- but still a set

22  that was served seven months ago.

23           Why are we just now having such urgency to

24  complete this production?

25           MR. RUECKHEIM:  Your Honor, my best answer is

1  going to come off as an excuse.  I'm going to say that

2  right off the bat.  But we've been working hard.  It

3  was -- the initial request was 163 topics.  Each of

4  them, as your Honor has seen, has multiple subtopics.

5  And now we're down to a very narrow set of those.  We've

6  produced already throughout the litigation interrogatory

7  responses.  We've produced 60,000 pages of documents.

8          I actually looked.  I've received since that

9  letter hundreds of e-mails.  I counted.  It was more

10  than 300 e-mails from opposing counsel over the last few

11  months as to various -- not all dealing with these

12  production issues, of course, but dealing with a number

13  of different topics.  So we've been busy.  We've been

14  trying to collect this information.  And we're down to

15  right now -- I think everybody would agree -- the kind

16  of information that is hardest to find at these larger

17  organizations.  That is the people who are overseas who

18  are associated with each sale of these accused products.

19          THE COURT:  Well, I am assuming that their

20  interest in this discovery has to do with whether or not

21  they can establish that these products are within the

22  jurisdiction in terms of a damage analysis.  And,

23  obviously, to the extent that you're stipulating that,

24  I -- it would seem to me that they should be willing to

25  obviate the need for that.  So I assume that what

1 they're pursuing here are documents relating to sales

2 that the defendant contends are not subject to the

3 jurisdiction of the court; is that right?

4          MR. RUECKHEIM:  So I don't know that, your

5 Honor.  I don't think there's any argument here as to

6 extraterritorial sales.  What they're looking for is

7 information as to how the sales process occurs, who are

8 the people who are involved, I think, from Micron sales

9 as far as negotiating the contracts.  That's the

10 information that I understand is still at issue.

11          But we've given the customer name to -- in

12 their motion, they've mentioned they want the customer

13 names in order to potentially pursue third-party

14 discovery.  And so those names are there.  They have

15 been provided.  The revenue associated with each

16 customer, the transaction dates that the sales were

17 made -- all that information is provided.  But as far

18 as -- and we're -- even in the short-term, we're more

19 than happy to provide the description of what the sales

20 process is at Micron, but as far as tying each of these

21 hundreds of transactions to a specific person, that's

22 hard.

23          And so we've gathered a lot of information

24 since even the motions have been filed and produced it.

25 And we've traveled out to Micron's Boise facility

1   on-site to sit down with these people and see what we

2   can do to fast-track it, even before this substantial

3   data document production is completed.  That's an

4   ongoing process.  We're trying to get it done because we

5   want to reduce any kind of burden here for the Court.

6          THE COURT:  All right.  Just so I'll

7   understand then, you have indicated that you are willing

8   to provide the discovery sought.  So I assume it is a

9   question of resolving the schedule, the time frame.

10          MR. RUECKHEIM:  The time frame from when we

11   can collect and produce this information.  I think

12   that's really the issue at stake here.  We're not at

13   impasse.  We're not saying no.  We're trying to gather

14   this information to the extent it exists in documents.

15   And, if not, it seems like it'd be something that would

16   be appropriate for our interrogatory, maybe, update.

17   But, regardless, the sufficiency of information, we

18   could talk about at some later point, but we're not

19   saying no to providing the information, no, sir.

20          THE COURT:  All right.  So are you proposing

21   a resolution of this motion?

22          MR. RUECKHEIM:  Yeah.  I think -- yes, sir.

23   I think your Honor can maybe hold the motion.  Dismiss

24   the motion without prejudice, but allow the process to

25   complete.  As we stated in our responses, we're hopeful

1  to beat the substantial production date.  I think some

2  of these requests have been shifting, even since the

3  beginning motion to the joint status report, as far as

4  pricing decisions.  But when it comes down to the four

5  categories that are listed -- cost, profit margin --

6  shipping country we can do right off the bat.  But cost

7  and profit margin and location of Micron employees who

8  are involved with these negotiations are harder.  I want

9  to get it out the door tomorrow.  I can't, but I want to

10 get it as soon as possible.

11       THE COURT:  Well, the substantial completion

12 date, as I recall, is next week.

13       So you are saying you do feel you can commit

14 to have it delivered by then?

15       MR. RUECKHEIM:  I think -- I'm more cautious

16 about the cost and profit margin and the location of

17 each of the Micron employees, but I know I can give some

18 information that would probably be helpful in an

19 interrogatory response as to how this sales process

20 occurs, which may just resolve the issues before then.

21       As far as identifying the specific people, I

22 think that's going to take more time for each

23 transaction, but maybe -- maybe I'm wrong.  Maybe I can

24 do a group and Netlist will say, you know what, that's

25 going to be sufficient, if we tell them where that

1   group's at.  But the cost and profit margin, that's

2   another one that really just requires multiple visits

3   with the financial people.  That process is ongoing, but

4   I don't have it in front of me.  And so I hate saying by

5   next Tuesday or Wednesday -- I don't know what date the

6   7th is -- I'm going to have it at that point.

