IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 2:22-cv-0203-JRG-RSP |
| MICRON TECHNOLOGY, INC., | § | |
| MICRON SEMICONDUCTOR | § | |
| PRODUCTS, INC., AND MICRON | § | |
| TECHNOLOGY TEXAS LLC, | § | |
| | § | |
| *Defendants*. | § | |

# ORDER

Before the Court, plaintiff Netlist, Inc. moves to compel defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas LLC (collectively "Micron") to allow Netlist to inspect Micron's source code without a Micron employee or in the alternative to amend the protective order. Dkt. No. 90.  The motion is GRANTED IN PART as follows.

Netlist argues that during the protective order negotiations, Micron made no mention of licensing restrictions to review source code material, but that Micron insisted that inspection of technical documents occur at Micron's Boise, Idaho facility, which the language of ¶10(c)(i) of the protective order now provides. Dkt. No. 90; Dkt. No. 45 (joint motion for entry of agreed protective order); Dkt. No. 46 (order granting entry); *id*. at ¶10(c)(i) ("Source Code Material may be made available for inspection: for Netlist, at the offices of its outside counsel; for Micron, at Micron Technology, Inc.'s facilities in Boise, Idaho."). The language of ¶10(c)(i) clearly captures the requirement that inspection occur in Boise, and as is discussed below ¶10(c) includes other restrictions.

According to Micron, it licenses a custom review tool from Cadence Design Systems, Inc., for accessing source code that Netlists seeks to inspect. Dkt. No. 95. The license restricts access to Micron employees, consultants, and subcontractors (hereinafter collectively "employee" to reduce redundancy). Dkt. No. 95-2 ECF p 2 (highlights included by Micron). The protective order, which was stipulated by the parties, includes provisions that either require a receiving party to obtain a license, ¶10(c)(v), grant a receiving party access to a source code computer if operated by a Micron employee, ¶10(c)(vi), or if Micron employee assistance with a source code computer is declined, grant a receiving party access to source code material by directing a Micron employee to materials within the scope of the technology at issue, ¶10(c)(vi). Dkt. No. 45 (joint motion for entry of agreed protective order); Dkt. No. 46 (order granting entry).  In particular, the cited provisions read:

> [¶10(c)] v.   The producing Party shall provision the Source Code Computer(s) with search and review tools as reasonably requested and provided by the receiving Party… *The receiving Party shall provide the license for the review tools, and either (a) installation files for such licensed software tool(s), or (b) instructions to download or otherwise obtain such licensed software tool(s) pursuant to the receiving Party's license.*
>
> [¶10(c)] vi.   The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the Source Code Computer(s) in order to access the produced Source Code Material on the Source Code Computer(s). *When inspecting Micron's Source Code Material being made available at a Micron facility*, *a Micron employee or representative may*, depending on the scope of the inspection, *provide access to the Source Code Material. Micron's employee or representative shall operate the Source Code Computer at the direction of receiving Party*'s outside counsel, consultants, or experts to facilitate the review. *The receiving Party*'s outside counsel, consultant, or expert *may decline Micron's employee's assistance and shall only direct Micron's employee to provide access to materials* within the scope of the technology at issue. *After Micron's employee has prepared and provided the Source Code Computer, Micron shall provide receiving Party*'s counsel, consultant, or expert *access to Micron's Source Code Material*[.]

Dkt. No. 46 ECF pp 9-10.

Netlist argues that during the protective order negotiations, Micron made no mention of the consequences of declining Micron employee assistance. Dkt. No. 90 ECF p 2. Netlist then argues that during the protective order negotiations, Micron knew of the restrictions to access the software provided by Cadence, "but did not disclose it until months after the parties" jointly moved for entry of the protective order. *Id.* at ECF p 3.

Micron argues that during the protective order negotiations it informed Netlist that source code review will implicate software from third parties. Dkt. No. 95 (citing Exhibit 1 of the underlying motion[1]). Exhibit 1 of Netlist's motion identifies two emails, each from counsel for Micron, the first of which dated October 25, 2022, states:

> As for the delays, making the source code available at Micron's facilities expedites the inspections. As I explained during our call, reviewing at least some of Micron's "source code" - such as chip layouts - requires third-party software that has been customized. Having the inspections occur at Micron's Boise, Idaho facilities simplifies the logistics since the customized review tools will be available there. Also, if Netlist encounters any technical issues with the customized review tool(s), resources may be more readily available there to assist and resolve such issues.

Dkt. No. 95-2. Micron then argues that, in light of the restrictions to access of the software provided by Cadence, Micron negotiated ¶10(c)(v) & (vi) to allow for either (1) inspection of the source code computer if Netlist obtained a license, (2) inspection of the source code computer with a Micron employee, or (3) access to source code relevant material, but not the source code computer, as an alternative to (1) and (2). Dkt. No. 95 ECF p 2.

Netlist proceeded to inspect Micron's source code in March subject to the requirement that the inspection be performed through a Micron employee because Netlist was not able to obtain a license from Cadence to use the proprietary software that Micron has installed on its source code

---

[1] Micron's citation mistakenly cites to "Dkt. No. 80-2," instead of Dkt. No. 90-2. However, the citation includes "(Ex. 1 to Mot.)" which clarifies the correct source.

computer. This motion apparently deals with any additional source code review that may be undertaken.[2]

The Court starts from the premise that Micron has an obligation under the discovery rules and orders to make its relevant source code available for review by Netlist under reasonable conditions designed to protect the confidentiality of the code. Micron may not interpose third party systems without making sure that they can be operated by Netlist to the extent necessary to accomplish the inspection. It is not a reasonable condition that a Micron employee must operate the source code computer for Netlist. The language of the protective order negotiated by the parties does not make that role sufficiently clear for the Court to conclude that Netlist has waived any objections to it. No lawyer should expect to have to engage in sensitive discovery through an intermediary of the opponent.

Accordingly, IT IS ORDERED that notwithstanding any provision of ¶ 10 of the Protective Order (Dkt. No. 46) Micron shall make its relevant source code available for inspection without any active participation by its employees between the inspecting representatives of Netlist and the source code computer. If a license from Cadence (or other third party) is the best way for this to be accomplished, Netlist is ordered to cooperate fully with Micron's facilitation of such a license. However, the onus is on Micron, which has chosen to require the use of third party technology, to take the lead in the procuring of the license for Netlist.

**SIGNED this 11th day of June, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[2] On May 30, the Court held a hearing for oral arguments on Netlist's motions to compel financial data, Dkt. No. 73, and technical documents, Dkt. No. 74. Dkt No. 93 (transcript). However, at the beginning of the hearing, Netlist announced that issues related to the production of technical documents had been resolved. Id. There was no mention of the dispute underpinning the instant motion, which was filed May 31, the day after the hearing.