# EXHIBIT C

```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF TEXAS
                        MARSHALL DIVISION

NETLIST, INC.,                   (  CAUSE NO. 2:21-CV-463-JRG
                                 )
         Plaintiff,              (
                                 )
vs.                              (
                                 )
SAMSUNG ELECTRONICS CO., LTD.,   (
et al.,                          )  MARSHALL, TEXAS
                                 (  APRIL 14, 2023
         Defendants.             )  9:00 A.M.
_____

                           VOLUME 1


_____
                      TRIAL ON THE MERITS

           BEFORE THE HONORABLE RODNEY GILSTRAP
              UNITED STATES CHIEF DISTRICT JUDGE
                         and a jury
_____




                 SHAWN McROBERTS, RMR, CRR
                   100 E. HOUSTON STREET
                   MARSHALL, TEXAS  75670
                       (903) 923-8546
               shawn_mcroberts@txed.uscourts.gov
```

1 speed, for example, because you want to see if it has
2 connectivity. So, as a result, you can use a smaller driver,
3 and what that does for you is reduce the amount of area it
4 takes up on the die as well as reduces power.
5 Q. And I'm turning to page 4 -- column 4, lines 8 through 16
6 of your specification, and it says you incorporated by
7 reference application 12/422,915. Do you see that?
8 A. I do.
9 Q. First off what does 'incorporation by reference' mean?
10 A. So what that means, we're taking all of the words in that
11 document and essentially saying that they're in that patent
12 application.
13 Q. And what does the 12/422,925 application describe?
14 A. It talks about tests.
15 Q. Mr. Milton, after termination and before this lawsuit was
16 filed, did Samsung ever approach Netlist and seek permission
17 to use Netlist's patents?
18 A. They did not.
19         MR. SHEASBY: I pass the witness, Your Honor.
20         THE COURT: Cross examination, please.
21         MR. McKEON: May I begin, Your Honor?
22         THE COURT: Looks like your team has binders to pass
23 out.
24         MR. McKEON: Okay. Thank you.
25         THE COURT: No, Mr. Sheasby. It's Defendants' job

1  to put a binder in front of the witness on cross.  Hand that
2  to the Court Security Officer, please.
3       You may approach.
4       Just keep that.  The clerks don't need it.
5       Let's proceed with cross examination, Mr. McKeon.
6                       CROSS EXAMINATION
7  BY MR. McKEON:   ?
8  Q.   Good afternoon, Mr. Milton.  We haven't met.  My name is
9  Mike McKeon, and I represent Samsung.
10 A.   Very nice to meet you, sir.
11 Q.   Nice to meet you.
12      Now, you mentioned that Netlist was founded in 2000.
13 Isn't that right?
14 A.   That's correct, sir.
15 Q.   And it's actually a publicly-traded company.  Isn't that
16 right?
17 A.   That is correct, sir.
18 Q.   Got shareholders.  Isn't that right?
19 A.   Correct.
20 Q.   And you testified about some of the products that Netlist
21 has.  Do you recall that?
22 A.   Yes, sir.
23 Q.   Now, Netlist specializes in hybrid memory.  Correct?
24 A.   That's correct.
25 Q.   And when Netlist uses that term 'hybrid memory', that

```
 1   refers to memory modules that have both DRAM chips and flash
 2   memory chips.  Correct?
 3   A.   That is correct.
 4   Q.   And sometimes you refer to that product as an NVDIMM.
 5   Correct?
 6   A.   That is one implementation, yes.
 7   Q.   It has flash memory chips and DRAM chips.  Correct?
 8   A.   It has flash and DRAM, yes.
 9   Q.   And Netlist does not make or sell its own DDR4 LRDIMM.
10   Correct?
11   A.   That's a correct statement.  We design for DDR3.
12   Q.   Netlist is now working on a low profile DDR5 product.
13   Isn't that right?
14   A.   That is correct, sir.
15   Q.   Is that the one you showed the jury?
16   A.   Yes, sir.
17   Q.   Okay.  And a low profile DDR5 product is different than
18   the DDR5 DIMM products that are accused of infringement in
19   this case.  Right?
20   A.   It has a different form factor.  That is true.
21   Q.   So it's different.  Correct?
22   A.   In form factor, yes.
23   Q.   And Netlist does not make or sell its own DDR5 RDIMM.
24   Correct?
25   A.   The VLP is an RDIMM, sir.
```

