# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:22-cv-203-JRG ) |
| MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC, | ) JURY TRIAL DEMANDED ) ) ) |
| Defendants. | ) ) |

# DEFENDANTS' OPPOSITION TO PLAINTIFF NETLIST, INC.'S OPPOSED MOTION TO COMPEL OR IN THE ALTERNATIVE AMEND THE PROTECTIVE ORDER

## I.   INTRODUCTION

Micron licenses a custom tool for reviewing certain source code material from ▮▮▮ Design Systems, Inc. The license restricts access to the review tool to Micron employees, consultants, and subcontractors only. Ex. A at #1. Section 10(c)(vi) of the Protective Order, which Micron and Netlist negotiated eight months ago, accounts for this license restriction. Specifically, Section 10(c)(vi) provides two options: either (1) a Micron "employee or representative shall operate the Source Code Computer at the direction of" Netlist; or (2) Netlist "may decline Micron's employee's assistance and shall only direct Micron's employee to provide access to materials within the scope of the technology at issue." ECF No. 45-1, ¶ 10(c)(vi). If Netlist declines Micron employee's assistance required for utilizing Micron's license, then Netlist needs to provide its own license for the review tool. *See id.* ¶ 10(c)(v).

Eight months later, Netlist asks this Court to void the negotiated provision without good cause. Contrary to Netlist's claim, the procedure set forth in Section 10(c)(vi) does not expose Netlist's work product. It does not require Netlist to divulge any notes or internal discussions. The employee providing assistance under Section 10(c)(vi) is not a lawyer, is not part of Micron's legal department, and is not involved in the defense of this lawsuit. The employee does not record the substance of Netlist's inspections or communicate it with Micron's counsel. Thus, relying upon Micron employee's assistance does not impair Netlist's ability to inspect Micron's code. Further, if Netlist does not wish to rely on Micron employee's assistance, it can do so by obtaining the necessary license. Therefore, amending the Protective Order is unnecessary.

That Netlist failed to diligently pursue a license ▮▮▮ is also not a valid basis to upend the negotiated provisions of the Protective Order. Netlist has known, since October 2022, that it needed a license for a specific review tool to review Micron's code and, and if it declined Micron's assistance that it was Netlist's responsibility to obtain its own license for the review tool.

1

Yet, Netlist's counsel's first attempt to speak with ▆▆▆▆ about this matter was only two weeks ago on May 22, 2023. Even after Netlist's counsel finally contacted the tool supplier, it did not make any genuine efforts to negotiate the necessary license and instead opted to stop trying to contact ▆▆▆▆ *just two days later*. Lack of diligence in obtaining the necessary license is not a valid basis for amending the Protective Order.

Furthermore, Netlist's request risks causing Micron unfair prejudice. Compelling Micron to grant Netlist access to its licensed tools, instead of requiring Netlist to obtain its license per Section 10(c)(v) of the Protective Order, would require Micron to violate or modify its contractual agreement ▆▆▆▆. Interfering with Micron's agreement ▆▆▆▆ ▆▆▆▆ ▆▆▆▆. Micron should not be penalized for Netlist's lack of diligence.

Finally, Netlist is wasting the Court's and Micron's resources by re-raising an issue it previously briefed and then subsequently represented as having been resolved and thus become moot. For these reasons, the Court should deny Netlist's Motion.

## II.  FACTUAL BACKGROUND

The parties negotiated the Protective Order in October 2022. The source code inspection procedure that Netlist proposed, and Micron accepted, required Netlist to provide the license for any software tools for reviewing Micron's source code. *See* ECF No. 45-1 ("PO") ¶ 10(c)(v). During the October 2022 negotiations, Micron informed Netlist that reviewing some of Micron's source code requires a specific third-party review tool. ECF No. 80-2 (Ex. 1 to Mot.). Due to restrictions in Micron's license, Micron could not give Netlist access to the tool. Ex. A at #1 ▆▆ ▆▆▆▆ ▆▆▆▆ ▆▆▆▆ Micron negotiated Section 10(c)(vi) to allow its employee to operate the source

2

code computer at the direction of Netlist's reviewer. PO ¶ 10(c)(vi).

In March 2023, Netlist inspected Micron's source code. Rueckheim Decl. ¶ 3. Because Netlist did not have a license to the review tool, Micron asked that Netlist allow a Micron employee to operate the source code computer at its reviewer's direction ▮▮▮▮▮▮▮. Ex. A at #2. Netlist inspected Micron's source code with the Micron employee's assistance. Rueckheim Decl. ¶ 3. The reviewer was not asked or required to divulge any notes or conversations about the inspection. The Micron employee who provided assistance is not a lawyer, is not part of and does not report to Micron's legal department, and is not involved in the defense of this lawsuit. Rueckheim Decl. ¶ 4. The employee also did not record the substance of Netlist's inspections or communicate it to Micron's counsel. Rueckheim Decl. ¶ 5.

