# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS LLC, <br><br> Defendants. | Civil Action No. 2:22-CV-203-JRG-RSP <br><br> **JURY TRIAL DEMANDED** <br><br>  |

## **DEFENDANTS' SUR-REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................... 1

      A.   "electrical communication" ('060 patent, claims 1, 11, 20, and 29; '160 patent, claim 1) ........................................................................................... 1

      B.   "driver size" ('160 patent, claim 1) ...................................................................... 3

      C.   "converter circuit" ('918 patent, all asserted claims) ........................................... 4

      D.   "at least one circuit" ('918 Patent, Claims 1-3, 5-7, 9-13, 15, 21) ...................... 6

      E.   "controller" ('918 patent, claims 12, 18-19, 25-26; '054 patent, claims 5, 7-13, 16-17, 23-25, 29-30) ................................................................................... 7

III.  CONCLUSION ............................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*MTD Prods. v. Iancu*,
   933 F.3d 1336 (Fed. Cir. 2019)......................................................................................6, 7

*Personal Audio, LLC v. Apple, Inc.*,
   No. 9:09CV111, 2011 WL 11757163 (E.D. Tex., Jan. 31, 2011) ............................................5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013)..........................................................................................5

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015)..........................................................................................6

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| S | Highlighted Excerpts from Deposition Transcripts of Dr. Harold Stone |
| T | Highlighted Excerpts from Netlist's Infringement Chart for the '160 Patent |

## I.  INTRODUCTION

Pursuant to the Court's Order (ECF 84), Micron files this sur-reply brief limited to addressing the terms where Netlist's Reply brief cited to the testimony of Micron's expert, Dr. Stone.  Dr. Stone was deposed after Micron's responsive brief was filed.

## II.  ARGUMENT

### A.  "electrical communication" ('060 patent, claims 1, 11, 20, and 29; '160 patent, claim 1)

| Micron's Interpretation | Netlist's Purported and Actual Interpretations |
|---|---|
| Plain and ordinary meaning, *i.e.*, does not require importing a "data port" or "responsiveness" limitation | Purported interpretation (per P.R. 4-3):<br><br>Plain and ordinary meaning, that is, "electrical communication" is different from "electrical connection" |
| | Actual interpretation #1 (from *Netlist-Samsung* litigation):<br><br>"electrical communication with … a group of array dies" means "electrical communication with **the data ports** of … a group of array dies" (Ex. A at 314:13-17) |
| | Actual interpretation #2 (from Opening Brief at 3):<br><br>"electrical communication with … a group of array dies" requires being "responsive to the data signal being transmitted by the die interconnect" |
| | Actual interpretation #3 (from Reply Brief at 3):<br><br>"electrical communication with … a group of array dies" requires more than electrical "connection to a stub on the array die[s]" |

~~Netlist's attempt to distinguish "electrical connection" and "electrical communication" is a strawman.  The distinction between these two terms is irrelevant because the claims do not recite the term "electrical connection."  *See, e.g.*, '060 Patent, Claims 1, 11, 20, 29; '160 Patent, Claim 1.  Instead, the claims only recite an electrical communication between die interconnects and array dies.  *Id.*~~

1

~~The real issue, which Netlist is trying to avoid, is whether Netlist should be permitted to argue to the jury that the term "electrical communication" requires additional, unrecited limitations. The clear answer is no. Netlist previously argued that the term "electrical communication with … array die" should be interpreted to require (i) communication with "data ports of the group of array dies" and/or (ii) some "responsive[ness] to the data signal being transmitted by the die interconnect." *See* Response (ECF No. 109) at 2. But, Netlist has cited to no compelling evidence for such interpretations that fundamentally redraft the plain claim language. *See* Response at 3-4.~~

~~Netlist, in its Reply, presents yet another impermissible interpretation: that the term should be interpreted to require something more than communicating electricity to "a stub on the array die." Reply at 1. This argument similarly lacks intrinsic or extrinsic support. Indeed, the only reference to "stubs" in the patent is in paragraph that very clearly and repeatedly explains that "holes", "air gaps" and "insulator[s] … large enough to prevent electrical communication between the die interconnect and the array die circuitry" are required to prevent electrical communication between a die interconnect and an array die. '060 Patent, 8:35, 8:47-53. The patent never refers to "stub[s] **on the array die**" (*e.g.*, as compared to stubs disposed in a hole, air gap or insulator) at all. *See* Reply at 1. Instead, all that the patent explains is that the referenced "stubs are not configured to provide electrical communication with the memory cells of the array die" (*see* '060 Patent, 8:57-62)—a fact irrelevant to the claims which do not impose limitations on electrical communications with memory cells. In sum, there is no claim construction cannon that supports any of Netlist's continually shifting interpretations, and the Court's construction should bar those interpretations to resolve the dispute between the parties.~~

