# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| Plaintiff, | ) |
| | ) Case No. 2:22-CV-203-JRG |
| vs. | ) |
| | ) JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC., | ) |
| MICRON SEMICONDUCTOR | ) **FILED UNDER SEAL** |
| PRODUCTS INC., MICRON | ) |
| TECHNOLOGY TEXAS LLC, | ) |
| Defendants. | ) |

**PLAINTIFF NETLIST, INC.'S MOTION TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S JULY 26, 2023 ORDER (DKT. 123)**

## TABLE OF CONTENTS

**Page**

I. FACTUAL BACKGROUND ........................................................................................1

II. ARGUMENT .................................................................................................................3

   A. Micron Should Be Held in Contempt for Violating the Discovery Order ......3

   B. Evidentiary Sanctions on Micron Are Appropriate.............................................9

III. CONCLUSION ............................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*,
   2023 WL 4936210 (E.D. Tex. Aug. 2, 2023)..................................................................10

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015)..................................................................................7, 11

*Chao v. Transocean Offshore*,
   276 F.3d 725 (5th Cir. 2002).........................................................................................3

*Chilcutt v. United States*,
   4 F.3d 1313 (5th Cir. 1993).........................................................................................12

*Denman Springs, LLC v. L.G. Burke, Inc.*,
   2021 WL 2794697 (E.D. Tex. Apr. 20, 2021)..............................................................10

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
   2017 WL 2869332 (E.D. Tex. May 18, 2017).............................................................11

*Martin v. Trinity Indus., Inc.*,
   959 F.2d 45 (5th Cir. 1992)...........................................................................................3

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
   2019 WL 4392525 (E.D. Tex. June 11, 2019)............................................................12

*Shillitani v. United States*,
   384 U.S. 364 (1966).......................................................................................................9

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
   685 F.3d 486 (5th Cir. 2012)....................................................................................9, 12

*United States v. Rylander*,
   460 U.S. 752 (1983).......................................................................................................8

*United States v. Smith*,
   2018 WL 4524123 (E.D. Tex. Sept. 13, 2018)..............................................................9

*Whitfield v. Pennington*,
   832 F.2d 909 (5th Cir. 1987).........................................................................................3

**Statutes**

35 U.S.C. § 271(a) ......................................................................................... 1, 2, 10, 12

**Page**

**Rules**

Fed. R. Civ. P. 37 ................................................................................................................................10

Plaintiff Netlist hereby moves for an order to show cause why Micron should not be held in contempt for failing to comply with the Court's July 26, 2023 Order requiring Micron to produce relevant documents. Dkt. 123. Netlist respectfully asks the Court to enter an order:

(1) Finding Micron is in contempt for violating the July 26, 2023 Discovery Order;

(2) For purposes of this Action, taking as an established fact that Micron's sales of the accused products identified on Micron's Exhibit B1 as ███████████████████████████████████████████████████████████████████████████ as being U.S. sales under 35 U.S.C. § 271(a) subject to Netlist's damages claims in this action.

A draft of this motion was provided to Micron. Micron was unwilling to resolve the concerns identified herein. And Micron has shown such little regard for this process that neither of its "lead" counsel showed up to the meet and confer despite the parties agreeing to a lead to lead discussion.

I. **FACTUAL BACKGROUND**

After two hearings on Netlist's motion to compel sales, financial, and marketing documents (Dkt. 73), this Court ordered Micron to produce the following by August 9:

1. Micron shall produce *a spread sheet* showing sales records with respect to each of the Accused Products, including but not limited to the product number, product name, product type, **any other tracked product identifier**, date of each sale, volume, price, revenue, final customer, recipient, the country from which the product is shipped, the country to which the product is shipped, **cost of goods sold, margin**, and the location of the customer; and

2. For each customer that has purchased any of the Accused Products, the individual(s) at those customers with whom Micron has negotiated the sale, or had any other discussions regarding the sale and/or use of the Accused Products. Further, Micron **shall produce documents** regarding customer's approval or product qualification which occurred in the U.S. for any of the accused products that Micron does not consider are subject to Netlist's infringement claim (without conceding the validity of the claim). If Micron concedes the products are already relevant to the claim and is reporting the sales for use in damages calculations, no additional production is necessary. Dkt. 123 (emphasis added).

