**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-CV-203-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC., | ) | |
| MICRON SEMICONDUCTOR | ) | ██████████████████ |
| PRODUCTS INC., MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF NETLIST, INC.'S REPLY IN SUPPORT OF MOTION
TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD
IN CONTEMPT FOR VIOLATING THE COURT'S JULY 26, 2023
ORDER (DKT. 146)**

## TABLE OF CONTENTS

                                                                                                 **Page**

I.     Costs of Goods Sold, Profits, and Margins ...................................................................... 1

II.    Individuals at Micron Customers with Whom Micron Negotiated the Sale ........................... 1

III.   Qualification Documents .................................................................................................... 3

IV.    Netlist's Proposed Evidentiary Sanction Is Appropriate ..................................................... 4

V.     Netlist Properly Complied with the Local Rules ................................................................. 4

## I.      Costs of Goods Sold, Profits, and Margins

Micron admits that significant discrepancies exist between the revenues Micron disclosed on a transaction-by-transaction basis in Exhibit B1 on the one hand, and its costs and profits identified in Exhibits B2 and B3 on the other. *See* Dkt. 162 (Opp.) at 4-5. Micron claims these differences exist because Micron reported sales and costs and profits data in different formats. *Id.* The Order expressly requires Micron to produce the data in a ***single*** spreadsheet, on a product-by-product basis, for each sales record:  "Micron shall produce ***a spread sheet*** showing sales records with respect to ***each of the Accused Products***, including but not limited to the product number, product name . . . **price, revenue**, . . . **cost of goods sold, margin**, and the location of the customer." Dkt. 123 at 1. Micron's assertion the "Court's order did not require Micron to generate and provide costs and profits information at the level of granularity Netlist demands," Opp. at 6, plainly ignores the clear language of the Order.

Micron now states that it ████████████████████████████████████████ ████████████████████████ and that is why Micron failed to follow the Order. But that is not sufficient basis to justify Micron's noncompliance. The Order afforded Micron the opportunity to "file a motion establishing good cause for additional time before the deadline," if "Micron after diligent effort, recognizes it will be unable to produce this information by the above 2-week deadline." Dkt. 123 at 2. Micron never did so. Even if it is true that Micron keeps certain sales information in a different format, Micron should, at a minimum provide the raw numbers in the database so that Netlist could generate matching data. As Netlist pointed out at the July 26 hearing, it is important to identify the correlation between the specific part numbers and Micron's financial data—"without a specific part number" correlated to the financial data, ████████ ████████████████████████████████████████████████████████████████ ████████████████████ *See* Tr. at 22:6-23:3.

## II.     Individuals at Micron Customers with Whom Micron Negotiated the Sale

Micron asserts it "produced its data as kept in the ordinary course of business," which

███████████████████████████████████████████. By this, Micron means what it keeps

in whatever random database it accessed. According to Micron, that is sufficient to comply with

the Court's Order. Not so. The Court ordered Micron to disclose:

> ***For each customer that has purchased any of the Accused Products***, the individual(s) at those customers with whom Micron has negotiated the sale, or had any other discussions regarding the sale and/or use of the Accused Products. Dkt. 123 at 1.

Micron could speak briefly to the sales staff and identify the individuals involved and provide this

information, or access the database that tracks commissions for the sales team. The idea that

Micron cannot determine what members of the sales team communicate with a customer defies

logic. Micron cannot unilaterally revise the Court's Order's language for its convenience. ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████. Micron did not produce documents or identify the specific sales

employees or representatives at these customers who have negotiated the sale with Micron.

Micron appears to suggest that Exhibit B1 is the only record it has for customer contact. Micron

has not claimed that it investigated whether Micron's sales and marketing teams maintain other

records and historical contacts of Micron's customers. In short, it has not demonstrated any

"diligent effort" as required by the Court.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ :

████████████████████████████████████████████████████████

### III.     Qualification Documents

The Court ordered Micron to produce "documents regarding customer's approval or product qualification." Micron instead produced a summary document, clearly created for this litigation, ████████████████████████████████████████████████████████ ████████████████████████████████ . As Netlist repeatedly explained, how and where qualification occurred is relevant to determining whether sales of a specific product occurred in the United States. Dkt. 146 (Motion) at 6-7. Exhibit B4 does not disclose such information.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Micron claims that because its lawyer made a vague reference to "700 documents" it produced as allegedly relevant to qualification, without any identification of what those documents are or why they are relevant, Micron has somehow met its burden. Opp. at 7-8. Notably, Micron has not identified a single such document for the Court nor explained its relevance. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



. However, Micron has not produced any of these records.

