# EXHIBIT 3

| | |
|---|---|
| **From:** | Zhao, Yanan |
| **Sent:** | Monday, July 24, 2023 12:24 PM |
| **To:** | Park, Ryuk; Winston-Micron-Netlist; 'andrea@wsfirm.com'; ce@wsfirm.com; Wesley Hill; Quan, Liberty |
| **Cc:** | Sheasby, Jason; Zhong, Annita; jtruelove@mckoolsmith.com; Tezyan, Michael; Werner, Tom; ~Baxter, Samuel; #Netlist-Micron [Int] |
| **Subject:** | RE: Netlist v. Micron, Case No. 22-cv-0203 (EDTX): SERVICE - Micron's Document Production |

Ryuk,

Following up on our call last week, here below is a summary of our understanding of the parties' positions regarding Netlist's current document production requests and the outstanding issues for the Court to address during the July 26 hearing.

**Micron Either Produced or Has Committed to Producing the Following Categories of Documents Immediately**:

1. Micron states it will produce its organization charts.
2. Micron will produce the industry studies, analyses, reports, and forecasts of the memory market prepared by Micron or others in its possession.
3. Micron represents that it has produced all master purchase agreements from its customers; but Micron also states it will conduct further investigation and produce additional agreements, if any, in its possession.
4. Micron states that it does not have a lot of marketing materials for DRAM products in its possession, but will conduct further investigation and produce those as soon as possible. Micron also states that it [redacted]
5. Micron states that it [redacted]
6. In response to Netlist's original RFP Nos. 23, 27, 39, 52, and 68, [redacted]
7. Micron will supplement its interrogatory responses before the depositions.

**Outstanding Issues**

1. Micron states that it has collected the relevant patent licenses, settlements, and covenants not to sue and will produce them immediately. We also asked Micron to produce/identify "the list of patents licensed by any party as part of each agreement." Please explain what Micron contends are relevant license agreements and what it will produce.
2. Micron must produce worldwide sales and financial data for all of the products accused of infringement. Specifically, Micron should produce the global sales records as kept in Micron's ordinary course of business that disclose additional information including (1) location(s) where the products were manufactured and/or shipped from; (2) PO numbers; (3) Invoice numbers; (4) offices/branches where the PO were submitted; (5) MPN Design ID or Die design ID; (6) suppliers of key components including DB, RCD, PMIC, and HUB; (7) COGS; and (8) profit margin.

    Micron's interrogatory responses or exhibits attached thereto are not sufficient to address this issue. Micron admits that it has such requested information in its possession. As explained in our previous correspondence, we disagree with Micron's contention that global sales data is irrelevant. This has been confirmed by the N.D. Cal. case, which rejected Micron's same position that only products it shipped to the United States are subject to discovery.

    We also request that Micron must produce the native files/ documents of its sales/financial data as stored in its ordinary course of business. Micron does not dispute the relevance of such data and cannot show it is overly burdensome to produce such documents. Micron argues that the granular data stored in Micron's ordinary course of business will be attorney work product if downloaded from Micron's software. We disagree with such contention and asked Micron to provide any case law supporting its position. We have not heard any response from you and will seek guidance from the Court to resolve the parties' disputes.

    We understand that Micron has produced certain financial information for all of its accused DDR4 LRDIMM and DDDR5 products purchased by customers headquartered in the United States through its Exhibit B2. In any event, Micron should produce the same information for its sales of accused HBM products to U.S.-based customers.

3. Suppliers of key components of Micron's accused products, such as DB, RCD, PMIC, and HUB

    Micron agreed to investigate whether it can provide information showing what percentages or numbers of the key components used in Micron's accused products are supplied by each of the suppliers. Please confirm Micron will disclose such information or produce additional documents that can provide such information.

4. Shipment Records

   As a compromise, we proposed that Micron produce the shipment records of the following: (1) all products that have a final destination in North America and South America other than those shipped to the United States; and (2) all the accused products manufactured in Mexico. Please confirm Micron will produce such requested documents.

5. Invoices and Purchase Orders

   Micron contends that the production of all invoices/purchase orders for the accused products would be overly burdensome. Netlists asks that Micron should produce POs submitted to its U.S. offices and Micron will also consider producing samples of purchase orders. Please confirm if Micron can produce: (1) POs submitted to Micron's U.S. offices, including those offices identified on Micron's website; (2) POs submitted by Micron's customers headquartered in the United States; (3) sample POs that can show all types/versions of POs used by or submitted to Micron for the accused products.

6. Qualification of Micron Products

   As explained during our meet and confer, Netlist seeks documents showing the qualification/testing by Micron customers of the accused products, including: (1) any reports generated by Micron's customers: (2) documents that can show where such qualification or testing occurred; (3) documents showing locations of Micron offices or groups assisted any clients in the qualification process. Please confirm Micron will produce such requested information and documents in its possession.

7. Locations of Micron's Design/Development/ Sales/Marketing/Customer Support Relating to the Accused Products and Other Documents Relating to U.S. Sales

   Micron represents that [REDACTED] o the extent Micron cannot identify each employee's involvement in the design, development, sales, and marketing of its accused products, Micron should identify and/or produce relevant documents showing: (1) where the marketing materials of Micron's accused products are prepared; (2) how sales commissions for Micron sales employee/agent are tracked, including whether they the record is stored in the United States or constitutes as U.S. sales; (3) locations where Micron provided product support to its customers (including any assistance for the customers' product qualification).

Please let us know if Micron agrees to the above-mentioned compromise.

Thanks,
Yanan