# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-203-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC., | ) | |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC., MICRON | ) | |
| TECHNOLGY TEXAS LLC | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF NETLIST, INC.'S MOTION TO STRIKE MICRON DEFENDANTS' AFFIRMATIVE DEFENSE OF PATENT MISUSE

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 2

III.    MICRON'S NEW PATENT MISUSE DEFENSE IS PROCEDURALLY
        IMPROPER ........................................................................................................... 4

        A.     Micron Failed To Seek Leave .................................................................. 4

        B.     Even If Micron Had Sought Leave, It Should Have Been Denied ............ 5

IV.     MICRON'S PATENT MISUSE DEFENSE IS FACIALLY DEFICIENT ........... 8

        A.     The SK hynix License Does Not Limit Netlist's Ability To Offer
               Licensing Terms ....................................................................................... 9

        B.     Portfolio Licensing Is Not Patent Misuse ............................................... 11

        C.     Micron Fails To Allege That Netlist Has Market Power .......................... 12

        D.     A Breach of FRAND Obligations Does Not Constitute Patent Misuse ... 14

        E.     An Unconsummated License Does Not Constitute Patent Misuse ............ 15

V.      CONCLUSION .................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrews v. Rosewood Hotels & Resorts,*
LLC, No. 3:19-CV-01374-L, 2021 WL 4709734 (N.D. Tex. Oct. 8, 2021) ......................................7

*Apple Inc. v. Samsung Elecs. Co.,*
2012 WL 1672493 (N.D. Cal. May 14, 2012)......................................................................14

*Apple v. Samsung,*
2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ....................................................................13

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic,*
65 F.3d 1406 (7th Cir. 1995)..........................................................................................10

*Bob Daemmrich Photography, Inc. v. Scholastic, Inc.,*
No. 1:15-CV-1150-RP, 2018 WL 6265025 (W.D. Tex. Aug. 22, 2018).............................8

*Broadcom Corp. v. Qualcomm Inc.,*
501 F.3d 297 (3d Cir. 2007)............................................................................................15

*ChriMar Sys. v. Cisco Sys.,*
72 F. Supp. 3d 1012 (N.D. Cal. 2014)..............................................................................14

*Cyberonics, Inc. v. Zabara,*
No. 12-cv-1118, 2013 WL 3713432 (S.D. Tex. July 12, 2013) ......................................4, 5

*EEOC v. Service Temps Inc.,*
679 F.3d 323 (5th Cir. 2012)............................................................................................6

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.,*
No. CV 15-634-SLR-SRF, 2017 WL 750700 (D. Del. Feb. 27, 2017) .........................12, 15

*U.S. ex rel. Graves v. ITT Educ. Servs., Inc.,*
284 F. Supp. 2d 487 (S.D. Tex. 2003), *aff'd,* 111 F. App'x 296 (5th Cir. 2004)................9

*Guerrero Mendoza v. A&A Landscape & Irrigation, LP,*
No. 4:12-CV-562, 2014 WL 12884089 (E.D. Tex. Nov. 3, 2014) ....................................8

*Honeywell Int'l Inc. v. MEK Chem. Corp.,*
2018 WL 6737514 (N.D. Tex. July 5, 2018)......................................................................12

*Illinois Tool Works Inc. v. Independent Ink, Inc.,*
547 U.S. 28 (2006).....................................................................................................12, 13

*IP Holdings LLC v. AT&T Corp.*,
No. 2:16-CV-588-WCB, 2017 WL 3394480 (E.D. Tex. Aug. 8, 2017)................................................7

*JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*,
823 F.3d 1006 (5th Cir. 2016) ....................................................................................................10

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
677 F.2d 1045 (5th Cir. 1982) ......................................................................................................8

*MacLean v. McCarroll*,
No. 4:08-CV-059, 2009 WL 1940105 (E.D. Tex. July 2, 2009)..........................................................6

*McGinley v. Luv n' care, Ltd.*, No. 3:17-CV-00821, 2023 WL 3733896 (W.D. La. May
30, 2023................................................................................................................................5

*No Spill LLC v. Scepter Canada, Inc.*,
2022 WL 1078435 (D. Kan. Apr. 6, 2022) .............................................................................. 10, 13

