**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| NETLIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:22-CV-203-JRG |
| | ) |
| MICRON TECHNOLOGY, INC., | ) JURY TRIAL DEMANDED |
| MICRON SEMICONDUCTOR | ) |
| PRODUCTS INC., MICRON | ) **Filed Under Seal** |
| TECHNOLOGY TEXAS LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF NETLIST, INC.'S MOTION TO COMPEL MICRON DEFENDANTS TO PRODUCE DOCUMENTS IMPROPERLY DESIGNATED AS "SOURCE CODE" AND FOR AN ORDER FINDING DEFENDANTS IN VIOLATION OF P.R. 3-4**

## **TABLE OF CONTENTS**

**Page**

I. FACTUAL BACKGROUND ........................................................................................... 1

II. ARGUMENT .................................................................................................................... 4

    A. Micron's "Source Code" Designation Lacks a Good Faith Basis ........................ 4

    B. Micron Improperly Hid the Original, Authoritative Copies of RTL Code ........................................................................................................................ 6

    C. Micron Violates Patent Local Rule 3-4 and this Court's Discovery Order ....................................................................................................................... 7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*IBM v. The Priceline Grp. Inc.*,
    2016 WL 6305981 (D. Del. Sept. 29, 2016) .................................................................................7

**Rules**

Fed. R. Civ. P. 37 ...........................................................................................................................7

E.D. Tex. Patent Rule 3-4..............................................................................................................7

Micron agreed to make source code relating to its HBM products available for inspection, Dkt. 81, but it improperly designated over 60 PDF and PowerPoint files as "Source Code Materials." These files, which include documents showing the operation and function of Micron's accused HBM products, JEDEC specifications, financial documents, and marketing materials, do not "define" the physical arrangement of circuits or otherwise constitute "Source Code" as defined in the Protective Order. Dkt. 46 at 6-7. Further, Micron improperly hid the original, authoritative copies of the RTL code, which was not readily accessible by Netlist's code reviewer or even Micron's own counsel. Netlist repeatedly asked Micron to address these deficiencies, which Micron refused to do.

Netlist thus respectfully asks the Court to enter an order: **(1)**; ordering Micron to produce the improperly designated documents as non-source code; **(2)** ordering Micron to specify the directories that hold the original, authentic copies of the RTL code; and **(3)** finding Micron in violation of P.R. 3-4 and preventing it from using any of the hidden RTL as a basis to argue for non-infringement.

## I.    FACTUAL BACKGROUND

Netlist has alleged that Micron's HBM2, HBM2E, HBM3, and HBMNext memory products infringe U.S. Patent Nos. 8,787,060 ("'060 patent") and 9,318,160 ("'160 patent"). Dkt. 4. After Micron refused to produce documents or source code relating to its HBM products, Netlist moved to compel and for sanctions. Dkt. 49. Thereafter, Micron agreed to make production of the relevant documents and represented that "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" 2023-05-19 Rueckheim Email (emphasis added). In light of this commitment, the parties filed a joint notice where Micron stipulated as follows:

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

However, after Netlist agreed to withdraw its motion to compel, Micron attempted in every possible way to make Netlist's source code review as difficult as possible. For example, Micron insisted that

Netlist must rely on a Micron employee to operate the custom software for inspection of source code, on the ground that Netlist did not have a license for the custom review tool.  Dkt. 90 at 2.  On June 11, 2023, this Court ordered that "Micron shall make its relevant source code available for inspection without any active participation by its employees between the inspecting representatives of Netlist and the source code computer."  Dkt. 99 at 4.

On July 6, weeks after the Court's order, Micron informed that the following source code will be made available: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓."  Ex. 1 at 4 (2023-07-06 Park Email).

Netlist resumed the source code review on July 12.  During its review, Netlist discovered that Micron improperly designated at least 60 PDF and PowerPoint files of technical, marketing, and financial documents as "Source Code Materials" that had not been included in Micron's document production.  Netlist immediately asked that Micron produce these documents as non-source code:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Netlist also asked Micron to "provide a list of the file names and files types that [Micron] previously characterized as 'Certain technical documentations for HBM2E and HBM3,' and explain why [Micron believes] they can only be produced as source code."  Ex. 1 at 3 (2023-07-18 Zhao Email).

