███████████

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-203-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; MICRON | ) | |
| SEMICONDUCTOR PRODUCTS, INC.; | ) | ███████████ |
| MICRON TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 8,787,060 AND 9,318,160

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................... 1

II.  STATEMENT OF ISSUE TO BE DECIDED .................................................. 1

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ................................. 2

    A.   Asserted Claims & Accused Products.................................................... 2

    B.   "Array Die" Term ................................................................................. 3

    C.   "Electrical Communication" Term......................................................... 4

    D.   "Data Conduit" Term ........................................................................... 5

IV. LEGAL STANDARD ........................................................................................ 5

V.  ARGUMENT ..................................................................................................... 6

    A.   The Court Should Grant Summary Judgment in Favor of Micron with Respect to Micron's HBM2E Product for Non-Infringement ................................................. 6

    B.   The Court Should Grant Summary Judgment in Favor of Micron With Respect to Claims 11-14, 16-21, and 22-28 of the '060 Patent and Claims 2 and 4 of the '160 Patent for Non-Infringement................................................................................ 7

    C.   The Court Should Grant Summary Judgment in Favor of Micron for Micron's HBM3 Gen2 Product under the Parties' Agreed-Upon Construction of the Term "Array Die"............................................................................................................. 8

        1.   Netlist's expert opined only based on his own construction of the term "array die" and did not opine based on the Parties' agreed-upon construction......................................................................................... 8

        2.   No evidence of infringement exists under the agreed-upon construction of "array die".......................................................................................... 8

    D.   The Court Should Grant Summary Judgment of Non-Infringement with Respect to Micron's HBM3 Gen2 Product under the Court's Construction of the Term "Electrical Communication"................................................................................... 9

        1.   Netlist's expert did not apply the court's guidance that "electrical connection" is different from "electrical communication"......................... 9

        2.   The court should grant summary judgment of non-infringement because ███████████████████████████████████████████ ████████████ ............................................................................. 10

    E.   The Court Should Grant Summary Judgment of Non-Infringement with Respect to Micron's HBM3 Gen2 Product Because Netlist's Expert Failed to Analyze the "Data Conduit" Limitation.................................................................................... 11

        1.   Netlist's expert failed to show that ███████████ can correspond to the claimed "data conduit" in any mode of operation ......................... 12

i

████████████

2.    Netlist's expert failed to show that ███████████ can correspond to
      the claimed "data conduit" in the normal mode of operation ................... 13

3.    Netlist's expert failed to show that ███████████ can correspond to
      the claimed "data conduit" in the Direct Access testing mode ................ 14

4.    Netlist's expert failed to show that ███████████ can correspond to
      the claimed "data conduit" in the IEEE 1500 testing mode ..................... 15

5.    Summary Judgment of Non-Infringement Is Warranted .......................... 15

**VI.  CONCLUSION** ........................................................................................... **15**

# TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page(s)**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................................5

*Eason v. Thaler*,
    73 F.3d 1322 (5th Cir. 1996) ..........................................................................................6

*Novartis Corp. v. Ben Venue Labs., Inc.*,
    271 F.3d 1043 (Fed. Cir. 2001)........................................................................................6

*Owen v. Harris Cnty., Texas*,
    No. 4:07-CV-03273, 2009 WL 10694750 (S.D. Tex. Mar. 31, 2009) ......................................7

*Perry v. Pediatric Inpatient Critical Care Servs., P.A.*,
    No. 18-cv-00404, 2022 WL 4456273 (W.D. Tex. Sept. 23, 2022) ..........................................6

*Poore v. Ethicon, Inc.*,
    No. 1:20-CV-01089-SLD-JEH, 2020 WL 13526631 (C.D. Ill. Mar. 13, 2020).....................7

*Ransom v. M. Patel Enters., Inc.*,
    825 F.Supp.2d 799 (W.D. Tex. 2011)..............................................................................6, 7

*TechSearch, L.L.C. v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002)........................................................................................6

*Treehouse Avatar LLC v. Valve Corp.*,
    54 F.4th 709 (Fed. Cir. 2022) .......................................................................................8, 11

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    No. 2:21-CV-00246-JRG, 2022 WL 19227587 (E.D. Tex. Sept. 1, 2022) ..............................6

