**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-203-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; MICRON | ) | |
| SEMICONDUCTOR PRODUCTS, INC.; | ) | ███████████████ |
| MICRON TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION TO STRIKE EXPERT REPORT OF DR. BROGIOLI**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................ 1

II.     LEGAL AUTHORITY .................................................................................................. 1

        A.      *Daubert* Motions ................................................................................................ 1

        B.      Motions to Strike Expert Testimony That Contradict or Deviate from the Court's
                or the Parties' Agreed-Upon Construction ............................................................ 1

        C.      Motions to Strike Expert Testimony Based on Undisclosed Information and/or
                Theories ................................................................................................................ 2

III.    ARGUMENTS.............................................................................................................. 2

        A.      The Court Should Strike Dr. Brogioli's Discussion of the Netlist-Samsung
                Litigation Aimed at Tainting the Jury (¶¶ 103, 109, 112, 121-122, 215, 221-224,
                324-325, 362, 370)................................................................................................ 2

        B.      The Court Should Strike Dr. Brogioli's Opinions Regarding Micron's Alleged
                State of Mind (¶¶ 359 – 379, 383 – 386) .............................................................. 5

        C.      The Court Should Strike Dr. Brogioli's Opinions Regarding the Financial Success
                of Micron's Prior Art and Accused Products (¶¶ 67, 297-299, 323, 327, 330)...... 8

        D.      The Court Should Strike Dr. Brogioli's Untimely Claim Construction Opinions
                for the Term "Array Die" (¶¶ 60-100, 206-218, and 272)...................................... 9

        E.      The Court Should Strike Dr. Brogioli's Infringement Opinions That Are Not
                Based on the Court's Construction of the Term "Electrical Communication" (¶¶
                225-228 and 232) ................................................................................................ 12

        F.      The Court Should Strike Dr. Brogioli's New Infringement Theories Not Disclosed
                in Netlist's Infringement Contentions (¶¶ 144-148, 234, 259, 279-283, and
                Appendix B at pp. 1-5)........................................................................................ 13

IV.     CONCLUSION ......................................................................................................... 15

███████████

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anascape, Ltd v. Microsoft Corp.*,
  2008 WL 7180756 (E.D. Tex. May 1, 2008) ............................................................2

*Barrett v. Atl. Richfield Co.*,
  95 F.3d 375 (5th Cir. 1996) ...................................................................................2

*BMC Software, Inc. v. Servicenow, Inc.*,
  2016 WL 3672151 (E.D. Tex. Jan. 29, 2016) .....................................................1, 9

*Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*,
  2016 WL 3655302 (E.D. Tex. Mar. 21, 2016) ......................................................15

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...............................................................................................1

*GREE, Inc. v. Supercell Oy*,
  2020 WL 4501341 (E.D. Tex. Aug. 5, 2020) ..........................................................2

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*,
  2019 WL 1987172 (E.D. Tex. April 12, 2019) ........................................................7

*Jauipuria v. LinkedIn Corp.*,
  2013 WL 12146741 (E.D. Tex. Mar. 27, 2013) ....................................................15

*Liquid Dynamics Corp. v. Vaughan Co.*,
  449 F.3d 1209 (Fed. Cir. 2006) ........................................................................2, 10

*Maxell, Ltd. v. Apple Inc.*,
  2021 WL 3021253 (E.D. Tex. Feb. 26, 2021) .........................................................5

*Natl'l Presto Indus., Inc. v. West Bond Co.*,
  76 F.3d 1185 (Fed. Cir. 1996) .................................................................................6

*Netlist, Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 21-cv-00463-JRG (E.D. Tex.) ..........................................................................3

*Olaf Soot Design, LLC v. Daktronics, Inc.*,
  839 Fed. Appx. 505 (Fed. Cir. 2021) ....................................................................12

*Quintel Tech. Ltd v. Huawei Techs. USA, Inc.*,
  2018 WL 626355 (E.D. Tex. Jan. 30, 2018) ............................................................6

*Realtime Data, LLC v. Actian Corp.*,
  2017 WL 11662038 (E.D. Tex. Mar. 29, 2017) ...........................................................6

*Realtime Data, LLC v. NetApp, Inc.*,
  2017 WL 4844254 (E.D. Tex. Oct. 26, 2017) ...........................................................15

*Saint Lawrence Comm'ns LLC v. ZTE Corp.*,
  2017 WL 3476978 (E.D. Tex. Feb. 21, 2017) ...........................................................5

*SimpleAir, Inc. v. Google Inc.*,
  2015 WL 5883129 (E.D. Tex. Oct. 6, 2015) ...........................................................1

*Thomas v. PFG Transco, Inc.*,
  501 F. Supp. 3d 437 443 (E.D. Tex. 2020)...........................................................6

*Treehouse Avatar LLC v. Valve Corp.*,
  54 F.4th 709 (Fed. Cir. 2022) ...........................................................2, 9, 10

*United Servs. Auto. Ass'n v. PNC Bank NA.*,
  2022 WL 1453204 (E.D. Tex. Apr. 17, 2022)...........................................................2

**Other Authorities**

Fed. R. Evid. § 702 ...........................................................1, 3

███████████████

## LIST OF EXHIBITS

| Ex. No. | Description |
|---------|-------------|
| A | Dr. Brogioli's Opening Expert Report |
| B | Highlighted copy of Appendix C (Documents Considered) to Dr. Brogioli's Opening Expert Report |
| C | *Netlist, Inc. v. Samsung Elecs. Co. Ltd.*, 21-cv-00463-JRG, ECF No. 432 (E.D. Tex. Apr. 5, 2023) (Order on Pretrial Motions and Motions in *Limine*) |
| D | NL-MIC-203_00041942 |
| E | Excerpts from Deposition Transcript of Chuck H. Hong |
| F | Excerpts from Netlist's Infringement Chart for the '060 Patent |
| G | Excerpts from Netlist's Infringement Chart for the '160 Patent |
| H | July 9, 2023 email correspondence from Micron's counsel to Netlist's counsel regarding availability of HBM3 (Gen2) source code |

## I. INTRODUCTION

Netlist's expert Dr. Brogioli offers a number of improper opinions that (1) discuss the outcome of or different products from a different case with a different defendant and seeking to taint Micron with a jury verdict; (2) are based solely on technical features only found in products no longer at issue in this case; (3) purport to discuss financial issues and Micron's state of mind that are outside Dr. Brogioli's expertise; (4) deviate from the Court's or the parties' agreed-upon claim construction or provide an untimely claim construction opinion; and (5) were not disclosed in Netlist's infringement contentions.  Micron respectfully moves to strike such opinions.

## II. LEGAL AUTHORITY

### A. *Daubert* Motions

An expert may testify only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. § 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).  Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Id* at 594, 597.

### B. Motions to Strike Expert Testimony That Contradict or Deviate from the Court's or the Parties' Agreed-Upon Construction

Courts regularly strike expert opinions or "conclusions regarding the scope of the patents-in-suit or particular claim limitations that contradict or deviate from" the Court's claim construction.  *BMC Software, Inc. v. Servicenow, Inc.*, 2016 WL 3672151, at *2 (E.D. Tex. Jan. 29, 2016); *SimpleAir, Inc. v. Google Inc.*, 2015 WL 5883129, at *2 (E.D. Tex. Oct. 6, 2015) ("Any opinion which requires such an assumption is contrary to the Court's claim construction order.");

*United Servs. Auto. Ass'n v. PNC Bank NA.*, 2022 WL 1453204, at *8 (E.D. Tex. Apr. 17, 2022), report and recommendation adopted, 2022 WL 1463984 (E.D. Tex. May 6, 2022) (striking expert opinion that is "inconsistent with [the] Court's claim construction"); *GREE, Inc. v. Supercell Oy*, 2020 WL 4501341, at *2 (E.D. Tex. Aug. 5, 2020) (striking an expert opinion that is "contradictory to the Court's construction"); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (finding no abuse of discretion where the district court "excluded the expert opinion evidence as irrelevant because it was based on an impermissible claim construction").

Similarly, expert opinions and conclusions that contradict or deviate from an agreed-upon construction may be stricken. *See Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 711 (Fed. Cir. 2022) (noting that "[w]hen the court has adopted a construction that the parties requested and agreed upon, any expert theory that does not rely upon that agreed-upon construction is suspect" and affirming district court's decision "striking portions of [expert] report that did not rely on the claim construction agreed to by the parties").

### C.     Motions to Strike Expert Testimony Based on Undisclosed Information and/or Theories

Expert reports may not introduce theories not previously disclosed in infringement contentions. *Anascape, Ltd v. Microsoft Corp.,* 2008 WL 7180756, at *4 (E.D. Tex. May 1, 2008). The Fifth Circuit uses a four-factor test to determine whether to exclude expert testimony based on undisclosed information: (1) the explanation, if any, for the party's failure to provide discovery; (2) the prejudice to the opposing party of allowing the expert to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the expert evidence. *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

## III.     ARGUMENTS

### A.     The Court Should Strike Dr. Brogioli's Discussion of the Netlist-Samsung Litigation Aimed at Tainting the Jury (¶¶ 103, 109, 112, 121-122, 215, 221-224,

████████████

**324-325, 362, 370)**

Dr. Brogioli's Opening Expert Report includes opinions on certain technical features of Samsung's products that are accused in the *Netlist-Samsung* case.[1]  *See* Ex. A at ¶¶ 109, 112, 121, 122, 215, 221-224, 324-325, and 362.  Additionally, Dr. Brogioli opines on issues based on the outcome of the trial in the *Netlist-Samsung* case.  *See id.* at ¶¶ 103, 370.  The Court should strike these paragraphs because they are highly prejudicial without being relevant or necessary.

First, opinions regarding Samsung products accused in the *Netlist-Samsung* case or the outcome of trial in the *Netlist-Samsung* case are neither relevant nor necessary.  For example, Dr. Brogioli opines that ███████████████████████████████████████████ ████████████████████████████████████ Ex. A at ¶ 221.  Whether certain features in Micron's products are similar to those in Samsung's products does not "help the trier of fact to understand the evidence or to determine" whether Micron's HBM3 Gen2 product practices each element of the asserted '060 and '160 patent claims.  Fed. R. Evid. § 702(a).  Instead, these opinions will only serve to confuse the jury and potentially mislead them to substitute the verdict in the case against *a different defendant and different products* for the correct factual determination to be done in this case.  Nor are such comparisons necessary since Dr. Brogioli can just as readily opine on Micron's products without such comparisons.

Second, Dr. Brogioli's opinions regarding Samsung's HBM products unfairly prejudices Micron, because Micron and its experts had *no opportunity* to review and analyze the same Samsung documents and materials that Dr. Brogioli has had access to.  Dr. Brogioli was Netlist's technical expert regarding the '060 and '160 patents in the *Netlist-Samsung* case and had access to Samsung's technical documents regarding Samsung's HBM.  Micron's technical expert on the

---

[1]   *Netlist, Inc. v. Samsung Elecs. Co., Ltd.*, No. 21-cv-00463-JRG (E.D. Tex.).

███████████████

'060 and '160 patents, however, did not have access to these materials.  Indeed, the list of materials cited included in Dr. Brogioli's opening report served in ***this case*** against Micron includes a large number of documents (*e.g.*, more than sixty) that appear to have been produced by Samsung in the *Netlist-Samsung* case only and therefore were unavailable to Micron and its experts.  Ex. B (Materials Considered) (see highlighted documents).  This limited Micron's technical expert's ability to rebut Dr. Brogioli's opinions regarding Samsung's HBM products and thereby prejudiced Micron.

Third, Dr. Brogioli's comparison of Samsung's and Micron's HBM products is conclusory and incomplete.  The sole basis of Dr. Brogioli's conclusion that █████████████████ ████████████████████████████████████████████ ███████ (Ex. A ¶ 221) is that █████████████████████████ ███████████████.[2]  But the asserted claims of the '060 and '160 patent recites many other elements, and he makes no efforts to show that Samsung's and Micron's HBM products are similar with respects to such other claim elements.  Thus, Dr. Brogioli's comparison of Samsung's and Micron's products is unreliable.

Dr. Brogioli's cursory and incomplete comparison of Samsung's and Micron's HBM products, coupled with his discussion of the outcome of the trial in the *Netlist-Samsung* case, reveals an improper motive:  suggesting to the jury that the jury in ***this case*** need not separately determine whether Micron's product infringes the '060 and '160 patents because a different jury in a ***different case*** has found infringement against ***a different party*** (Samsung) based on ***a different product*** (Samsung's HBM).  *See*, *e.g.*, Ex. A ¶ 103 (stating that "a jury has found infringement for Samsung's HBM products, including those with the twist TSV configurations.").  But "invit[ing]

---

[2]    The twizzle TSV configuration is disclosed in Micron's patent U.S. Patent No. 9,123,552.

4

the jury here to defer to the [] jury's verdict, rather than discharging their duty to resolve the current dispute," even when "the prior verdict involve[s] some of the same patents asserted here, "would be inappropriate and constitutes unfair prejudice." *Maxell, Ltd. v. Apple Inc.*, 2021 WL 3021253, at *6 (E.D. Tex. Feb. 26, 2021); *see also Saint Lawrence Comm'ns LLC v. ZTE Corp.*, 2017 WL 3476978, at *1 (E.D. Tex. Feb. 21, 2017); E.D. Tex. Standing Order on MIL No. 13 ("prohibiting parties from "introducing evidence, testimony, or argument regarding either party's other litigations").

Accordingly, Micron respectfully requests that the Court strike Dr. Brogioli's opinions regarding the *Netlist-Samsung* case (*e.g.*, products accused and the outcome of the trial in the *Netlist-Samsung* case), including those set forth in ¶¶ 103, 109, 112, 121, 122, 215, 221-224, 324-325, 362, and 370 of his Opening Expert Report.

### B.   The Court Should Strike Dr. Brogioli's Opinions Regarding Micron's Alleged State of Mind (¶¶ 359 – 379, 383 – 386)

Dr. Brogioli's Opening Expert Report includes opinions relating to Micron's purported state of mind, such as knowledge and intent.  *See* Ex. A ¶¶ 359-367 (Section VIII.B.1; B. Induced Infringement > 1. Knowledge of the Patents), ¶¶ 368-379 (Section VIII.B2; B. Induced Infringement > 2. Specific Intent), ¶¶ 383-385 (Section VIII.C.2; C. Contributory Infringement > 2. Knowledge of Patent/Knowledge Products Made to Infringe); and ¶ 386 (Section VIII.D; Willful Infringement).  These paragraphs should be stricken.  The Court struck similar paragraphs from Netlist's expert report in the *Netlist-Samsung* case for violating the province of the fact finder, the jury.  Ex. C (*Samsung-Netlist* Pretrial Order) at 6 ("Concerning Samsung's alleged state of mind, the Court GRANTED the motion [to strike].  The witness will not opine on Samsung's state of mind.") (citations omitted).

The Court should exclude these non-technical opinions regarding Micron's alleged state of

████████████████████

mind as the evaluation of a party's state of mind is "within the province of the jury … who must 'ultimately decide whether Defendant had the requisite intent' for a finding of indirect infringement.'" *Realtime Data, LLC v. Actian Corp.*, 2017 WL 11662038, at *3 (E.D. Tex. Mar. 29, 2017) (quoting *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 803 (E.D. Tex. 2007)); *Quintel Tech. Ltd v. Huawei Techs. USA, Inc.*, 2018 WL 626355, at *3 (E.D. Tex. Jan. 30, 2018); *see also Thomas v. PFG Transco, Inc.*, 501 F. Supp. 3d 437 443 (E.D. Tex. 2020) ("An expert witness's credentials put him in no better position to opine as to Defendant's state of mind than the jury.").

Further, Dr. Brogioli's bases for those opinions are unreliable.  In particular, Dr. Brogioli opines that ████████████████████████████████████

████████████████████ Ex. A ¶ 365.  In a failed effort to support his opinion, Dr. Brogioli relies on the following: ████████████████████████████████

████████████████████████████████████████

████████████████████████████████ *Id.* ¶¶

362 ████████████████████ 363 ████████████████████

367 ████████████████████████████

████████████████ cannot possibly provide any basis for Micron's purported knowledge of the '060 or '160 patent because neither patent existed in 2011-2012.  The '060 and '160 patent issued in 2014 and 2016 respectively, years after ████████████████.  *Natl'l Presto Indus., Inc. v. West Bond Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996) ("we hold that the general rule is that inducement of infringement under § 271(b) does not lie when the acts of inducement occurred before there existed a patent to be infringed."); *see also id.* at 1193 ("to willfully infringe a patent, the patent must exist") (citing *State Indus., Inc. v. A.O. Smith Corp.*,

███████████████████

751 F.2d 1225, 1236 (Fed. Cir. 1985).  Further, not a single sponsoring witness has established

that a presentation was ever given or that the alleged person who heard the presentation at Elpida

was ever employed by Micron.  There is no adequate or reliable basis for Dr. Brogioli's opinions.

████████████████ suffer from the same flaws.  No sponsoring witness has provided any

testimony sufficient to prove ████████████████████████████████████████

████████████████████████[3]  Indeed, no admissible evidence exists that ██████████████

████████████████████████████████████████████████████████████.  █

████████████████████████████████████████

████████████████████████  Mr. Chuck Hong, Netlist's corporate witness on alleged

notice, testified that ████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████

████████████████████

█

████████████████████████████████

████████████████████████████████

█

████████████████████████████████

---

[3]   Further, the '160 patent did not even exist at the time of ████████████████  Dr. Brogioli cannot rely on Micron's purported knowledge of the '060 patent as a basis for knowledge of the '160 patent.  *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 1987172, at *2 (E.D. Tex. April 12, 2019), adopted by 2019 WL 1979866 (E.D. Tex. May 2, 2019) ("simply pointing out knowledge of the parent of one of the asserted patents or knowledge of other patents that share the same inventor as one of the asserted patents is insufficient").

[4]   ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████



Ex. E (Chuck Hong Dep. Tr.) at 32:12-14, 180:22-25, 183:13-184:4.   Therefore, there is no

admissible evidence to support Dr. Brogioli's statement that ████████████████████████

████████████████████████████████████████████ Ex. A ¶ 363.

Accordingly, Micron respectfully requests that the Court strike Dr. Brogioli's opinions

regarding Micron's alleged state of mind, including those set forth in ¶¶ 359-379 and 383-386 of

his Opening Expert Report.

### C.   The Court Should Strike Dr. Brogioli's Opinions Regarding the Financial Success of Micron's Prior Art and Accused Products (¶¶ 67, 297-299, 323, 327, 330)

Dr. Brogioli's Opening Expert Report includes opinions on the financial success (or lack

thereof) of Micron's prior art and accused products, including Micron's Hybrid Memory Cube

products, HBM2E product, and HBM3 Gen2.  *See* Ex. A at ¶¶ 67, 297-299, 323, 327, 330.  The

Court should strike these paragraphs.

Dr. Brogioli lacks the proper scientific, technical, or other specialized knowledge, namely

economic, financial, and business expertise, that would qualify him to opine on the financial

success (or lack of financial success) of Micron's products.  Dr. Brogioli is not an economist, MBA,

or CPA.  Ex. A, Appx. A at 1.  He does not hold any degrees in economics or related fields, such

as business management, finance, or accounting.  *Id.*  His expertise is strictly limited to technical



fields. *Id.*

Dr. Brogioli lacks any qualification to opine on the financial success (or reasons behind the financial success) of Micron's prior art or accused products, *e.g.*, that

Ex. A at ¶ 330 (emphases added).

Accordingly, Micron respectfully requests that the Court strike Dr. Brogioli's opinions regarding the financial success (or lack thereof) of Micron's HMC, HBM2E, or HBM3 Gen2 products, including those set forth in ¶¶ 67, 297-299, 323, 327, and 330 of his Opening Expert Report.

**D.    The Court Should Strike Dr. Brogioli's Untimely Claim Construction Opinions for the Term "Array Die" (¶¶ 60-100, 206-218, and 272)**

As explained in Micron's co-pending motion for summary judgment of non-infringement of the '060 and '160 patents, Dr. Brogioli's Opening Expert Report includes opinions on the meaning of the term "array die" that *materially deviates* from the parties' agreed-upon construction of the term. *See Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 711 (Fed. Cir. 2022). These paragraphs are: ¶¶ 69-100 (Section IV.B), 206-218 (Section VI.A.1.c), and 272 (Section VI.B.1.c).

Additionally, these paragraphs contain Dr. Brogioli's opinions regarding the prosecution history of the '060 patent and thus should have been disclosed during the claim construction discovery period.  *See* Ex. A at p. i

. Because Netlist did not do so, the Court should strike these untimely claim construction opinions in. *BMC Software, Inc. v. Serivcenow, Inc.*, No. 2:14-cv-00903-JRG, 2016 WL 3672151, at *2 (E.D. Tex. Jan. 26, 2016); *see also Treehouse Avatar*, 54 F.4th at 711 (affirming district

court's order striking expert opinion that applied a plain and ordinary construction instead of the parties' agreed-upon construction); *Liqiud Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (finding no abuse of discretion where the district court "excluded the expert opinion evidence as irrelevant because it was based on an impermissible claim construction").

Netlist may argue, as it did in the Samsung litigation, that Dr. Brogioli merely applies the "plain and ordinary" meaning of the term "DRAM circuit." Netlist's Opp. to Samsung's Mot. to Strike Portions of Dr. Brogioli's Expert Report (Dkt. 251) at 7 ████████████████████

██████████████████████████████████████████████████ However, and importantly, this case is distinguishable from the *Netlist-Samsung* case because unlike in the *Netlist-Samsung* litigation, Micron and Netlist **agreed** to their own construction of the terms "array die" and "DRAM circuit." "When the court has adopted a construction **that the parties requested and agreed upon**, any expert theory that does not rely upon that agreed-upon construction is suspect." *Treehouse Avatar*, 54 F.4th at 715 (emphasis added). In *Treehouse Avatar*, the expert provided infringement testimony that applied the plain and ordinary construction of a claim term, but the district court nonetheless struck the expert testimony because it materially differed from the parties' agreed-upon construction, and the Federal Circuit affirmed:

> Here, Mr. Friedman's report undisputedly applied the "plain and ordinary meaning" of the CE limitation, not the parties' agreed-upon construction. Under these circumstances, Treehouse has failed to demonstrate that the district court abused its discretion by striking portions of Mr. Friedman's report that did not rely on the claim construction agreed to by the parties.

*Treehouse Avatar*, 54 F.4th at 715.

This is precisely the case here. Micron and Netlist agreed to construe the term "array die" as "array die that is different from a DRAM circuit." ECF No. 69 (Joint Claim Const. Statement) at 2. Dr. Brogioli advocates for an unrecognizably different claim construction to determine

infringement.  Namely, Dr. Brogioli opines that the term "array die" should mean array die that is different from a "DRAM device[] *with wire bonds on the periphery and each having interface circuits that can directly interface with an external device such as a host*."  Ex. A at ¶ 206 (emphasis added).  To get to his lengthy and completely new construction, Dr. Brogioli first improperly opines the phrase "DRAM circuit" from the agreed-upon construction of "array die" should be limited in a way not previously disclosed or agreed to mean only the DRAM circuit from Rajan, or a "Rajan-style" DRAM circuit.  Ex. A at ¶ 72 ("With respect to its [Rajan's] DRAM circuits 206A-D …"); *see also id.* ¶ 86 (opining on "[a] Rajan-style DRAM circuit.").  Dr. Brogioli then takes another leap by substituting the phrase "Rajan-style" with the word "monolithic" (*id.* ¶¶ 76 ("In Rajan, the DRDAM [*sic*] circuits are monolithic")) and opines that "monolithic" means (1) that it "do[es] not rely on the interface die to interface with the memory controller or host" and (2) that it is wire bonded.  *Id.* ¶ 76 ("… monolithic, meaning that they do not rely on the interface die to interface with the memory controller or host"), 80 ("… monolithic DRAM devices in *e.g.*, conventionally stacked DDR4 packages with two wire-bonded dies").  Through this patched-up, three-step claim construction analysis, Dr. Brogioli started with the parties' actual, agreed-upon construction, which consisted of just nine words (*i.e.*, "array die that is different from a DRAM circuit") and completely transforms it into a new and unrecognizably different construction consisting of 30-plus words.  *Id.* ¶ 206 (construing "array die" as array die that is different from a "DRAM device[] *with wire bonds on the periphery and each having interface circuits that can directly interface with an external device such as a host*") (emphasis added).  The resulting construction that Dr. Brogioli applies in his infringement analysis is, on its face, *materially different* from the agreed-upon construction.

Any argument that Dr. Brogioli is merely applying a plain meaning is further belied by the

fact that he instructs the reader to "review[] the intrinsic evidence rather than some random reference of DRAM circuit" to determine the meaning of the phrase "DRAM circuit." Ex. A at ¶ 209. This is solidly within the realm of claim construction. Dr. Brogioli should not be permitted to improperly instruct the jury on how to construe a claim term under the guise of an expert opinion. *Olaf Soot Design, LLC v. Daktronics, Inc.*, 839 Fed. Appx. 505, 509 (Fed. Cir. 2021) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it. … Otherwise, a legal question will be 'improperly submitted to the jury.'").

Accordingly, Micron respectfully requests that the Court strike Dr. Brogioli's highly improper opinions regarding the construction of the term "array die," including those set forth in in ¶¶ 69-100, 206-218, and 272 of his Opening Expert Report.

### E. The Court Should Strike Dr. Brogioli's Infringement Opinions That Are Not Based on the Court's Construction of the Term "Electrical Communication" (¶¶ 225-228 and 232)

Dr. Brogioli's Opening Expert Report includes infringement opinions that apply the incorrect construction of the term "electrical communications." These paragraphs include: ¶¶ 225-228 and 232. The Court should strike these paragraphs.

In his report, Dr. Brogioli's equates "electrical communication" with electrical connection to data ports and analyzes Micron's HBM3 Gen2 product under that interpretation only:



[REDACTED]

Ex. A at ¶¶ 226-227.  This is precisely the interpretation that this Court held was improper.  This Court adopted the plain and ordinary construction of the term "electrical communication."  In doing to, this Court provided two points for guidance.  First, the Court held that "the plain and ordinary meaning of 'electrical communication' is different from 'electrical connection.'"  ECF No. 249 (Claim Const. Order) at 10.  Second, the Court cautioned that "if Netlist's position is the mere presence of 'data ports' is enough to meet the 'electrical communication' requirement for purposes of determining infringement or invalidity, the Court agrees with Micron that is improper."  *Id.* at 11.  Dr. Brogioli's opinions, reproduced above, clearly violates ***both***.

Accordingly, Micron respectfully requests that the Court strike Dr. Brogioli's opinions contrary to the Court's Order and instructions regarding the "electrical communications" limitations, including those set forth in in ¶¶ 225-228 and 232 of his Opening Expert Report.

**F.      The Court Should Strike Dr. Brogioli's New Infringement Theories Not Disclosed in Netlist's Infringement Contentions (¶¶ 144-148, 234, 259, 279-283, and Appendix B at pp. 1-5)**

In his opening infringement report, Dr. Brogioli analyzed infringement with respect to claims 1-10 of the '060 patent and claims 1 and 5 of the '160 patent.  Each of these claims recite and require "first data conduit/conduits" and "second data conduit/conduits."  *See* '060 Patent at Claim 1 (reciting "a control die comprising at least a first data conduit … and at least a second data conduit"); '160 Patent at Claim 1 (reciting "a control die comprising first data conduits … and second data conduits").

Netlist's expert Dr. Brogioli opines, in his infringement report, [REDACTED] [REDACTED] in Micron's HBM3 Gen2 product corresponds to the claimed "data



conduit/conduits" for purposes of infringement.  Ex. A at ¶ 234 ███████████████

████████████████████████████████████████████████████████████████████

█████████; 280 █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████ Dr. Brogioli opines that ████████████████

█████ are different from the regular circuits used to drive signals in the data TSVs of Micron's

HBM3 Gen2 product and are ███████████████████████████████████ Ex.

X (Brogioli Report) ¶ 144 ████████████████████████████████

Micron timely disclosed materials, including its source code for its HBM3 Gen2 product

as soon as sufficiently final designs first became available in early July 2023. Ex. H at 1 (July 9,

2023 email from Micron's counsel stating: "The designs for HBM3, which are still in development,

are available for inspection.").  Despite having had months to review Micron's production, and

actually having reviewed them extensively, Netlist simply failed to adequately disclose this

infringement theory in its infringement contentions.  With respect to the '060 patent, the sections

of Netlist's '060 infringement chart that address the "data conduit" limitation does not identify or

even refer to *any* ███████████████████████████████ *See generally*, Ex. F

(Excerpts from Netlist's '060 Infringement Chart).  Netlist's infringement chart instead refers to

the circuits that operate ███████████████████ *Id.* at 25.

With respect to the '160 patent, the sections of Netlist's 160 infringement that address the

"data conduit" limitation, Netlist merely alleges that some unspecified "driver circuitry" in

Micron's HBM2E product (which Netlist is no longer pursuing) "comprises multiple transmitters,

repeaters, and other circuitry" and that it also "contains redundancy test and repair circuitry" but

did not identify any exemplary documentation or figures or otherwise explain how such

unspecified "driver circuitry" could meet the "data conduit" limitation.  Ex. G (Excerpts from Netlist's '160 Infringement Chart).  Nor did Netlist's infringement contentions provide any detail that would have put Micron on notice that Netlist was pointing to ███████████ out of billions of transistors in Micron's HBM3 Gen2 product, as the "redundancy test and repair circuitry" from Netlist's infringement charts.  *See Jauipuria v. LinkedIn Corp.*, 2013 WL 12146741 at *2 (E.D. Tex. Mar. 27, 2013) ("While Plaintiffs do not need to prove their infringement case in their contentions, Plaintiffs 'may not rely on vague, conclusory language or simply mimic the language of the claims.").

"Expert infringement reports may not introduce theories not previously set forth in infringement contentions."  *ROY-G-BIV Corp.,* 63 F. Supp. 3d at 699; *see also Realtime Data, LLC v. NetApp, Inc.*, 2017 WL 4844254, at *l (E.D. Tex. Oct. 26, 2017) (stating the same language); *Godo Kaisha IP Bridge Iv. Broadcom Ltd*, 2017 WL 2869331, at *l (E.D. Tex. Apr. 27, 2017) (quoting the same language); *Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 3655302, at *4 (E.D. Tex. Mar. 21, 2016) (quoting the same language).  Having failed to disclose its infringement theory based on the "TsvForce" / "pass gate" circuits, Dr. Brogioli should be precluded from offering expert testimony that now relies on these undisclosed theories.

Accordingly, Micron respectfully requests that the Court strike Dr. Brogioli's opinions regarding Netlist's undisclosed infringement theories based on the "TsvForce" / "pass gate" circuits, including ¶¶ 144-148, 234, 259, 279-283, and Appendix B at pp. 1-5 of Dr. Brogioli's Opening Expert Report.

## IV.    CONCLUSION

For the foregoing reasons, Micron respectfully requests that the Court grant Micron's Motion.

Dated: November 14, 2023                    Respectfully submitted,

                                            */s/ Michael R. Rueckheim*
                                            Thomas M. Melsheimer
                                            State Bar No. 13922550
                                            TMelsheimer@winston.com
                                            Natalie Arbaugh
                                            State Bar No. 24033378
                                            NArbaugh@winston.com
                                            WINSTON & STRAWN LLP
                                            2121 N. Pearl Street, Suite 900
                                            Dallas, TX 75201
                                            Telephone: (214) 453-6500
                                            Facsimile: (214) 453-6400

                                            David P Enzminger (*pro hac vice*)
                                            denzminger@winston.com
                                            WINSTON & STRAWN LLP
                                            333 South Grand Avenue, 38th Floor
                                            Los Angeles, CA 90071-1543
                                            Telephone: (213) 615-1700
                                            Facsimile: (213) 615-1750

                                            Michael R. Rueckheim
                                            State Bar No. 24081129
                                            MRueckheim@winston.com
                                            Ryuk Park (*pro hac vice*)
                                            RPark@winston.com
                                            Matthew R. McCullough
                                            MRMcCullough@winston.com
                                            WINSTON & STRAWN LLP
                                            255 Shoreline Drive, Suite 520
                                            Redwood City, CA 94065
                                            Telephone: (650) 858-6500
                                            Facsimile: (650) 858-6559

                                            Matthew Hopkins (*pro hac vice*)
                                            State Bar No. 1500598
                                            mhopkins@winston.com
                                            WINSTON & STRAWN LLP
                                            1901 L Street, N.W.
                                            Washington, D.C. 20036
                                            Telephone: (202) 282-5000
                                            Facsimile: (202) 282-5100

                                            William M. Logan
                                            State Bar No. 24106214
                                            wlogan@winston.com
                                            Juan C. Yaquian (*pro hac vice*)
                                            State Bar No. 24110559
                                            JYaquian@winston.com
                                            WINSTON & STRAWN LLP
                                            800 Capital Street, Suite 2400

Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Vivek V. Krishnan (*pro hac vice*)
vkrishnan@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive, Suite 4200
Chicago, IL 60601
Telephone: 312-558-9508
Facsimile: 312-558-5700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC**

## CERTIFICATE OF SERVICE

I certify that, on November 14, 2023, a copy of the foregoing was served on all counsel of record via the Court's ECF system and email.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Micron and Netlist met and conferred regarding Defendants' Motion to Strike Expert Report of Dr. Brogioli.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim