███████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Netlist, Inc., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No.: 2:22-cv-203-JRG |
| | § | |
| Micron Technology, Inc., | § | ███████████████ |
| Micron Semiconductor Products, Inc., | § | |
| Micron Technology Texas, LLC, | § | |
| | § | |
| *Defendant.* | | |

**MICRON'S DAUBERT MOTION AND MOTION TO STRIKE
EXPERT TESTIMONY OF DR. WILLIAM HENRY MANGIONE-SMITH**

███████████

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 1

        A.      The Court Should Strike Dr. Mangione-Smith's Opinions
                Regarding Netlist's Distributed Data Buffer Technology as
                Well as the '506 and '339 Patents............................................................ 1

        B.      The Court Should Strike Dr. Mangione-Smith's Opinions
                Regarding Micron's Alleged State of Mind and Netlist's
                February 2015 Slide Deck and April 2015 Slide Deck as
                Unreliable ................................................................................................ 2

        C.      The Court Should Strike Dr. Mangione-Smith's New
                Infringement Theories Not Disclosed in Netlist's
                Infringement Contentions ........................................................................ 6

        D.      The Court Should Strike Dr. Mangione-Smith's New Claim
                Constructions ........................................................................................... 9

        E.      The Court Should Strike Dr. Mangione-Smith's Untimely
                Doctrine of Equivalents Opinions ('918 and '054 Patents).................... 12

        F.      The Court Should Strike Dr. Mangione-Smith's
                Unsupported Technical Valuation Opinions Not Disclosed
                in Fact Discovery ................................................................................... 13

        G.      The Court Should Strike All References to the Netlist v.
                Samsung Litigation ................................................................................ 15

III.    CONCLUSION ................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anascape, Ltd v. Microsoft Corp.*,
    No. 9:60-cv-0158, 2008 WL 7180756 (E.D. Tex. May 1, 2008) ............................6, 9, 12, 13

*Barrett v. Atl. Richfield Co.*,
    95 F.3d 375 (5th Cir. 1996) ................................................................................................6

*Eolas Techs. Inc. v. Amazon.com, Inc.*,
    No. 6: 15-CV-01038, 2016 WL 7666160 (E.D. Tex. Dec. 5, 2016) ......................................12

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*,
    No. l7-cv-00662-JRG, 2019 WL 1987172 (E.D. Tex. April 12, 2019)................................4, 5

*Maxell, Ltd. v. Apple Inc.*,
    No. 5:19-cv-00036, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020)......................................10

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
    10 F.4th 1358 (Fed. Cir. 2021) ..........................................................................................15

*Mobile Telecomms. Techs., LLC v. ZTE (USA) Inc.*,
    No. 13-cv-00946-JRG, ECF No. 251 (E.D. Tex. Aug. 23, 2016) ...........................................4

*Music Choice v. Stingray Digital Grp., Inc.*,
    No. 2:16-cv-00586, 2019 WL 8110069 (E.D. Tex. Nov. 19, 2019)......................................10

*Netlist, Inc. v. Samsung Elecs. Co., Ltd.*,
    No. 21-cv-00463-JRG (E.D. Tex.)........................................................................................2

*Optis Wireless Tech., LLC v. Huawei Techs. Co.*,
    2:l 7-cv-00123, 2018 WL 3375192........................................................................................9

*Quintel Tech. Ltd v. Huawei Techs. USA, Inc.*,
    No. 4:15-CV-307, 2018 WL 626355 (E.D. Tex. Jan. 30, 2018)..............................................5

*Realtime Data, LLC v. Actian Corp.*,
    No. 6:15-cv-00463, 2017 WL 11662038 (E.D. Tex. Mar. 29, 2017) ......................................5

*Retractable Techs. Inc. v. Abbott Labs., Inc.*,
    Case No. 5:05-CV-157, 2010 WL 11531436 (E.D. Tex. June 18, 2010)................................4

*Sycamore IP Holdings LLC v. AT&T Corp.*,
    No. 2: 16-CV-588, 2017 WL 4517953 (E.D. Tex. Oct. 10, 2017) .........................................12

*Thomas v. PFG Transco, Inc.*,
    501 F. Supp. 3d 437 (E.D. Tex. 2020) ................................................................................4, 5

*Ultravision Techs., LLC v. Go Vision LLC*,
    No. 2:18-cv-00100, 2021 WL 2144788 (E.D. Tex. May 26, 2021) .......................................10

**Other Authorities**

Fed. R. Evid. 401 and 703 ................................................................................................................2

Rule 26(e) ........................................................................................................................................15

Rule 702 ..........................................................................................................................................14

███████████████

## I.       INTRODUCTION

Plaintiff's expert Dr. William Henry Mangione-Smith offers numerous unsupported or unreliable opinions. As such, Micron asks the Court to strike the following opinions: (1) non-technical, unreliable opinions regarding Micron's alleged state of mind, (2) unsupported and unreliable opinions regarding a February 2015 presentation and an April 2015 presentation, (3) irrelevant opinions regarding other litigation, the invalidated '506 and '339 patents, and the distributed data buffer technology supposedly covered by those patents, (4) unsupported technical valuation opinions not disclosed in fact discovery, and (5) new doctrine of equivalents theories, new claim constructions, and other new infringement theories not included in Netlist's Infringement Contentions.

## II.       ARGUMENT

### A.       The Court Should Strike Dr. Mangione-Smith's Opinions Regarding Netlist's Distributed Data Buffer Technology as Well as the '506 and '339 Patents

The Patent Trial and Appeal Board recently determined that all claims in Netlist's '506 and '339 patents were unpatentable. ███████████████████████████ ███████████ Micron respectfully requests that the Court strike Exhibit A of Dr. Mangione-Smith's opening expert report in its entirety because Exhibit A relates to only the '506 and '339 patents. Micron also requests that the Court strike any mention[1] of those patents or their supposed invention (i.e., distributed buffer technology) in other exhibits of Dr. Mangione-Smith's opening report. Specifically, the Court should strike any mention of "distributed buffer" technology in Dr.

---

[1] *See* Ex. 3 for a table of any mention of the '506 and '339 patents or the "distributed data buffer" technology supposedly covered by those patents.

Mangione's Smith report because it has no nexus to the remaining asserted patents and is thus inadmissible under Federal Rules of Evidence 401 and 703.

**B.    The Court Should Strike Dr. Mangione-Smith's Opinions Regarding Micron's Alleged State of Mind and Netlist's February 2015 Slide Deck and April 2015 Slide Deck as Unreliable**

The Court should strike Dr. Mangione-Smith's opinions regarding willfulness, wherein Dr. Mangione-Smith merely summarizes documents provided by Netlist's counsel to opine regarding Micron's knowledge of patents in suit. To the extent the documents he summarizes are admissible, Dr. Mangione-Smith's opinions are unhelpful, outside his professional expertise, and legally improper. To the extent the documents are relevant and admissable, the jury is perfectly capable of assessing them without this supposed "expert" testimony. Dr. Mangione-Smith made the same opinions in *Netlist, Inc. v. Samsung Elecs. Co., Ltd.*, No. 21-cv-00463-JRG (E.D. Tex.) (the "*Netlist-Samsung* case"), where this Court excluded his opinions regarding Samsung's state of mind. Ex. 4 (Pretrial Order in the *Netlist-Samsung* case) at 6 ("The witness will not opine on Samsung's state of mind").

Dr. Mangione-Smith's Opening Expert Report includes opinions regarding the alleged state of mind of the Micron defendants without basis in fact or from his expertise. These opinions form the basis of Dr. Mangione-Smith's allegations that the Micron defendants should be held liable for inducement and contributory infringement, and those opinions are the same opinions, formed through similar reasoning, that he unreliably made about Samsung's state of mind. *Id.*

In particular, Dr. Mangione-Smith opines that  Ex. 1 (Mangione-Smith Opening

Rpt.) at Ex. B, ¶¶ 635, 652; *see also* Ex. A², ¶¶ 414, 429 (similar allegations about the '506 and '339 patents).

  In a thin attempt to support his opinions, Dr. Mangione-Smith relies broadly ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ *Id.* at Ex. A, ¶¶ 413-445, Ex. B, ¶¶ 635-670. None of these facts can support Dr. Mangione-Smith's opinions.

  Dr. Mangione-Smith discusses ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██. *See, e.g.*, Ex. 1 at Ex. B, ¶ 44. Instead, Dr. Mangione-Smith relies ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

*See, e.g.*, Ex. 1 at Ex. A, ¶ 54. Further, no admissible evidence exists of ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Ex. 5 (Hong

---

² To the extent that the Court does not strike Exhibit A in its entirety, Defendants move to strike portions of Exhibit A for the reasons outlined in this and the following sections.

Dep. Tr.) at 32:12-14, 180:22-25, 183:13-184:4. Thus, none of the individuals present at the alleged ██████████████████████████████ have testified to the details.

Moreover, ████████████ are irrelevant to Micron's knowledge or state of mind. Netlist filed the '918 patent on December 30, 2020, and the '054 patent on May 24, 2021. ████████

████████████████████████████████████████████████████████

████████ Dr. Mangione-Smith attempts to side-step this in his analysis by claiming (again, without any admissible evidence) that ██████████████████████████████████████

██████████████████████████ Ex. 1 at Ex. B, ¶ 44. That is legally irrelevant—a claim of willfulness must be based on the patents in this case. *Mobile Telecomms. Techs., LLC v. ZTE (USA) Inc.*, No. 13-cv-00946-JRG, ECF No. 251, at *2 (E.D. Tex. Aug. 23, 2016). In any case, the PTO has recently declared all asserted claims of the '833 patent invalid. *See* Ex. 6 at 1, 51.

In short, no admissible evidence supports Dr. Mangione-Smith's speculations ████

██████████████████████████████████████████████ Ex. 1 at Ex. A, ¶¶ 409-450, Ex. B, ¶¶ 631-675. "An expert witness's credentials put him in no better position to opine as to Defendant's state of mind than the jury." *Thomas v. PFG Transco, Inc.*, 501 F. Supp. 3d 437, 443 (E.D. Tex. 2020). Indeed, these types of opinions are "matters which a jury is capable of understanding without an expert's help." *Retractable Techs. Inc. v. Abbott Labs., Inc.*, Case No. 5:05-CV-157, 2010 WL 11531436, at *6 (E.D. Tex. June 18, 2010). Accordingly, Dr. Mangione-Smith's speculation about what Netlist may have disclosed to Micron about now-invalidated patent claims are outside the scope of his expertise as a technical expert and irrelevant to this case. *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. l7-cv-00662-JRG, 2019 WL 1987172, at *2 (E.D. Tex. April 12, 2019), adopted by 2019 WL 1979866 (E.D. Tex. May 2, 2019) ("simply

pointing out knowledge of the parent of one of the asserted patents or knowledge of other patents that share the same inventor as one of the asserted patents is insufficient").

Additionally, these non-technical opinions regarding Micron's alleged state of mind should be excluded as the evaluation of a party's state of mind is "within the province of the jury." *Realtime Data, LLC v. Actian Corp.*, No. 6:15-cv-00463, 2017 WL 11662038, at *3 (E.D. Tex. Mar. 29, 2017) (quoting *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 803 (E.D. Tex. 2007)); *see also PFG Transco*, 501 F. Supp. 3d at 443. This Court has excluded expert testimony that relies on mere knowledge of a party's other patents, including related patents, as a basis for knowledge of an asserted patent. *See Intell. Ventures II LLC*, 2019 WL 1987172, at *2, *adopted by* 2019 WL 1979866 (E.D. Tex. May 2, 2019); *see also Quintel Tech. Ltd v. Huawei Techs. USA, Inc.*, No. 4:15-CV-307, 2018 WL 626355, at *3 (E.D. Tex. Jan. 30, 2018) ("A trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury."). As discussed above, Dr. Mangione-Smith exclusively ███████████████ ██████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████. *See e.g.*, Ex. 1 at Ex. A, ¶ 54.

Similarly, Dr. Mangione-Smith's opinions that ██████████████████████████████ ████████████████████████████████████, does not provide a reliable basis for determining that Micron had knowledge of the specific asserted patents. Ex. 1 at Ex. A ¶¶ 415-417, 420-425, 435, 446, Ex. B ¶¶ 637, 639, 640, 644, 645, 656. Lastly, Dr. Mangione-Smith's opinions regarding Micron's position in the marketplace is likewise not relevant, let alone a sufficient or reliable basis, to the jury's determination of whether Micron would have known or was willfully blind to the existence of the four specific patents addressed in Dr. Mangione-Smith's initial report. *Id.* at Ex. A ¶¶ 415, 431-435, 446, Ex. B ¶¶ 637, 653-656.

Accordingly, Micron respectfully requests that the Court strike Dr. Mangione-Smith's opinions regarding Netlist's state of mind and any reference to ███████████, including those set forth in Exhibit A at ¶¶ 409-450 and Exhibit B at ¶¶ 631-675 of his opening report.

### C.     The Court Should Strike Dr. Mangione-Smith's New Infringement Theories Not Disclosed in Netlist's Infringement Contentions

Expert reports may not introduce theories not previously disclosed in infringement contentions. *Anascape, Ltd v. Microsoft Corp.*, No. 9:60-cv-0158, 2008 WL 7180756, at *4 (E.D. Tex. May 1, 2008). The Fifth Circuit uses a four-factor test to exclude expert testimony based on undisclosed information: (1) the explanation, if any, for the party's failure to provide discovery; (2) the prejudice to the opposing party of allowing the expert to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the expert evidence. *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). As shown below, Netlist improperly introduced numerous infringement theories for the first time in its opening expert report on infringement. These late disclosures in expert reports of infringement theories not previously disclosed in Netlist's Infringement Contentions are improper, unjustified, and prejudicial, and should be struck. *Anascape*, 2018 WL 7180756, at *4.

### 1.     "Voltage Monitor Circuit" (UDIMMs, SODIMMs, and RDIMMs; '918 cls. 5-7, 9-13, 16-22, and 24-27)

**¶¶ 191-199, 355-364, 409-413, 461-462:** Netlist's Infringement Contentions for the '918 patent asserted ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ When Netlist supplemented its infringement contentions, Netlist did not change this allegation. Then on October 4, 2023 Netlist completely changed its infringement theory and now alleges (for the first time in an opening expert report) that Micron infringes this claim element through ████████████ ████████████████████████████████████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

████████. This new theory is a complete shift from Netlist's Infringement Contentions, i.e., a complete abandonment of the theory advanced in Netlist's Infringement Contentions.

## 2. "Input Voltage" Monitored by "Voltage Monitor Circuit" (UDIMMs and SODIMMs; '918 cls. 16, 18-20, and 22; '054 cls. 16-17, 23-25, 29-30)

**¶¶ 191-199, 235-240, 277-278:** Netlist's Infringement Contentions for the '918 and '054 patents identified ████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

████████████████████████ Then, on October 4, 2023 Netlist changed its infringement theory and now identifies (for the first time in an opening expert report) this claim element as an entirely new, different, and not-previously-identified ████████████████████████

████████████████████ *see also id.* at ¶ 239. This new theory is a complete shift from Netlist's Infringement Contentions, i.e., an abandonment of the theory advanced in Netlist's Infringement Contentions.

## 3. "Converter Circuit" (RDIMMs; '918 cls. 1, 16, 23)

**¶¶ 325-344, 393-396, 455-457:** Netlist's Infringement Contentions for the '918 patent identified ████████████████████████

███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ Then on October 4, 2023 Netlist added (for the

first time in an opening expert report) two new previously not disclosed alternative infringement

theories for the "converter circuit" element: ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ These are new theories, as

evidenced by the fact that the critical terms for these new ███████████████████████

███████—do not even appear anywhere in Netlist's Infringement Contentions.

### 4. "Converter Circuit" (UDIMMs and SODIMMs; '918 cl. 16)

**¶¶ 161-178:** Netlist's Infringement Contentions for the '918 patent identified ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ Then on October 4, 2023 Netlist completely changed its

infringement theory for UDIMMs and SODIMMs and now alleges (for the first time in an opening

expert report) that ████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████ This new theory is a complete shift from Netlist's Infringement Contentions, i.e., a

complete abandonment of the theory advanced in Netlist's Infringement Contentions.

### 5. Exclusion of the Foregoing New Infringement Theories is the Appropriate Remedy

It is improper to raise new infringement theories in an opening expert report. *Anascape*, 2018 WL 7180756, at \*4. As such, Netlist's improper late disclosure of new infringement theories, i.e., theories for which Netlist failed to provide adequate notice to Micron, should be struck. *Id.; see also Optis Wireless Tech., LLC v. Huawei Techs. Co.*, 2:l 7-cv-00123, 2018 WL 3375192, at \*2 ("[T]he ***theory*** of infringement must be spelled out, and the theory must identify the part of the accused product that satisfies each claim element." (emphasis in original)).

Netlist has no excuse for not moving for leave to amend its infringement contentions—to identify its new infringement theories—earlier in the case. For example, the alleged "voltage monitor circuit," "input voltage" monitored by the "voltage monitor circuit," and "converter circuit" are all ███████████████████████████████ Netlist has known about these ███████████████ and features in detail, and for quite some time, because ███ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ Netlist knew, or should have known, its new infringement theories based on that discovery and has no excuse for hiding this theory until opening expert reports. As such, Netlist's improper late disclosure of infringement theories via its opening expert report is an improper attempt to sandbag Micron. It is unjustified, prejudicial, and should be struck. *Anascape*, 2018 WL 7180756, at \*4.

### D. The Court Should Strike Dr. Mangione-Smith's New Claim Constructions

Dr. Mangione-Smith's late attempt at claim construction should be stricken because "failure to timely raise . . . claim construction arguments should ordinarily result in waiver of the

arguments." *Music Choice v. Stingray Digital Grp., Inc.*, No. 2:16-cv-00586, 2019 WL 8110069, at *3 (E.D. Tex. Nov. 19, 2019). Netlist "should have presented [these] dispute[s] to the Court during claim construction and, by failing to do so, has forfeited the argument." *Maxell, Ltd. v. Apple Inc.*, No. 5:19-cv-00036, 2020 WL 8269548, at *23 (E.D. Tex. Nov. 11, 2020) (striking portions of expert rebuttal report presenting new claim construction). Many of Dr. Mangione-Smith's proposed constructions are also erroneous, and should be excluded. *See Ultravision Techs., LLC v. Go Vision LLC*, No. 2:18-cv-00100, 2021 WL 2144788, *2-3 (E.D. Tex. May 26, 2021) (citing *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2016)) ("Incorrect claim construction statements go to the relevance of the expert's opinion, and thus form a basis to exclude an expert's opinion.").

**"converter circuit" ('918 cls. 1, 16, 23), ¶¶ 172-178, 340-344, 394-396, 455-457:** Dr. Mangione-Smith asserts that ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ This construction for "converter circuit," ████████████████████████████████████████ ████████████ is an entirely new construction, and therefore should be stricken. Netlist's 4-1 disclosures did not even identify "converter circuit" as a term for construction. *See* Ex. 11 (Netlist 4-1 Disclosure). By failing to even identify this term for construction at the *Markman* stage, let alone offer the construction now advanced in Dr. Mangione-Smith's report, Netlist waived any ability to later offer a construction. *Music Choice*, 2019 WL 8110069, at *3.

Additionally, Dr. Mangione-Smith's construction of "converter circuit" is inconsistent with the construction Netlist advanced for the term in response to Micron's identification of that term for construction in Micron's 4-1 disclosures. That is, while Netlist did not identify "converter circuit" as a term for construction in its 4-1 disclosures, Netlist did propose a construction ███

██████████████████████ in response to Micron's identification of that term for construction in Micron's 4-1 disclosures. *See* Ex. 12 (Netlist 4-2 Disclosure). However, Dr. Mangione-Smith's construction ██████████████████████████████████ is clearly inconsistent, and much ***narrower***, than Netlist's previously advanced construction ████████████ ████████████, further confirming that Dr. Mangione-Smith's new construction should be struck.

Finally, Dr. Mangione-Smith's construction of "converter circuit" should be struck because it is wrong. Examples of the converter circuits disclosed in the '918 patent are switching-mode voltage converters that can convert a higher input voltage to a lower output voltage ("buck converter"), can convert a lower input voltage to a higher output voltage ("boost converter"), and can do both types of conversion ("buck-boost converter"). *See* '918 Patent at 29:20-31. Dr. Mangione-Smith points to no words of restriction to limit the plain meaning of "converter circuit" to ███████████████████████████████████████ Nor does Dr. Mangione-Smith provide any reasoning for why "converter circuit" should not be limited to the only types of converters ("switching-mode voltage converters") disclosed in the specification.

To the extent Netlist argues that Dr. Mangione-Smith's assertion that ████████████████ ████████████████████████████████████████ is not claim construction, but merely an explanation of the factual basis for Netlist's contention that ████████████████████ that new infringement theory should be struck because it was not previously disclosed in Netlist's Infringement Contentions. Specifically, neither that new infringement theory, nor the underlying factual basis, was disclosed anywhere in Netlist's Infringement Contentions. Instead, that theory and underlying factual basis was presented for the

first time in Dr. Mangione-Smith's opening expert report on infringement. As such, that new

infringement theory should be struck for the same reasons discussed above in Section II.C.5.

### E.      The Court Should Strike Dr. Mangione-Smith's Untimely Doctrine of Equivalents Opinions ('918 and '054 Patents)

Dr. Mangione-Smith argues that █████████████████████████████████████ ███████████████████████████████████████████████████████████████ Yet none of this is found in Netlist's Infringement Contentions. Netlist's belatedly disclosed doctrine of equivalents ("DoE") theories must be struck.

Netlist's Infringement Contentions fail to disclose Dr. Mangione-Smith's new DoE theories. Specifically, Dr. Mangione-Smith's DoE theories concerning the "converter circuit" and "non-volatile memory" terms are nowhere to be found in Netlist's Infringement Contentions. Dr. Mangione-Smith asserts that ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████ Netlist's Infringement Contentions, however, provide no notice of these two DoE theories.

It is improper to raise new infringement theories in an opening expert report. *Anascape*, 2018 WL 7180756, at *4. As such, Netlist's improper late disclosure of new infringement theories, i.e., theories for which Netlist failed to provide adequate notice to Micron, should be struck. *See, e.g.*, *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 6: 15-CV-01038, 2016 WL 7666160, at *3 (E.D. Tex. Dec. 5, 2016) (striking DoE theory from expert report); *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2: 16-CV-588, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) ("Courts in this

district have been clear that doctrine of equivalents theories must be laid out in detail in a party's infringement contentions) (J. Bryson, sitting by designation). Thus, Dr. Mangione-Smith's DoE theories are untimely and should be struck.

Again, Netlist has no excuse for not moving for leave to amend its infringement contentions—to identify its new DoE infringement theories—earlier in the case. For example, the alleged "converter circuit" and "non-volatile memory" are ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ Netlist knew, or should have known, its new DoE theories based on that discovery and has no excuse for hiding this theory until opening expert reports. As such, Netlist's improper late disclosure of infringement theories via its opening expert report is improper, unjustified, and prejudicial, and should be struck. *Anascape*, 2018 WL 7180756, at *4.

Therefore, Micron respectfully asks the Court to strike Dr. Mangione-Smith's untimely DoE theories, including those provided in paragraphs 176-178, 209, and 591-595 of Exhibit B to Dr. Mangione-Smith's Initial Expert Report.

### F.   The Court Should Strike Dr. Mangione-Smith's Unsupported Technical Valuation Opinions Not Disclosed in Fact Discovery

Micron respectfully requests that the Court strike Dr. Mangione-Smith's opinions that attempt to quantify the technical benefits of the '918 and '054 patents' claims. His opinions—attributing extraordinary worth to the '918 and '054 patents—are based on pure fiction, not any

facts or data that can survive Rule 702. Moreover, Netlist once again failed to disclose these contentions during fact discovery.

Dr. Mangione-Smith opines that ███████████████████████████████

████████████████████████████ Dr. Mangione-Smith,

however, provides no analysis ████████████████████████

█████████████████████████ The reason is simple—because it is not.

All of Dr. Mangione-Smith's analysis ███████████████████████

████████████████████████████████████████████

███████████ In other words, ████████████████████████

████████████████████████████████████████████

██████████████████████████████ Dr. Mangione-Smith does

not explain ████████████████████████████████████

████████████████████████████████████████████.

Because Dr. Mangione-Smith provides no analysis for how the inventions of the '918 and '054

patents influence ████████████████████████████████████

████████████████████████████████████████████ As a result,

Dr. Mangione-Smith's analysis of ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████ He provides no facts or rationale to support his opinion that █████████

███████████████████

The Court should also exclude Dr. Mangione-Smith's opinions regarding the alleged

benefits of the asserted patents and availability of alternatives, as set forth in Exhibit F as well as

paragraphs 596-625 of Exhibit B to his initial report, because Netlist failed to disclose these basic damages theories during fact discovery. Netlist failed to identify the theories underlying Dr. Mangione-Smith's and Mr. Kennedy's analysis.

In light of the foregoing, Dr. Mangione-Smith's unsupported technical valuation opinions set forth in Exhibit F as well as paragraphs 596-625 of Exhibit B to his initial report that were not disclosed in fact discovery should be struck. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1369 (Fed. Cir. 2021) (affirming striking expert opinion where party failed to disclose information under Rule 26(e), "including what it believed was an appropriate royalty rate, . . . and the extrinsic evidence on which [expert] relied in support of his belief").

### G.     The Court Should Strike All References to the Netlist v. Samsung Litigation

Dr. Mangione-Smith relies heavily on the *Netlist-Samsung* case to support his analysis on numerous topics. However, reliance on the *Netlist-Samsung* case stands in direct conflict with this Court's Standing MIL No. 13 stating that "[t]he parties shall be precluded from introducing evidence, testimony, or argument regarding either party's other litigations or arbitrations, including parallel proceedings in any other court, tribunal, or forum, including ADR proceedings." Further, Dr. Mangione-Smith's discussion and reliance on the *Netlist-Samsung* case—███████████ ████████████████████████████████████████████—would cause an unnecessary side show, would have a high probability of juror confusion, and could cause a misleading negative impression of Micron or positive impression of Netlist. Thus, all references to the *Netlist-Samsung* case should be struck, including all usage of testimony from Samsung employees.

### III.     CONCLUSION

For the foregoing reasons, Micron respectfully requests that the Court grant Micron's motion.

Dated: November 14, 2023

Respectfully submitted,

*/s/ Michael R. Rueckheim*
Thomas M. Melsheimer
State Bar No. 13922550
TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger (*pro hac vice*)
denzminger@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
Ryuk Park (*pro hac vice*)
RPark@winston.com
Matthew R. McCullough
MRMcCullough@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*pro hac vice*)
State Bar No. 1500598
mhopkins@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

William M. Logan
State Bar No. 24106214
wlogan@winston.com
Juan C. Yaquian (*pro hac vice*)
State Bar No. 24110559
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400

16

Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Vivek V. Krishnan (*pro hac vice*)
vkrishnan@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive, Suite 4200
Chicago, IL 60601
Telephone: 312-558-9508
Facsimile: 312-558-5700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS
MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR PRODUCTS,
INC., MICRON TECHNOLOGY TEXAS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on November 14, 2023, a copy of the foregoing was served on all counsel of record via the Court's ECF system and email.

<u>/s/ *Michael R. Rueckheim*</u>
Michael R. Rueckheim

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

<u>/s/ *Michael R. Rueckheim*</u>
Michael R. Rueckheim

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that counsel for Micron and Netlist met and conferred regarding Micron's Daubert Motion and Motion to Strike Expert Testimony of Dr. William Henry Mangione-Smith.  Netlist's counsel indicated that Netlist opposes Micron's motion.

<u>/s/ *Michael R. Rueckheim*</u>
Michael R. Rueckheim