# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-CV-203-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC., | ) | |
| MICRON SEMICONDUCTOR | ) | ███████████ |
| PRODUCTS INC., MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF NETLIST, INC.'S MOTION TO STRIKE
## OPINIONS OF GARY WOODS

## TABLE OF CONTENTS

**Page**

I.      Improper Written Description Opinions ....................................................................1

II.     Opinions Contrary to the Court's Claim Construction Order Or Agreed-Upon
        Constructions.............................................................................................................2

III.    Dr. Woods Cannot Be A Conduit for Hearsay From Undisclosed Engineers......................7

IV.     Improper Opinions Outside Area of Expertise.........................................................7

V.      Improper Opinions of Micron Practicing the Prior Art............................................8

VI.     Improper Opinions That Individual Claim Elements Exist in the Prior Art........................10

VII.    Previously Undisclosed Alleged NIAs .....................................................................11

VIII.   Previously Undisclosed, Unelected Prior Art..........................................................12

IX.     Anticipation Opinions on Hybrid Memory Cube Contrary to Law .......................12

X.      Improper Surreptitious Obviousness Opinions .......................................................13

XI.     Improper Claims that Netlist Copied Micron...........................................................14

XII.    Improper Incorporation of Rebuttal Report into Opening Report .......................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
  265 F.3d 1294 (Fed. Cir. 2001).................................................................................9

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015)...............................................................................10

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
  49 F.3d 1575 (Fed.Cir.1995)....................................................................................9

*Bianco v. Globus Med., Inc.*,
  30 F. Supp. 3d 565 (E.D. Tex. 2014) (J. Bryson) ....................................................7

*Dexcowin Glob., Inc. v. Aribex, Inc.*,
  2017 WL 3478492 (C.D. Cal. June 29, 2017) ........................................................14

*Endo Pharmaceuticals Inc. v. Actavis LLC*,
  922 F.3d 1365 (Fed. Cir. 2019)..........................................................................13, 14

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
  29 F.4th 1365 (Fed. Cir. 2022) .............................................................................3, 4

*GREE, Inc. v. Supercell Oy*,
  2020 WL 4288356 (E.D. Tex. July 27, 2020) .........................................................12

*Immunex Corp. v. Sandoz, Inc.*,
  964 F.3d 1049 (Fed. Cir. 2020)...............................................................................13

*Netlist Inc. v. Samsung Elecs. Co., Ltd.*,
  2:21-cv-00463, Dkt. 114 ...........................................................................................3

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
  279 F.3d 1357 (Fed. Cir. 2002).................................................................................9

*Treehouse Avatar LLC v.Valve Corp.*,
  54 F.4th 709 (Fed. Cir. 2022) ...................................................................................2

*Wilson v. Woods*,
  163 F.3d 935 (5th Cir. 1999).....................................................................................8

**Statutes**

35 U.S.C. § 102(f)......................................................................................................15

**Page**

**Rules**

Fed. R. Civ. P. 26(a)(2) ........................................................................................................7

Fed. R. Evid. 703, 802 .........................................................................................................7

**Other Authorities**

P.L.R. 3-3 ............................................................................................................................15

I.      **Improper Written Description Opinions**

<u>Opening Paragraphs 178-179</u>.  (Ex. 1)  In these paragraphs, Dr. Woods opines that Claim

20 of the '060 Patent is invalid for lack of written description because ███████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████  ¶ 178.  These paragraphs should be stricken as

Netlist is no longer asserting Claim 20, and thus these opinions are irrelevant.

<u>Opening Paragraphs 180-183</u>. Dr. Woods opines that the '060 and '160 Patents do not

have written description support to the extent the ███████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████  ¶¶ 180-81.  At claim construction, Micron

attempted to argue that "electrical communication" encompassed any "electrical connection" and

therefore only if a TSV passed through a die via hole or an air gap would it not be in electrical

communication.  *Markman* Hearing Transcript 8:13-19 (Ex. 3) ("The paragraph starts with the

explanation that you have these die -- imagine like flat planes that have interconnects, these TSVs,

and there's no electrical communication when you have these TSV wires--however you want to

think about them--in air or in some kind of insulator. Of course there's not going to be electrical

communication to the array die.").   The Court rejected this assertion:

> Similarly, the specification expressly distinguishes between "electrical
> connections" and electrical communication, explaining
>
> > *electrical connections* leading from the TSV of the array dies that are
> > **not** configured to be in *electrical communication* with the die
> > interconnect may not exist or **may be stubs**. These stubs are
> > not configured to provide *electrical communication* with the memory
> > cells of the array die.

Dkt. 249 at 10 (italicized emphasis in original; bolded emphasis added).

Dr. Woods' argument to the jury that if the claims are construed to cover designs in which something other than holes or air gaps are used to avoid electrical communication is a surreptitious form of inviting the jury to engage in claim construction and construe the claims as limited in a way the Court rejected during claim construction.

## II.     Opinions Contrary to the Court's Claim Construction Order Or Agreed-Upon Constructions

Opening Paragraph 177.  In this paragraph, Dr. Woods opines:



This opinion, that "electrical communication" and "electrical connection" have the same meaning within the specification, was expressly rejected by the Court in its claim construction order.  In specific, the Court held that "[t]he specification makes clear that these terms have different scope. For one, electrical communication must be 'enabled' and may be 'prevented'[…]."  Dkt. 249 at 9. The Court further held that "[c]onsidering *the specification's use of the term*, the Court agrees the plain and ordinary meaning of 'electrical communication' is different from 'electrical connection.'"  *Id.* at 10.  It would be highly prejudicial and improper for Dr. Woods to opine to the jury in direct contradiction of the Court's claim construction order.  *See, e.g.*, *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 714-15 (Fed. Cir. 2022) (affirming "the grant of a motion to strike expert testimony is not improper when such testimony is based on a claim construction that is materially different from the construction adopted by the parties and the court.").

Opening Paragraphs 189-191.  Dr. Woods opines that claim 7 of the '060 patent is indefinite.  The Court expressly ruled against this position in claim construction.  Dkt. 249 at 16

("The Court sees no such lack of clarity here, and **holds the claim is not indefinite** as a mixed-class claim.").  These paragraphs should be stricken from Dr. Woods' report.

Rubbal Paragraphs 41-75, 183-186, 205, 224-227, 317. (Ex. 2) The parties agreed to construe the claim term "array die" as "array die that is different from a DRAM circuit." Dkt 111-1 at 3.  In *Samsung I*, the Court left it to the parties to explain what "DRAM circuit" means.  This construction derived from an argument made during prosecution that an array die is different from "DRAM circuits" in Rajan.  *See Netlist Inc. v. Samsung Elecs. Co., Ltd.*, 2:21-cv-00463, Dkt. 114 at 32 ("Netlist structurally distinguished 'stacked DRAM circuits' from 'stacked array dies' to obtain the patent. Based on that distinction, the Court construes 'array die' as 'array die that is different from a DRAM circuit.'").

Dr. Woods relies on extrinsic evidence to alter the meaning of "DRAM circuit."  For example, in paragraph 49, Dr. Woods cites extrinsic evidence to conclude that a POSA would understand Rajan also taught using TSVs to interconnect its DRAM circuit.  Specifically, Dr. Woods inserts figures from U.S. Patent Appl. Publ. No. 2011/0103156, U.S. Patent No. 8,258,619, and U.S. Patent No. U.S. Patent No. 7,796,446 to opine that "[t]hus, a POSITA reading Rajan would readily understand that stacked dies can be interconnected using any technology available or known at the time, including wire bonding **and** through-silicon vias (TSVs)."  If Micron believed that Rajan effected a disclaimer when it was interpreted in light of U.S. Patent Appl. Publ. No. 2011/0103156, U.S. Patent No. 8,258,619, and U.S. Patent No. U.S. Patent No. 7,796,446 it needed to present this issue to the Court at claim construction.

*Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365 (Fed. Cir. 2022) is controlling as to what the limits and implications of this disclaimer are. There, "[t]he parties agree[d] that Mr. Nguyen disavowed claim scope during prosecution of the '730 patent in distinguishing his claimed inventions from the Yollin reference." *Id.* at 1374. The parties disputed how this disclaimer

applied to the accused product. The Defendant in *Genuine Enabling* attempted to rely on extrinsic evidence to inform the scope of the disclaimer. The Federal Circuit held this was improper:

> Genuine also contends that the district court erroneously relied on testimony by Nintendo's expert, Dr. Chizeck, that a person of ordinary skill in the art would have understood Mr. Nguyen's assertions as a disavowal of all signals of frequencies up to 500 Hz. . . . Genuine points out that **Dr. Chizeck's testimony had no support in the intrinsic record, but rather was based solely on other extrinsic evidence purporting to describe various signals' frequency ranges**. . . . We agree with Genuine. *Id.* at 1374.

In light of this ruling, Dr. Woods' discussion of what other prior art teaches which was not the subject of a rejection or the disclaimer is entirely improper.  Moreover, the Federal Circuit also rejected an attempt to expand the disclaimer to elements in the reference that was subject to the disclaimer beyond portions the Examiner cited and distinguished:

> Mr. Nguyen's assertions distinguishing his inventions from Yollin do not clearly and unmistakably demonstrate any such disclaimer. The examiner cited Yollin's teaching of "input information received from motion translation unit 102, user selection unit 104 and physiological response sensor(s) 106" as disclosing the "input signal" . . . . Mr. Nguyen distinguished that teaching on the ground that those signals fell below the audio spectrum. . . . The record does not support finding a separate and distinct disclaimer of claim scope relating to the particular type or content of signal. *Id.* at 1375.

If it is improper to go to undiscussed portions of the reference that was before the PTO, it is certainly improper to use extrinsic evidence as Dr. Woods attempts.

<u>Rebuttal Paragraphs 234-243</u>.  Dr. Woods recognizes that the Court construed "electrical communication" as having its "plain and ordinary meaning," but explains that he is **not** applying the plain meaning, but instead his own interpretation of the Court's reasoning (¶¶ 234-236):





These paragraphs should be stricken from Dr. Woods' report. First, the only portion of a claim construction order for the jury is the Court's actual constructions. Dr. Woods cannot serve as an interpreter of this Court's reasoning.

Second, Dr. Woods is construing "electrical communication" as "the act of transmitting." In so doing, he is rehashing Micron's claim construction argument that an electrical connection is equivalent to electrical communication. Micron's claim construction expert, Dr. Stone, took this exact position, that transmission of a wave is electrical communication. Ex. 4 (Stone Dep. at 95:10-96:8):



Netlist explained in claim construction briefing that Micron intended to equate electrical communication and electrical connection to the jury, and that it would be improper:

> Thus, it appears that Micron is at least trying to preserve the right to argue at trial that its HBM products do not satisfy the "not in electrical communication" limitation because there is "electrical connection" between the die interconnects and all of the array dies in the accused products to allow passing of electrical waves from the TSV into a portion of the die, just as Samsung did in *Samsung I. See* Dkt. 97-24 at 1056:24-1057:17; Ex. 25 (DDX4-54).

> Under such a view, a TSV would be in communication with an array die if it is connected to a stub on the array die. Ex. 24 (Stone Tr.) at 95:6-8 ("Is it your

testimony that the connection between a TSV and a stub is electrical communication? A. Yeah This demonstrates it, because the wave travels on that."). The patent teaches, however, that in cases where "electrical connections leading from the TSV of the array dies that are not configured to be in electrical communication with the die interconnect … may be stubs" that "are not configured to provide electrical communication with the memory cells of the array dies." '060 patent, 8:53-62. Thus, **the Court should reject Micron's attempt to equate "electrical communication" with "electrical connection," and adopt Netlist's proposed construction that distinguishes the two different concepts rather than creating confusion**.

Dkt. 110 at 1.  The Court agreed with Netlist, and rejected Micron's argument.  Dkt. 249 at 8, 10 ("Considering the specification's use of the term, the Court agrees the plain and ordinary meaning of "electrical communication" is different from "electrical connection.").

Dr. Woods has now repackaged Dr. Stone's opinion as his own.  He opines that



¶ 242.  It is improper for Dr. Woods to rely on claim construction arguments already rejected by the Court.  Micron argued that unless there is an air gap or hole there is electrical communication and the Court rejected that argument.

Rebuttal Paragraphs 301-303.  Dr. Woods asserts that "the Court held that claim 7 of the '060 Patent does not encompass a user selecting the number of array dies in the 'first group of array dies' or the 'second group of at least one array die.'  ¶ 301.  Dr. Woods then purports to "apply[] the Court's construction," and opines that "claim 7 requires the 'memory package' to automatically select the number of array dies in the 'first group of array dies' or the 'second group of at least one array die.'"  ¶ 302.  The Court **never** held that the memory package automatically selects the number of array dies in the first group of array dies or the second group of at least one

array die.[1]   Applying a non-existent construction is no better than applying the wrong construction, and Dr. Woods' opinions in these paragraphs must be stricken.

## III.   Dr. Woods Cannot Be A Conduit for Hearsay From Undisclosed Engineers

Rubattal Paragraphs 261, 270, 322.  In these paragraphs, Dr. Woods discusses the alleged operation of Micron's HBM3 product.  He claims the support for his opinions comes from his "discussions with Micron's engineers."  ¶322.  These opinions should be stricken for at least two reasons.  First, these unnamed Micron engineers were of unnecessity never disclosed in discovery since they are unnamed.  Indeed, Dr. Woods' report does not identify any engineers by name, and his "materials considered" list does not identify any conversations or discussions with any Micron engineers.

Second, Dr. Woods should not be able to recount these hearsay conversations to the jury. *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) (J. Bryson) (expert "testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced.") (quoting *Presley*, 25 A.3d at 893); *see also* Fed. R. Evid. 703, 802.  Moreover, if Micron's engineers had technical opinions relevant to infringement, that would have required a written disclosure of their opinions.  *See* Fed. R. Civ. P. 26(a)(2) (requiring expert reports or disclosures).

## IV.   Improper Opinions Outside Area of Expertise

Rubattal Paragraphs 349-352.  Dr. Woods opines that he ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████   ¶ 349.  He then opines, based on this speculation, that Micron's customers ██

---

[1] As Netlist explained during claim construction, the "selected" language in claim 7 refers to structural features in an apparatus, with the features potentially resulting from design decisions. That does not make the claims indefinite, but that also does not require the claim to be interpreted as requiring the memory package to automatically select the number of dies in a group—in fact, requiring claim 7, an apparatus claim, to perform certain actions would be impermissible.

███████████████████████████████████████████████████████████

██████████████████████████████████████████████ ¶ 352.  Dr. Woods

is not a manufacturing expert.  He does not hold himself out to be one.  He does not claim to

have interviewed any NVIDIA witnesses, nor does he claim to actually know how NVIDIA

operates, manufactures its products, or tests its products. *Wilson v. Woods*, 163 F.3d 935, 937 (5th

Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the

witness is not qualified in a ***particular*** field or on a given subject.") (emphasis added).

## V.    Improper Opinions of Micron Practicing the Prior Art

<u>Rebuttal Paragraphs 358, 365, 377-379, 402-408</u>.  Dr. Woods repeatedly contends that

████████████████████████████████████████. *See* ¶ 365 ██████████

███████████████████████████████████████████████████████████

███████ ████ ███ ██ ████████ ██ ████ ██ ██ ████ ██ ███ ████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████ (emphasis added).

Dr. Woods provides further improper opinions, including the claim that ████████

███████████████████████████████████████████████████████:

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

Dr. Woods then goes on to directly compare the ██████████████████ ██████████████████ (¶¶ 404-406):



These paragraphs should be stricken from Dr. Woods' report. Practicing the prior art is not a defense to infringement. In fact, prior art is irrelevant to the question of infringement, as infringement is focused solely on a comparison of the claim limitations to the accused product. *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002) ("This court made unequivocally clear in *Baxter* that there is no 'practicing the prior art' defense to literal infringement.") (citing *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed.Cir.1995)).

Moreover, Dr. Woods has not performed an element-by-element analysis of the Keeth patent and compared it to the accused HBM products. He thus has no basis to tell the jury that the accused products practice the Keeth patent, nor could any such analysis be tested on cross-examination.

Micron also cannot credibly claim that the fact that the accused products allegedly practice the Keeth patent is relevant to willful infringement either. First, the Federal Circuit has expressly rejected this argument. *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) ("The fact that Medtronic's '556 patent might read on the Falcon catheter is totally

irrelevant to the question of whether Medtronic willfully infringed another patent."). Second, Micron refused to disclose this information in discovery. Netlist served interrogatories asking for the bases for Micron's claims that its liability is limited, and for the bases for Micron's contention that its infringement was not willful. Ex 5 at pp 126 and .177 (Interrogatories No. 9 and No. 13). Nowhere in its responses—which did include the bases for Micron's no-willfulness defense—did Micron ███████████████████████████████████████ ████████████████████████████████████ (Rebuttal ¶ 365), ████████████ ██████████████████. Ex. 5 (Micron's Sixth Supplemental Interrogatory Responses) at pp. 126-171 for response to Interrogatory No. 9; pp 177-178 for response to Interrogatory No. 13. Micron cannot lay behind the log on this issue. Dr. Woods' contentions regarding the Keeth patent (and Brent Keeth is a Micron employee) and the operation of its own products was squarely in its own possession. This provides an independent basis to strike Dr. Woods' opinions.

## VI. Improper Opinions That Individual Claim Elements Exist in the Prior Art

Rebuttal Paragraphs 370-383. Dr. Woods identifies specific claim elements that he claims Netlist did not invent, but instead existed in the prior art. *See, e.g.,* ¶ 377 ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████). Dr. Woods appears to be opining that the elements of the claims were known in the art and therefore the patents-in-suit cannot reflect meaningful value. ¶ 380 ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████. The Federal Circuit has expressly rejected this argument. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d

1324, 1339 (Fed. Cir. 2015) ("It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages. . . . [T]he question is how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone."). Dr. Woods' opinions should thus be stricken as contrary to settled Federal Circuit law.

## VII.    Previously Undisclosed Alleged NIAs

Paragraphs 412-417.  Netlist served an interrogatory asking Micron to identify any alleged non-infringing alternatives ("NIAs"). Ex. 5, at 120-121.  ("For each Netlist Patent-in-Suit, identify and describe in detail any alleged non-infringing alternative that You contend exists or existed to each Netlist Patent-in-Suit …."). For the accused HBM products, Micron identified "the hybrid memory cube as a noninfringing alternative" and nothing else.  . *Id.* at 123.

Dr. Woods, however, identifies new alleged NIAs to the '060 and '160 Patents in his report that were not previously disclosed during discovery.  *See* ¶ 412 (███████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ¶ 414 ████████ ████████████████████████████████████████████████ ); ¶ 415 (████████████████████ ████████████████████████████ ).

To be clear, this is not an instance in which an expert had access to data or information not available to Micron attorneys or employees such that they could not anticipate that the expert would come up with new NIAs.  Dr. Woods is just using pre-existing Micron products and a public document to craft new NIAs.  This is two forms of prejudice.  First, Micron's 30(b)(6) on HBM and HMC could not be examined on these theories.  Second, Netlist's expert could not engage them in a report because Dr. Woods did not disclose them until the rebuttal report.

Micron had an obligation under the Federal Rules to "disclose this information fully and to supplement its disclosure as necessary," but failed to do so. *GREE, Inc. v. Supercell Oy*, 2020 WL 4288356, at *2 (E.D. Tex. July 27, 2020). By failing to do so, Netlist's experts were deprived of an opportunity to rebut Micron's NIA analysis. For example, had Micron disclosed the spiral point-to-point configuration as an alleged NIA, Netlist could have rebutted that opinion by showing that the same configuration was used in Samsung's HBM3 products, which were found by a jury to infringe the '060 and '160 patents in the *Samsung I* action.

## VIII.   Previously Undisclosed, Unelected Prior Art

Rebuttal Paragraphs 381-82. (Ex. 3) In section XII.A. of his report, Dr. Woods opines that "The '060 and '160 Patents Do Not Provide Any Technological Benefits Over Prior Art." To support this opinion, Dr. Woods points to U.S. Patent No. 6,243,283, "Bertin" as alleged prior art to the '060 and '160 Patents. Micron did not disclose Bertin as prior art anywhere in its invalidity contentions. Using Dr. Woods' rebuttal report as a backdoor for new prior art is improper and it contravenes the discovery order.

## IX.   Anticipation Opinions on Hybrid Memory Cube Contrary to Law

Opening Paragraph 173, Appendix 1. Dr. Woods presents a single anticipation ground for the '060 and '160 patents based on Hybrid Memory Cube Gen. 2 ("HMC2"). This opinion is based on incorrect claim construction opinions and a document that is not prior art. Netlist has simultaneously moved for summary judgment of no anticipation as to the '060 and '160 patents, and incorporates that briefing by reference. As explained in that motion, Dr. Woods' opinions fail as a matter of law to present an anticipation ground. But regardless of the outcome of that motion, Dr. Woods' opinions regarding ███████████████████████ ███████ must be stricken from his report because the document is not prior art. Ex. 6. Dr. Woods relies on ████████████████████████████ of his report. Ex. 7 (Woods

Appx. 1) at ¶¶ 25, 27, 31, 37-38, 44, 54, 72, 76, 82, 102, 142, 155. The pages of this document that Dr. Woods cites to (pp. 86, 87, 89) each bear a copyright date of 2012. Ex. 6 (E80a Design Review) at pp. 86, 87, 89. The '060 and '160 Patents both claim priority to a non-provisional application filed November 3, 2011(App. No. 13/288,850). '060/'160.  Dr. Woods ████████ ████████████████████████████████████████ were created before the critical date.

## X.      Improper Surreptitious Obviousness Opinions

Opening Paragraphs 204-209.  In his discussion of "contemporaneous and independent invention by others," Dr. Woods ████████████████████████████████████████ ████████████████████████████████████████████ Ex. 1, ¶¶ 204-205.  This is highly improper, as Dr. Woods is using unelected, undisclosed art to allege obviousness of certain elements, and does so solely by use of words in the patent.  Dr. Woods then in paragraphs 207 and 208 ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████  This time he relies on primarily (but not entirely) elected art, namely Foster, Keeth, Kim, Rajan, Ruckerbauer, and Wyman to do so.  This too is improper.

Contemporaneous invention must be of the actual invention, and cover the complete claim. For example, in *Immunex Corp. v. Sandoz, Inc.*, 964 F.3d 1049 (Fed. Cir. 2020), the Federal Circuit affirmed the district court's finding of non-obviousness and held that the district court correctly discounted alleged evidence of simultaneous invention where "the district court found that three of the alleged instances of 'simultaneous invention' were directed to different fusion proteins, not [the patented] etanercept." *Id.* at 1067. Likewise, in *Endo Pharmaceuticals Inc. v. Actavis LLC*, 922 F.3d 1365 (Fed. Cir. 2019), the Federal Circuit affirmed the district court's finding of non-obviousness and held that the district court did not err because the alleged simultaneous

inventions "refer to formulations of oxy*codone*, not [the patented] oxymorphone . . . ." *Id.* at 1378 n.14. In both instances, the defendant attempted to use something that was not anticipating as evidence of simultaneous invention for purposes of obviousness, and the Federal Circuit affirmed this was improper.  District courts have held similarly.  *See Dexcowin Glob., Inc. v. Aribex, Inc.,* 2017 WL 3478492, at *19 (C.D. Cal. June 29, 2017) ("Grundfest may not testify on simultaneous invention. A simultaneous invention must contain every element or limitation of at least one claim in the asserted patent. Grundfest fails to provide claim-by-claim analysis that shows the IMS2000 or 2005 DX3000 contained all the limitations of at least one of the claims in any of the patents-in-suit.").  Dr. Woods does not claim that any of the references he identifies simultaneously invented any of the complete claims of the '060 and '160 patents.  These paragraphs should thus be stricken from his report.

Opening Paragraphs 210-215.  Dr. Woods' analysis of "long-felt need" comprises of new obviousness combinations without providing any actual obviousness analysis.  He proffers that alleged prior art Shaeffer discloses "██████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████" ¶ 213, and that this "supports obviousness," ¶ 210.  But Dr. Woods has not opined that anyone would have a motivation to combine Shaeffer with anything else, let alone with other prior art that allegedly discloses actual claim elements of the '060 and '160 patents.

## XI.     Improper Claims that Netlist Copied Micron

Opening Paragraphs 217-219.  Dr. Woods' report includes a lengthy discussion of secondary considerations.  As part of that analysis, Dr. Woods alleges that Netlist copied Micron's inventions.  ¶ 217 ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

████████████████████████████████████ ¶ 219 ("███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████).  Derivation is an invalidity defense that the Patent Local Rules required Micron to

disclose.  P.L.R. 3-3 ("Prior art under pre-AIA 35 U.S.C. § 102(f) shall be identified by providing

the name of the person(s) from whom and the circumstances under which the invention or any

part of it was derived.").  The suggestion that "Netlist copied ideas from a product announcement

and tried to capture it in its patent application" is a surreptitious invalidity through derivation

argument that Micron has not raised in this case and should not be presented to the jury. Micron

did not disclose this alleged derivation theory, or this Intel Developer Forum product

announcement, anywhere in its invalidity contentions or interrogatory responses.

## XII.    Improper Incorporation of Rebuttal Report into Opening Report

Opening Paragraph 218.  In support of his objective indicia analysis, Dr. Woods' report

states ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ ¶ 218.  This incorporation of a *later* report is an improper end-run around

the Docket Control Order.  Micron has the burden to prove invalidity, and if it wanted to put

forward opinions in support of its case, it needed to do so in Dr. Woods' opening report.  By

incorporating his rebuttal report, Dr. Woods inoculated these opinions from Netlist's rebuttal.

Dated: November 14, 2023

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Andrew J. Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized

to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*

Yanan Zhao

## CERTIFICATE OF SERVICE

I hereby certify that, on November 14, 2023, a copy of the foregoing was served to all counsel of record via Email as agreed by the parties.

/s/ Yanan Zhao
Yanan Zhao

## CERTIFICATE OF CONFERENCE

I hereby certify that, on November 14, 2023, counsel for Netlist met and conferred with Micron's counsel regarding the subject matter of Netlist's motion.  Micron opposes Netlist's motion.

/s/ Yanan Zhao
Yanan Zhao