7           But we're not waiting until September, right?

8   September is the close of fact discovery.  And they

9   really need it for expert reports around that deadline.

10  So we're not talking months out.  We're talking a few

11  weeks.

12          THE COURT:  All right.  And we have been

13  talking about this Category No. 1 that is referred to in

14  plaintiff's motion to compel.

15          Is -- are your remarks similar for Nos. 2

16  through 4 and 6, which are the other ones still at

17  issue?

18          MR. RUECKHEIM:  Well, it'd be nicer to know

19  if there's a reduced subset because these Categories 2,

20  3, 4, and 6 are pretty lengthy.  And there's a lot of

21  overlap.  When I look at, let's say, Request No. 3, it's

22  discussing the identity of each party involved, the

23  ship-to location, the ship-from location.  So these are

24  the same topics that we were just discussing; where the

25  products are manufactured, who was involved with the

1  negotiations.  And so it would be nicer to see -- to

2  avoid having a dispute later on and saying what we

3  produced is not sufficient, to have that narrowed down.

4  But we are trying to collect the information here.

5         I think six is a little ambiguous, what

6  they're even requesting.  Six relates to the calculation

7  of actual attachment rates and conveyed sales.  I mean,

8  it's pretty lengthy.  But we're trying to collect the

9  documents in good faith, and if we produce information

10  that Netlist says is insufficient, we could probably

11  meet and confer and see if we have a dispute at that

12  point.  Hopefully, we can collect more information.

13         THE COURT:  All right.  If there is something

14  in particular that you want to call out as being

15  unnecessary or duplicative, unduly burdensome, that sort

16  of a thing, I'm open to hearing about that.

17         Are you in a position to discuss those

18  specifically?

19         MR. RUECKHEIM:  Well, I've actually never

20  been at a motion to compel where there's been this many

21  topics and subparts at issue.  Usually, the parties have

22  had these discussions and they have the meet and confers

23  and were able to take it down somewhat.  And from what

24  I'm hearing from counsel, it seems like there may be a

25  dispute as to the information in the interrogatory that

1  we've already produced being sufficient.  I disagree

2  with that.  I mean, I don't understand why we need --

3  you know, attorney documents are interrogatories and

4  the documents -- seems like a lot of work for everybody

5  that's unnecessary.

6        So those are it.  And then if we get to a

7  point where Netlist says the information we produce --

8  for example, with regard to customer identity that we've

9  already produced -- doesn't meet any of these specific

10  requests, then they should give me a call and we can

11  have a conversation.

12        And I told Mr. Sheasby before he left,

13  I'm the "yes man."  I'm trying to get him what he wants,

14  and hopefully we can get there.  We told them that

15  before they filed the motion; that I was going to fly

16  out to Boise, Idaho, and collect this information.  And

17  we did.

18        THE COURT:  All right.  Well, thank you,

19  Mr. Rueckheim.

20        Let me talk with Ms. Zhao a little more about

21  how we should proceed.

22        MS. ZHAO:  Your Honor, can I clarify a point

23  about Item No. 1, the sales documents or rog response?

24  So it's our position that we are seeking documents

25  within the ordinary business record of the defendants.

1   We're not trying to seek things beyond the scope of

2   federal rules of civil procedure.

3            So to the extent there's something --

4   document production sufficient to address this issue

5   under the rule, we're happy to take that.  The reason I

6   raise rog response information as being insufficient is

7   only because it's the defendants in response to our

8   motion telling us they provided those information --

9   types of information we requested through their rog

10  response.  So my point is the rog response is

11  insufficient.

12           THE COURT:  All right.

13           MS. ZHAO:  And it can't be a replacement of

14  the document production.

15           But, again, we're happy to take whatever is

16  within the scope of the federal rules of procedure.  So

17  if document production is sufficient, we do not need to

18  overly burden opposing counsel or defendants to produce

19  rog responses.

20           THE COURT:  Well, Ms. Zhao, what I'm hearing

21  from Mr. Rueckheim is that they are not disputing what

22  you're seeking.  They're dealing with the logistical

23  difficulties of gathering it, and they have some

24  questions about scope and the like that they want to

25  discuss.

1          Do you have any opposition to the idea of

2     setting a hearing down a little farther back to give

3     more time for the parties to pursue the discussions that

4     Mr. Rueckheim is talking about?

5          MS. ZHAO:  Let me clarify the -- how we get

6     here first, your Honor, if I may.  So we served original

7     letter in November.  And then we followed up with

8     specific discovery later, like identifying the

9     deficiencies multiple times.  We didn't submit them

10    because of the limitation of exhibit pages, but we did

11    lay out the timeline in our motion.  And, repeatedly, we

12    asked them to confer, but we never heard an objection

13    with respect to the relevance or the scope of the

14    request.  That's why we put exactly what we requested in

15    a motion because it's our belief that opposing counsel

16    didn't raise any objections.

17          But I understand that in some of those

18    requests might have overlaps, but not exactly as the way

19    opposing counsel identified.  To give you an example,

20    like Item 1 is about sales records, but Item 3 is

21    actually about contract agreements.  So those are two

22    different categories of documents.  With that, we'd

23    still be happy to talk through this to try to figure out

24    what's the better scheduling plan or any specific ways

25    to narrow some of the requests so -- if your Honor

1   decides to hold the motion for a certain time.  But we

2   do want to -- to go back to the earlier point, some of

3   the requests are very -- specific target to find out

4   information of products they sold in different countries

5   and foreign sales.  You know, we need that specific

6   information to serve subpoenas to move our third-party

7   discovery before the close of fact discovery in

8   September.  It's not that far away.  Only slightly more

9   than three months later.  So we have a relatively short

10  timeline, especially if some of these entities are

11  foreign entities.

12          And we want to note the rog responses to

13  provide us -- didn't give us the complete information

14  for us to get to those entities because they only gave

15  us customers they believe purchased the products in the

16  United States.  Those -- shouldn't be any doubt that

17  those are U.S. sales and profit bases for a damages

18  calculation, but they didn't give us the information of

19  the actual parties we need to seek third-party discovery

20  from.

21          THE COURT:  Well, it does seem to me that

22  under the circumstances we would benefit from allowing

23  more time for the parties to confer and see if this

24  dispute can be narrowed.

25          You understand better than I do, Ms. Zhao,

1  what your needs are in terms of next steps in this case.

2  I can give you another hearing in two weeks or

3  three weeks or give me an idea about the time frame that

4  you think would be helpful.

5          MS. ZHAO:  I am just thinking on the spot.  I

6  apologize for the pause.

7          Do you mind excusing us for a couple minutes

8  so we can discuss with each other to see the schedule

9  and see whether we can set up some timeline?

10          THE COURT:  All right.  We'll take a short

11  recess now.  We'll check on you in a few minutes.

12          MS. ZHAO:  Thank you, your Honor.

13          (A recess was taken at this time.)

14          THE COURT:  Thank you.  Please be seated.

15          MR. RUECKHEIM:  Your Honor, I believe we have

16  a recommendation for the Court to continue the hearing

17  for three weeks.  And during that time period, Micron is

18  going to work to reduce all of the issues here in

19  dispute.  And then the parties are committed to working

20  together to meet and confer during that time period if

21  other things come up with respect to that production

22  either through interrogatory responses, document

23  productions, or whatever.  Anything we produce to help

24  resolve this issue.

25          THE COURT:  All right.  Have you talked to

 1  Ms. Andrews yet about a date or --

 2             MR. RUECKHEIM:  We have not.

 3             MS. ZHAO:  Your Honor, just to clarify, by

 4  reducing the disputes between the parties, Micron agreed

 5  to make its best effort to complete the production in

 6  response to the currently disputed items.  And the

 7  parties agree to make the best effort to meet and confer

 8  to narrow the scope further.

 9             THE COURT:  All right.  Well, thank you,

10  Ms. Zhao.

11             We have several days in that week of June the

12  19th.  June the 19th being a federal holiday now.

13  And -- but if you would consult your calendars and let

14  Ms. Andrews knows which of the days that week works best

15  for you, then we will put that in the minutes as the

16  date for the continuation of this hearing.

17             MS. ZHAO:  Are we allowed to submit later

18  this afternoon after talking to local and lead counsel?

19             THE COURT:  Yes.  That is fine with me.  As

20  long as -- as long as you can hopefully reach an

21  agreement on that.

22             And, Mr. Rueckheim --

23             MR. RUECKHEIM:  Yeah.  I'm sure we can reach

24  an agreement.  I actually have a deposition on the 21st

25  and 22nd, but I bet we could figure out either before or

1   the Friday after.  The 23rd would be perfect.

2            THE COURT:  All right.  We have time on the

3   30th as well that we could do it.

4            MR. RUECKHEIM:  I have no depositions on the

5   30th.  The 23rd or the 30th --

6            THE COURT:  I'm sorry.  I meant to say the

7   23rd.  I do have time on the 23rd to do it.  I have a

8   trial the following week, but -- it will be over by the

9   30th for sure.  But I'm fine with you letting us know

10  and see if you can agree, and we'll pick this up again

11  then.

12            If you -- I would also ask that you file a

13  joint notice by the day before the hearing, whichever

14  day that may be, advising the Court what remains of your

15  motion.

16            MS. ZHAO:  Understood.

17            MR. RUECKHEIM:  Understood, your Honor.

18            Thank you, your Honor.

19            (Proceedings adjourned at 2:44 p.m.)

20                       *      *      *

21

22

23

24

25

1              <u>COURT REPORTER'S CERTIFICATION</u>.

2              I hereby certify that on this date,

3    June 1, 2023, the foregoing is a correct transcript of

4    the record of proceedings in the above-entitled case.

5

6    _____
     APRIL D. HARGETT

7    Certified Realtime Reporter
     Eastern District of Texas

8    Beaumont, Texas

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25