1  Q.   A DDR5 RDIMM, sir.
2  A.   The VLP is a DDR5 RDIMM.
3  Q.   Okay.  You're talking about the one you just showed the
4  jury.  Is that right, sir?
5  A.   Yes, sir.
6  Q.   Okay.  Is that a product that's on the market today?
7  A.   It's in qualification.
8  Q.   So you don't sell that product today to anybody.  Isn't
9  that right?
10 A.   Not yet.  It's in qualification.
11 Q.   It's in qualification.  But you weren't trying to mislead
12 the jury when you suggested that and showed them the product
13 that you were on the market for that product and selling it
14 and competing with others.  Is that right?
15 A.   That was not my intention.
16 Q.   And Netlist does not make or sell DDR5 UDIMM.  Right?
17 A.   That is a correct statement.
18 Q.   And you don't sell or make DDR5 SO-DIMM.  Is that right?
19 A.   That is a correct statement.
20 Q.   So Netlist does not make or sell any of the types of DDR4
21 or DDR5 products that are accused of infringement in this
22 case.  Correct?
23 A.   I disagree on the RDIMM part because this is, in fact, an
24 RDIMM.
25 Q.   Sir, we just established that that product's not on the

1  market.
2  A.  Oh, okay.  Understood.  Understood.
3  Q.  So listen to my question.
4  A.  Yes, sir.
5  Q.  Netlist today does not make or sell any of the types of
6  DDR4 or DDR5 products that are accused of infringement in this
7  case.  Correct?
8  A.  Okay.  Correct.
9  Q.  And you didn't do that at the time that the complaint was
10 filed accusing Samsung of infringement in this case.  Isn't
11 that right?
12 A.  I'm sorry.  One more time, sir.
13 Q.  You have the same answer to the question about no
14 competition at the time that Netlist filed the lawsuit against
15 Samsung in this case.  Isn't that right?
16 A.  The same answer about no competition?
17 Q.  Correct.
18 A.  I'm sorry.  It must be getting late in the day.  I
19 apologize.  Could you answer -- one more time, sir.
20 Q.  We've already established and you told the members of the
21 jury Netlist does not make or sell any of the types of DDR4 or
22 DDR5 products that are accused of infringement in this case.
23 Correct?
24 A.  That's correct.
25 Q.  And that was true at the time that the complaint for

1   patent infringement was filed in this case.  Isn't that right?
2   A.   Okay.  Correct.
3   Q.   And Netlist also does not make HBM products.  Correct?
4   A.   That is correct.
5   Q.   You don't compete with Samsung in HBM products.  Correct?
6   A.   That is correct.
7   Q.   And we know that HBM products are the products that just
8   have DRAM.  Isn't that right?
9   A.   HBM -- yes, that is correct.
10  Q.   No flash memory.  Isn't that right?
11  A.   On HBM, no.
12  Q.   Right.  And on the products that we went through before,
13  all the DDR4 products and the DDR5 products we mentioned, no
14  flash memory chips in those products, either.  Isn't that
15  right?
16  A.   That's incorrect, sir.
17  Q.   Is there a flash memory chip on those products, sir?
18  A.   There's flash in that product.
19  Q.   Listen to my question, sir.  Is there a flash memory chip
20  in those products?
21  A.   What do you define as a chip?
22  Q.   Sir, a chip you can hold in your hand.
23  A.   You can hold the PMIC, and it has flash in there that you
24  could classify as a chip.
25  Q.   Are you referring to the register in a PMIC chip?  Is

1    that what you're referring to?
2    A.   Not the register.  I'm referring to where that register
3    information gets saved in the event of a power fault
4    condition.
5    Q.   But, sir, that's not saving people's emails, people's
6    videos, people's photographs.  That little thing in the PMIC
7    has nothing to do with saving that.  Isn't that right?
8    A.   It's not saving that, but the information it's saving is
9    critical information about what happened to that module.
10   Q.   Well, let's talk about -- more about the invention.
11   We're going to get back to that in a moment.  Okay?
12        Now, you testified about your invention for the '918 and
13   '054.  Isn't that right?
14   A.   That's true.
15   Q.   You agree Netlist was not the first company to create
16   memory modules.  Correct?
17   A.   That is correct.
18   Q.   You did not invent printed circuit boards.  Right?
19   A.   No, we did not.
20   Q.   Did not invent flash memory.  Correct?
21   A.   Correct.
22   Q.   Did not invent DRAM.  Right?
23   A.   That's correct.
24   Q.   And you didn't invent buck converters.  Isn't that right?
25   A.   That is correct.

| | |
|---|---|
| 1 | Q.   Didn't invent converter circuits, either.  Isn't that |
| 2 | right? |
| 3 | A.   No, we did not. |
| 4 | Q.   Didn't invent voltage regulation.  Isn't that right? |
| 5 | A.   That's correct. |
| 6 | Q.   Voltage regulation been around a long time in products. |
| 7 | Isn't that right? |
| 8 | A.   Sure. |
| 9 | Q.   Now, for Netlist's own products you talked about today, |
| 10 | Netlist does not design any of the low-level integrated |
| 11 | circuit chips.  Isn't that right? |
| 12 | A.   That is correct. |
| 13 | Q.   And you believe that what Netlist did, in your invention |
| 14 | you took some known chips and materials and you combined them |
| 15 | in the way that you think is novel.  Is that right? |
| 16 | A.   Absolutely.  Correct, sir. |
| 17 | Q.   Now, the patents you discussed today in court, there was |
| 18 | five of them.  Isn't that right? |
| 19 | A.   That's correct, sir. |
| 20 | Q.   But you're only a named inventor on the '918 and '054. |
| 21 | Is that right? |
| 22 | A.   That is a correct statement, sir. |
| 23 | Q.   And the '918 was filed in December of 2020.  Isn't that |
| 24 | right? |
| 25 | A.   Well, the application was filed in 2008. |

1  Q.  Well, the '918 patent, the application, sir, that became
2  the '918 Patent was filed in December of 2020.  Correct?
3  A.  Those claims were filed, but the application was from
4  2008.
5       MR. McKEON:  Let's get the '918 Patent up, please.
6  And let's just see what the '918 Patent -- can we blow up
7  the -- right here.
8  Q.  (BY MR. McKEON)  See, sir, the '918 Patent --
9       MR. McKEON:  If we can get that down a little so I
10 can see the '918 Patent number?  Right there is good.
11 Q.  (BY MR. McKEON)  And you see, sir, that's the '918 Patent
12 you told the jury about.  Isn't that right?
13 A.  That is correct, sir.
14 Q.  Can you tell the jury what it says there right here at
15 22?
16 A.  Yes.  It says filed December 30th, 2020.
17 Q.  Didn't say anything there about filing this in 2008.
18 Isn't that right?
19 A.  Not on that line, sir.
20 Q.  Correct.  That line is the filing date of the '918
21 Patent.  Isn't that right?
22 A.  Right.  And we claim priority back to 2008.
23 Q.  We're going to get to that.
24 A.  Okay.
25 Q.  We're going to get to that.

```
 1            I HEREBY CERTIFY THAT THE FOREGOING IS A

 2       CORRECT TRANSCRIPT FROM THE RECORD OF

 3       PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

 4       I FURTHER CERTIFY THAT THE TRANSCRIPT FEES

 5       FORMAT COMPLY WITH THOSE PRESCRIBED BY THE

 6       COURT AND THE JUDICIAL CONFERENCE OF THE

 7       UNITED STATES.

 8

 9       S/Shawn McRoberts              04/14/2023

10       _____DATE_____
         SHAWN McROBERTS, RMR, CRR
11       FEDERAL OFFICIAL COURT REPORTER
```