In April 2023, Netlist finally asked for information about the identity of the requisite tool and Micron's license agreement for the tool. Ex. A at #3-5. Micron provided both. *Id.* On May 22, 2023, Netlist wrote that it could not communicate with the tool supplier, ▮▮▮▮ because "their system is entirely automated, and unattended by a human being." Ex. A at #6. The next day, however, Netlist, claimed that it spoke to ▮▮▮▮▮▮▮▮ and demanded that ▮▮▮▮▮▮▮▮ provide availability for a call the following day. Ex. A at #7. Barely 20 hours later, Netlist withdrew its request for Micron's participation on a call and informed Micron that it will ▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A at #8. Then on May 25, just two days after Netlist purportedly spoke with ▮▮▮ for the first time, Netlist informed Micron that it was filing this Motion instead. Ex. A at #9. Micron offered to try contacting their ▮▮▮▮▮ to facilitate Netlist obtaining its own license, but Netlist refused the offer and filed the Motion. Rueckheim Decl. ¶¶ 15-16.

### III.   ARGUMENT

**A.   No Good Cause Exists for Netlist's Request to Amend the Protective Order**

Contrary to Netlist's claim, the inspection procedure in ¶ 10(c)(vi) does not expose Netlist's work product. It does not cause Netlist to divulge any notes or conversations about the inspections. The Micron employee providing assistance is not a lawyer, is not part of and does not report to Micron's legal department, and is not involved in the defense of this lawsuit. Rueckheim Decl. ¶ 3. The employee does not record the substance of Netlist's inspections or communicate it to Micron's counsel. Rueckheim Decl. ¶ 4. The Micron employee's assistance is what enables Netlist's inspection of Micron's code, not impede it. Further, if Netlist does not wish to rely on Micron employee's assistance, it can do so by obtaining the requisite license. Because the current Protective Order already provides Netlist with two robust and secure means for inspecting Micron's source code, there is no need to amend the Protective Order.

> **B. Netlist Knew, or Should Have Known, that a License Is Required But Filed to Act Diligently to Obtain the Requisite License**

Netlist cannot credibly claim that "[i]t was not foreseeable to Netlist during negotiations that the modification was necessary." Mot. at 3. The Protective Order states: "The receiving Party [*i.e.*, Netlist] shall provide the license for the review tools." PO ¶ 10(c)(v). Nothing in ¶ 10(c)(vi) or any other paragraph of the Protective Order waives or alters Netlist's obligation to provide a license for the review tools. Regardless of whether Micron *voluntarily* offers its employee's assistance under ¶ 10(c)(vi), Netlist was responsible for providing the license for review tools.

Once Micron informed Netlist in October 2022 that a specific tool is necessary for reviewing Micron's code, Netlist should have acted diligently to obtain the requisite license. Netlist did not. In fact, Netlist did not even inquire about the identity of the review tool until six months later, in April 2022. Ex. A at #3. Even after Micron provided details about the review tool, instead of making any genuine efforts to negotiate a license, Netlist's counsel stopped negotiating with ▬▬▬ *just two days* after their first discussion. Ex. A at #7-9. Waiting more

4

than six months before deciding to contact the tool supplier and then discontinuing negotiations after *just two days* is not a valid basis for amending the Protective Order.

In its Motion, Netlist contends that Micron repeatedly ignored its request for cooperation. *See* Mot. at 2, fn.1. Not so. Micron made good faith efforts to accommodate Netlist's request. Ex. A at #10 ("Micron has accommodated Netlist's requests every step …"). But Netlist's "continually shifting stream of thoughts and changing demands" made that difficult. *Id.* Such unreasonable conduct also cannot be a proper basis for amending the protective order.

### C. Netlist's Request, If Granted, Could Unfairly Prejudice Micron

Micron's license ▮▮▮▮▮ does not allow third parties, such as Netlist, to use ▮▮▮▮▮. Ex. A at #1. Compelling Micron to grant Netlist access to its licensed tools, instead of requiring Netlist to obtain a license per Section 10(c)(v) of the Protective Order, would require Micron to violate or modify its contractual agreement ▮▮▮▮▮.



Micron should not be penalized for Netlist's lack of diligence in pursuing the requisite license.

### D. Netlist Waived Its Right to Seek Relief

Netlist previously briefed the same issue (ECF No. 49; *see also* Ex. A at #5), and, after this Court set a hearing, informed the Court that "[t]he parties have resolved the remaining issues." ECF No. 81 at 1. Netlist is wasting this Court's and Micron's resources by re-raising issues that it previously represented has having been resolved and thus understood to have become moot. Netlist should be precluded from re-raising the same issue.

### IV. CONCLUSION

For these reasons, Micron respectfully requests that the Court deny Netlist's Motion.

5

Dated: June 6, 2023                           Respectfully submitted,

By: */s/ Michael R. Rueckheim*
Thomas M. Melsheimer (State Bar No. 13922550)
TMelsheimer@winston.com
Natalie Arbaugh (State Bar No. 24033378)
NArbaugh@winston.com
Barry K. Shelton (State Bar No. 24055029)
BShelton@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

Michael R. Rueckheim (State Bar No. 24081129)
MRueckheim@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*Pro Hac Vice*. State Bar No. 1500598)
MHopkins@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036-3506
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

Juan C. Yaquian (*Pro Hac Vice*. State Bar No. 24110559)
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill (State Bar No. 24032294)
wh@wsfirm.com
Andrea Fair (State Bar No. 24078488)

andrea@wsfirm.com
Charles Everingham IV (State Bar No. 00787447)
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC*

7

## CERTIFICATE OF SERVICE

I certify that, on June 6, 2023, a copy of the foregoing was served by electronic mail on all counsel of record.

*/s/ Mike Rueckheim*
Mike Rueckheim

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Mike Rueckheim*
Mike Rueckheim