Turning to the "electrical communication" versus "electrical connection," Netlist is incorrect in arguing that Dr. Stone asserts that "'electrical communication' means 'electrical

2

connection.'" Reply at 1. Dr. Stone explained that the patent makes an "*association* between electrical communication and electrical connection." Ex. S (Stone Tr.) at 95:20-21 (emphasis added). Dr. Stone further explained how a skilled artisan would understand the physics of that association, *i.e.*, forming an electrical connection can lead to and enable electrical communication:

> [I]f you connect a die interconnect to a -- one of the levels in the figure, you now are connecting to some conductor. That conductor will carry a wave when you -- when you drive it. It has capacitance. It has a load. And whether or not that conductor is -- is attached to a data port, you will see the wave go down that conductor. At the end, it will bounce -- bounce back, and you'll see that as noise. Moreover, the capacitance on the conductor will load the driver.
>
> So in every way, forming the electrical connection and placing this piece of a -- of a metal on the -- on an array, it will form to an electrical communication. That's what you'll get. Electrical connection is electrical communication in this sense.

Ex. S (Stone Tr.) at 96:19-97:8.

### B. "driver size" ('160 patent, claim 1)

~~Netlist is incorrect in arguing that "Micron does not dispute that the plain language of '160 claim 1 does not specify that the difference in 'driver size' need be along 'physical dimensions.'" Reply at 3. Micron submitted an expert declaration by Dr. Stone explaining that "driver size" should be "interpreted according to its plain and ordinary meaning, i.e., physical dimensions of the driver." ECF 97-9 (Stone Decl.), ¶¶ 39, 44 and 47. Dr. Stone also explained how the remaining context of the claims support his opinion by "refer[ring] to the physical dimensions of the driver." *Id.* at ¶¶ 40-41. Dr. Stone also explained how the specification supports his opinion. *Id.*, ¶¶ 42-43. Netlist, in contrast, did not provide any expert analysis as to the meaning of this term.~~

Netlist is also incorrect in arguing that Micron's proposed construction "turn[s] impermissibly on usage, rather than the configuration." Reply at 3 (emphasis added). Dr. Stone explained that the driver size is determined by the physical dimension of the potentially operable

3

transistors.  *See* Ex. S (Stone Tr.) at 147:7-9 ("[i]f you *can* turn on all ten, the driver size is related to the load that you *can* drive") (emphasis added).  This physical dimension does not change based on usage, and instead the size relates directly to the physical "area [needed] to dissipate the power [the potentially operable transistors] generate."  *Id.*, 147:10-11.  Netlist's argument misstates Dr. Stone's testimony and should be rejected.

Netlist's argument that "Micron's construction could result in the infringement of an apparatus claim turning impermissibly on usage, rather than the configuration" has the argument backwards.  It is Netlist that is attempting to broaden the claim language to include ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *See* Ex. T (Netlist's Infringement Chart for the '160 Patent) at 22 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).

C. **"converter circuit" ('918 patent, all asserted claims)**

~~Netlist is incorrect in arguing that there is no dispute as to whether "dictionary definitions of 'circuit' connote structure" to the claim term "converter circuit."  Reply at 7.  Dr. Stone was unequivocal in his opinion that:~~

> ~~The use of "converter circuit" in the asserted claims provides no guidance of specific structure to a POSITA who would understand the term "converter circuit" in the asserted claims to be a generic term that encompasses any hardware, software, or combination that may perform the claimed functions of the converter circuit limitation of the asserted claims. In other words, the claim term "converter circuit" does not inform a POSITA of the structural characteristics of the claimed "converter circuit" that is configured to perform the claimed functions of the converter circuit limitation of the asserted claims.~~

~~ECF 97-9 (Stone Decl.), ¶ 51.  Netlist has not provided any expert analysis to the contrary.~~

4

~~Netlist is also incorrect in arguing that Federal Circuit opinions establish that the "term 'circuit'/'circuitry' is thus not a 'nonce' word." Reply at 8. The Federal Circuit has stated that the "the term 'circuit,' by itself connotes *some* structure," *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1373 (Fed. Cir. 2003) (emphasis added), but the Federal Circuit has not held that the term "circuit" by itself "always connotes sufficient structure." *Id.* Netlist's other cited opinions accord. *See, e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1364-65 (Fed. Cir. 2013) (construing "soft start circuit" and observing that "in determining whether the word 'circuit' invokes means-plus-function claiming, the pivotal issue is whether the [circuit limitation] as properly construed recites sufficiently definite structure … not just any adjectival qualification or functional language will suffice") (internal quotations omitted). Recital of "some structure" is not "sufficient structure" to remove the claims from § 112, ¶ 6 treatment. *Compare, e.g., Personal Audio, LLC v. Apple, Inc.*, No. 9:09CV111, 2011 WL 11757163, at *21 (E.D. Tex., Jan. 31, 2011) ("If 'computer' or 'processor' is insufficient structure to define the scope of a means-plus-function limitation, the word 'processor' cannot describe sufficient structure when recited directly in a claim limitation itself.").~~

~~Here, Netlist has not identified *any* intrinsic evidence demonstrating that "converter circuit" connotes sufficient structure. Instead, the patent asserts that "[e]xample embodiments are described herein in the context of a system of computers, servers, controllers, memory modules, hard disk drives and software." '918 Patent, 9:66-10:1. Moreover, the only extrinsic evidence establishes that the term does not connote sufficient structure. Indeed, Netlist's own expert *unequivocally agreed* with Dr. Stone's understanding that the "converter circuit" limitation is claimed solely by function when he testified that to map the "converter circuit" limitation he "did not look for any structural element *beyond the functional requirement that something reduced*~~

5

~~*the voltage*" so that "*any circuit that converts a voltage is a converter circuit*." Ex. A (ECF No. 109-2) (*Netlist-Samsung* Trial Tr.) at 416:21-24 and 416:3-5 (emphases added). The fact that both parties' experts interpret the "converter circuit" limitation as a purely functional limitation weighs significantly in favor of finding that the "converter circuit" limitation is subject to § 112, ¶ 6.~~

~~Netlist's citation to the specification does not take the "converter circuit" limitation out of the ambit of § 112(6). "The standard is whether the *words of the claim* [not the specification] are understood by [a skilled artisan] to have a sufficiently definite meaning as the name for structure." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (emphasis added). Instead, Netlist's citation to the specification's disclosure of "buck-converters, boost converters, and buck-boost converter circuits" (Reply at 8 (citing '918 patent at 29:23-27)) confirms the correctness of Micron's proposed corresponding structure for the "converter circuit" limitation: "a 'converter circuit,' as described in the '918 patent at 29:18–64." Response at 16. To the extent it reduces the dispute, Micron agrees that the corresponding structure for the § 112, ¶ 6 term "converter circuit" is limited to "buck-converters, boost converters, and buck-boost converter circuits" as Netlist identifies.~~

D.  **"at least one circuit" ('918 Patent, Claims 1-3, 5-7, 9-13, 15, 21)**

~~As explained above in Section II.C, the term "circuit" alone does not connote sufficient structure. Because the term is generic, the context of its usage is critically important. Here, Netlist relies on claim language reciting the inputs/outputs of the "at least one circuit" and how the "at least one circuit" is "coupled" to other components to assert that the "at least one circuit" limitation is not subject to § 112(6). Reply at 8-9. But that claim language does not impart sufficiently definite structure into the term "at least one circuit," and therefore does not disqualify the claim from § 112(6) treatment. *See Williamson*, 792 F.3d at 1351. Here, like *MTD Products*, the claim language recites purely functional language by describing what the "at least one circuit" is~~

6

~~"operable to" do despite reciting how the "at least one circuit" is "coupled" to other components. *MTD Prods. v. Iancu*, 933 F.3d 1336, 1343 (Fed. Cir. 2019) ("[w]hile the claim language reciting that the mechanical control assembly is 'coupled to the left and right drive units' connotes structure, the claim language reciting what the mechanical control assembly is 'configured to' do is functional"). In doing so, "the claim format tends to favor [the] position that § 112, ¶ 6 applies." *Id.*~~

~~Regarding corresponding structure, Netlist is incorrect in arguing that Micron's "'compromise corresponding structure' should be rejected as unduly narrow because it omits the 'registers' of the RDIMM embodiments depicted in Figs. 15AC." Reply at 9. Netlist does not cite to any intrinsic or extrinsic support evidencing that a register is structure for "at least one circuit."~~ For example, in his deposition, Dr. Stone merely agreed that a register he was shown from a DDR SDRAM specification can be viewed as a ***"circuit,"*** but never stated that he interpreted register 1160 disclosed in the '918 patent's specification to be part of the corresponding structure for the "at least one circuit" recited in the claims. By contrast, the '918 patent's specification is unambiguously clear that "the at least one circuit 1052 can comprise one or more switches 1172" and "one or more switches 1170," '918 patent at 23:45-51, confirming the correctness of Micron's proposed "compromise corresponding structure."

### E. "controller" ('918 patent, claims 12, 18-19, 25-26; '054 patent, claims 5, 7-13, 16-17, 23-25, 29-30)

The term "controller" alone does not connote structure, and Netlist cites to nothing indicating otherwise. Instead, in its Reply Brief, Netlist advances arguments for the "controller" limitation that are littered with unsupported attorney arguments and misrepresentations of Dr. Stone's deposition testimony and declaration. As such, the Court should give Netlist's arguments little weight, if any.

~~First, Netlist argues that "[t]he claim language demonstrates that the 'controller' limitation recites sufficiently definite structure because claim 12 of the '918 patent recites that "in response to the trigger signal, the controller performs a write operation to the non-volatile memory." Reply at 9. Yet, Netlist cites no expert testimony as to a skilled artisan's understanding supporting these incorrect conclusory attorney arguments. Instead, Netlist impermissibly cites to purely functional language of what the "controller" is "configured to" do: "perform[ing] a write operation to the non-volatile memory." See MTD Prods, 933 F.3d at 1343 (explaining that claim language reciting what a nonce term is "configured to" do is functional and therefore insufficient to escape § 112, ¶ 6 treatment).~~

Then, Netlist weaves in and out of Dr. Stone's deposition testimony, declaration, and the '918 patent's specification to apparently, and wrongly, argue that there is support for its position that the generic term "controller" automatically connotes specific hardware structure for performing the claimed functionality of the "controller" limitation. *See* Reply at 9-10. But there is no such support from the only expert that provided an opinion, Dr. Stone. In his deposition, Dr. Stone never stated that the "controller" term, as used in the context of the '918 or '054 patents' claims, connotes sufficient structure for performing the claimed functionality of the "controller" limitation, and Netlist cannot point to any such testimony. In his deposition, Dr. Stone merely acknowledged that a generic "controller" can be implemented in different hypothetical ways proposed to him by Netlist's counsel, which no one disputes. Such testimony, however, does not support Netlist's position that the entire "controller" limitation is not subject to § 112, ¶ 6.

~~Netlist ignores that when Dr. Stone evaluated the claims that include the "controller" limitation to determine whether the entire "controller" limitation is claimed solely by "function~~

8

~~without reciting sufficient structure for performing that function," Dr. Stone was unequivocal in his opinion that:~~

> ~~The use of "controller" in those claims provides no guidance of specific structure to a POSITA who would understand the term "controller" in claims 12, 18-19, and 25-26 of the '918 patent and claims 5, 7-13, 16-17, 23-25, and 29-30 of the '054 patent to be a generic term that encompasses any hardware, software, or combination that may perform the claimed functions of the controller limitation of claims 12, 18-19, and 25-26 of the '918 patent and claims 5, 7-13, 16-17, 23-25, and 29-30 of the '054 patent. In other words, the claim term "controller" does not inform a POSITA of the structural characteristics of the claimed "controller" that is configured to perform the claimed functions of the controller limitation of claims 12, 18-19, and 25-26 of the '918 patent and claims 5, 7-13, 16-17, 23-25, and 29-30 of the '054 patent.~~

~~ECF 97-9 (Stone Decl.), ¶ 59. As previously found by this Court: "If [similar terms such as] 'computer' or 'processor' [are] insufficient structure to define the scope of a means-plus-function limitation, the word 'processor'" or here "controller" "cannot describe sufficient structure when recited directly in a claim limitation itself." *Personal Audio*, 2011 WL 11757163, at *21.~~

~~Netlist does not cite to any testimony from a skilled artisan to support its interpretation of the claims. As such, Dr. Stone's foregoing testimony indicating that the "controller" limitation is subject to § 112, ¶ 6—which is also the only testimony as to the understanding of a skilled artisan as to the interpretation of claims that include the "controller" limitation— **stands unrebutted**.~~

### III.   CONCLUSION

For the reasons stated herein, the Court should adopt Micron's proposed constructions for the disputed terms and phrases.

Dated: July 7, 2023                                       Respectfully submitted,

                                                          */s/ Michael R. Rueckheim*
                                                          Thomas M. Melsheimer
                                                          State Bar No. 13922550

9

TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
Barry K. Shelton
State Bar No. 24055029
BShelton@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger
denzminger@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (pro hac vice)
State Bar No. 1500598
mhopkins@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

Juan C. Yaquian
State Bar No. 24110559
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

10

Facsimile: (713) 651-2700

Wesley Hill (State Bar No. 24032294)
wh@wsfirm.com
Andrea Fair (State Bar No. 24078488)
andrea@wsfirm.com
Charles Everingham IV (State Bar No. 00787447)
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC**

11

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2023, the foregoing document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record, including counsel of record for Plaintiff Netlist Inc. The foregoing documents were served by electronic mail on all counsel of record.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document, declaration, and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.