The Court also made clear that: "If Micron after diligent effort, recognizes it will be unable to

produce this information by the above 2-week deadline, Micron shall file a motion establishing good cause for additional time before the deadline." *Id.* Micron did not file a motion establishing good cause for additional time before the deadline.

On August 9, Micron supplemented its interrogatory responses with 4 exhibits allegedly identifying certain sales and financial information relating to the accused products. Ex. 1. These four spreadsheets are the only information Micron has provided. No documents were produced.

Exhibit B1 discloses some sales information of Micron's accused products including for example revenues, units, customers, and "material description." But Exhibit B1 does not disclose the financial data such margin or COGS for any accused product. *Id.* at 268.

Micron's Exhibit B3 allegedly disclosed the gross profit, revenues, and COGS of Micron's accused products. But the August 9 disclosure failed to include any financial data for the accused HBM products (HBM2E or HBM3). Ex. 1 at 384-390. On August 14, Micron admitted the error and provided a corrected Exhibit B3 after Netlist's repeated requests. But even the revised data is still incomplete and it does not match what has been disclosed in the total revenues of Micron's Exhibit B1. For example, the discrepancies are identified as follows:

| Total Revenues | DDR4 L4DIMMs | DDR5 DIMMs | HBMs |
|---|---|---|---|
| Exhibit B1 | ■■■ | ■■■ | ■■■ |
| Exhibit B3 | ■■■ | ■■■ | ■■■ |

There is a close to ■■■ that Micron has refused to explain. Moreover, Exhibit B3 tracks the financial data on a quarterly basis rather than a *per-sale* basis.

Exhibit B4 allegedly discloses the following "information" regarding Micron's qualification processes for a subset of the accused DDR4 LRDIMMs and DDR5 DIMMs:

■■■

The Court's order expressly required Micron to disclose "the individual(s) at those customers with whom Micron has negotiated the sale, or had any other discussions regarding the sale and/or

use of the Accused Products." Dkt. Exhibit B4 does not provide that information.

**II.     ARGUMENT**

**A.     Micron Should Be Held in Contempt for Violating the Discovery Order**

To show that civil contempt is warranted, a moving party must establish: "(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). "Intent is not an issue in civil contempt proceedings; rather, the question is whether the alleged contemnors have complied with the court's order." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987); *see also Chao v. Transocean Offshore*, 276 F.3d 725, 728 (5th Cir. 2002).

As detailed above, Micron has failed to comply with the Court's Order by failing to produce much of the required information by August 9, and its non-compliance is substantial.

***First***, Micron's financial data is incomplete and inconsistent. Micron completely failed to produce **any** "cost of goods sold" or "margin" for **any** accused HBM products by August 9. Micron's alleged "corrected" financial is still incomplete as reflected by the discrepancies of the reported revenues, particularly for the DDR5 products. *Supra* at 2.

***Second***, Micron has not produced "***a spread sheet***" showing sales records with respect to each of the Accused Products that shows the "product number, product name, product type, any other tracked product identifier, date of each sale, volume, price, revenue, final customer, recipient, the country from which the product is shipped, the country to which the product is shipped, ***cost of goods sold, margin***, and the location of the customer." Dkt. 123 (emphasis added). Instead, for the critical information of gross profit, revenues, and COGS, Micron has produced information that was calculated through an unknown methodology created for this case and connected to a particular product sale which has the effect of preventing any type of regression analysis. *See* Ex. 2 (2023-08-14 Corrected Exhibit B3).

During the parties' meet and confer, Micron asserted, for the first time, ███

██████████████████████████. However, Micron does not dispute it keeps a more granular data than ██████████████████████████████████████ Importantly, Micron did not disclose that it was unable to produce the required information on a per sale basis either at the last hearing or before the production deadline set in this Court's order. The ability to understand profit, margin, and COGs on a **per sale** basis is crucial in order to perform a regression analysis assessing the connection between product feature and price over time, which was also emphasized at the last hearing. *See* 2023-07-26 Hearing Tr. at 22:7-13 ("These individual part numbers may have different -- part numbers may have different speeds associated with them, and so within the product they give the sales price for 64 gigabyte LRDIMM, but that's generic without the specific part number - without a specific part number, and so we're not able to unpack the pricing differences between part numbers that are based on things other than size."). The failure to explain the methodology, to meet and confer in advance of the deadline, and to explore what is the best way of complying with the Court's order evinces a lack of respect for the process.

**Third**, for each sale of the accused products, Micron failed to produce information regarding "the individual(s) at those customers with whom Micron has negotiated the sale, or had any other discussions regarding the sale and/or use of the Accused Products." During the parties' meet and confer on August 14, ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████ ██████████████
████████████ ██████████ ████████████████████████████████████████████
██████████████████ *See* Ex. 1 at 268 (Exhibit B1). Micron also alleges Exhibit B4 Column 4 ████████████████████████████████████████████████████████████████████████
████████████████████████ ████ ████████████████████████████████████

Although it did not bother to meet and confer on the subject before the deadline if the

- 4 -

Court's order could not be complied with, Micron now claims "Micron has provided every name that exists on its sales database. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

██████ Micron cannot produce what it does not have." Ex. 3 (2023-08-15 Park Email). To be clear, it is impossible for there not to be a sender for an order and a recipient for a bill. The ███████████████████████████████████████████████████████████████

███████████████████████████████████. Micron was obligated by the Court to meet and confer in advance of the deadline on this issue, not just engage in self-help. Micron cannot both maintain that a product is not sold or offered for sale in the United States and at the same time refuse to produce the documentation that confirms this issue. It is a basic question of due process.

*Fourth*, for each accused product, Micron has not identified the "documents regarding customer's approval or product qualification which occurred in the U.S. for any of the accused products that Micron does not consider are subject to Netlist's infringement claim (without conceding the validity of the claim)."[1] As an initial matter, only ███████████████████████

███████████████████████████████████████████████. *See* Ex. 1 at 391 (B4). But it does not disclose the specific date when each qualification occurred; it does not disclose the customers' representatives in charge of such process and their locations; and it only ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████).

At the meet and confer, Micron stated that it interpreted "qualification" narrowly to mean the physical "testing" of the products by its customers. Micron also stated that it produced "████

---

[1] According to the Court order, "If Micron concedes the products are already relevant to the claim and is reporting the sales for use in damages calculations, no additional production is necessary." Micron has not expressly conceded that every sale of every accused product is relevant to Netlist's damages claim.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████." Ex. 3 (2023-08-15 Park Email). None is correct. First, qualification is a dynamic process that involves not only testing of sample products but also inquiries and communications between Micron representatives and its customers' representatives regarding the performance, operation, pricing, and supply of the accused products, as well as the customers' decision making of awarding a design win or purchasing a specific category of Micron's products—as discussed at the hearing:

> THE COURT: So tell me what you mean by "qualification-related documents."
>
> Zhao: So it could be in several formats. For example, it could potentially be reports generated by either side exchanged between the customer and Micron which indicates where the testing happened, and potentially could be a specific document tracking the qualification process for each of Micron's accused products, identifying the individuals in charge, and the point of contact from the customer's side. . . . [It]'s our understanding, for a sale to occur, Micron provides samples to its customers and then the customers conduct testing and analysis of the products, and if it meets the customer's standard, the customer will agree to make a large volume of purchase of the products. So that's the process we're talking about.
>
> THE COURT: All right. So you're talking about an approval process by the customer.

2023-07-26 Hearing Tr. at 42:24-43:19.

Micron's counsel also understood that the issue was not the narrow question of where the physical act of testing occurred, but who was part of the sales process conversation:

> I think we've been maybe talking on both sides of -- different pages as to what the word "qualification" means. Counsel explained that they are referring to "qualification" in terms of--this is my understanding--of like new design process when you're selling to a customer, if there's a design win there for the customer before they start buying products. So I'm not aware of those, but we're going to look for those as well.

2023-07-26 Hearing Tr. at 36:6-13.

Netlist sought documents relating to the entire approval process, with a particular focus on where these conversations and decision making occurred. Micron's Exhibit B4 failed to disclose this information or otherwise provides the Court's ordered document production. While Micron asserts that it produced ████████████████████████████████

- 6 -

██████████," it cannot point to a single example by bate numbers. What is needed is that for those transactions with U.S. based companies that Micron is contended are not U.S. sales, the data on the approval/qualification process needs to be produced. It is the actual sender and recipient on the correspondence that are critical. Inquiring into the qualification process is important because it form the evidence of whether an offer to sell or sale occurred in the United States. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1309 (Fed. Cir. 2015) (in determining whether sales occurred in US, considering , among others, evidence showing where "all the activities related to designing, simulation, testing, evaluating, qualifying the chips by [defendants] as well as by its customers" occurred and where "during its sales cycle, [defendant's] engineers assist its customers in implementing its solutions into their product").

Micron did not represent that it produced such documents relating to DDR4 LRDIMMs or DDR5 DIMMs. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. An example will suffice.  If Micron made a presentation to a customer in the United States that discusses the features and/or pricing of the product, and that person was in the United States, this would be evidence of an offer to sell in the United States. This requires Micron to produce not just a random presentation, but the intact correspondence or meeting minutes relating to the presentation. The documents to be produced must show the where, when, or how Micron customers' conducted the qualifications or awarded the design wins, and are otherwise insufficient to meet the Court's order to "produce documents regarding customer's approval or product qualification. . . ." Dkt. 123.

As an example, Micron's Exhibit B4 only disclosed a single entry about the qualification status of ████████████████████████████, although its sales record indicates sales of other HBM designs (e.g. ████████████████████████). Ex. 1 at 394.  Micron claims that for

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

At the meet and confer, Micron admitted that what this really meant is ████████████

████████████████████████████  Micron did not disclose the identities and locations of the Micron and ██████ engineers involved in discussions. But qualification is not just the physical act of testing. As Micron's counsel acknowledged it is the exchange between engineers leading up to the design win as well as the customers' approval of Micron's accused products. *Supra* at 6.

Micron cannot carry its burden to prove it was impossible to comply with the Order. *First*, Micron has in its possession the Court ordered documents and information. Before this Court, Micron admitted it has the requested financial data even though they are tracked in a different format. *See* 2023-07-26 Hearing Tr. at 40: 17-22 ("[The Court]: Is there anything else in that section that you can articulate an objection to? MR. RUECKHEIM: I don't believe so, Your Honor. I will say that, you know, much of this you've already seen has been produced as far as the cost of goods sold, and that's tracked in a different format.").[2] Micron does not dispute it has information or documents showing the contact and locations of representatives of its customers, but only stated it did not track them in the format disclosed in Exhibit B1. *Second*, the Court already allowed Micron to file a motion to show good cause before August 9 if "Micron after diligent effort, recognizes it will be unable to produce this information by the above 2-week deadline." Dkt. 123. Micron never filed such a motion or otherwise indicated that it had any difficulty complying with the Order. *See United States v. Rylander*, 460 U.S. 752, 757 (1983) ("[The] defendant has a burden of production" showing compliance with the court order is impossible).

Nor can Micron avoid civil contempt based on any purported "reasonable efforts to

---

[2] Even if Micron indeed does not have margin, profit, or COGS on a sale-by-sale basis, it must produce, in its original file, all the granular financial data Micron has.

comply" or the existence of "mitigating circumstances." For example, Micron's omission of information relating to HBM products on August 9 and failure to provide the correct financial data as of today are completely inexcusable. Further, this Court entered the Discovery Order after two hearings on Netlist's motion to compel. During the last hearing on July 26, Netlist agreed to withdraw numerous relevant requests as a compromise so that Micron can produce a narrower scope of discovery critical to Netlist's damages claims. This Court also spent a significant amount of time going over each of the requests in Netlist's motion to compel and identified the specific items that Micron must produce by August 9 when Micron's corporative representative was present. Dkt. 73; Dkt. 123; *see also* 2023-07-26 Hearing Tr. at 40: 13-16 ("The Court: And I will strike the clause at the end which says 'and any other information Micron tracks with respect to the products.' I want to be specific about what we're ordering."). Micron's denial of knowledge of the specific scope of the Court's order has no connection to reality. Moreover, Micron failed to identify documents or information it does not track or keep in its ordinary course of business during the July 26 hearing or the parties' various meet and confers, but waited until *after* the Court's ordered deadline passed and *after* Netlist agreed to withdraw other discovery requests to raise the argument that it does not track the contact information of customers' employees involved in sales or negotiations of the accused products for the first time on August 14. Micron's sharp practice should not be an excuse for its failure to comply with the Court's order.

      **B.**    **Evidentiary Sanctions on Micron Are Appropriate**

District courts have "the inherent power to enforce compliance with their lawful orders through civil contempt." *United States v. Smith*, 2018 WL 4524123, at *3 (E.D. Tex. Sept. 13, 2018); *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "[Rule] 37(b) empowers the courts to impose sanctions for failures to obey discovery orders." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). This Court can "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action" and "prohibit[] the

disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i), (ii).

Courts in this District have imposed evidentiary sanctions in cases where, as here, a party failed to comply with a discovery order. *E.g. Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*, 2023 WL 4936210, at *4 (E.D. Tex. Aug. 2, 2023) ("**GRANTS** the motion such that the sales figures in the IDC reports relied upon by Plaintiff's expert shall be deemed established and may not be attacked by Defendants"); *Denman Springs, LLC v. L.G. Burke, Inc.*, 2021 WL 2794697, at *2 (E.D. Tex. Apr. 20, 2021) (because the defendants failed to comply with the Court's order for document production, holding "it will be taken as established" that defendants "failed to pay the vendors mentioned in Request Numbers 4, 7, 10, 13, 16, 19, and 22").

Micron's failure to comply with the Court's order justifies a proportional evidentiary sanction. Micron's delay in producing its sales and financial data and qualification-related documents, and now only producing a subset of the court-ordered information or documents, has impeded Netlist's ability to conduct discovery into the issue of U.S. sales. As such, Netlist asks the Court to take as an established fact that Micron's sales of the accused products that are identified on Micron's Exhibit B1 as (1) ███████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████, as being U.S. sales under 35 U.S.C. § 271(a), such that those sales are subject to damages calculations in this action.

This sanction is fair and narrowly tailored, as it only captures sales that **Micron** identifies internally as having a direct connection to the United States. Further, Micron waited to produce some of its qualification information—which is still incomplete—until after the cutoff for serving written discovery had passed. Thus, Netlist had no opportunity to serve interrogatories or RFAs regarding the produced information (or any further information Micron produces subject to the

- 10 -

Court's ruling on this motion), nor will Netlist have a chance to depose Micron's witnesses on any written discovery Netlist could have sought. Moreover, Micron's failure to identify customer information regarding sales, negotiations, or qualification (as required by the Court) has prevented Netlist from seeking third party subpoenas from those customers to explore the qualification issue. *See Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 2869332, at *2 (E.D. Tex. May 18, 2017) (purchase agreements, POs, design, locations of development, marketing, and sales and "total 'design wins'" are all relevant to U.S. sales analysis); *CMU.*, 807 F.3d AT 1309 (design wins and qualification relevant to U.S. sales analysis).

Treating these sales that Micron identifies internally as connected to the United States as "U.S. sales" is further appropriate because all of those customers are headquartered in the U.S. This is consistent with Micron's own admissions, as well as case law from this district and the Federal Circuit. Micron stated that ███████████████████████████████████████████████████████████████████████████████████████████████ Ex. 1 (Micron's Third Supp. Rog Responses) at 98. A reasonable jury could find that Micron's sales of the products to customers headquartered in the United States are "U.S. sales" for damages where substantial sales activities—including the price negotiation, contract formation, customers' qualification of the products, and submission of purchase orders—are all presumed to have occurred in the United States. *See CMU*, 807 F.3d 1288 (even though the products at issue were "made and delivered abroad, and never imported into the United States," holding a reasonable jury could find those products are proper damages base where "the activities related to designing, simulating, testing, evaluating, qualifying the chips by Marvell as well as by its customers occur[ ] in the United States"); *Godo*, 2017 WL 2869332, at *2 (finding a reasonable jury could conclude sales occurred in the United States based on evidence showing: (1) "the overwhelming majority of Defendants' design, development, marketing and sales activities occur in the United States"; (2) "Master Purchase Agreements entered into in the United States govern the terms of purchase

orders entered into outside the United States, and at least some Master Purchase Agreements identify specific products and prices"; (3) "Purchase orders entered into overseas may be processed and maintained by Broadcom's domestic sales team"; (4) "U.S. sales teams provide support to Defendants' U.S. customers, and Broadcom categorizes its sales information and activity for internal purposes based on the location of end customers"; (5) "Defendants track sales commissions for sales of products made overseas as if they were domestic sales"; (6) "Defendants track total 'design win' revenue based on the location of the end customer"); *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, 2019 WL 4392525, at *5 (E.D. Tex. June 11, 2019) ("[A] plaintiff might prove that a product made in the United States was sold abroad, that a domestic sale to a regular customer of plaintiff supplanted foreign sales that plaintiff would have made to that customer, or that a product imported into the United States was subsequently sold internationally. Each of these instances would constitute infringement under § 271(a). . .").

*Third*, although a finding of bad faith or willfulness is not required for the evidentiary sanction Netlist seeks, Micron's improper discovery behavior provides another justification to impose the requested remedy to address the harm to Netlist and to deter similar misbehaviors. *Smith*, 685 F.3d at 488 ("[l]esser sanctions do not require a finding of willfulness"); *Chilcutt v. United States*, 4 F.3d 1313, 1321 (5th Cir. 1993) (Rule 37 is intended to "punish[] the party which has obstructed discovery and deter[] others who would otherwise be inclined to pursue similar behavior"). Micron's non-compliance with the Court's discovery order is not a stand-alone episode. Indeed, throughout the entire litigation, Micron has made every attempt to delay and obstruct Netlist's discovery of relevant information. For example:

- Micron failed to produce any sales or financial documents before the Court's deadline for substantial completion of document production. 2023-05-30 Hearing Tr. at 12:15-17 ("The Court: Yes. Substantial completion. And I, perhaps, don't understand that date the way [Defendants] do. I don't think that it is the goal to deliver the discovery just before the date for substantial completion of discovery.").
- Micron improperly withheld source code material for its accused HBM3. Dkt. 49

- Micron refused to produce clearly relevant sales, financial, marketing, and technical documents, as well as license agreements. Dkt. 73; Dkt. 74; Dkt. 131, Dkt. 137

- Micron insisted on the presence of its employee during Netlist's review of Micron's source code materials. Dkt. 90. The Court ordered Micron to change its practices. Dkt. 99.

- Micron refused to provide the original, authoritative copies of RTL codes and improperly designated PDFs and Power Point documents showing the technical operation and function of Micron's accused products. Dkt. 132.

- Micron refused to disclose the basic information of the suppliers of key components of each of the accused products. Dkt. 133.

Micron's improper discovery practice is further reflected in its repeated refusal to engage in meet and confers with Netlist until Netlist shared and filed its motions to compel. *See* Dkts. 131, 133, 137 (explaining Micron consistently ignored Netlist's discovery requests until Netlist shared draft motions to compel with Micron). Micron also attempted to delay discovery by denying knowledge of Netlist's discovery requests despite Netlist's repeated explanations and attempts to resolve the parties' discovery disputes, which this Court found unconvincing. *See* Tr. (2023-07-26) at 30:7-8 ("The Court: Well, I'm satisfied that there is notice to Micron as to what is being sought.").

### III. CONCLUSION

For the reasons stated above, Netlists' motion should be granted.

Dated: August 16, 2023

Respectfully submitted,

*/s/ Jason Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)

- 13 -

jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Andrew J. Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on August 16, 2023, a copy of the foregoing was served to all counsel of record via email.

*/s/ Jason Sheasby*
Jason G. Sheasby

## CERTIFICATE OF CONFERENCE

I hereby certify that Netlist requested a lead to lead meet and confer and provided the meeting invite to Micron's lead and local counsel. Counsel for Micron claimed it was available on August 14, 2023. Netlist's lead counsel appeared at the meet and confer, and Micron's lead counsel did not show. Micron's counsel who did attend the call participated in the meet and confer and expressed Micron's view that it disagreed. Netlist subsequently shared a draft of this Motion with Defendants. Defendants refused to fully address the deficiencies identified in Netlist's motion. The parties are at an impasse.

*/s/ Jason Sheasby*
Jason G. Sheasby

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Jason Sheasby*
Jason G. Sheasby