Notably, Micron never provided any corporate representative's affidavit or declaration as to what are and what are not kept in Micron's ordinary course of business. All that Micron has submitted in its briefing is simply attorney argument. *See, e.g.*, Opp. at 5-6 (conclusively asserting

The Court should request Micron's representatives in charge of the qualification, finance, and sales data to testify telephonically at the hearing as to what records exist and what do not exist.

**IV.     Netlist's Proposed Evidentiary Sanction Is Appropriate**

Micron mistakenly asserts that "bad faith" is required for the Court to issue the evidentiary sanction Netlist seeks. *See* Opp. at 8. Netlist seeks sanctions under both Rule 37 and this Court's inherent power. *See* Motion at 9-10. Indeed, Micron's own cited authority, *Diamond Consortium, Inc. v. Manookian*, explained that in exercising Rule 37 sanctions, "[a] finding of bad faith or willful misconduct is required to support *severe sanctions* such as an order *striking pleadings or dismissing a case*," but that is not required for "[l]esser sanctions," such as evidentiary sanctions Netlist seeks. 2017 WL 3301527, at *6 (E.D. Tex. Aug. 3, 2017) (emphasis added); *see* Mot. at 12.

**V.     Netlist Properly Complied with the Local Rules**

Micron argues that "Netlist never once requested a lead and local meet and confer," and suggests that Netlist failed to comply with the meet-and-confer requirements under the local rules. Opp. at 8-9. Micron's statement not only misrepresents the parties' communications but also contradicts its own position and understanding of the instant motion to show cause.

Netlist repeatedly asked Micron to meet and confer and made it clear that it intended to

file a motion to seek the Court's intervention given the impending close of fact discovery. For example, in its August 12 email, Netlist's counsel identified the deficiencies in Micron's discovery responses and stated: "Netlist intends to seek an order to show cause why Micron should not be held in contempt. If Micron opposes Netlist's motion, please let us know and provide your availability on Monday for a meet and confer." Ex. 146-04 at 4. Hearing no response, Netlist followed up the next day and repeated its intent to seek the court's intervention. *Id.* at 3.

Micron clearly understood that Netlist sought a lead-and-local meet and confer. Netlist extended its meeting invite to Micron's lead and local counsel, which Micron's lead counsel accepted. *See* Ex. 1 (McMillen, Shanea on behalf of; Melsheimer, Tom Accepted). Netlist's lead and local counsel both attended the call on August 14, while only one Micron attorney joined. Netlist explained during the call that it was intended as a lead-local meet and confer, and Netlist understood Micron's lead counsel had accepted the meeting invite, but did not make an appearance. Later, Netlist shared a draft motion with Micron and stated that it intended to file the motion unless Micron agreed to address the identified deficiencies. Dkt. 146-4 at 3. In response, Micron simply reiterated its position that it fully complied with the court's order and never raised any objections to Netlist's motion on the ground that its lead and local counsel could not have joined the meet and confer. *Id.* at 1. Netlist thus filed the Motion next day. Dkt. 146.

In any event, Netlist's motion asks the Court to find that Micron is in contempt and seeks evidentiary sanctions. Micron took the position that Netlist's motion is not a discovery motion that would require a lead-local meet and confer. *See* Ex. 2 ("Candidly, I'm not sure you actually need a page limit extension for this motion since it's not presented as a typical discovery dispute, but as a motion to show cause."). Micron's own briefing is consistent with that view, as Micron did not seek leave with the Court to file the brief exceeding the 7-page limit set for discovery-related motions. Dkt. 162. Micron's allegation of Netlist's purported failure to comply with the local rules in an attempt to shift the Court's focus from the merits is not supported by the record.

Dated:  September 8, 2023

Respectfully submitted,

*/s/ Jason Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Andrew J. Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 8, 2023, a copy of the foregoing was served to all counsel of record via email.

*/s/ Jason Sheasby*
Jason G. Sheasby

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case

*/s/ Jason Sheasby*
Jason G. Sheasby