*Ocean State Physicians Health Plan, Inc. v.*
*Blue Cross & Blue Shield of Rhode Island*, 883 F.2d 1101 (1st Cir. 1989) ...............................10

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
106 F. Supp. 3d 369 (S.D.N.Y. 2015)............................................................................................15

*Orion Elec. Co., Ltd. v. Funai Elec. Co., Ltd.*,
2002 WL 377541 (S.D.N.Y. Mar. 11, 2002) ..................................................................................13

*Panoceanis Mar., Inc. v. M/V EULA B. DEVALL*,
No. CIV.A. 11-2739, 2013 WL 264616 (E.D. La. Jan. 23, 2013) ....................................................5, 6

*Rambus Inc. v. FTC*,
522 F.3d 456 (D.C. Cir. 2008) ....................................................................................................14

*Saint Lawrence Commc'ns v. Motorola Mobility LLC*,
2018 WL 915125 (E. D. Tex. Feb. 15, 2018)............................................................................12, 15

*Schlotzsky's, Ltd. v. Sterling Purchasing & Nat. Distrib. Co.*,
520 F.3d 393 (5th Cir. 2008)........................................................................................................12

*Smith v. EMC Corp.*,
393 F.3d 590 (5th Cir. 2004)..........................................................................................................6

*Sw. Bell Tel. Co. v. City of El Paso*,
346 F.3d 541 (5th Cir.2003)........................................................................................................5, 6

*Tech Pharma. Servs., LLC v. Alixa Rx LLC*,
No. 4:15-cv-766, 2017 WL 2911773 (E.D. Tex. Jan. 19, 2017) ........................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ........................................................................................................... 9

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
    No. 6:16-CV-00033, 2017 WL 11630433 (E.D. Tex. July 11, 2017) .................................. 4

*Traxcell Techs., LLC v. AT&T, Inc.*,
    No. 217CV00718RWSRSP, 2019 WL 13222791 (E.D. Tex. June 19, 2019) ...................... 6

*U.S. Philips Corp. v. Int'l Trade Comm'n*,
    424 F.3d 1179 (Fed. Cir. 2005) ................................................................................... 11, 12

*U.S. Philips Corp. v. Princo Corp.*,
    173 Fed. App'x 832 (Fed. Cir. 2006) ............................................................................... 12

*Virginia Panel Corp. v. MAC Panel Co.*,
    133 F.3d (Fed. Cir. 1997) ................................................................................................. 15

*Wade v. Cycle Mart, L.P.*,
    No. A-14-CV-00427-ML, 2015 WL 4404876 (W.D. Tex. July 17, 2015) ........................ 7

**Statutes**

35 U.S.C. §§ 271(a)-(c), and (f) ................................................................................................ 2

35 U.S.C. § 271(d) ............................................................................................................ 12, 13

**Other Authorities**

5A Wright & Miller, Federal Practice and Procedure § 1363 .................................................. 9

**Rules**

Fed. R. Civ. P. 12(f) .................................................................................................................. 8

Fed. R. Civ. P. 15 ...................................................................................................................... 5

Fed. R. Civ. P. 16(b) ................................................................................................................. 5

Fed. R. Civ. P. 16(b)(4) ............................................................................................................ 5

## I.  <u>INTRODUCTION</u>

Netlist, Inc. ("Netlist") moves to strike Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas LLC's (collectively "Micron") affirmative defense of patent misuse as plead in its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (the "Answer"). Dkt. 160. This defense is both procedurally improper and facially deficient.

First, Micron failed to seek leave to raise this new affirmative defense. Where a defendant seeks to add new defenses that do not merely respond to an amended complaint, leave is required. Here, Netlist's Second Amended Complaint ("SAC") contained a few narrow additions addressing Micron's indirect infringement. Micron's new patent misuse defense is not responsive to these amendments. Indeed, the defense has nothing to do with Netlist's allegations of indirect infringement at all. Instead, this defense allegedly relates to a license between Netlist and a third party, SK hynix (the "SK hynix License"). But Micron has not sought leave to amend, nor would leave be warranted. Micron has known about the SK hynix License since the beginning of this year, yet it waited until fact discovery was almost complete to raise patent misuse. To respond to Micron's new patent misuse defense, Netlist should be entitled to take extensive discovery, including from SK hynix who is not even a party to this action. As explained further below, adjudicating Micron's patent misuse defense would also require discovery into complex issues such as whether Netlist and SK hynix conspired to fix prices, whether Netlist has market power in any relevant market, whether the rates Netlist has sought for numerous patents that are not even at issue are "supra competitive," etc. Micron's unreasonable delay has deprived Netlist of this opportunity since discovery is now closed, nor would it be remotely practical to complete such discovery before this case is scheduled to be tried. Thus, Micron is not entitled to leave even if Micron had asked for it (which it did not).

Second, Micron's patent misuse defense fails as a matter of law for numerous reasons. This defense is predicated on a blatant misreading of the SK hynix License (which is incorporated by

reference into Micron's pleadings). Contrary to Micron's allegations, nothing in that license requires Netlist to charge a specific price to license its patents, nor does it require Netlist to license its patents only as a complete portfolio. But even if it did, this does not constitute patent misuse. Patent portfolio licenses are common, and absent special circumstances that Micron fails to allege are present here, a patent holder is not prohibited from requiring licensees to acquire rights to its entire portfolio as a condition of obtaining a license.

For these reasons and the reasons explained further below, Netlist's motion should be granted.

## II.   <u>BACKGROUND</u>

Netlist served its original complaint in this matter alleging infringement of six Netlist patents on June 13, 2022. Dkts. 4, 7-9. Netlist filed a First Amended Complaint on May 3, 2023. Dkt. 70. On July 28, 2023, Netlist sought leave to file the SAC. Dkt. 128. The proposed amendments were narrow in scope. They added allegations relating to Micron's indirect infringement of four of the patents-in-suit via contributory infringement and inducement. Dkt. 145 ¶¶ 100-101, 111-112, 122-123, 131-132.

These allegations were not new to the case. Netlist infringement contentions, which were filed on September 8, 2022, stated that "Micron has infringed and is infringing, directly and/or indirectly, both literally and under the doctrine of equivalents." Dkt. 57-04 at 2. The contentions also made clear that Netlist's "infringement allegations for each of the patents addressed in this disclosure include, without limitation, infringement under 35 U.S.C. §§ 271(a)-(c), and (f)." *Id.* at 2 n.1. In both its original complaint and the First Amended Complaint, Netlist specifically alleged induced and contributory infringement of the '506 and '339 patents, see Dkt. 4 ¶¶ 75–76, 89–90; Dkt. 70 ¶¶ 75–76, 89–90, but inadvertently omitted specific allegations of induced or contributory infringement claims as to the other patents-in-suit.

Netlist's SAC simply corrected this inadvertent omission. Micron did not oppose Netlist's request for leave to amend, Dkt. 140, and the Court granted this request, Dkt. 141. Micron filed its

Answer to the SAC on August 30, 2023. Dkt. 160. This was less than three weeks before the ultimate close of fact discovery. Dkt. 182 at 3.[1]

Micron's Answer, however, was not limited to responding to the narrow additions to Netlist's SAC regarding indirect infringement, of which Micron was on notice for nearly a year. Instead, Micron added an entirely new affirmative defense for patent misuse. Answer at 39 (¶¶ 58-59). This new affirmative defense alleged for the first time that Netlist had "leveraged market power created as a result of the [JEDEC] standard-setting process" through a "secret, anticompetitive agreement with its competitor SK hynix." Answer at 39 (¶ 58). According to Micron's Answer:

> Netlist's agreement with SK hynix determines the lowest price Netlist may offer Micron for a license based on a license including all of Netlist's patents, regardless of whether they are practiced by Micron or not. Netlist's agreement with SK hynix further assesses the acceptability of the price to be given to Micron based on all of Micron's memory product revenue across distinct product markets, rather than being limited to those alleged to infringe, thereby conditioning the grant of a patent license on the payment of royalties on products that do not use the teaching of any patent asserted by Netlist.

Answer at 39 (¶ 58).

Netlist had produced the SK hynix License to Micron on February 21, 2023, Sheasby Decl. ¶ 2, more than six months before Micron filed its Answer.



---

[1] At the time Micron filed its Answer to the SAC, fact discovery was set to end in 6 days.



### III.   MICRON'S NEW PATENT MISUSE DEFENSE IS PROCEDURALLY IMPROPER

####   A.   Micron Failed To Seek Leave

The Court should strike Micron's affirmative defense of patent misuse because Micron did not seek leave to amend. "[M]ost courts," including in the Fifth Circuit, "require leave to raise new allegations and defenses that go beyond responding to the new matters raised in the amended complaint." *Cyberonics, Inc. v. Zabara*, No. 12-cv-1118, 2013 WL 3713432, at *2 (S.D. Tex. July 12, 2013) (collecting cases); *see also Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-CV-00033, 2017 WL 11630433, at *2 (E.D. Tex. July 11, 2017) ("This Court agrees with other courts that have found that amended counterclaims are not permissible as a matter of right where plaintiffs' amended complaint did not add any new claims nor did it expand the scope or theory of the case.").

Here, Micron's Answer unquestionably "raise[s] new allegations and defenses that go beyond responding to the new matters raised in the amended complaint." *Cyberonics*, 2013 WL 3713432, at *2. As discussed above, Netlist's SAC merely added allegations of indirect infringement for some of the patents-in-suit in addition to the claims for direct infringement that were already at issue for these same patents. This "narrow amendment of the FAC, which asserted specific infringement allegations regarding the [technologies] already at issue in this case, does not change [Netlist's] claims or expand the theory of [its] case." *McGinley v. Luv n' care, Ltd.*, No. 3:17-CV-00821, 2023 WL 3733896, at *2-*3 (W.D. La. May 30, 2023) (quoting *Panoceanis Mar., Inc. v.* M/*V EULA B. DEVALL*, No. CIV.A. 11-2739, 2013 WL 264616, at *3 (E.D. La. Jan. 23, 2013)).

Micron's new patent misuse defense has nothing to do with Netlist's allegations regarding indirect infringement. Instead, this new defense is allegedly based on a license between Netlist and another entity, SK hynix, who is not even a party to this action. Answer at 39 (¶¶ 58-59). In sum, because Micron's new patent misuse defense clearly "exceed[s] the scope of [Netlist's] amendments," leave is required. *Tech Pharma. Servs., LLC v. Alixa Rx LLC*, No. 4:15-cv-766, 2017 WL 2911773, at *2 (E.D. Tex. Jan. 19, 2017). Micron, however, did not seek leave to assert this new defense. This alone requires that Micron's new patent misuse defense should be stricken. *Id.* at *2 ("The Court, in determining that Defendants' amended counterclaims require leave to file, must strike the counterclaims to enforce Rule 15.").

### B.    Even If Micron Had Sought Leave, It Should Have Been Denied

Even if Micron had requested leave as it was supposed to, leave would not have been warranted. Where a party seeks to amend its pleadings after the deadline to amend has passed, Rule 16(b) of the Federal Rules of Civil Procedure governs. *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir.2003). That rule requires a showing of "good cause." Fed. R. Civ. P. 16(b)(4). Here, the deadline to amend was May 3, 2023, Dkt. 43 at 4, and Micron did not raise its patent-misuse-defense

until August 30, 2023. Dkt. 160. Micron, however, could not have satisfied the good cause standard.

Courts consider four factors when determining whether good cause exists: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel.*, 346 F.3d at 546. Here each one of these factors weighs against granting leave.

First, there is no reasonable explanation for Micron's substantial delay in raising its patent misuse defense. Micron was aware of the SK hynix Agreement for more than six months before filing its Answer. As discussed above, Netlist produced the SK hynix Agreement to Micron on February 21, 2023, but Micron did not file its Answer until August 30, 2023. By this time, the close of fact discovery was six days away, and fact discovery ultimately closed on September 20, 2023. Dkt. 182 at 3. *Traxcell Techs., LLC v. AT&T, Inc.*, No. 217CV00718RWSRSP, 2019 WL 13222791, at *1 (E.D. Tex. June 19, 2019) (denying leave where "the motions for leave were filed near the deadline for fact discovery."). Micron "easily could have asserted its counterclaim . . . or sought leave to amend, long before this patently late date." *Panoceanis*, 2013 WL 264616, at *4.

This alone warrants denying leave. *See, e.g., Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) ("[A]t some point, time delay on the part of a plaintiff can be procedurally fatal."); *EEOC v. Service Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (district court did not abuse its discretion in finding that party's delay outweighed remaining factors). Indeed, Micron's delay in raising the patent misuse defense is particularly egregious here given that Micron never even disclosed this defense in response to Netlist's interrogatories. Netlist specifically asked Micron to identify the "Complete Basis for your affirmative defenses." Ex. B at 171. Micron's response made no mention of patent misuse at all. *Id.* at 171-172.

Second, Micron's patent misuse defense is of minimal importance. This is demonstrated by Micron's lack of diligence in bringing it. *MacLean v. McCarroll*, No. 4:08-CV-059, 2009 WL 1940105,

at *2 (E.D. Tex. July 2, 2009) ("[D]oubt is cast on the importance of the amendment because of its being raised at the eleventh hour."). Micron will not be deprived of an opportunity to defend itself if it is unable to raise the affirmative defense of patent misuse. Patent misuse is just one of eighteen affirmative defenses that Micron raises in its Answer. Dkt. 160 at 28-39. Micron devotes just two paragraphs to this affirmative defense, which as further explained below in Section IV, consist of conclusory allegations that are wholly without merit. Sycamore *See IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 3394480, at *3 (E.D. Tex. Aug. 8, 2017) ("What is called for in determining the importance of the amendment is not just an assessment of the theoretical effect of success on the defense being asserted, but a pragmatic judgment as to the likelihood that the newly asserted defense will succeed."). Regardless, even if Micron's alleged patent misuse were important, this would "not by itself absolve [Micron] of [its] responsibility to timely move to amend." *Andrews v. Rosewood Hotels & Resorts*, LLC, No. 3:19-CV-01374-L, 2021 WL 4709734, at *3 (N.D. Tex. Oct. 8, 2021).

Third, Netlist will suffer significant prejudice if Micron is able to insert a brand new affirmative defense at this late stage of the proceeding. Addressing Micron's new patent misuse defense will require significant discovery, including from a third party, SK hynix (Netlist's alleged co-conspirator). According to Micron's own allegations, the Court will have to adjudicate complex issues such as whether Netlist and SK hynix conspired to limit competition, whether Netlist has "market power" in any relevant market comparison to its competitors, and whether Netlist has sought "supra-competitive prices" for patents that are not at issue in this case and that it has not asserted against Micron. Affirmative Defenses ¶¶ 58-59. Fact discovery, however, is now closed. Micron's failure to raise its patent misuse defense in a timely manner has thus deprived Netlist of the opportunity to take discovery into the merits of this defense and develop a response. *Wade v. Cycle Mart, L.P.*, No. A-14-CV-00427-ML, 2015 WL 4404876, at *4 (W.D. Tex. July 17, 2015) (denying leave where "the

amendment would result in unfair surprise and prejudice to the Plaintiff because it would afford her no opportunity for discovery into the new affirmative defense, and would prevent her from adequately addressing the affirmative defense at the summary judgment stage.").

Fourth, this prejudice would not be cured by a continuance. This is "because [Micron's] delay itself is prejudicial." *Bob Daemmrich Photography, Inc. v. Scholastic, Inc.*, No. 1:15-CV-1150-RP, 2018 WL 6265025, at *1 (W.D. Tex. Aug. 22, 2018). Netlist is entitled to timely vindication of its patent rights. But "a continuance would simply increase the expense to both parties and delay resolution of this matter further." *Guerrero Mendoza v. A&A Landscape & Irrigation, LP*, No. 4:12-CV-562, 2014 WL 12884089, at *1 (E.D. Tex. Nov. 3, 2014).

In sum, the Court should not consider whether leave is warranted here because Micron has never sought it. But if it had, leave would not have been warranted given Micron's delay and the substantial prejudice to Netlist.

## IV.   <u>MICRON'S PATENT MISUSE DEFENSE IS FACIALLY DEFICIENT</u>

Even if Micron was allowed to raise its patent misuse defense, this defense is facially deficient and should be dismissed under Rule 12(f). Fed. R. Civ. P. 12(f). "A Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). As explained above, Micron alleges that the SK hynix License constitutes patent misuse because this license somehow "determines the lowest price Netlist may offer Micron for a license based on a license including all of Netlist's patents, regardless of whether they are practiced by Micron or not." Answer at 39 (¶ 58). These allegations are insufficient as a matter of law for multiple reasons.

First, Micron's allegations are predicated on a blatant misreading of the SK hynix License, which in no way dictates the licensing terms that Netlist can offer to other licensees. Second, even setting that aside, it is not patent misuse for a patent owner to license its patents as a portfolio only

(even when the portfolio contains both essential and non-essential patents). On the contrary, this approach is common and commercially more efficient. Third, there is no allegation that Micron and Netlist have entered into a license agreement, which is necessary prerequisite for patent misuse. Fourth, to the extent that Micron's affirmative defense is based on Netlist's alleged breach of FRAND obligations, such alleged breaches do not constitute patent misuse. Finally, even ignoring all of the above, Micron's patent misuse defense fails because there is no license between Micron and Netlist, and an unconsummated offer cannot constitute patent misuse.

**A.**   **The SK hynix License Does Not Limit Netlist's Ability To Offer Licensing Terms**

Micron's allegations regarding the SK Hynix License are flatly inconsistent with what that license actually says. Documents a pleading relies on are incorporated by reference. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety . . . in particular, documents incorporated into the complaint by reference."). The Court need not accept Micron's allegations where they are directly contradicted by the language of the SK hynix agreement itself. *U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 493 (S.D. Tex. 2003), *aff'd*, 111 F. App'x 296 (5th Cir. 2004) ("The court will not accept as true allegations that are contradicted . . . by exhibits attached to or incorporated in the pleading.") (quoting 5A Wright & Miller, Federal Practice and Procedure § 1363).

Contrary to Micron, █████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████



) (emphasis added).

This is not patent misuse. Most-favored-nation clauses are common in commercial contracts, including patent licenses. *See, e.g., JP Morgan Chase Bank, N.A. v. DataTreasury Corp.,* 823 F.3d 1006, 1009 (5th Cir. 2016) (quoting licensing provision, "[i]f DTC grants to any other Person a license to any of the Licensed Patents, it will so notify JPMC, and JPMC will be entitled to the benefit of any and all more favorable terms with respect to such Licensed Patents."). They "are standard devices by which buyers try to bargain for low prices, by getting the seller to agree to treat them as favorably as any of their other customers." *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic,* 65 F.3d 1406, 1415 (7th Cir. 1995). They do not constitute "price fixing." *Id.* On the contrary, courts have held that such standard agreements further competition rather than harm it. *Id; see also Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island,* 883 F.2d 1101, 1110 (1st Cir. 1989) ("'[A] policy of insisting on a supplier's lowest price—assuming that the price is not 'predatory' or below the supplier's incremental cost—tends to further competition on the merits and, as a matter of law, is not exclusionary.'"); *No Spill LLC v. Scepter Canada, Inc.,* 2022 WL 1078435, at *10 (D. Kan. Apr. 6, 2022) ("Most-favored-nation clauses" in a patent license "generally foster competition rather than hinder it") (granting motion to dismiss).

Contrary to Micron's allegations, ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████.

In sum, because Micron's patent misuse defense directly contradicts the actual language of the SK hynix License on which it relies, this defense must be dismissed.

### B.    Portfolio Licensing Is Not Patent Misuse

Micron's patent misuse defense also fails because none of the conduct that Micron accuses Netlist of constitutes patent misuse in any event. The crux of this defense appears to be that the SK hynix License requires Netlist to license its patents as a portfolio. This means, according to Micron, that any such license "must be based on a license including all of Netlist's patents, regardless of whether they are practiced by Micron or not" and regardless of whether they are standard essential. Answer at 39 (¶¶ 58-59). But even if this were true, it would not constitute patent misuse as a matter of law.

The Federal Circuit has explained that portfolio license arrangements do not raise the same anticompetitive concerns as would be raised by patent-to-product tying arrangements whereby a patentee requires a licensee to purchase its products in addition to taking a patent license. This is because "a package licensing agreement that includes both essential and nonessential patents does not impose any requirement on the licensee." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1190 (Fed. Cir. 2005). Such an arrangement "might mean that the customer will choose not to license the alternative technology offered by the patentee's competition, but it does not compel the customer to use the patentee's technology." *Id.* "The package license is thus not anticompetitive in the way that a compelled purchase of a tied product would be." *Id.*

Indeed, "package licensing 'reduces transaction costs by eliminating the need for multiple contracts and reducing licensors' administrative and monitoring costs,'" and "has the procompetitive effect of 'reducing the degree of uncertainty associated with investment decisions' because it 'provides the parties a way of ensuring that a single licensing fee will cover all the patents needed to practice a

particular technology.'" *U.S. Philips Corp. v. Princo Corp.*, 173 Fed. App'x 832, 834 (Fed. Cir. 2006) (quoting *Philips*, 424 F.3d at 1192-93). Accordingly, district courts, including this Court, have rejected patent misuse arguments based on alleged package licensing of patents. *See, e.g.*, *Saint Lawrence Commc'ns v. Motorola Mobility LLC,* 2018 WL 915125, at *9 (E. D. Tex. Feb. 15, 2018) (patentee licensing portfolio only on a worldwide basis was not misuse for improper tying); *Godo Kaisha*, 2017 WL 750700, at *8 (recommending dismissal of patent misuse counterclaim that was based on allegation that patentee had refused to separately license three asserted patents rather than entire patent portfolio).

The same analysis should apply here. There is no allegation that Netlist has engaged in patent-to-product tying. For example, Micron does not contend that Netlist has offered anyone (let alone Micron) a license that would require the purchase of a Netlist product much less that Netlist has forced Micron into "a compelled purchase of a tied product." *Philips*, 424 F.3d at 1190; *see also Honeywell Int'l Inc. v. MEK Chem. Corp.*, 2018 WL 6737514, at *5 (N.D. Tex. July 5, 2018) ("A tying arrangement is 'an agreement by a party to sell one product . . . but only on the condition that the buyer also **purchases a different (or tied) product**, or at least agrees that he will not purchase that product from any other supplier.'") (quoting *Schlotzky's, Ltd. v. Sterling Purchasing & Nat. Distrib. Co.*, 520 F.3d 393, 405 (5th Cir. 2008)) (emphasis added). Thus, even if Micron's distorted reading of the SK hynix License were accurate, its patent misuse defense would still fail.

## C.    Micron Fails To Allege That Netlist Has Market Power

Micron's patent misuse defense also fails because Micron has not adequately alleged that Netlist has market power. "'[C]onditioning the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product,' is not patent misuse unless, in view of the circumstances, the patent owner 'has market power for the patent or patented product on which the license or sale is conditioned.'" *Philips Corp.*, 424 F.3d at 1086 (quoting 35 U.S.C. § 271(d)); *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S.

28, 42 (2006) ("[F]airly read, [§ 271(d)] provides that without proof that [patent holder] had market power in the relevant market, its conduct . . . was neither 'misuse' nor an 'illegal extension of the patent right.'").

Here, Micron alleges that Netlist has "leveraged market power created as a result of the standard-setting process and the patents it has asserted to be essential." Affirmative Defense ¶ 58. This is insufficient. To allege that Netlist has market power based on a standard essential patent, Micron must allege, at the very least, that Netlist actually holds standard essential patents, not just that Netlist has allegedly declared its patents to be standard essential.

A patent owners "claims about the scope of the patents . . . are not legally relevant." *Orion Elec. Co., Ltd. v. Funai Elec. Co., Ltd.*, 2002 WL 377541, at *6 (S.D.N.Y. Mar. 11, 2002). "[A]ny claim of market power must depend upon the patents themselves, not upon the statements of the patentee." *Id.* Thus, courts have held a patent holder cannot have power over a market involving standard essential patents absent an allegation that the patent holder actually owns such patents. *See, e.g., Apple v. Samsung*, 2011 WL 4948567, *4 n.6 (N.D. Cal. Oct. 18, 2011) ("If, as Apple alleges, some Samsung patents are not essential to the standard, it will likely be difficult for Apple to establish that Samsung's conduct has antitrust implications") (dismissing antitrust claims); *see also No Spill*, 2022 WL 1078435, at *7 (allegation that "[d]efendants believe that practicing the patents will be required under a forthcoming… standard" insufficient). But Micron has made no such allegations here.

Moreover, even setting this aside, the mere possession of a standard-essential patent by itself does not give rise to market power. *Illinois Tool Works Inc. v. Independent Ink*, 547 U.S. at 42 ("Congress did not intend the mere existence of a patent to constitute the requisite 'market power.'"). Thus, in the antitrust context, courts have held that, to adequately plead a market power, a plaintiff must allege (1) that there were alternative technologies under consideration by the standard setting organization prior to adoption of the standard and (2) allege that the standard setting organization would have

adopted one of these alternatives absent a defendant's alleged failure to disclose relevant intellectual property or false promise to license such technology on FRAND terms. *See, e.g.*, *ChriMar Sys. v. Cisco Sys.*, 72 F. Supp. 3d 1012, 1019 (N.D. Cal. 2014) (requiring plaintiff to allege "that the SSO would have adopted an alternative standard had it known of the patent holder's intellectual property rights.") (internal quotation marks omitted); *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1672493, at *6 (N.D. Cal. May 14, 2012) (plaintiff must allege "alternative technologies were excluded through the standardization process" based on a false promise). Absent such exclusion, the patent holder's "market power" (if any) would flow only from the lawful power conferred by the patent laws. *See Rambus Inc. v. FTC*, 522 F.3d 456, 466-67 (D.C. Cir. 2008).

Here, Micron does not even identify the supposed standards at issue let alone allege that JEDEC would have adopted different standards but for alleged misconduct by Netlist. Absent such allegations, however, any power that Netlist has from possessing JEDEC standard-essential patents stems from the lawful monopoly conferred by the patent itself.

### D.     A Breach of FRAND Obligations Does Not Constitute Patent Misuse

Finally, Micron alleges that Netlist has violated its FRAND commitments because the SK hynix license ties Netlist's declared standard essential patents to non-standard essential patents and requires Netlist to seek "supra-competitive price[s]." Answer at 39 (¶ 58). None of this is true as the text of the actual SK hynix license demonstrates, but, even if it were, Micron's defense would still fail as a matter of law.

First, Micron's theory makes no sense. ██████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████ Such a license would hardly be unreasonable or discriminatory since it would put all licensees on the exact same footing.

Second, as this Court has observed, "a breach of FRAND is not determinative of patent

misuse," particularly because "the Federal Circuit has cautioned against a broad application of the patent misuse doctrine." *Saint Lawrence Comm'ns LLC v. Motorola Mobility LLC*, No. 2:15-CV-351-JRG, 2018 WL 915125, at *7 (E.D. Tex. Feb. 15, 2018); *Godo Kaisha IP Bridge 1 v. TCL Comm'n Tech. Holdings Ltd.*, No. CV 15-634-SLR-SRF, 2017 WL 750700, at *8 (D. Del. Feb. 27, 2017), *report and recommendation* adopted, No. CV 15-634-SLR-SRF, 2017 WL 1055958 (D. Del. Mar. 20, 2017) (dismissing patent misuse claim based on FRAND allegations because defendant did "not allege that [plaintiff's] portfolio licensing restricts the use of the patents-in-suit in a specific way that falls outside the broad scope of the patent grant."). This is particularly true where, as here, there is no allegation that the patent holder (Netlist) made an "intentionally false promise to license essential proprietary technology on FRAND terms," or that a standards organization (JEDEC) "reli[ed] on that promise when including the technology in a standard." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007).

### E.   An Unconsummated License Does Not Constitute Patent Misuse

Finally, Micron's patent misuse defense fails for another independent reason: there is no allegation that Micron and Netlist have entered into a patent license. As numerous courts have held, an **unconsummated** offer to license cannot constitute patent misuse. *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 404 (S.D.N.Y. 2015) ("Many courts have concluded that mere offers cannot constitute patent misuse unless they are ultimately consummated.") (collecting cases); *see also Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d at 860, 871 (Fed. Cir. 1997) (unconsummated offer could not constitute *per se* tying or patent misuse); *Godo Kaisha IP Bridge 1 v. TCL Comm'n Tech.*, 2017 WL 750700, at *8 (D. Del. Feb. 27, 2017) (rejecting patent misuse counterclaim "premised on an offer to license which has not been consummated"). Micron's patent misuse defense should be dismissed for this reason alone.

### V.   **CONCLUSION**

For the reasons stated above, Netlists' motion should be granted.

Dated: September 21, 2023

Respectfully submitted,

/s/ *Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 21, 2023, a copy of the foregoing was served to all counsel of record via email.

*/s/ Jason Sheasby*
Jason G. Sheasby

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case

*/s/ Jason Sheasby*
Jason G. Sheasby

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I met and conferred with counsel for Micron on September 21, 2023. Counsel for Micron indicated that Micron opposed Netlist's motion.

*/s/ Jennifer Truelove*
Jennifer Truelove