Micron admitted that the "marketing document and two JEDEC specifications" were improperly designated as "Source Code," and committed to producing them "with a non-source code designation."  Ex. 1 at 2 (2023-07-18 Park Email).  But Micron never made the production and refused

- 2 -

to provide the names of the non-schematic documents it designated as source code. *Id.*

On July 27, Netlist's code reviewer, Dr. Thomas Barr, conducted further review of the source code and reconfirmed that Micron improperly designated various PDFs and PowerPoint files as "Source Code" and made them available only on the code review computer. As Netlist explained in its email and during the parties' subsequent meet and confer:

> The majority of these [PDF/PPT] documents have no information "defining the physical arrangements of circuits." They are block diagrams, dataflow diagrams, or interface diagrams at showing the functionality of the circuit at high-level, but not defining it. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that an engineer would not view them as defining the physical arrangement of circuits either. Ex. 1 at 1 (2023-07-27 Zhao Email).

Dr. Barr identified the following *non-exhaustive examples* of documents Micron improperly designated:



Dr. Barr Decl. ¶¶ 3-4. Micron refused to change the designation or produce these as non-source code.

Further, during Dr. Barr's review, he was directed to a massive trove of disorganized files with no direction as to which files define the functionality of the product. Micron's counsel directed him to a directory that held over **four million** files in over **a million** directories. Dr. Barr Decl. ¶2. These include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and it is not clear which copies are authoritative. *Id.* It was indeed unclear whether Micron actually provided the directory that holds the complete, original authoritative copies of the RTL written to

define the functionality of the accused products. *Id.* In fact, even Micron's counsel could not identify which one was the correct directory during Dr. Barr's review after Netlist raised this issue. *Id.*[1]

| | |
|---|---|
| **From:** | Zhong, Annita |
| **Sent:** | Friday, July 28, 2023 10:07 AM |
| **To:** | Park, Ryuk; Werner, Tom |
| **Cc:** | Winston-Micron-Netlist; andrea@wsfirm.com; ce@wsfirm.com; wh@wsfirm.com; ~Baxter, Samuel; jtruelove@mckoolsmith.com; #Netlist-Micron [Int] |
| **Subject:** | RE: Netlist v. Micron, No. 22-cv-203 (E.D. Tex.) - Inspection |

Counsel,

Thank you for confirming that the source code contains RTL for the accused products. But can you please specify the directories that hold the original, authentic copies of the RTL code? We have noted that your production contains ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ So please confirm which directories hold the original, authoritative copies of the RTL written to define the functionality of the accused products.

Please also let us know and be prepared to discuss at today's L&L when you are going to produce all the improperly withheld PowerPoints and PDF files.

## II.  ARGUMENT

### A.  Micron's "Source Code" Designation Lacks a Good Faith Basis

According to Paragraph 8 of this Court's Protective Order, Dkt. 46:

> To the extent a producing Party ***has a good faith basis*** to conclude that certain Protected Material . . . includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE." For the avoidance of doubt, "source code" includes (i) human-readable programming language text ***that defines or describes the software, firmware, hardware, and circuits*** (e.g., Verilog and VHDL files) and (ii) files ***defining the physical arrangements of circuits*** such as circuit schematics, layouts, placement and routing information, netlists, and layers (e.g., Graphic Database System (GDS), GDSII stream format, Design Exchange Format (DEF), Library Exchange Format (LEF), and LiveData files). Source Code Material further includes the text of any comments associated with any of the foregoing, any files containing any of the foregoing, and all directory and folder structures in which such files are maintained. Dkt. 46 at 6-7 (emphasis added).

The PDF and PowerPoint files Micron designated as Source Code cannot meet the definition.

*First*, Micron has admitted that the financial and marketing materials and JEDEC materials are not Source Code Materials. Micron must immediately produce them.

*Second*, Micron improperly designated the technical PDF and PPT files as Source Code.

---

[1] To further complicate and burden Netlist's source-code review process, Micron also restrained Dr. Barr's access to various locations, including the cafeteria.

There is no dispute that the review of these PDF/PPT files does not require any code-review software. There is also no dispute that these documents themselves are not "programming language text that defines or describes the software, firmware, hardware, and circuits (e.g. Verilog and VHDL files)" or "files defining the physical arrangements of circuits such as circuit schematics, layouts, placement and routing information, netlists, and layers. . . ." Dkt. 46 at 6-7.

Instead, Micron asserts that the PDF or PPT documents are "files containing any of the foregoing." *Id.* But as explained above, *supra* at 2-3, these files at best include some block diagrams or screenshots of certain circuits of Micron's accused HBM products which shows the circuits at a *high level*. Block diagrams are routinely disclosed in datasheets and technical documents which are produced during the ordinary document production process rather than as source code. Micron itself has produced datasheets of its accused products in this Action.



Such high-level depictions of block diagrams or circuits of the accused products do not "***define***" the

"software, firmware, hardware, and circuits" or "the physical arrangements of circuits such as circuit schematics, layouts, placement and routing information, netlists, and layers" as required by the Protective Order to meet the "Source Code Material" definition. Dkt. 46 at 6-7. None of the ▇-▇▇▇ disclose circuit-level information regarding the operation of the accused products, and therefore were never envisioned to be protected as Source Code Materials during the parties' negotiation of the specific terms of the PO. To understand otherwise would allow Micron (or other accused patent infringers) to designate all technical materials that contain a block diagram or a picture of certain circuits as Source Code Materials to essentially eliminate its obligations under P.R. 3-4(a) of producing technical documents (e.g. datasheets, simulation reports, marketing documents) relevant to show the operation of the accused products. Indeed, the substantive similarities between documents Micron produced (▇▇▇▇ and files it now identifies as Source Code ▇▇▇▇ undermine any "good faith basis" Micron contends it relied on to designate the latter as source code.

Micron's improper source-code designation significantly impedes Netlist's discovery. The PO provides stringent restrictions on the inspection and use of Source Code Materials. Dkt. 46 at 8-17. For example, Netlist has to inspect Micron's source code materials **solely** at "Micron Technology, Inc.'s facilities in Boise, Idaho." *Id.* at 7. Netlist is also limited to printing out no more than "an aggregate total of [] 950 pages" of Source Code Materials. *Id.* at 13. Micron's unrestrained designation of broad categories of documents as Source Code Materials and its refusal to produce them during the ordinary course of discovery force Netlist to review them only at Micron's facilities and count any print of these materials against the tight source code printout page limitation.

    B.  **Micron Improperly Hid the Original, Authoritative Copies of RTL Code**

As detailed above, *supra* at 3-4, Micron improperly hid the directory that holds the original authoritative copies of the RTL written to define the functionality of the accused products. Micron instead dumped millions of files, ▇▇▇▇

█████████████████████████████. Dr. Barr Decl. ¶ 2. Micron must identify the accurate directory showing the complete, original, authoritative RTL code without annotations, so that Netlist can conduct meaningful inspection. Netlist's request does not impose any undue burden since Micron is in the best position to identify the directories of its source code. *See IBM v. The Priceline Grp. Inc.*, 2016 WL 6305981, at *1 n.1 (D. Del. Sept. 29, 2016) (asking the code producing party to provide assistance in identifying relevant source code, including by requiring the defendant to install existing "navigational tools . . . that would aid IBM in its analysis of Defendants' source code").[2]

### C. Micron Violates Patent Local Rule 3-4 and this Court's Discovery Order

Micron's improper source code designation and refusal to assist Netlist in identifying the complete RTL code directly run afoul of the Patent Local Rules. Specifically, P.R. 3-4 provides: "Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P. R. 3-1(c) chart" must be made available at the same time when Micron served the invalidity contentions on November 21, 2022. Micron still has not produced the requested documents or source code. Indeed, Micron breached its own commitment to "████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████." 2023-05-19 Rueckheim Email.

In light of Micron's improper withholding of relevant documents in violation of P.R. 3-4, as well as Micron's improper behavior relating to Netlist's source code inspection, Micron should not be allowed to rely on the accurate RTL materials (once they are identified) for any defenses or claims of non-infringement. Fed. R. Civ. P. 37(b)(2); *id.* 37(c).

---

[2] To be clear, Netlist is not seeking Micron's assistance in identifying sections of its code that are relevant to Netlist's asserted claims or the accused features of Micron's HBM products. Instead, Netlist is simply asking Micron to identify the complete, original directory of the available code.

Dated: August 1, 2023                               Respectfully submitted,

/s/ *Jason Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

**Attorneys for Plaintiff Netlist, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 1, 2023, a copy of the foregoing and the attachment thereto were electronically served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on July 28, 2023, the lead and local counsel of each side met and conferred.  The parties are at an impasse because Defendants refused to produce the improperly designated materials or specify the directories that hold the original, authentic copies of the RTL code.

*/s/ Yanan Zhao*
Yanan Zhao