**Other Authorities**

Fed. R. Civ. P. 56(a) ..........................................................................................................5

███████████████

**TABLE OF EXHIBITS**

| Ex. No. | Description |
|---------|-------------|
| A | Excerpts from Dr. Brogioli's Opening Expert Report |
| B | Excerpts from Dr. Woods's Rebuttal Expert Report |
| C | Excerpts from the transcript of the Court's October 23, 2023 hearing |
| D | Excerpts from the deposition transcript of Rajesh Kariya |
| E | Excerpts from the deposition transcript of Zach Stordahl |
| F | Excerpts from Netlist's First Supplemental Infringement Contentions |
| G | Declaration of Zach Stordahl |

## I.     INTRODUCTION

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas LLC (collectively, "Micron") move for summary judgment of non-infringement of U.S. Patent Nos. 8,787,060 ("'060 Patent") and 9,318,160 ("'160 Patent") (collectively, the "Patents at Issue") with respect to the accused Micron HBM products—*i.e.*, HBM2E and HBM3 Gen2.  With respect to the HBM2E product, the Court should grant summary judgment in favor of Micron because Netlist's expert did not provide any infringement opinions and Netlist represented to the Court that it is not pursuing infringement against Micron's HBM2E product.  Regarding the HBM3 Gen2 product, the Court should grant summary judgment in favor of Micron because Netlist's expert (1) did not provide any infringement opinions based on the parties' agreed-upon construction of the term "array die" or the Court's construction of the term "electrical communication" and (2) did not provide any analysis of how the claimed "data conduits" are coupled or connected to any "data terminals" as required by the claims.  Accordingly, Micron respectfully requests that the Court grant summary judgment on non-infringement grounds with respect to both accused HBM products.

## II.     STATEMENT OF ISSUE TO BE DECIDED

A.     Whether Micron's HBM2E product can be found to infringe any claim of the '060 and '160 patents when Netlist's expert did not include any infringement analysis for the HBM2E product in his expert report and Netlist represented that it is not pursuing infringement against this product.

B.     Whether Micron's HBM3 Gen2 products can be found not infringe claims 11-14, 16-21, and 23-28 of the '060 patent and claims 2 and 4 of the '160 patent when Netlist's expert failed to include any infringement analysis for these patent claims in his expert report.

C.      Whether Micron's HBM3 Gen2 product can be found to infringe the asserted claims of the '060 and 160 patents when the parties agreed to construe the term "array die" as "array die that is different from a DRAM circuit" and  Netlist does not dispute that the dies in Micron's HBM3 Gen2 product are DRAM dies.

D.      Whether Micron HBM3 Gen2 product can be found to infringe the asserted claims of the '060 and '160 patents when Netlist's expert failed to apply the Court's construction of the term "electrical communication" and offered infringement opinions in opposition to the Court's constructions.

E.      Whether Micron HBM3 Gen2 product does not infringe the asserted claims of the '060 and '160 patents under Netlist's theories when Netlist's expert has not shown any requisite connections between any "data terminal" and the alleged "data conduit."

### III.      STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.      Asserted Claims & Accused Products**

1.      Netlist originally asserted that Micron's HBM products, including HBM2E and HBM3 Gen2, infringes claims 1-14, 16-21, and 23-28 of the '060 Patent and claims 1-2, 4, and 5 of the '160 Patent.  ECF No. 4 (Netlist's Original Complaint) ¶¶ 110-125; ECF No. 145 (Netlist's Second Amended Complaint) ¶¶ 114-133; *see also* Ex. F (Netlist First Supp. Inf. Contentions) at 1-4.

2.      On October 4, 2023, Netlist served its opening expert report of Dr. Michael C. Brogioli regarding the infringement of the '060 and '160 Patents.  *See generally* Ex. A (Brogioli Op. Report).

3.      In his report, Dr. Brogioli did not provide any analysis or opinions on whether Micron's HBM2E product infringes the Patents at Issue.  *Id*.  Nor does he refute this fact.  Ex. A ¶ 115 (noting that HBM2E is not "[a]ddressed in this report").  At the discovery hearing on October

23, 2023, Netlist represented to this Court that it is not alleging infringement based on Micron's HBM2E products.  Ex. C (Oct. 23, 2023 Hr. Tr.) at 50:11-18 ("As to HBM2e, the HBM2e product is not in the reports . . . so it is an accurate statement that there is no allegation against HBM2e. . . .  As of now, HBM2e is not accused.").

4.      In his report, Dr. Brogioli also did not provides any analysis or opinions regarding infringement of claims 11-14, 16-21, and 23-28 of the '060 Patent and claims 2 and 4 of the '160 Patent with respect to any accused Micron products.  Ex. A ¶ 552-553.

**B.      "Array Die" Term**

5.      The term "array die" appears in every asserted claim of the '060 and '160 patents. Claim 1 of the '060 patent, which all asserted claims of the '060 patent depend on, recites "a plurality of array dies."  ECF No. 145-5 ('060 Patent), Claim 1.  Similarly, claim 1 of the '160 patent, which claim 5 of the '160 patent depends on, recites "a first group of array dies and a second group of at least one array die."  ECF No. 145-6 ('160 Patent), Claim 1.  Claim 5 of the '160 patent depends on claim 1.  *Id.* at Claim 5.

6.      In this case, the parties agreed to construe the term "array die" as "array die that is different from a DRAM circuit." ECF No. 69 (Joint Claim Const. Statement) at 2.

7.      Netlist admits in its Complaint that the dies at issue in Micron's HBM products are "DRAM die[s]."  ECF No. 145 (Second Amended Complaint) ¶ 63 ("In the accused HBM products, at least eight ***DRAM memory dies*** are vertically connected in a single stacked device. … the ***DRAM dies*** and the logic die are shipped as a stack …"); *id.* ¶ 64 ("The Accused HBM Products include, without limitation any Micron HBM2E and newer products with 8 or more stacked ***DRAM dies*** made, sold, used, offered for sale, and/or imported into the United States by Micron."); *id.* ¶ 116 ("The Accused HBM Products each include a plurality of array dies arranged in a stack (*e.g.*, 8 stacked ***DRAM dies***)."); *id.* ¶ 117 ("For example, some TSVs only electrically interconnect some

of the **DRAM dies (**first group of array die(s), selected from the group of **DRAM dies** that Micron

annotates each individually as a 'Core Die' or 'Memory Die'), while others may electrically bypass

this first group of array dies and electrically connect with the active transceiver logic of at least

one of the other **DRAM dies** (second group of array die(s)).") (emphases added); *see also* Ex. F at

4 ("Microns HBM2, HBM2E, HBM3, HBMnext and newer products with 8 or more stacked

**DRAM dies** products …") (emphasis added).

**C.**     **"Electrical Communication" Term**

8.     The term "electrical communication" appears in every asserted claim of the '060

and '160 patents.  Claim 1 of the '060 patent, which all asserted claims of the '060 patent depend

on, recites "the first die interconnect in electrical communication with the first group of array dies

and not in electrical communication with the second group of at least one array die" and "the

second die interconnect in electrical communication with the second group of at least one array

die and not in electrical communication with the first group of array dies."  ECF No. 145-5 ('060

Patent) at Claim 1.  Claim 1 of the '160 patent, which claim 5 of the '160 patent depends on, recites

the same limitation.  ECF No. 145-6 ('160 Patent) at Claim 1.

9.     The Court adopted the plain and ordinary meaning of the term "electrical

communication."  ECF No. 249 (Claim Construction Order) at 43.

10.     The Court held that the '060 and '160 patents' "uses of 'communication' comport

with the ordinary meaning of the term as an act," such as "[t]he act of transmitting," "a giving or

exchanging of information, signals, or messages as by talk, gestures, or writing."  *Id.* at 10.

11.     The Court further held that "the plain and ordinary meaning of 'electrical

communication' is ***different*** from 'electrical connection,'" and "if Netlist's position is the mere

presence of 'data ports' is enough to meet the 'electrical communication' requirement for purposes

of determining infringement or invalidity, ***the Court agrees with Micron that is improper***." *Id.* at 10-11 (emphases added).

**D.     "Data Conduit" Term**

12.     Each asserted claim of the '060 and '160 patent recites "first data conduit" and "second data conduit" and further recites and requires connectivity to the same corresponding "data terminals." ECF No. 145-5 ('060 Patent) at Claim 1; ECF No. 145-6 ('160 Patent) at Claim 1.

13.     Claim 1 of the '060 patent recites "first data conduit ***between*** the first die interconnect and ***a first terminal*** …, and at least a second data conduit ***between*** the second die interconnect and ***the first terminal***, ***the first terminal being a data terminal***." ECF No. 145-5 ('060 Patent) at Claim 1 (emphasis added).

14.     Similarly, claim 1 of the '160 patent recites "***first data conduit*** including first drivers each … ***configured to drive a data signal from a corresponding data terminal*** to the first group of array dies" and "***second data conduit*** including second drivers each … ***configured to drive a data signal from a corresponding data terminal*** to the second group of at least one array die." ECF No. 145-6 ('160 Patent) at Claim 1 (emphasis added).  Claim 5 of the '160 Patent depends on claim 1. *Id.* at Claim 5.

## IV.     LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When the party seeking summary judgment demonstrates the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Although the Court must draw all reasonable inferences in favor of the non-moving party, mere conclusory allegations cannot defeat a motion

for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  To support summary judgment of noninfringement, the moving party must show that no reasonable jury could find infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee.  *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002).  Thus, defendants "may meet [their] initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case."  *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

## V.     ARGUMENT

### A.     The Court Should Grant Summary Judgment in Favor of Micron with Respect to Micron's HBM2E Product for Non-Infringement

Netlist's expert did not opine on infringement of any claim of the '060 and '160 patents for Micron's HBM2E products.  *See* Undisputed Material Facts (UMF), ¶ 3.  With no expert analysis to support its initial HBM2E infringement assertions, Netlist is left with the bare, unsubstantiated assertions raised in its complaint and infringement contentions.  *Ransom v. M. Patel Enters., Inc.*, 825 F.Supp.2d 799, 802 (W.D. Tex. 2011) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.") (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  This lack of competing expert testimony or evidence for HBM2E, alone, is sufficient basis to grant summary judgment.  *Compare United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2:21-CV-00246-JRG, 2022 WL 19227587, at *2 (E.D. Tex. Sept. 1, 2022) (denying summary judgment "in light of competing expert testimony.").

Summary judgment also is proper in view of Netlist's representations to the Court that it is not pursuing HBM2E infringement allegations.  UMF, ¶ 3; *see also Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, No. 18-cv-00404, 2022 WL 4456273, at *8 (W.D. Tex. Sept. 23, 2022)

(granting summary judgment where plaintiff's counsel confirmed it did not intend to pursue a claim); *Owen v. Harris Cnty., Texas*, No. 4:07-CV-03273, 2009 WL 10694750, at *4 (S.D. Tex. Mar. 31, 2009) (same); *Poore v. Ethicon, Inc.*, No. 1:20-CV-01089-SLD-JEH, 2020 WL 13526631, at *1 (C.D. Ill. Mar. 13, 2020) ("When a party responds to a motion for summary judgment by stating that she will not pursue the challenged claims, the proper procedure is to grant summary judgment.").

Accordingly, Micron respectfully requests that the Court grant summary judgment in favor of Micron for non-infringement with respect to its HBM2E product.

**B.      The Court Should Grant Summary Judgment in Favor of Micron With Respect to Claims 11-14, 16-21, and 22-28 of the '060 Patent and Claims 2 and 4 of the '160 Patent for Non-Infringement**

In its Infringement Contentions, Netlist asserted claims 1-14, 16-21, and 22-28 of the '060 patent and claims 1, 2, 4, and 5 of the '160 patent.  Netlist's expert, however, did not opine on infringement of claims 11-14, 16-21, and 22-28 of the '060 patent and claims 2 and 4 of the '160 patent.  UMF ¶ 4.  This, again, is sufficient basis to grant summary judgment of non-infringement with respect to these patent claims.  *Ransom v. M. Patel Enters.*, 825 F.Supp.2d at 802. Accordingly, Micron respectfully requests that the Court grant summary judgment of non-infringement with respect to claims for which Netlist's expert did not provide any infringement opinions, *i.e.*, claims 11-14, 16-21, and 22-28 of the '060 patent and claims 2 and 4 of the '160 patent.

**C.     The Court Should Grant Summary Judgment in Favor of Micron for Micron's HBM3 Gen2 Product under the Parties' Agreed-Upon Construction of the Term "Array Die"**

1.     <u>Netlist's expert opined only based on his own construction of the term "array die" and did not opine based on the Parties' agreed-upon construction</u>

The parties agreed to construe the term "array die" which appears in every asserted claim of the '060 and '160 patent, as "array die that is different from a DRAM circuit."  UMF ¶¶ 5-6. But as Micron explains in its Motion to Strike Dr. Brogioli's Expert Report (which Micron files concurrently herewith), Netlist's expert did not apply the agreed-upon construction of this term. Instead, Dr. Brogioli analyzed infringement based on his construction of the term "array die," which is array die that is shockingly different from the agreed construction: "DRAM devices ***with wire bonds on the periphery and each having interface circuits that can directly interface with an external device such as a host***."  Ex. A, ¶ 206 (emphasis added); *see also id.* ¶¶ 208-218 (analyzing infringement under his construction).  Dr. Brogioli's construction is materially different from the parties' agreed-upon construction as it excludes only a subset of the agreed-upon "DRAM circuit" and not its full scope.  Because Netlist's expert failed to provide any infringement opinions based on the agreed-upon construction, the Court should grant summary judgment of non-infringement in favor of Micron.  *See Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 711 (Fed. Cir. 2022) (affirming district court's decision striking expert opinion that did not apply the parties' agreed-upon construction and granting summary judgment of non-infringement).

2.     <u>No evidence of infringement exists under the agreed-upon construction of "array die"</u>

Apart from applying his own constructions, Dr. Brogioli does not provide any other analysis of why the DRAM dies in Micron's HBM3 Gen2 products could satisfy the "array die" limitation.  Because no material dispute exists that the semiconductor dies in Micron's HBM3 Gen2 product are DRAM dies and thus DRAM circuits (UMF ¶ 7), they are excluded from the

plain scope of the term "array die" construed as "array die that is different from a DRAM circuit." Accordingly, the Court should grant summary judgment of non-infringement in favor of Micron with respect to Micron's HBM3 Gen2 product.

**D.     The Court Should Grant Summary Judgment of Non-Infringement with Respect to Micron's HBM3 Gen2 Product under the Court's Construction of the Term "Electrical Communication"**

As explained below, Netlist's expert did not apply the correct construction of the term "electrical communications" as instructed by the Court in its claim construction order.  Because the term "electrical communication" is recited in and required by each asserted claim of the '060 and '160 patents, the Court should grant summary judgment of non-infringement based on Netlist's failure to apply the correct construction of the term "electrical communication."[1]

1.     Netlist's expert did not apply the court's guidance that "electrical connection" is different from "electrical communication"

In its Claim Construction Order, the Court expressly held that "the plain and ordinary meaning of 'electrical communication' is *different* from 'electrical connection,'" and thus cautioned Netlist that "if Netlist's position is the mere presence of 'data ports' is enough to meet the 'electrical communication' requirements for the purpose of determining infringement or invalidity, the Court agrees with Micron that is improper."  UMF ¶ 10-11.  Dr. Brogioli failed, however, to follow the Court's clear guidance.  In his report, Dr. Brogioli's clearly equates "electrical communication" with electrical connection based merely on the presence of data ports and presents his infringement analysis of Micron's HBM3 Gen2 product under that interpretation only:



---

[1]   Micron also concurrently moves to strike portions of Dr. Brogioli's infringement report that does not apply the correct construction of the term "electrical communication."



Ex. A ¶¶ 226-227.  Thus, it is clear that Dr. Brogioli opined on Micron's alleged infringement in direct contravention of the Court's plain and ordinary construction of the term "electrical communication" as set forth in the Court's Claim Construction Order.

 2. <u>The court should grant summary judgment of non-infringement because the alleged die interconnects in micron's HBM3 Gen2 product are "in electrical communication with" every DRAM die under the court's construction</u>

 In its Claim Construction Order, the Court further guided the parties that the plain and ordinary meaning of the term "communication" in light of the intrinsic record includes "[t]he act of transmitting" and "exchanging of information, signals, or messages as by talk, gestures, or writing."  UMF ¶ 10.  Dr. Brogioli's opinions also do not comport with these instructions.  He opines that transmitting signals to metal traces formed on a DRAM die is insufficient to meet the "in electrical communication with" limitation.  Ex. A ¶ 229.  As Micron's expert, Dr. Woods, opines, however, the alleged die interconnects in Micron's HBM3 Gen2 products, ███████

████████████████████████████████████████████████

███████████████████████████████████████ Ex. B ¶¶ 239-241. ██

████████████████████████████████████████████████

falls squarely within the Court's plain and ordinary construction of "communication."  UMF ¶ 10.

Because Netlist's expert failed to offer infringement opinions based on the Court's construction of the term "electrical communication," which is recited in and required by every asserted claim of the '060 and '160 patents, the Court should grant summary judgment in favor of Micron.

**E.    The Court Should Grant Summary Judgment of Non-Infringement with Respect to Micron's HBM3 Gen2 Product Because Netlist's Expert Failed to Analyze the "Data Conduit" Limitation**

Each asserted claims of the '060 and '160 patent recites and requires "first data [conduit/conduits]" and "second data [conduit/conduits]." UMF ¶ 12. The asserted claims recite several structural and/or functional requirements for the claimed "data conduits." First, the claimed "data conduit" or "data conduits" must be between "data terminals" and "die interconnects" and/or "configured to drive a data signal from a corresponding data terminal to … array die[s]." *Id.* Second, each claimed set of "first data conduit" (or "conduits") and "second data conduit" (or "conduits") must be connected to the ***same*** corresponding "data terminal" and/or configured to drive a data signal from the ***same*** corresponding "data terminal." *Id.*

In his report, Dr. Brogioli presents several different theories on how Micron's HBM3 Gen2 product allegedly practices the "data conduit" limitation. Dr. Brogioli identifies two different circuits in Micron's HBM3 Gen2 product—*i.e.*, ██████████████████████████████ Ex. A at p. 147. He then appears to opine that these two circuits correspond to the claimed "first data conduit" and/or "second data conduit" under several different modes of operations, including

████████████████████████████████████████████████████████████████

███████

As explained below, for each of these theories, Dr. Brogioli failed to provide a complete or sufficient analysis of the alleged "data conduit" for each of these four theories.

████████████████████

1. <u>Netlist's expert failed to show that the "TsvForce" circuit can correspond to the claimed "data conduit" in any mode of operation</u>

Dr. Brogioli opines that, ███████████████████████████████████████

██████████████████████████ the HBM3 Gen2 product and that ████████████████

████████████████████████████ Ex. A ¶ 144. He, however, does not analyze

whether █████████████████████ receives its input from any "data terminal" as required by

each asserted claim. UMF ¶¶ 13 (claim 1 of the '060 patent requiring that "data conduit" be

"between the … die interconnect and … first terminal"), 14 (claim 1 of the '160 patent requiring

that "data conduit" be "configured to drive a data signal from a corresponding data terminal").

Indeed, the alleged "TsvForce" circuit that Dr. Brogioli relies upon is not even located in the logic

die, which has access to external terminals. Ex. G (Stordahl Decl.) ¶ 5 ████████████████

████████████████████████████████████████████████████████████████

█████ Micron's expert, Dr. Woods, also pointed out the same deficiency in Dr. Brogioli's analysis.

Ex. B ¶ 263 ("Dr. Brogioli's analysis contains a fatal flaw: namely, Dr. Brogioli has not shown that

████████████████████████████████████████████████████ *see also id.*

¶ 330 ("Dr. Brogioli has failed to show that the signal that passes through ███████████████

███████████ is a 'data signal' as claimed. The output of the ████████████████ is an analog

signal."). Dr. Brogioli also failed to consider that █████████████ or ████████████ is

only used, if at all, ██████████████████████████████████████████████████,

and that Micron's customers and end-users ***do not*** have the ability to configure and utilize these

circuits. Ex. B ¶ 261; Ex. E (Stordahl Dep. Tr.) 25:21-26:2. For at least two reasons, Netlist's

expert has failed to show that ████████████████ corresponds to the claimed "data conduit" in

any mode of operation.

████████████████████

2.  Netlist's expert failed to show that the "TsvTx" circuit can correspond to the claimed "data conduit" in the normal mode of operation

With respect to normal mode of operation, Dr. Brogioli opines only that ███████████ ████████████████████████████ Ex. A ¶ 234.  While unclear, Dr. Brogioli appears to suggest (as indicated from previous paragraphs) that he is referring ███████████████ ████████████████████████████████████ ████████████. Ex. A ¶¶ 226-227.

The problem with Dr. Brogioli's analysis is that he has not shown that the ███████ ████████████████████████████████████ ████████████████████ Ex. 145-5 ('060 Patent) at Claim 1.  Nor can he because ███████████████████ The figure Dr. Brogioli relies upon (in ¶¶ 226-227) shows that ████████████████████████████████████ ████████████████████████████████████ ████████████████████ Ex. A ¶¶ 226-227.



Micron's expert, Dr. Woods, also identified the same deficiency in Dr. Brogioli's analysis with respect to ███████████████. Ex. B ¶¶ 249-257.  Because Dr. Brogioli failed to opine on

13



the requisite structural relationship between the claimed "first/second data conduit" and the claimed "data terminal," he has not demonstrated infringement with respect to HBM3 Gen2 product in its normal mode of operations.

> 3.  Netlist's expert failed to show that the "TsvTx" circuit can correspond to the claimed "data conduit" in the Direct Access testing mode

In his report, Dr. Brogioli opines that Micron's HBM3 Gen2 product includes ███ ████████████████████████████████████████████████████████████████ Ex. A ¶ 234.  The so-called ██████ that Dr. Brogioli points to includes two different interfaces— the "Direct Access" or "DA" interface and the IEEE 1500 interface.

With respect to the DA interface, Zach Stordahl, Micron's HBM engineer, testified that ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Ex. E (Stordahl Dep. Tr.) at 25:19-26:2 ████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ Further, the DA interface is used for ██████████ ████████████████████████████████████████████████████████████ ██████ Id. at 11:18-14:17 ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Since ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████ Accordingly, Netlist has not, and cannot, show that



the circuits in Micron's HBM3 Gen2 product are ever configured to meet the "data conduit" limitations as required by the asserted claims.

    4.    <u>Netlist's expert failed to show that the "TsvTx" circuit can correspond to the claimed "data conduit" in the IEEE 1500 testing mode</u>

Finally, Dr. Brogioli opines that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. A ¶ 138.  But multiple Micron witnesses have testified that the mBIST does not receive any data from any data terminal.  *See e.g.*, Ex. D (Kariya Dep. Tr.) at 51:23-52:8 ▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆ *see also* Ex. E (Stordahl Dep. Tr.) at 15:19-18:11.  Because Netlist has not shown (and cannot show) that there is any "data terminal" associated with ▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, Netlist cannot establish that Micron's HBM3 Gen2 product can meet the "data conduit" limitation ▆▆▆▆▆▆▆▆

▆▆▆▆▆.

    5.    <u>Summary Judgment of Non-Infringement Is Warranted</u>

Lastly, the Court should grant summary judgment because Netlist's expert has failed to analyze infringement of the "data conduit" limitations (which is recited in every asserted claim) with respect to any possible mode of operation in Micron's HBM3 Gen2 product.

## VI.    CONCLUSION

Thus, for the reasons stated above, Micron respectfully requests that the Court grant its motion for summary judgment of non-infringement.

Dated: November 14, 2023

Respectfully submitted,

/s/ Michael R. Rueckheim
Thomas M. Melsheimer
State Bar No. 13922550
TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger (*pro hac vice*)
denzminger@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
Ryuk Park (*pro hac vice*)
RPark@winston.com
Matthew R. McCullough
MRMcCullough@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*pro hac vice*)
State Bar No. 1500598
mhopkins@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

William M. Logan
State Bar No. 24106214
wlogan@winston.com
Juan C. Yaquian (*pro hac vice*)
State Bar No. 24110559
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400

16

Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Vivek V. Krishnan (*pro hac vice*)
vkrishnan@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive, Suite 4200
Chicago, IL 60601
Telephone: 312-558-9508
Facsimile: 312-558-5700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC**

17

**CERTIFICATE OF SERVICE**

I certify that, on November 14, 2023, a copy of the foregoing was served on all counsel of record via the Court's ECF system and email.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim