# EXHIBIT 3

<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TEXAS
 2                         MARSHALL DIVISION

 3   NETLIST, INC.,                (  CAUSE NO. 2:22-CV-203-JRG
                                   )
 4           Plaintiff,            (
                                   )
 5   vs.                           (
                                   )
 6   MICRON TECHNOLOGY, INC.,      (
     et al.,                       )  MARSHALL, TEXAS
 7                                 (  JULY 26, 2023
             Defendants.           )  9:00 A.M.
 8   _____

 9

10

11   _____

12                         MARKMAN HEARING

13             BEFORE THE HONORABLE ROY S. PAYNE
                   UNITED STATES MAGISTRATE JUDGE

14   _____

15

16

17

18

19

20

21

22                 SHAWN McROBERTS, RMR, CRR
                      100 E. HOUSTON STREET
23                  MARSHALL, TEXAS  75670
                        (903) 923-8546
24          shawn_mcroberts@txed.uscourts.gov

25
</pre>

```
 1                    A P P E A R A N C E S

 2           FOR THE PLAINTIFF:    IRELL & MANELLA, LLP -
                                   LOS ANGELES
 3                                 1800 AVENUE OF THE STARS
                                   SUITE 900
 4                                 LOS ANGELES, CA 90067-4276
                                   (310) 203-7096
 5                                 BY: MR. JASON SHEASBY
                                       MR. MICHAEL TEZYAN
 6                                     MS. YANAN ZHAO

 7                                 McKOOL SMITH, P.C. - MARSHALL
                                   104 EAST HOUSTON, SUITE 300
 8                                 MARSHALL, TEXAS  75670
                                   (903) 923-9000
 9                                 BY:  MR. SAM BAXTER

10           FOR THE DEFENDANTS:   WINSTON & STRAWN, LLP -
                                   REDWOOD CITY
11                                 255 SHORELINE DRIVE, STE. 520
                                   REDWOOD CITY, CA 94065
12                                 (650) 858-6443
                                   BY:  MR. MICHAEL RUECKHEIM
13
                                   WINSTON & STRAWN, LLP -
14                                 HOUSTON
                                   800 CAPITOL ST., 24TH FLOOR
15                                 HOUSTON, TEXAS  77002
                                   (713) 651-2766
16                                 BY:  MR. WILLIAM LOGAN

17                                 WARD, SMITH & HILL, PLLC
                                   1507 BILL OWENS PARKWAY
18                                 LONGVIEW, TEXAS  75604
                                   (903) 757-6400
19                                 BY:  MR. WESLEY HILL

20           OFFICIAL REPORTER:    SHAWN M. McROBERTS, RMR, CRR
                                   100 E. HOUSTON STREET
21                                 MARSHALL, TEXAS  75670
                                   (903) 923-8546
22

23

24

25
```

1          THE COURT:  Good morning.  Please be seated.

2      For the record, we're here for the claim construction

3   hearing in Netlist versus Micron Technology, et al., which is

4   Case No. 2:22-203 on our docket.

5      Would counsel state their appearances for the record?

6          MR. BAXTER:  Good morning, Your Honor.  Sam Baxter

7   with McKool Smith, Jason Sheasby, Michael Tezyan, and Ms.

8   Yanan Zhao.  We are here for the Plaintiff, and we're ready,

9   Your Honor.

10         THE COURT:  All right.  Thank you, Mr. Baxter.

11         MR. HILL:  Good morning, Your Honor.  Wesley Hill,

12  Mike Rueckheim, William Logan, and our client representative

13  Becky Carrizosa also here for Micron.  And we're ready to

14  proceed.

15         THE COURT:  Thank you, Mr. Hill.

16      I'll also note for the record that earlier this morning

17  we distributed to counsel for both sides a set of preliminary

18  constructions of most of the disputed terms.  I do want to

19  emphasize that the purpose of issuing those preliminary

20  constructions is not to prevent either side from arguing

21  whatever constructions they deem are appropriate; rather, the

22  intent of the preliminaries is to allow counsel to focus their

23  time and attention where they think the Court may have most

24  gone astray.  I do reserve the right to amend these

25  constructions, and not uncommonly do alter them based on the

1    arguments received at this hearing.  So I hope they'll be

2    taken in that spirit.

3        You will note that for what we've identified on the

4    preliminary as the F or 'drive' terms, that there is no

5    preliminary construction, and I'll just go ahead and say that

6    the reason for that is that the arguments on that term were

7    getting into construing the prior court's construction, and I

8    am never comfortable focused entirely on construing a past

9    construction.  I would rather hear the arguments that are

10   based on the claims, the spec, and the prosecution history,

11   and not on what the meaning of the court's prior construction

12   might be applied to different issues.

13       So having said all that, I'll turn it over first to

14   counsel for Plaintiff.

15           MR. SHEASBY:  May it please the Court.  Jason

16   Sheasby for the Plaintiff, Your Honor.

17       We've conferred with honorable opposing counsel and an

18   agreement was reached, subject to the Court's preference,

19   that we are only going to be arguing the following terms in

20   the tentatives:  A, B, D --

21           THE COURT:  Did you say D or --

22           MR. SHEASBY:  D as in dog, E as in Eric, F as in

23   Frog, and M as in Mary.  And for the party that is seeking to

24   alter the preliminary construction, I felt it would be

25   appropriate for that party to go first, subject again to your

1    permission.  And so with that, I'll ask counsel for Defendant

2    if they want to argue the first term.

3              THE COURT:  That works for me.  Thank you.

4              MR. SHEASBY:  Thank you, Your Honor.

5         Yes, sir.  Mr. Rueckheim.

6              MR. RUECKHEIM:  Hello, Your Honor.  Mike Rueckheim

7    for Micron.

8         May it please the Court.

9         The first term we're discussing today is the 'electrical

10   communication' term.  This term appears in the '060 Patent and

11   the '160 Patent independent claims.

12        The claim language refers to electrical communication

13   with a first group and a second group of array dies.  The

14   claim -- Netlist has proposed a construction that argues

15   there's some kind of dispute between the parties with respect

16   to the terms 'electrical connection' and 'electrical

17   communication', and in the briefing we've out line electric --

18   'connection' is actually not a term in the claims, and there

19   needs to be no distinguishment between that term because it's

20   not a claim language.  And there's no dispute between the

21   parties as to the difference between 'electrical

22   communication' and 'electrical connection', no actual dispute

23   that's been presented in the briefing.

24             THE COURT:  And let me just point out,

25   Mr. Rueckheim, that the items that are within brackets as

1    notes are not part of the construction that would be given to

2    the jury; that the intent of having notes is just to advise

3    the parties that whatever is in the note will be in the claim

4    construction order, in case that matters, so that it can be

5    argued.  But if a concern is that there's no need to tell the

6    jury that, the jury won't be told what's in that note.

7                MR. RUECKHEIM:  Thank you, Your Honor.  That is

8    helpful.

9                THE COURT:  All right.

10               MR. RUECKHEIM:  With that in mind, and I'll just

11   finish that thought that we -- Micron's position is there is

12   really need even for a note because there's no dispute between

13   'electrical connection' and 'electrical communication'.  These

14   are commonly understood terms.  You can obviously have a wire

15   connecting two pieces of metal--there's your connection.  If

16   there's no power applied, you're not going to have electrical

17   being communicated across the wire.  This is a very easy

18   concept.

19        What is harder, though, is there is a dispute as to

20   whether the term 'electrical communication' requires something

21   more.  So this is the actual dispute that's between the

22   parties that we have an *02 Micro* problem for the Court.  And

23   we know there's a dispute because Netlist in the prior case

24   argued to the jury that this term 'electrical communication'

25   requires something more; requires a hook-up to a data port.

1    And as we just discussed, the claim language doesn't use the

2    term 'data port'; it just says there's an electrical

3    communication to an array die.

4           THE COURT:  You know, maybe I need to hear from the

5    Plaintiff, then, because their briefing did not indicate the

6    relationship that you're talking about, and I was not certain

7    that in the argument that counsel for Plaintiff made in the

8    last case that they were, in fact, saying that it is a

9    limitation of the claim as opposed to an indication that the

10   claim has been met.

11      Do you understand from your conversations with

12   Plaintiff's counsel that they are contending that, in fact,

13   the claim requires data ports as a limitation?

14          MR. RUECKHEIM:  Not from conversations with opposing

15   counsel, Your Honor.  I sat in and watched the tail end of the

16   *Netlist v. Samsung* trial, and so from observing what was

17   argued there, that's where I understand that they were arguing

18   to the jury what's shown here on the screen, and then also,

19   Your Honor, in briefing in this case, Plaintiff has argued

20   that 'electrical communication' requires even something more.

21   There is an argument in the briefing that 'electrical

22   communication' requires responsiveness.  It says, "The above

23   clear makes -- the above quotes"--they're citing to the

24   specification, the intrinsic record here--it says that the

25   electrical communication requires some kind of responsiveness.

1    So this is their interpretation of what the term means.

2         They say that the electrical communication requires

3    communication to a memory circuit of an array die, and you

4    know that's wrong because the claim just says 'array die'.

5    Once you start putting specific components on there, like a

6    data port or memory circuit, then you're going outside --

7    you're rewriting the claims, as we've shown here in red, and

8    that's improper and there's no support in doing that.

9         There's also this dispute as to whether 'electrical

10   communication' can be to a stub on the array die.  And as we

11   pointed out, there is really only one paragraph that Netlist

12   is relying upon for the stub argument, and this paragraph is

13   shown on the slide 12.  The paragraph starts with the

14   explanation that you have these die -- imagine like flat

15   planes that have interconnects, these TSVs, and there's no

16   electrical communication when you have these TSV

17   wires--however you want to think about them--in air or in some

18   kind of insulator.  Of course there's not going to be

19   electrical communication to the array die.  And the paragraph

20   discusses how you have to have sufficient size, so there's no

21   electrical communication.

22        And the only reference to the stubs are at the very

23   bottom of this paragraph, which is about wires being in air,

24   and it says these wires may have electrical communications

25   coming off of them into the air, and maybe they don't have

1    wires coming off of them or maybe they're just stubs, but

2    regardless, when there's no connection to an array die, you

3    don't have electrical communication.  That doesn't require --

4    that doesn't require changing the claim language to refer to

5    electrical communications being anything more than to an array

6    die.

7         And with that clarification, Your Honor, if there is no

8    dispute between the parties, we would request, maybe as Your

9    Honor has done with the note that's already in the tentative

10   construction, that 'electrical communication' does not require

11   communication to a data port, memory cells, responsiveness, or

12   really anything to do with the stub.

13        THE COURT:  Well, what 'electrical communication'

14   does require is going to be set out by the particular claim,

15   the particular limitation that uses it.  And are you

16   contending that the term in and of itself requires connection

17   with a particular device?

18        MR. RUECKHEIM:  The claim itself says you have

19   electrical communication with a group of array dies, and

20   that's exactly what we think the claim means.  We don't think

21   the claim should be limited, as Netlist has argued, to any

22   specific component on the array die.

23        THE COURT:  All right.

24        MR. RUECKHEIM:  And with that, Your Honor, I can

25   turn the arguments over to counsel for Netlist.

1           THE COURT:  All right.  I'll give you a chance to

2    respond after Plaintiff's counsel.

3           MR. SHEASBY:  Jason Sheasby for Plaintiff, Your

4    Honor.

5        There are two patents in the family at issue, and I don't

6    think it was intentional, but there was I think some

7    imprecision in the argument, which is that one of the patents

8    in the family, the '060, actually requires each array die to

9    have data ports.  And so there is a data port limitation in

10   each of the claims.

11       Now, the more trenchant question is what does it mean to

12   satisfy an electrical communication, to have an electrical

13   communication.  It is, in fact, correct that we took for the

14   purpose of proving infringement in our case that connection to

15   the data port in the Samsung design was the *sine qua non*.  It

16   proved that there was electrical communication, its presence

17   or absence.  But obviously the claim doesn't recite either the

18   presence or absence of a data port or responsiveness in that

19   third limitation, and whether it's theoretically possible to

20   have a connection -- electrical communication in a design in

21   which a data port is not present is really a question for an

22   expert; it's not a question for claim construction.

23       In the specification it repeatedly indicates that the way

24   that electrical communication is achieved is by having a

25   connection to a data port.  And so in the blue which

1    corresponds on -- this is at column 8, lines 35 through 62.

2    In the blue there's no data port connection and there's no

3    electrical connection, and then in the red there is a data

4    port connection and there is electrical communication.  Excuse

5    me.  I said connection, but I meant communication.

6        This is not the only example.  If you go to the '060

7    Patent, to 5:41 through 45, it also makes clear that it's

8    the connection to data ports that achieves the electrical

9    communication.

10        Same at '060, 8:19 through 34.  Once again, the data

11    ports are the -- what -- evidence that there's electrical

12    communication is occurring.

13        And again, the abstract itself makes clear that's the

14    ability to interface with a data port that allows for

15    electrical communication.

16        Again, '060 at column 2, lines 23 through 35, makes

17    clear -- column 2, lines 20 through 35, that the electrical

18    communication is achieved because it's able to connect with a

19    data port.

20        So I don't think -- what they're I think asking the Court

21    to do is, in effect, render an expert opinion that you can

22    have an electrical communication without being able to connect

23    to a data port or without being able to be responsive to the

24    signal that's on -- that's being traveled -- that's traveling

25    through the interconnect.  And our point is that that's an

1    expert determination.

2        We're not asking for the Court to construe 'electrical

3    communication' as requiring a data port, nor are we asking the

4    Court to construe 'electrical communication' as not requiring

5    a data port.  The question about whether something is able to

6    achieve electrical communication without the presence of a

7    data port would be for an expert to determine.

8            THE COURT:  And just so I'll understand, are you

9    contending that there's anything not reflected in the claims

10   themselves that dictates what an electrical communication is

11   within the context of that claim?

12           MR. SHEASBY:  No.

13           THE COURT:  All right.  That was my understanding.

14   And so other than the import of the surrounding claim

15   language, there's no contention by the Plaintiff that

16   'electrical communication' requires connection with a data

17   port.

18           MR. SHEASBY:  Well, the claim doesn't require it.

19   Whether it's technically possible for electrical communication

20   to occur without connection to a data port, we don't believe

21   it's technically possible in the designs that are accused of

22   infringement.  But that's a technical question, if that

23   distinction makes sense.

24       In other words, this is not a situation where we say

25   there's a disclaimer and you have to import the phrase

1   'connected to a data port' into the element as a matter of

2   clear and unequivocal disclaimer, but I want to be up-front

3   with the Court, which is from a scientific matter, we don't

4   believe that it's possible to achieve electrical communication

5   in the designs that are accused of infringement without

6   connecting to a data port.

7          THE COURT:  All right.  I think I understand that

8   position, Mr. Sheasby.  Thank you.

9          MR. RUECKHEIM:  Your Honor, Mike Rueckheim again.

10     Just briefly in response, Plaintiff has said that they're

11  not seeking to construe the claim, yet they got up here and

12  talked about embodiments from the specification in different

13  areas.  And so our concern is that Plaintiff is saying they're

14  not to construe the claim, but they're going to get up and

15  tell the jury that 'electrical communication' requires

16  communication with a data port, or as they argued in their

17  briefing, with memory cells or some type of responsiveness.

18  And this is not just having experts decide and it's not asking

19  the Court to decide claim construction--sorry--provide an

20  expert opinion; this is what they're saying the meaning of

21  the term is, and they're pointing to it with the intrinsic

22  record.

23          THE COURT:  Well, if their expert opines that the

24  reason that 'electrical communication', as used in this claim,

25  requires connection with a data port is because of what the

1   spec says and not because of the science, then there is a

2   claim construction issue that I expect will be raised.  But

3   if, as Mr. Sheasby represented, the expert is just testifying

4   that in the context of whatever the accused device is,

5   'electrical communication', as it's known in the art, requires

6   this or that, then I don't think that's a claim construction

7   issue.

8          MR. RUECKHEIM:  I would take issue slightly with 'as

9   it's known in the art', which sounds to me, again, like you're

10  saying that one of skill would understand the term 'electrical

11  communication' in a certain way, and we -- Micron disagree.

12  We don't think the term requires communication with a data

13  port.  And the claim just says 'with an array die'.

14     Mr. Sheasby pointed out the '060 Patent also recites

15  'data ports', but the claim recites 'communication with an

16  array die'.  That it recites 'data port' separately proves our

17  point.  That's a component on an array die, but that's not the

18  component that the claim recites 'electrical communication'

19  to.

20         THE COURT:  Well, I am thinking at this point

21  that that's an issue that's going to have to await further

22  development to see, in fact, what the experts say about it.

23  But if you believe that the expert is -- the Plaintiff's

24  expert is engaging in claim construction, then that's

25  something I expect we'll hear about in motion practice, but

1    what I'm hearing right now from the Plaintiff is that that's

2    not what their expert will say, and I -- it's appears to me

3    that 'electrical communication' is being used in these claims

4    in accordance with its ordinary understanding in the art.

5                    MR. RUECKHEIM:  Understood, Your Honor.

6                    THE COURT:  All right.  Thank you, Mr. Rueckheim.

7                    MR. TEZYAN:  Good morning, Your Honor.  Michael

8    Tezyan for Netlist.

9                    THE COURT:  Good morning.

10                   MR. TEZYAN:  I'd just like to touch on the 'driver

11   size' term briefly.  And I understand that Your Honor has

12   construed 'driver size' to mean 'driver physical size', and

13   just the clarification question that we have is does Your

14   Honor intend to give more guidance as to what 'physical size'

15   means, or will that be for the experts?

16                   THE COURT:  Tell me what you think the issues are

17   that you're seeking further guidance on.

18                   MR. TEZYAN:  Slide 29, please.

19                   THE COURT:  I mean, the intent of the construction

20   was to distinguish size as referring to the physical size, not

21   the strength, not the capacity, that sort of thing.  But as to

22   how you determine physical size, I don't know that that's

23   something that I'm in a position to give guidance on, but if

24   you present an issue, I'll certainly try.

25                   MR. TEZYAN:  May I confer with Mr. Sheasby for one

 1    moment?

 2              THE COURT:  All right.

 3              MR. TEZYAN:  Thank you.

 4                    (Pause in proceedings.)

 5              MR. TEZYAN:  Thank you, Your Honor.  With that

 6    clarification, I don't think we need to argue this term

 7    further.

 8              THE COURT:  All right.  Is there any argument from

 9    the Defendant?

10              MR. RUECKHEIM:  No argument on this term, Your

11    Honor.

12              THE COURT:  All right.  Thank you.

13              MR. RUECKHEIM:  I believe I am up first for the next

14    couple of terms, Your Honor.  And for terms D and E, I'll

15    start with D, of course.

16         For both these terms, we really also have just a point of

17    clarification.  For term D, 'one or more previous operations',

18    the dispute really is that Netlist in IPR papers for a related

19    patent argued the term 'leveling', 'write leveling' is not a

20    memory operation.  And we, Micron, actually won on that issue.

21    The PTAB agreed with us that 'leveling' is a memory operation.

22         And to the extent Your Honor found that that win is

23    dispositive or relevant to Your Honor's construction, I just

24    wanted to point out that that win is -- we have no indication

25    whether Netlist is going to appeal that issue and if they're

1     going to continue arguing to the appellate court that

2     'leveling' is a memory operation -- or is not a memory

3     operation--sorry.  And so with that, that's the only point of

4     clarification for that term, Your Honor.

5                THE COURT:  You know, it's my understanding that

6     there's no final decision yet in the IPR.

7                MR. RUECKHEIM:  There is a final written decision

8     for the '035 Patent--that's the related patent--where really

9     this argument as to whether -- netlist argued that 'leveling'

10    is not a memory operation.  But they're still within the

11    appeal window to file a notice of appeal, so I don't know if

12    they're going to contest that or not, Your Honor.

13               THE COURT:  All right.  Well that -- it is my

14    impression that the -- whether or not that has a disclaimer

15    effect will depend on whether it becomes final or not.

16               MR. RUECKHEIM:  I understand, Your Honor.

17               THE COURT:  All right.  Does the Plaintiff have any

18    update on the issue of finality?

19               MR. TEZYAN:  No, Your Honor; not at this time.

20               THE COURT:  So meaning that you're still within the

21    appeal window.  Is that right?

22               MR. TEZYAN:  I believe so, but I would have to check

23    to make sure.

24               THE COURT:  All right.  Thank you.

25               MR. TEZYAN:  Thank you.

1          MR. RUECKHEIM:  Your Honor, with that I'll turn to

2     the next term which we've noted in the preliminary

3     construction as E.  It's the 'determining' term for the '506

4     Patent.  And for this one also just a point of clarification.

5          Your Honor dealt with this term -- construed this term in

6     the *Netlist v. Samsung* litigation.  There Samsung pointed to

7     the intrinsic record -- statements made in the intrinsic

8     record and statements made in the prosecution history that it

9     urged -- supported the same construction that Micron is

10    offering now.

11         I just wanted to make sure that we were clear, at least

12    in our briefing, that we pointed to statements that Netlist

13    made in IPR after Your Honor's construction; in fact, a month

14    after where Netlist also argued that this claim 14 that does

15    not explicitly recite 'during one or more previous memory

16    operations', implicitly required it and made the same

17    arguments for claim 1 and claim 14.  And we cited to that IPR

18    briefing, we've included as exhibits to our response.  But

19    with that point of clarification, that's all we had.

20              THE COURT:  All right.  Thank you.

21              MR. TEZYAN:  And nothing further from Plaintiff on

22    this term, Your Honor.

23              THE COURT:  All right, then.  Thank you.

24              MR. RUECKHEIM:  Your Honor, Mike Rueckheim again.

25         Turning to term F in the preliminary construction, the

1    'drive' term from the '339 Patent.

2         So Netlist's reply brief probably states it the best that

3    they are not trying to relitigate the Court's prior

4    construction that this 'drive' term refers to enabling one of

5    the data paths while the other possible paths are disabled.

6    In the Samsung litigation there was a dispute between Netlist

7    and Samsung.  Samsung pointed to prosecution history that

8    stated that Netlist's invention was this fork in the road

9    approach that required enabling one data path while others are

10   disabled, and Your Honor's construction of this term also said

11   that you're adopting the fork in the road approach.

12        The primary issue--and I'll skip ahead--again--and this

13   is from observing the *Netlist v. Samsung* trial--is that Your

14   Honor's construction of this 'drive' term doesn't include the

15   surrounding language in the 'drive' term, and that language

16   refers to -- this is the claim term on the left.  It said you

17   are actively driving a respective byte-wise section--that's in

18   blue--of the N-bit wide write data path, and that's in red.

19        And so what happened during the Samsung trial is that

20   Netlist argued that the data paths that they're pointing to

21   for claim 1 don't have to be write data paths.  And this is on

22   the screen.  This is I believe counsel's closing argument.

23   And he said that, you know, "Opposing counsel here--that was

24   Samsung's counsel--"said it had to be a write data path."

25   Right?  Well, that's what the claim says.  "But opposing

1    counsel said you're going to get the Court's claim

2    construction in your binder"--and we've bolded this--"and if

3    anyone tells you the data path has to be only a write data

4    path, point them to Judge Gilstrap's construction of the term

5    'drive'."

6        "Look at" -- and this is on the bottom of the slide here.

7    It said, "Look at the term" -- "Look at the claim

8    construction"--this is Judge Gilstrap's claim

9    construction--"for the term 'drive' and see if it mentions the

10   word 'not read', because there they're pointing to a write

11   data path and a read data path as satisfying this

12   construction.

13       And you don't have to look at the construction; you look

14   at the claim.  The claim says write data path.  I don't

15   believe Your Honor's construction was meant to change that

16   aspect of the claim, and I don't believe Your Honor's prior

17   construction was meant to change the aspect of the claim that

18   says 'byte-wise'.  And Netlist in the Samsung litigation

19   couldn't point to a byte-wise data path; they pointed to a

20   nibble, two nibbles--that's two four-bit paths as opposed to a

21   byte being eight bits.

22       And they said the claim construction here -- well, they

23   said -- this is the expert.  He said, The expert pointed out

24   because buffers have an upper nibble and a lower nibble, there

25   are two paths.  This is two -- path one and path two, an upper

1    half byte and a lower half byte.  But the claim itself says,

2    the respective byte-wise section.  This is an eight-bit

3    section, not two four-bit sections.  And I don't believe Your

4    Honor's construction was meant to change that aspect of the

5    construction either.

6         And so what Micron has tried to do is not change Your

7    Honor's construction, but we've tried to insert Your Honor's

8    construction into the actual claim so that when the jury reads

9    it, it would make sense to them.  And here the claim has the

10   word -- Your Honor's construction on the -- where it says

11   'Micron's proposed construction' in bold 'enable one -- only

12   of the data path', that's from Your Honor's construction.  The

13   part -- the 'respective byte-wise section', that's from the

14   claim language verbatim; the 'N-bit wide write data path',

15   that's the claim language; 'while other possible paths for the

16   same byte-wise section of N-bit write data are disabled'.

17        And so we've tried to capture the full meaning of the

18   claim so there's no confusion by the jury, just based on Your

19   Honor's shorthand maybe construction of the term 'drive', and

20   we've put it back into the claim.

21        So in briefing Netlist has pointed to--and I expect

22   they're going to point to it again today--a number of

23   embodiments and figures in the '339 specification and argued

24   that these embodiments and figures disclose a single path

25   embodiment that would not be encompassed by Micron's proposal,

1    which just gives, you know, meaning to the claim, the actual

2    claim language itself.  It just recites the claim language.

3         So there's two problems with that.  The first is the

4    claims don't have to cover every embodiment, of course.

5    That's why you have multiple claims.  And so, you know, it

6    doesn't matter that there is some embodiments that have a

7    single path versus a fork in the road path.

8         And problem number two is even worse, is that Netlist has

9    already lost this argument.  Netlist -- and we've pointed in

10   our briefing, because they made the same single path argument

11   in the Samsung litigation before Your Honor, they lost, they

12   had a chance to submit objections, they did submit objections,

13   and then they withdrew those objections.  The fork in the road

14   versus single path argument is closed.

15        Thank you, Your Honor.

16             MR. SHEASBY:  Mr. Tezyan, could I have the remote

17   control, please?

18        I want to start and approach this from a different way

19   because I think that there's always a danger when I try to be

20   a mind reader and sort of read what the Court had in mind

21   during the Samsung claim construction hearing.

22        So this is the claim, and the claim talks about 'actively

23   driving a respective byte-wise section of the N-bit wide write

24   data'.  And there are I think three disputes.  The first

25   dispute is that what does the 'actively driving a byte-wise

1    section of the N-bit wide path' means.  And you'll notice that

2    there was a play of words in which counsel said everyone knows

3    'byte-wise' means eight bits.  And the reason why he was

4    saying that is because that's actually a point of heavy

5    dispute.

6         If you go to slide -- oh, I'll go to slide 62.

7         The byte-wise embodiment is an embodiment in which you

8    have the write data and the write data will be split into two

9    chunks.  Those are byte-wise chunks.  The abstract of the '339

10   Patent speaks about the fact that there are byte-wise sections

11   of write data which inherently and necessarily means that it's

12   only a portion of the write data in each byte-wise section.

13        And if you go to column 13:54, to 14, line 15, you can

14   see an example of this.  The write data is the eight-bit data

15   that's coming in, which was what my brother referred to, but

16   the byte-wise embodiment actually splits that eight into two

17   four-bit paths, creating the fork in the road and the two

18   paths embodiments that we spoke about.  And, in fact, in --

19   exactly consistent with the arguments that were made in the

20   prosecution history, it talks about the ability to selectively

21   transmit a byte-wise section of that eight-bit data on one

22   path or the other.  So this is column 13:54, through 14, lines

23   4, and figure 4B.

24        And so there's no dispute that there's a path there.

25   It's a path involving two write paths, and it splits up the

1    write data between those two write paths.  The two -- the

2    upper and lower nibble are independently able to receive the

3    portions of the data.

4         And so the first issue with the claim construction is

5    that to the extent the claim construction that they're

6    advancing is going to exclude the embodiment in which the two

7    paths are carrying a subpart of the write data, which is what

8    their language does, their proposed sort of insertion of the

9    Court's claim construction language into the specification,

10   that would be exactly contrary to the embodiments.

11        The second issue --

12        And if I can have the elmo, Madam Courtroom Deputy.

13        The second issue is in an embodiment in which the write

14   paths -- in which the two paths are not a write and read path

15   but, in fact -- sorry.  Two write paths, can they be two -- a

16   write path and a read path.  And there's no doubt that the

17   claim is requiring -- there's no doubt that the claim is

18   requiring that the path that's turned on is a path that's

19   sending write data, which the claim language expressly says.

20        But the issue is to achieve the benefit of the patent,

21   which the fork in the road embodiment does, which is that it's

22   able to shut off multiple paths while only allowing one path

23   to be active at a time, the reason why it does that is because

24   that decreases the load that's perceived by the memory

25   controller.

1        And if you look at the specification--and this is column

2   14, lines 59 through 60--it talks about this -- begins to talk

3   about this concept of the benefit of hiding the number of

4   memory devices that are hanging on a buffer, and they're

5   hanging on the memory controller, is by shutting off the other

6   paths that go to that device.  And to speak in the language of

7   the claim as precisely as possible, the tri-state buffers

8   within the circuitry can turn on and off different paths that

9   are connected to the circuitry in order to decrease the load

10  that's perceived.

11       And there's nothing in the specification -- as we note in

12  our argument, there's nothing in the claim itself and in the

13  prosecution history that precludes that the way you are

14  shutting off and decreasing the load is to shut off the write

15  path that's hanging off that data buffer so that the only

16  thing that's active at any one time is the read path.

17       And, in fact, I'll point down to column 15, lines 59

18  through 60.  The specification expressly contemplates that the

19  two or more data paths, one of which is going to be shut off,

20  could be the read data path.  So in an embodiment in which

21  you're meeting the claim terms by driving the write data on

22  one path while closing off the other paths, the other paths

23  that are closed off can quite definitively be a read path.

24       The prosecution -- and there is a sort of meta argument,

25  because counsel for Micron relied on the disclaimer that was

1   discussed in the Samsung briefing, but did not re-present the

2   disclaimer briefing in this proceeding.  The disclaimer

3   briefing, which the Court discusses in its previous claim

4   construction order, disclaimer briefing -- let me be more

5   precise.  The disclaimer arguments from the prosecution

6   history, the disclaimer arguments from the prosecution history

7   talk about shutting off other potential data paths to decrease

8   the load, but there's nothing that require that the other data

9   paths that are shut off be write data paths as opposed to read

10   data paths.  And in the portion of the specification which I

11   just pointed out to Your Honor, the '339 Patent treats 'read'

12   and 'write' as both data paths that can be toggled on or off.

13   And so there's nothing in the specification on the record that

14   suggests keeping the read path active while shutting off all

15   the other available road paths doesn't achieve this benefit of

16   decreasing load.

17        Now, there's a third issue, and the third issue --

18        If I could have the slides.

19        The specification talks about embodiments in which there

20   are less than four ranks, and, in particular, it talks about

21   embodiments in which there are two ranks.  In a two-rank

22   embodiment, the -- sorry.  So the record is clear, the

23   two-rank embodiment is discussed at column 9, lines 44 through

24   52.  The two-rank embodiment has the same challenges as the

25   four-rank embodiment in which there is an increased load

1    that's seen by the memory controller.  And in that embodiment,

2    if you're going to argue the write paths, there have to be two

3    write paths, one of which -- both of which exist and only one

4    of which is turned on.

5        If you're using the two-rank embodiment without the upper

6    and lower nibble, there would not be two write paths; there

7    would only be one write path.  So you're still only driving on

8    one write path, there's only one possible write path.  There's

9    also a read path such that there would be a fork in the road,

10   but the problem with their construction is by requiring the

11   presence of two independent write paths, it excludes the

12   embodiment in which you don't use the byte-wise splitting of

13   the write data into two paths, and you only have two ranks.

14       So we accept the Court's construction from Samsung, but

15   we take issue with the sort of meta construction that's

16   occurring, and we do that for three reasons.  One, the

17   byte-wise buffers that are recited in the claim clearly

18   contemplate a situation in which there is an upper and lower

19   nibble of the write data such that byte-wise is not eight

20   bits, which is what they're implicitly trying to get the Court

21   to accept, and excludes an embodiment in which the two paths

22   are the upper and lower nibble going on separate data paths.

23   That's 13:54, through 14:14.

24       The second thing that we reject, if you go to column 15,

25   lines 58 through 60, the two data paths are clearly

1    potentially write and read paths, and shutting off the read

2    paths decreases the load that's perceived by the memory

3    controller, vindicating the purpose of the invention.  And

4    there's nothing in the prosecution history that disclaims one

5    of the data paths that is shut off as being the read path.

6         And the third challenge we have is that their

7    construction in the situation in which you don't use a

8    byte-wise controller and which you send all eight bits on the

9    write path, they are excluding the instances in which there's

10   only two ranks.

11        And if we could have the slides.

12        The two-rank embodiment is discussed at column 9, lines

13   44 through 52.

14        If we can go back to the slides, Ms. Andrews.

15             THE COURT:  Mr. Sheasby, what you're arguing about a

16   read path being read as one of the paths that is enabled or

17   disabled, my question is, is that embodiment, which you

18   pointed out is contemplated at the bottom of column 15, is

19   that embodiment included within the scope of claim 1?

20             MR. SHEASBY:  So I think that the best answer I can

21   give to that is by working backwards with the portions of the

22   specification that Your Honor points to as the basis for the

23   discussion of 'drive'.

24        So column 15, lines 59 through 61, talks about write and

25   read paths as both being data paths, and then literally in the

1    very next column it talks about how you can toggle the data

2    paths, keep one data path off and turn one data path on in

3    order to achieve the driving of data to only a subset of the

4    memory devices that are hanging off the buffer.

5              THE COURT:  And where in column 16 is that?

6              MR. SHEASBY:  I believe, Your Honor -- and give me

7    one moment.  I am going to toggle between two documents.  If

8    Your Honor will give me just one second, I'll find it.

9         Your Honor pointed to 16, line 7 through 25 in the

10   Samsung claim construction order as the basis for the

11   specification support for 'drive' -- for the 'drive'

12   construction.  And the specification -- and in that passage it

13   talks about data transmission circuits, and it talks about

14   path A or path B to direct the data, but it never talks about

15   that the path A or path B -- both the path A and path B must

16   be a pass solely for write data or solely for read data.

17        And so as a matter of propinquity, the discussion of the

18   fact that the data paths can read and write that occurs at

19   column 15, lines 59 through 60, is introducing the technique

20   that was the basis for the drive construction at column 16.

21        So as a scientific matter, you would have to say that

22   keeping the write path open, turning off the read path, does

23   not decrease load because the purpose of this entire exercise

24   is introduced at column 14, lines 59 through 60.  In that

25   passage, it's describing the idea that you want the controller

1    to see as few active devices as it possibly can.  And the way

2    it sees as few active devices as it possibly can is by

3    shutting off all unused data paths.  And so the argument would

4    have to be that shutting off the read data path, keeping the

5    write data path open, does not achieve that load reduction

6    functionality.

7        And I believe that the specification makes clear that

8    it's not -- it's agnostic as to what those data paths are.

9    And I don't think there's anything in the prosecution history

10   that discloses the data path that is shut off from being a

11   read data path while the write data path remains on, load is

12   decreased, and the purpose of the invention is achieved.

13       THE COURT:  You know, it was my impression as I

14   recall the prior litigation, the Samsung litigation, that we

15   were construing the 'drive' terms in the scenario really shown

16   in figure 5 where you have the A and B paths, both of which

17   are write paths, and the determination in that case was that

18   driving in that scenario would require that only one of those

19   paths be enabled.

20       MR. SHEASBY:  So I agree that figure 5 is two write

21   paths that are being depicted as opposed to a write and read

22   path, Your Honor.  The question is, is the claim limited to

23   that in which the figure 5 and the two paths are just write

24   paths.

25       So there's three issues.  There is the byte-wise issues,

1    which is upper and lower nibble, and upper and lower nibble

2    are clearly encompassed by figure 5.  And you can see that in

3    the depiction, for example, of figure 4B, which is like figure

4    5, has a fork in it but is saying the upper and lower nibble.

5    So if Your Honor is suggesting that figure 5 is the

6    articulation of the claim, figure 5 would still encompass

7    upper and lower nibbles.

8         The second issue is this figure 5, which I agree with you

9    is two write paths, does that limit the situation in which the

10   other path that is shut off is not a write path as opposed to

11   a read path, because -- the reason why I say that is because I

12   believe in figure 5, it depends on if those are reading or

13   writing.  My recollection is that in figure 5, the paths y1

14   and y2 can be used for both read and write.  And the reason

15   why I say that is because if you look at column 16, lines 26

16   through 44, Your Honor, it's using the same y1 and y2 for

17   read.  So the way I interpret figure 5 is that in a write

18   operation, the two paths, y1 and y2, are paths that can send

19   write data, and in a read operation those same paths can send

20   read data.

21        Now, the question is would the embodiment in which there

22   is a dedicated read path and a dedicated write path, y1 and

23   y2, and you shut off one and keep the other one open, thereby

24   decreasing the load, was that clear and unequivocally

25   disclaimed in the prosecution history or in the specification,

1      and I would suggest that the absence of a disclaimer on the

2      paths being separate read and write paths, dedicated read and

3      write paths, one and the other, coupled with 15, lines 58

4      through 60, would not support that narrow interpretation.

5          In other words, based on Your Honor's comment, I have

6      lost the argument that this claim covers a two-rank device,

7      and I accept that commentary of what Your Honor had in mind,

8      two-rank devices discussed at 9:44 through 52.  But then you

9      have to ask yourself the question, one, figure 5 clearly does

10     encompass an embodiment consistent with figure 4A -- 4B in

11     which the two paths are only a subset of the data; and then is

12     -- the second point is do you construe figure 5 to the y1 and

13     y2 to necessarily be -- to exclude and embodiment in which one

14     of y1 is a read path and one of y2 is a write path, and then

15     they shut off one and turn off the other, because they can't

16     just -- figure 5A can't just be a write path because figure 5A

17     in column 16 y1 and y2 are used for writing or reading

18     depending on what mode you're in in that specific embodiment.

19         Your Honor, was that responsive to your question?

20            THE COURT:  I think so.

21            MR. SHEASBY:  Let me summarize it this way.  I find

22     this to be the hardest of the patents that we've engaged in

23     the case, and the way I look at it is the following:  If you

24     believe that claim 1 is figure 5, you have to ask yourself two

25     questions--does that exclude the byte-wise embodiment in which

1    the two paths are a subset of the write data.  Clearly there's

2    nothing in the prosecution history or in the specification

3    that would exclude that, and, in fact, that would be directly

4    contrary to column 13, line 54, through 14, line 14, which

5    uses effectively the same language that Your Honor construed

6    'drive' as being able to selectively transmit on separate

7    paths.  So that is clearly I think improper.

8         And then the second issue Your Honor has to engage is in

9    figure 5, if you look at column 16--

10        Thank you, Ms. Andrews.

11         -- y1 and y2 in that embodiment are read or write

12   depending on what mode it's in.  So they're not always write;

13   they're not always read.  So does that exclude -- what do you

14   do in a situation in which there is a dedicated read path and

15   a dedicated write data path, and you're shutting off the read

16   data path, keeping the write data path open, or vice versa,

17   you are clearly decreasing the load, the specification is

18   clearly contemplating that a data path can have read, write,

19   or both, and so is it proper to limit the -- is it proper to

20   limit the claim to a situation in which the -- the path that

21   the data is traveling on based on the claim language that's

22   not shut off is clearly a write data path.  The claim language

23   makes that clear.

24        Is it proper to limit the claims such that the other path

25   that is turned off must be a write path when, one, that was

1    not the disclaimer; two, the specification contemplates that

2    data path has a more robust meaning that include both read and

3    write; three, figure five makes clear that y1 and y2 are not

4    always and necessarily dedicated read or write paths.

5        And I do think that goes a bit too far in terms of

6    limiting a claim to the specification.  There's nothing in

7    the specification that excludes an embodiment in which y1 is

8    write and y2 is read.  There's no clear and unequivocal

9    disclaimer of that, certainly not in the prosecution history.

10   And certainly the specification at column 15 makes clear that

11   the data paths can be read or write.

12       At this point I'm just repeating myself, Your Honor, and

13   your time is valuable and so I'll sit down, unless Your Honor

14   has any further questions.

15            THE COURT:  Well, one thing that I do believe was

16   clearly decided in the last case is that when there are

17   multiple write data paths, then enabling -- driving means

18   enabling only one of the data paths while the other write data

19   paths are disabled.  And I guess I'm -- I have not studied it

20   from the aspect of a read path in that connection.

21            MR. SHEASBY:  And, by the way, although it is

22   utterly irrelevant what I believe, Netlist accepts and does

23   not disagree with what you just said in terms of -- that we

24   believe that prior construction that you just recited it is

25   correct and consistent with the specification; that when there

1    are multiple write paths, you need to shut off one of them.

2              THE COURT:  All right.  Thank you, Mr. Sheasby.

3              MR. SHEASBY:  That still leaves these two

4    issues--the byte-wise embodiment, which we think is clearly

5    contemplated and which the two data paths can be separated

6    upper and lower nibbles; and two, what happens when you have a

7    write path and a read path.

8         Thank you, Your Honor.

9              THE COURT:  All right.  Thank you.

10             MR. RUECKHEIM:  Your Honor, Mike Rueckheim again.

11        Counsel just said that there is nothing in the

12   specification that excludes the data path from being a

13   combination of a read and write data path.  On slide 48 of the

14   screen we have the claim language.  And as Your Honor knows,

15   the name of the game is the claim, and that there may be other

16   embodiments in the specification is irrelevant.  The claim

17   here says "a respective byte-wise section of the N-bit wide

18   write data."

19        And if Your Honor wants further context, you can look at

20   claim 10.  Claim 10 is very similar.  For the arguments, the

21   parties have said claim 1 -- the language from claim 1 here is

22   representative, but claim 10 says "to actively drive a

23   respective byte-wise section of the N-bit wide read data."

24   And so you have claims directed to write data, you have claims

25   directed to read data, and what counsel for Netlist is doing

1    is asking Your Honor to just erase those words.

2         So the arguments that I'm hearing from Netlist, it's

3    shifted.  The arguments in the briefing have shifted.  In the

4    briefing and in the slides, Netlist has pointed to this figure

5    4B, the single path embodiment.  That was the same exact

6    argument that they made in the Samsung litigation.  Your Honor

7    pointed them to figure 5, and figure 5 is really not discussed

8    by Netlist, and there was some discussion of what figure 5

9    includes by Netlist's counsel.

10        I direct Your Honor to column 15 in the patent around

11   line 37, and it discusses that the data transmission circuit

12   may be multiple bits wide, eight bits.  And so we're talking

13   about byte-wise section.  And for me, Your Honor, I view what

14   Netlist is now arguing to the Court is that the Court should

15   construe this term 'byte-wise' to mean -- it could be

16   encompassing two four-bit wide paths.  And that's a claim

17   construction dispute.  It's changing the plain meaning of

18   'byte-wise'.

19        I think we'd all agree 'byte' refers to eight bits, and

20   Netlist is now arguing that byte-wise can be two four bit

21   pieces of data, and that's a claim construction argument that

22   they did not raise, and today was the first time that I view

23   them as raising it.

24        Netlist is also I think making the claim construction

25   argument for the first time today that 'N-bit wide write data'

1    can refer to N-bit wide read or write data, and that's --

2    again, that's a claim construction argument that wasn't raised

3    and it's just not supportable.

4        Counsel for Netlist argued this meta argument--I wasn't

5    quite sure what they're referring to for meta argument--that

6    Micron did not discuss the disclaimer.  Of course we

7    incorporate by reference Samsung's briefing on the issue and

8    we view the issue as closed.  The Court has said that I'm

9    adopting--I'm paraphrasing of course, but--the fork in the

10   road construction.  Netlist argued for the single path,

11   pointing to 4B, embodiment and the Court said no.

12       And so all that Netlist has done today is talk about 4B

13   again.  They characterize it slightly different, but they've

14   had their chance at that argument and that issue's closed.

15   And that's why Micron did not contest or present further

16   argument on the disclaimer; it's because it's already been

17   decided.

18       Thank you, Your Honor, with no further questions.

19           THE COURT:  All right.  Thank you, Mr. Rueckheim.

20       Mr. Sheasby, anything further on this?

21           MR. SHEASBY:  I will just point to three things,

22   which is --

23       If I could have the slides back, Ms. Andrews.

24       This should not be a it's a his fault it's his fault

25   sort of argument, which is I think the premise that what a

1   byte-wise section is, I don't think anyone's asking for a

2   construction of that; what we're asking for is not to be

3   presumed that the entire eight bits of a byte has to make up

4   the path, because a byte-wise section is not a byte, it's a

5   section of the byte, as the abstract speaks about and as the

6   embodiments at column 13:54, through 14, line 14 speak about.

7   That's the first issue.

8       The second issue is that no one's suggesting that the

9   path that the write data goes on must be a write path.  The

10  nub of the dispute is what about embodiments in which the data

11  path is one write path and one read path.  Is there a clear

12  and equivocal disclaimer of that embodiment in either the

13  prosecution history or the specification.  And the reason why

14  I phrase it that way is if you look at '339, claim 1, it says

15  nothing about what is the running on the other data path that

16  is turned off when the write data is going down the path.  So

17  that would require a clear and unequivocal disclaimer to

18  indicate that the other path must also be a write path.

19      Thank you, Your Honor.

20          THE COURT:  All right.  Obviously I will consider

21  these arguments further.

22          MR. LOGAN:  Thank you, Your Honor.  William Logan on

23  behalf of Micron.

24      Micron respectfully asks that the Court construe the

25  term 'converter circuit' to be a means-plus-function

1   limitation and find the corresponding structure in the '918

2   Patent at 29:18 through 64.

3        Your Honor, the parties' two positions are on the slide

4   that I currently have up.  And just to give some context for

5   the argument that I'm going to present, I'd like to point out

6   that even in Plaintiff's proposed construction for this term

7   where it explains what the plain and ordinary meaning may be,

8   it explains it in functional terms--'a circuit for'.  It

9   essentially uses 'for' instead of 'configured to', which is

10  how the claim language presents itself, as we'll see shortly.

11       And Your Honor, that really in some ways encapsulates the

12  difference between the parties on this term, and the key

13  difference is, is that Micron is focusing on the term

14  'converter circuit' within the context of the claim.

15  Conversely, Netlist consistently argues about the term

16  'circuit' by itself, and essentially Netlist's argument

17  throughout the briefing is the Federal Circuit has

18  consistently said that 'circuit' connotes structure;

19  therefore, paragraph 6 doesn't apply.  But this simply isn't

20  what the Federal Circuit has said in the cases that Netlist

21  cites.

22       And there's three which I'll briefly describe, but it's

23  important maybe to look first at *Power Integrations*.  And I've

24  put that quote from *Power Integrations* that I think is most

25  important to the right.  It discusses the appropriate inquiry

1    for considering the term 'circuit' when it comes to whether or

2    not it's a means-plus-function term.  And it says that you do

3    have to look further than just the word 'circuit', because

4    while 'circuit' may have some structure, that doesn't mean

5    that it has sufficient structure.  And that really boils down

6    and distills what the dispute is between the parties.  Netlist

7    says 'circuit' gives some structure, that's enough; Micron

8    says 'circuit' doesn't give sufficient structure.  And when

9    you look within the context of the claims, 'converter circuit'

10   doesn't have sufficient structure.

11       So, Your Honor, there were three cases that Netlist cited

12   in support of its proposition that the Federal Circuit has

13   consistently found 'circuit' to not be subject to paragraph 6.

14   In each one of those cases, though, the Federal Circuit went

15   through the means-plus-function analysis to consider the

16   context of the claims and whether within the context of the

17   claims 'circuit' had sufficient structure.  And in each case

18   there was a specific reason it found within that context that

19   'circuit' had sufficient structure.

20       For instance, in *Power Integrations*, Your Honor--and this

21   may be some ways the most instructive because it is the most

22   recent case that Netlist had cited--what the court saw was you

23   had a term that was maybe discussed in the functional

24   language, a 'circuit' term.  You had inputs, you had what the

25   court described as a straightforward function that was

1   explained in the claim comparing the magnitudes of three

2   signals, and then you had an output.  So, Your Honor, to the

3   extent there's a black box there, a circuit, you knew what was

4   going in, you knew what was going out, and from the claim

5   language you understood what was in the box, what was

6   happening inside the box.

7        In *Linear Tech*, Your Honor, what the Court found was that

8   there was expert testimony that explained within the context

9   of the claim that a person of ordinary skill in the art would

10  understand a sufficient structure for 'circuit' as it was

11  presented there.  Certainly not an endorsement by the Federal

12  Circuit that 'circuit' by itself gives sufficient structure.

13       And then, likewise, Your Honor, in *Apex*, the Court

14  weighed evidence and found that the parties promoting the

15  means-plus-function position simply hadn't put forth enough

16  evidence to meet its burden.  And in that case, very

17  specifically, all the party promoting had put forth was the

18  meaning -- was the discussion of that term in various district

19  courts and descriptions from the specification and the

20  embodiments.

21       So, Your Honor, *Apex* may sum it up best at the bottom,

22  which is it's just not necessarily the case that 'circuit'

23  itself connotes sufficient structure.  That proper analysis,

24  *Power Integrations* put forth, is we have to look at the

25  context of the claims to see if there is sufficient structure

1  there.

2          THE COURT:  And what about 'converter' makes you

3  think that it does not connote structure here?

4          MR. LOGAN:  Your Honor, that's an excellent

5  question, and there are cases, which I'll move forward to the

6  next slide just to see that, of course, there's often what

7  they call adjectival qualifications that may be put on a term,

8  like in this case the converter circuit.  But that alone,

9  without giving some structure, some insight into that black

10  box that gives some structure to what the circuit is isn't

11  necessarily enough.

12      So what we have here, to more directly answer your

13  question, is the expert testimony of Doctor Stone who explains

14  that 'converter circuit' isn't a known term of art that would

15  give a POSITA an understanding -- a sufficient understanding

16  of what the structure of that circuit is.  And interestingly,

17  during the testimony of Netlist's own expert during the past

18  trial, he said that he didn't look for any structural element

19  for this term beyond the functional requirement that something

20  reduced the voltage.

21      So the point here, Your Honor, is that we have unrebutted

22  testimony from a witness that explains that a POSITA has no

23  understanding of what'converter circuit' means within the

24  context of this claim, not sufficiently to understand its

25  structure.

1          And, importantly, Your Honor, Netlist is unable to

2     produce any evidence about 'converter circuit' having some

3     kind of meaning in the art, some kind of structure that would

4     be known to a POSITA.  In fact, as I mentioned before, it

5     argues this term exclusively on 'circuit'.  All of the

6     definitions it puts forth are definitions of 'circuit', which

7     we know from the Federal Circuit may have some structure but

8     may not have sufficient structure for this purpose.

9          And this is evident, Your Honor -- for instance, in

10    Netlist's slides No. 84, it sets forth all of the definitions

11    that it wants to offer to the Court.  Every one of them is

12    about the term 'circuit'.  Likewise, it tries to use Doctor

13    Stone's testimony on slide 86 of its presentation because

14    there he's talking about what 'circuit' means.

15         So, Your Honor, to go back to your question, the reason

16    that Netlist believes 'converter circuit' doesn't provide

17    sufficient structure is because the evidence in the record is

18    a POSITA wouldn't have an understanding from that term of what

19    the structure is, Netlist hasn't offered any evidence that a

20    POSITA would understand a sufficient structure for that term,

21    and where Netlist does point to structure for that term, it

22    points to the specification in the exact passage that Micron

23    suggests the Court should use to find structure for this term.

24              THE COURT:  Well, what is there about 'converter'

25    that would cause the 'circuit' term to be less an indication

1    of structure than it ordinarily is?  I mean, the -- frankly,

2    in the cases that you've been citing, the descriptor of

3    'circuit' was normally something not well-known.  *Power*

4    *Integrations*, I think it was a soft start circuit.

5              MR. LOGAN:  Yes, Your Honor.

6              THE COURT:  'Converter' is, within the electrical

7    arts, a much better understood structure and concept.

8              MR. LOGAN:  Your Honor, I believe the distinguishing

9    factor there, and *Power Integrations* is a wonderful example,

10   is that the claim language itself lended some structure, in

11   other words, some understanding of what was happening inside

12   the box, and there it was a straightforward comparison.  The

13   claim language explains you're comparing the magnitude of

14   three signals.  That's what the circuit was doing.  That's

15   a structure that a POSITA would understand from it what's

16   happening in the box.

17        The problem with 'converter circuit' is that there's no

18   indication in the claim language of what's inside the box of a

19   converter circuit.  It's not a known term to a POSITA.  It

20   gives the POSITA no guidance on the structure that's necessary

21   to carry out the means.  So the natural thing for a POSITA to

22   do is to turn to the specification to understand the structure

23   that fulfills that means.

24             THE COURT:  What else would a converter be in this

25   context than something that would convert the voltage?

1            MR. LOGAN:  Your Honor, that's a -- it's an

2    excellent question, because that's exactly what it does.

3    And that's why means-plus-function claiming can be so helpful,

4    because we do know from the term and the surrounding context

5    what the output is.  So there's no doubt here that the

6    term 'converter' helps inform the POSITA of this is what we

7    want to accomplish.  The question is does it inform a POSITA

8    of how do we go about accomplishing that; what's the

9    structure, what's the manner in which we're going to go about

10   carrying that function out, producing that means that we're

11   having.

12       So while 'converter' certainly helps the Court, a POSITA,

13   someone reading the claims understand the goal, the outcome.

14   What it doesn't do, as Doctor Stone points out, is give the

15   POSITA any insight, any sufficient structure for performing

16   that conversion function.

17            THE COURT:  You know, I think the law is clear that

18   the term doesn't have to indicate which of a broad class of

19   structures is called for in the claim, as long as that class

20   of structures is well-known.

21            MR. LOGAN:  Your Honor, that is correct.  And

22   certainly in this case Micron's argument isn't that 'converter

23   circuit' is broad; Micron's argument in this case is that

24   'converter circuit' is just an unknown term to a POSITA.  It

25   may inform a POSITA about what the output of the circuit needs

1   to be, but it doesn't inform a POSITA as to what the class, as

2   Your Honor pointed out, of circuits that might qualify as a

3   converter circuit are.  That's the testimony in the record.

4        And, Your Honor, if you go back, then, and you look in

5   the specification, there is a fairly detailed description

6   about the class of structures that qualify as a converter

7   circuit within this claim language.  So it is important to

8   note that Micron isn't arguing this term's indefinite; Micron

9   is simply arguing that the drafter chose to use a nonce term,

10  'converter circuit', a term that's not known in the art,

11  doesn't have sufficient structure in the art for a POSITA

12  reading it in the abstract to know the precise class of

13  structure that are being discussed, but the drafter did put in

14  the specification a description of the class of structures

15  that met that term.

16       So, therefore, Your Honor, that is why Micron is setting

17  forth that this is a means-plus-function term, and to inform

18  the POSITA of what it means requires looking at the structure

19  in the specification.

20            THE COURT:  What is your best case for the

21  proposition that 'circuit' is a nonce term?

22            MR. LOGAN:  Your Honor, actually the best case for

23  that is likely all three--*Power Integrations*, *Linear*

24  *Technology*, and *Apex*.  And the reason I say that, Your Honor,

25  is if any of those cases had stood for the proposition that

1    'circuit' is not a nonce term, 'circuit' itself provides

2    sufficient structure, the analysis ends there.  Instead, in

3    all of those occasions the Federal Circuit went through the

4    process of looking at the context of the language, looking --

5    reading in light of the specification, weighing expert

6    testimony, and weighing whether the, you know, preponderance

7    of the evidence standard had been met.  So in none of these

8    cases has the Federal Circuit taken the position that

9    'circuit' by itself is enough to lend sufficient structure.

10             THE COURT:  All right.  Thank you, Mr. Logan.

11             MR. LOGAN:  Yes, Your Honor.

12             MR. SHEASBY:  Jason Sheasby for the Plaintiffs, Your

13   Honor.

14        Ms. Andrews, may I have the elmo?  Thank you.

15        I'm having so much trouble today with this.  There we go.

16        The case that they cite, *Power Integrations*, talks about

17   a descriptions of the circuit's operation may provide

18   sufficiently definite structure, and the reason *Power*

19   *Integrations* speaks about that is because 'circuit' is not a

20   nonce term; 'circuit' is a structure.  It's a structure that

21   exists in electrical engineering.  It's not like the module

22   language that was at issue in some of the other cases that

23   were described.

24        And if you'll go to the slides now, Ms. Andrews.

25        In this case you start with the claim.  So the claim has

1    a structure, a converter circuit.  Converter is a structural

2    feature, it's not a function.  There is a separate function

3    about what that converter circuit does.  It provides a fourth

4    regulated voltage having a fourth voltage amplitude.  So you

5    have to convert an input voltage, and from that input voltage

6    yield a fourth regulated output voltage; once again, a

7    specific description of structure.

8         And we know what that converter circuit is connected to.

9    If we go down to the last element, the -- it's connected to

10   the SDRAM devices.  And so the claim itself provides the

11   specific detailed description of the structure of the circuit,

12   what voltage it receives, what voltage it outputs, and the

13   fact that it converts it and what's it connected to.  This

14   falls squarely into the Federal Circuit precedent that makes

15   it not a nonce term.

16        *Apex*, 325 F.3d, 1373.  "The term 'circuit' with an

17   appropriate identifier such as interface, programming, and

18   logic certainly identifies some structural meaning."  There

19   was some suggestion that this *Apex* is no longer good law, but,

20   in fact, in 2022 Apex was cited with favor by Dyfan, 28 F.4d,

21   1360, 1366, that having some structure is all that's necessary

22   to remove a claim from § 112.

23        The reason why the converter circuit on its own -- the

24   reference to the word 'converter' is because the definition of

25   'circuit' is not a nonce term.  So this is a point of some

1    confusion.

2         I think Micron has a two-step burden to satisfy.  The

3    first step burden they have to satisfy is that 'converter

4    circuit' is a nonce term.  Then if they satisfy that it's a

5    nonce term, then they can go to § 112, ¶ 6, and argue

6    indefiniteness, and the reason why definitions of 'circuit'

7    are so important because they establish that 'circuit' is not

8    a nonce term.

9         I should also point that Doctor Stone has -- if you read

10   his declaration, he speaks about the fact that 'circuit' is a

11   nonce term because it could be a combination of hardware -- it

12   could be software, hardware, or a combination of software and

13   hardware.  There is no description that in the context of this

14   patent, which is purely about hardware, that 'converter

15   circuit' is a nonce term.  A converter circuit in the claims

16   of the patent are clearly a hardware structure that receives a

17   specific voltage and outputs a specific voltage.  So I would

18   take with a jaundiced eye Doctor Stone's general statement

19   that out of context 'circuitry' could involve software, I that

20   don't think that has any connection to the specification.

21        I'll also note a point of irony in that after writing a

22   declaration that says 'circuitry' is not a structural term but

23   is a nonce term, in paragraph 25 of his declaration he

24   literally describes 'voltage conversion' as structure, not a

25   function, which is exactly the structure that is at issue in

1   this case, in this claim.

2         And, of course, under the crucible of cross examination

3   by Mr. Tezyan, he admitted that the definition of 'circuit' is

4   not a nonce term.  This is Exhibit 24 from our opening -- our

5   reply brief at 23, lines 19 through 17, that it's not a nonce

6   term.  The fact of the specification discusses -- and this is

7   a relevant passage is 29, lines 18 through 31.  It says,

8   "Converter circuits, such as buck converters, boost

9   converters, and buck-boost converters."  I do think the 'such

10  as' is relevant.  'Such as' is not a term of limitation; it's

11  a term of open-endedness because the specification makes clear

12  that 'converter circuits' are a term that's known in the art.

13  And, of course, we know that 'converter circuits' are a term

14  that is in the art.  Doctor Stone admitted this, that other

15  converter circuits, including an LDO converter circuit, which

16  is what they want to exclude, was known in the art at the time

17  of the patent.  So these are well-known features.  This is

18  Exhibit 24 to our reply at 19:19 through 25.  Doctor

19  Mangione-Smith in his trial testimony also admitted that he

20  looked for structure, and particularly he looked for a switch.

21        There is also a point that I'll make, which is that there

22  was a canary in the coal mine that we know that converter

23  circuit is not a nonce term.  We know that because there is

24  another term which is, if anything, more noncey.  I don't know

25  if 'more noncey' is a word, but I'm going to use

1    it--N-O-N-C-E-Y for Mr. Court reporter; at least that's how I

2    would spell it.  In -- they have this term that's 'first

3    circuit', and they say 'first circuit' is not a nonce term;

4    it's a term that should just be construed.  But if you look at

5    the structure -- and they say, Well, the reason for that,

6    don't worry, Your Honor, is because 'first circuit' has

7    structure associated to it.  And, in particular, 'first

8    circuit' is coupled to SDRAM devices and to edge connections.

9    And they say, Because we know where it's coupled to on the

10   -- in the claim, it's not a nonce term.

11       Well, I can tell you if first circuit is not a nonce term

12   because it describes where it's connected to in the claim,

13   there's no conceivable way that 'converter circuit' could be a

14   nonce term.  'Converter circuit' has even greater detail about

15   what it's connected to, what it does, what voltage it

16   receives, and what voltage is output.

17       So I believe that the overwhelming evidence from their

18   own expert, the specification itself, as well as their

19   position that 'first circuit' is not a nonce term, does

20   suggest that this term is not nonce.  Once it's not nonce,

21   the § 112 ¶ 6 argument drops away.

22       Thank you very much, Your Honor.  I'll stand down, unless

23   Your Honor has questions.

24              THE COURT:  All right.  Thank you, Mr. Sheasby.

25              MR. LOGAN:  Thank you, Your Honor.

1          When opposing counsel discussed the claims, he said that

2     'converter circuit' was -- had sufficient structure because

3     the claim describes its operation.  But in describing the

4     operation, all that opposing counsel said, Well, here's what

5     goes in and here's what comes out, and that's not a

6     description of the operation in the way that's discussed, for

7     instance, in *Power integrations* where the court looked at--and

8     this is discussing *Abacus*--what comes in is their structure

9     for what happens and then what goes out.  And here all we have

10    is what goes in, what goes out, which is not the operational

11    point.

12         Opposing counsel also tries to conflate this with the

13    term 'first circuit', but the term 'first circuit' isn't

14    claimed in a similar fashion.  It doesn't say 'first circuit

15    configured to'.  What we're dealing with in these claims is a

16    very apparent attempt to use means-plus-function-type

17    claiming.  In fact, Your Honor, one case is *MTD Products* where

18    the court there said, "The claim language reciting what the

19    mechanical control circuit was configured to do was

20    functional.  This claim format tends to favor the position

21    that § 112, ¶ 6 applies."

22         All of the claims that we're dealing with for 'converter

23    circuit', unlike 'first circuit', are 'configured to' claims,

24    which raises the specter of paragraph 6.

25         Your Honor, opposing counsel also suggested that *Apex*

1    sets the standard and that some structure is enough, but, of

2    course, this does not comport with the statement in *Apex* that

3    their finding was based on not finding sufficient evidence to

4    overcome the presumption, and the statement in the much later

5    *Power Integrations* that the question is whether an ordinary

6    skilled artisan finds sufficiently definite structure.  So the

7    standard certainly does not appear to be from any of these

8    cases whether some structure exists.

9         THE COURT:  You know, 'sufficiently definite

10   structure' does not mean that we're supposed to -- the court

11   is supposed to determine in claim construction whether that

12   structure can accomplish the requirements of the claim; it's

13   just a determination as to whether it is sufficiently

14   structure as opposed to pure function.

15        MR. LOGAN:  That is correct, Your Honor.  But the

16   point would be from Micron to not move the goal post to say

17   that as long as 'circuit' provides some structure, that's

18   enough to avoid setting forth or taking part in this analysis

19   at all, because whether or not 'circuit' provides some

20   structure doesn't inform whether 'converter circuit' provides

21   sufficient structure in this case.

22        THE COURT:  All right.

23        MR. LOGAN:  Another point is that when discussing

24   the paragraph that sets forth -- it's on slide 89 of Netlist's

25   presentation.  When discussing the paragraph that does set

1   forth the structure for 'converter circuit' in the

2   specification, they focused in on some 'such as' language.

3   Notably, Netlist is the one that has cited directly to that

4   sentence in describing the structure.  Micron's position is

5   the much larger passage that gives more context to the

6   structure and does not try to limit it to the specific

7   examples set forth just in the 'such as' clause.

8        Unless there are any further questions, Your Honor,

9   that's all.

10              THE COURT:  No.  Thank you, Mr. Logan.

11              MR. LOGAN:  Thank you, Your Honor.  I appreciate it.

12              THE COURT:  I know that we have a discovery motion

13   that has been set for argument today.  If that completes the

14   claim construction issues, we'll take a break now, come back,

15   and take up the discovery motion.  So --

16              MR. SHEASBY:  Yes, Your Honor, it does complete the

17   claim construction.

18              THE COURT:  All right.  And we'll take a 15-minute

19   recess.  Thank you.

20                       (End of hearing.)

21

22

23

24

25

1           I HEREBY CERTIFY THAT THE FOREGOING IS A

2     CORRECT TRANSCRIPT FROM THE RECORD OF

3     PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4     I FURTHER CERTIFY THAT THE TRANSCRIPT FEES

5     FORMAT COMPLY WITH THOSE PRESCRIBED BY THE

6     COURT AND THE JUDICIAL CONFERENCE OF THE

7     UNITED STATES.

8

9     S/Shawn McRoberts              07/28/2023

10    _____DATE_____
      SHAWN McROBERTS, RMR, CRR
11    FEDERAL OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Concordance

**< Dates >**
**07/28/2023** 55:9 .
**JULY 26, 2023** 1:13 .
**'035** 17:8 .
**'060** 5:10, 10:8, 11:6, 11:10,
    11:16, 14:14 .
**'160** 5:11 .
**'339** 19:1, 21:23, 23:9, 26:11,
    38:14 .
**'506** 18:3 .
**'918** 39:1 .
**'one** 16:17 .
.

**< 0 >** .
**02** 6:22 .
.
.

**< 1 >** .
**1** 18:17, 19:21, 28:19, 32:24,
    35:21, 38:14 .
**10** 35:20, 35:22 .
**100** 1:44, 2:40 .
**104** 2:14 .
**112** 48:22, 49:5, 51:21, 52:21 .
**12** 8:13 .
**13** 33:4 .
**1360** 48:21 .
**1366** 48:21 .
**1373** 48:16 .
**13:54** 23:13, 23:22, 27:23, 38:6 .
**14** 18:14, 18:17, 23:13, 23:22,
    25:2, 29:24, 33:4, 38:6 .
**14:14** 27:23 .
**15** 23:13, 25:17, 27:24, 28:18,
    28:24, 29:19, 32:3, 34:10,
    36:10 .
**15-minute** 54:18 .
**1507** 2:34 .
**16** 29:5, 29:9, 29:20, 31:15,
    32:17 .
**16--** 33:9 .
**17** 50:5 .
**18** 50:7 .
**1800** 2:5 .
**19** 50:5 .
**19:19** 50:18 .
.

**< 2 >** .

**2** 1:5, 3:4, 11:16, 11:17 .
**20** 11:17 .
**2022** 48:20 .
**203-7096** 2:8 .
**22-CV-203-JRG** 1:5 .
**222-203** 3:4 .
**23** 11:16, 50:5 .
**24** 50:4, 50:18 .
**24TH** 2:28 .
**25** 29:9, 49:23, 50:18 .
**255** 2:21 .
**26** 31:15 .
**28** 48:20 .
**29** 15:18, 50:7 .
**29:18** 39:2 .
.

**< 3 >** .
**300** 2:14 .
**31** 50:7 .
**310** 2:8 .
**325** 48:16 .
**34** 11:10 .
**35** 11:1, 11:16, 11:17 .
**37** 36:11 .
.

**< 4 >** .
**4** 23:23 .
**44** 26:23, 28:13, 31:16 .
**45** 11:7 .
**48** 35:13 .
**4A** 32:10 .
**4B** 23:23, 31:3, 32:10, 36:5,
    37:11, 37:12 .
.

**< 5 >** .
**5** 30:16, 30:20, 30:23, 31:2, 31:4,
    31:5, 31:6, 31:8, 31:12, 31:13,
    31:17, 32:9, 32:12, 32:24,
    33:9, 36:7, 36:8 .
**52** 26:24, 28:13, 32:8 .
**520** 2:21 .
**54** 33:4 .
**58** 27:25, 32:3 .
**59** 25:2, 25:17, 28:24, 29:19,
    29:24 .
**5:41** 11:7 .
**5A** 32:16 .

.
.
**< 6 >** .
**6** 39:19, 40:13, 49:5, 51:21,
    52:21, 52:24 .
**60** 25:18, 27:25, 29:19, 29:24,
    32:4 .
**60--it** 25:2 .
**61** 28:24 .
**62** 11:1, 23:6 .
**64** 39:2 .
**650** 2:23 .
**651-2766** 2:30 .
.

**< 7 >** .
**7** 29:9 .
**713** 2:30 .
**75604** 2:35 .
**75670** 1:45, 2:15, 2:41 .
**757-6400** 2:36 .
**77002** 2:29 .
.

**< 8 >** .
**8** 11:1 .
**800** 2:28 .
**84** 43:10 .
**858-6443** 2:23 .
**86** 43:13 .
**89** 53:24 .
**8:19** 11:10 .
.

**< 9 >** .
**9** 26:23, 28:12 .
**900** 2:6 .
**90067-4276** 2:7 .
**903** 1:46, 2:16, 2:36, 2:42 .
**923-8546** 1:46, 2:42 .
**923-9000** 2:16 .
**94065** 2:22 .
**9:00** 1:14 .
**9:44** 32:8 .

**DATE**_____ 55:10 .
.

**< A >** .
**A.M.** 1:14 .

Concordance

**Abacus--what** 52:8 .
**ability** 11:14, 23:20 .
**able** 11:18, 11:22, 11:23, 12:5,
   24:2, 24:22, 33:6 .
**above** 7:22, 7:23 .
**ABOVE-ENTITLED** 55:3 .
**absence** 10:17, 10:18, 32:1 .
**abstract** 11:13, 23:9, 38:5,
   46:12 .
**accept** 27:14, 27:21, 32:7 .
**accepts** 34:22 .
**accomplish** 45:7, 53:12 .
**accomplishing** 45:8 .
**accordance** 15:4 .
**accused** 12:21, 13:5, 14:4 .
**achieve** 12:6, 13:4, 24:20, 26:15,
   29:3, 30:5 .
**achieved** 10:24, 11:18, 30:12 .
**achieves** 11:8 .
**across** 6:17 .
**active** 24:23, 25:16, 26:14, 30:1,
   30:2 .
**actively** 19:17, 22:22, 22:25,
   35:22 .
**actual** 5:22, 6:21, 21:8, 22:1 .
**actually** 5:18, 10:8, 16:20, 23:4,
   23:16, 46:22 .
**adjectival** 42:7 .
**admitted** 50:3, 50:14, 50:19 .
**adopting** 19:11 .
**adopting--i'm** 37:9 .
**advancing** 24:6 .
**advise** 6:2 .
**agnostic** 30:8 .
**agree** 30:20, 31:8, 36:19 .
**agreed** 16:21 .
**agreement** 4:18 .
**ahead** 4:5 .
**ahead--again--and** 19:12 .
**air** 8:17, 8:23, 8:25 .
**al** 1:12, 3:3 .
**allow** 3:22 .
**allowing** 24:22 .
**allows** 11:14 .
**alone** 42:8 .
**already** 9:9, 22:9, 37:16 .
**alter** 3:25, 4:24 .
**although** 34:21 .
**amend** 3:24 .
**amplitude** 48:4 .

**analysis** 40:15, 41:23, 47:2,
   53:18 .
**Andrews** 28:14, 33:10, 37:23,
   47:14, 47:24 .
**ANGELES** 2:4, 2:7 .
**answer** 28:20, 42:12 .
**Apex** 41:13, 41:21, 46:24, 48:16,
   48:19, 48:20, 52:25, 53:2 .
**apparent** 52:16 .
**appeal** 16:25, 17:11, 17:21 .
**appear** 53:7 .
**appearances** 3:5 .
**appears** 5:10, 15:2 .
**appellate** 17:1 .
**applied** 4:12, 6:16 .
**applies.** 52:21 .
**apply** 39:19 .
**appreciate** 54:11 .
**approach** 19:9, 19:11, 22:18 .
**appropriate** 3:21, 4:25, 39:25,
   48:17 .
**areas** 13:13 .
**argue** 5:2, 16:6, 27:2, 49:5 .
**argued** 6:5, 6:24, 7:17, 7:19,
   9:21, 13:16, 16:19, 17:9,
   18:14, 19:20, 21:23, 37:4,
   37:10 .
**argues** 5:14, 39:15, 43:5 .
**arguing** 3:20, 4:19, 7:17, 17:1,
   28:15, 36:14, 36:20, 46:8,
   46:9 .
**argument** 7:7, 7:21, 8:12, 10:7,
   16:8, 16:10, 17:9, 19:22, 22:9,
   22:10, 22:14, 25:12, 25:24,
   30:3, 32:6, 36:6, 36:21, 36:25,
   37:2, 37:14, 37:16, 37:25,
   39:5, 39:16, 45:22, 45:23,
   51:21, 54:13 .
**argument--i** 37:4 .
**argument--that** 37:5 .
**arguments** 4:1, 4:6, 4:9, 9:25,
   18:17, 23:19, 26:5, 26:6,
   35:20, 36:2, 36:3, 38:21 .
**around** 36:10 .
**array** 5:13, 7:3, 8:3, 8:4, 8:10,
   8:19, 9:2, 9:5, 9:19, 9:22,
   10:8, 14:13, 14:16, 14:17 .
**art** 14:5, 14:9, 15:4, 41:9, 42:14,
   43:3, 46:10, 46:11, 50:12,
   50:14, 50:16 .

**articulation** 31:6 .
**artisan** 53:6 .
**arts** 44:7 .
**asks** 38:24 .
**aspect** 20:16, 20:17, 21:4,
   34:20 .
**associated** 51:7 .
**astray** 3:24 .
**at--and** 52:7 .
**attempt** 52:16 .
**attention** 3:23 .
**available** 26:15 .
**AVENUE** 2:5 .
**avoid** 53:18 .
**await** 14:21 .
**away** 51:21 .
**.**
**.**
**< B > .**
**back** 21:20, 28:14, 37:23, 43:15,
   46:4, 54:14 .
**backwards** 28:21 .
**based** 3:25, 4:10, 21:18, 32:5,
   33:21, 53:3 .
**basis** 28:22, 29:10, 29:20 .
**Baxter** 2:17, 3:6, 3:10 .
**Becky** 3:13 .
**becomes** 17:15 .
**begins** 25:2 .
**behalf** 38:23 .
**believe** 12:20, 13:4, 14:23,
   16:13, 17:22, 19:22, 20:15,
   20:16, 21:3, 29:6, 30:7, 31:12,
   32:24, 34:15, 34:22, 34:24,
   44:8, 51:17 .
**believes** 43:16 .
**benefit** 24:20, 25:3, 26:15 .
**best** 19:2, 28:20, 41:21, 46:20,
   46:22 .
**better** 44:7 .
**beyond** 42:19 .
**BILL** 2:34 .
**binder"--and** 20:2 .
**bit** 34:5, 36:20 .
**bits** 20:21, 23:3, 27:20, 28:8,
   36:12, 36:19, 38:3 .
**black** 41:3, 42:9 .
**blue** 10:25, 11:2 .
**blue--of** 19:18 .
**boils** 40:5 .

Concordance

**bold** 21:11 .
**bolded** 20:2 .
**boost** 50:8 .
**bottom** 8:23, 20:6, 28:18, 41:21 .
**box** 41:3, 41:5, 41:6, 42:10, 44:12, 44:16, 44:18 .
**brackets** 5:25 .
**break** 54:14 .
**brief** 19:2, 50:5 .
**briefing** 5:17, 5:23, 7:5, 7:19, 7:21, 13:17, 18:12, 18:18, 21:21, 22:10, 26:1, 26:2, 26:3, 26:4, 36:3, 36:4, 37:7, 39:17 .
**briefly** 13:10, 15:11, 39:22 .
**broad** 45:18, 45:23 .
**brother** 23:15 .
**buck** 50:8 .
**buck-boost** 50:9 .
**buffer** 25:4, 25:15, 29:4 .
**buffers** 20:24, 25:7, 27:17 .
**burden** 41:16, 49:2, 49:3 .
**but--the** 37:9 .
**byte** 20:21, 21:1, 36:19, 38:3, 38:4, 38:5 .
**byte-wise** 19:17, 20:18, 20:19, 21:2, 21:13, 21:16, 22:23, 22:25, 23:3, 23:7, 23:9, 23:10, 23:12, 23:16, 23:21, 27:12, 27:17, 27:19, 28:8, 30:25, 32:25, 35:4, 35:17, 35:23, 36:13, 36:15, 36:18, 36:20, 38:1, 38:4 .
.
.
**< C >** .
**CA** 2:7, 2:22 .
**call** 42:7 .
**called** 45:19 .
**canary** 50:22 .
**capacity** 15:21 .
**CAPITOL** 2:28 .
**capture** 21:17 .
**Carrizosa** 3:13 .
**carry** 44:21 .
**carrying** 24:7, 45:10 .
**Case** 3:4, 6:4, 6:23, 7:8, 7:19, 10:14, 30:17, 32:23, 34:16, 40:17, 40:22, 41:16, 41:22, 42:8, 45:22, 45:23, 46:20, 46:22, 47:16, 47:25, 50:1,

52:17, 53:21 .
**cases** 39:20, 40:11, 40:14, 42:5, 44:2, 46:25, 47:8, 47:22, 53:8 .
**CAUSE** 1:5, 43:25 .
**cells** 9:11, 13:17 .
**certain** 7:6, 14:11 .
**Certainly** 15:24, 34:9, 34:10, 41:11, 45:12, 45:22, 48:18, 53:7 .
**CERTIFY** 55:1, 55:4 .
**challenge** 28:6 .
**challenges** 26:24 .
**chance** 10:1, 22:12, 37:14 .
**change** 20:15, 20:17, 21:4, 21:6 .
**changing** 9:4, 36:17 .
**characterize** 37:13 .
**check** 17:22 .
**chose** 46:9 .
**chunks** 23:9 .
**circuitry** 25:8, 25:9, 49:19, 49:22 .
**circuits** 29:13, 46:2, 50:8, 50:12, 50:13, 50:15 .
**cite** 47:16 .
**cited** 18:17, 40:11, 48:20, 54:3 .
**cited--what** 40:22 .
**cites** 39:21 .
**citing** 7:23, 44:2 .
**CITY** 2:20, 2:22 .
**claimed** 52:14 .
**claiming** 45:3, 52:17 .
**claims** 4:10, 5:11, 5:18, 8:7, 10:10, 12:9, 15:3, 22:4, 22:5, 33:24, 35:24, 40:9, 40:16, 40:17, 41:25, 45:13, 49:15, 52:1, 52:15, 52:22, 52:23 .
**clarification** 9:7, 15:13, 16:6, 16:17, 17:4, 18:4, 18:19 .
**class** 45:18, 45:19, 46:1, 46:6, 46:12, 46:14 .
**clause** 54:7 .
**clear** 7:23, 11:7, 11:13, 11:17, 13:2, 18:11, 26:22, 30:7, 31:24, 33:23, 34:3, 34:8, 34:10, 38:11, 38:17, 45:17, 50:11 .
**Clearly** 27:17, 27:25, 31:2, 32:9, 33:1, 33:7, 33:17, 33:18,

33:22, 34:16, 35:4, 49:16 .
**client** 3:12 .
**closed** 22:14, 25:23, 37:8, 37:14 .
**closing** 19:22, 25:22 .
**coal** 50:22 .
**column** 11:1, 11:16, 11:17, 23:13, 23:22, 25:1, 25:17, 26:23, 27:24, 28:12, 28:18, 28:24, 29:1, 29:5, 29:19, 29:20, 29:24, 31:15, 32:17, 33:4, 33:9, 34:10, 36:10, 38:6 .
**combination** 35:13, 49:11, 49:12 .
**comes** 40:1, 52:5, 52:8 .
**comfortable** 4:8 .
**coming** 8:25, 9:1, 23:15 .
**comment** 32:5 .
**commentary** 32:7 .
**commonly** 6:14 .
**communicated** 6:17 .
**communications** 8:24, 9:5 .
**comparing** 41:1, 44:13 .
**comparison** 44:12 .
**complete** 54:16 .
**completes** 54:13 .
**COMPLY** 55:5 .
**component** 9:22, 14:17, 14:18 .
**components** 8:5 .
**comport** 53:2 .
**conceivable** 51:13 .
**concept** 6:18, 25:3, 44:7 .
**concern** 6:5, 13:13 .
**confer** 15:25 .
**CONFERENCE** 55:6 .
**conferred** 4:17 .
**configured** 39:9, 52:15, 52:19, 52:23 .
**conflate** 52:12 .
**confusion** 21:18, 49:1 .
**connect** 11:18, 11:22 .
**connected** 13:1, 25:9, 48:8, 48:9, 48:13, 51:12, 51:15 .
**connecting** 6:15, 13:6 .
**connection** 5:16, 5:18, 5:22, 6:13, 6:15, 9:2, 9:16, 10:14, 10:20, 10:25, 11:2, 11:3, 11:4, 11:5, 11:8, 12:16, 12:20, 13:25, 34:20, 49:20 .

**Concordance**

connections 51:8 .
connote 42:3 .
connotes 39:18, 41:23 .
consider 38:20, 40:15 .
considering 40:1 .
consistent 23:19, 32:10, 34:25 .
consistently 39:15, 39:18, 40:13 .
construction"--this 20:8 .
construction--"for 20:9 .
construction--sorry--provide 13:19 .
constructions 3:18, 3:20, 3:21, 3:25 .
construe 12:2, 12:4, 13:11, 13:14, 32:12, 36:15, 38:24 .
construed 15:12, 18:5, 33:5, 51:4 .
construing 4:7, 4:8, 30:15 .
contemplate 27:18 .
contemplated 28:18, 35:5 .
contemplates 25:18, 34:1 .
contemplating 33:18 .
contending 7:12, 9:16, 12:9 .
contention 12:15 .
contest 17:12, 37:15 .
context 12:11, 14:4, 35:19, 39:4, 39:14, 40:9, 40:16, 40:18, 41:8, 41:25, 42:24, 44:25, 45:4, 47:4, 49:13, 49:19, 54:5 .
continue 17:1 .
contrary 24:10, 33:4 .
control 22:17, 52:19 .
controller 24:25, 25:5, 27:1, 28:3, 28:8, 29:25 .
conversations 7:11, 7:14 .
Conversely 39:15 .
conversion 45:16, 49:24 .
convert 44:25, 48:5 .
converters 50:8, 50:9 .
converters. 50:9 .
converts 48:13 .
CORRECT 10:13, 34:25, 45:21, 53:15, 55:2 .
corresponding 39:1 .
corresponds 11:1 .
Counsel 3:5, 3:17, 3:22, 4:14, 4:17, 5:1, 7:7, 7:12, 7:15, 9:25, 10:2, 19:22, 19:23, 20:1,

23:2, 25:25, 35:11, 35:25, 36:9, 37:4, 52:1, 52:4, 52:12, 52:25 .
counsel--"said 19:24 .
couple 16:14 .
coupled 32:3, 51:8, 51:9 .
course 8:18, 16:15, 22:4, 37:6, 37:9, 42:6, 50:2, 50:13, 53:2 .
Courtroom 24:12 .
courts 41:19 .
cover 22:4 .
covers 32:6 .
creating 23:17 .
cross 50:2 .
CRR 1:43, 2:39, 55:11 .
crucible 50:2 .
currently 39:4 .
.
.
< D > .
danger 22:19 .
data. 35:18, 35:23 .
dealing 52:15, 52:22 .
dealt 18:5 .
decide 13:18, 13:19 .
decided 34:16, 37:17 .
decision 17:6, 17:7 .
declaration 49:10, 49:22, 49:23 .
decrease 25:9, 26:7, 29:23 .
decreased 30:12 .
decreases 24:24, 28:2 .
decreasing 25:14, 26:16, 31:24, 33:17 .
dedicated 31:22, 32:2, 33:14, 33:15, 34:4 .
deem 3:21 .
Defendant 5:1, 16:9 .
DEFENDANTS 1:14, 2:19 .
definite 47:18, 53:6, 53:9 .
definition 48:24, 50:3 .
definitions 43:6, 43:10, 49:6 .
definitively 25:23 .
depend 17:15 .
depending 32:18, 33:12 .
depends 31:12 .
depicted 30:21 .
depiction 31:3 .
Deputy 24:12 .
describe 39:22 .
described 40:25, 47:23 .

describes 49:24, 51:12, 52:3 .
describing 29:25, 52:3, 54:4 .
description 46:5, 46:14, 48:7, 48:11, 49:13, 52:6 .
descriptions 41:19, 47:17 .
descriptor 44:2 .
design 10:15, 10:20 .
designs 12:21, 13:5 .
detail 51:14 .
detailed 46:5, 48:11 .
determination 12:1, 30:17, 53:13 .
determine 12:7, 15:22, 53:11 .
determining 18:3 .
development 14:22 .
device 9:17, 14:4, 25:6, 32:6 .
devices 25:4, 29:4, 30:1, 30:2, 32:8, 48:10, 51:8 .
dictates 12:10 .
die 7:3, 8:3, 8:4, 8:10, 8:14, 8:19, 9:2, 9:6, 9:22, 10:8, 14:13, 14:16, 14:17 .
dies 5:13, 9:19 .
difference 5:21, 39:12, 39:13 .
different 4:12, 13:12, 22:18, 25:8, 37:13 .
direct 29:14, 36:10 .
directed 35:24, 35:25 .
directly 33:3, 42:12, 54:3 .
disabled 19:5, 19:10, 21:16, 28:17, 34:19 .
disagree 14:11, 34:23 .
disclaimed 31:25 .
disclaimer 12:25, 13:2, 17:14, 25:25, 26:2, 26:4, 26:5, 26:6, 32:1, 34:1, 34:9, 37:6, 37:16, 38:12, 38:17 .
disclaims 28:4 .
disclose 21:24 .
discloses 30:10 .
discovery 54:12, 54:15 .
discuss 37:6 .
discussed 7:1, 26:1, 26:23, 28:12, 32:8, 36:7, 40:23, 46:13, 52:1, 52:6 .
discusses 8:20, 26:3, 36:11, 39:25, 50:6 .
discussing 5:9, 52:8, 53:23, 53:25 .
discussion 28:23, 29:17, 36:8,

Concordance

41:18 .
**dispositive** 16:23 .
**dispute** 5:15, 5:20, 5:22, 6:12,
6:19, 6:21, 6:23, 8:9, 9:8,
16:18, 19:6, 22:25, 23:5,
23:24, 36:17, 38:10, 40:6 .
**disputed** 3:18 .
**disputes** 22:24 .
**distills** 40:6 .
**distinction** 12:23 .
**distinguish** 15:20 .
**distinguishing** 44:8 .
**distinguishment** 5:19 .
**distributed** 3:17 .
**DISTRICT** 1:1, 1:2, 41:18 .
**DIVISION** 1:3 .
**docket** 3:4 .
**Doctor** 42:13, 43:12, 45:14, 49:9,
49:18, 50:14, 50:18 .
**documents** 29:7 .
**dog** 4:22 .
**doing** 8:8, 35:25, 44:14 .
**done** 9:9, 37:12 .
**doubt** 24:16, 24:17, 45:5 .
**down** 25:17, 34:13, 38:16, 40:5,
48:9, 51:22 .
**drafter** 46:9, 46:13 .
**DRIVE** 2:21, 4:4, 19:1, 19:4,
19:14, 19:15, 20:9, 21:19,
28:23, 29:11, 29:20, 30:15,
33:6, 35:22 .
**drive'.** 20:5 .
**driver** 15:10, 15:12 .
**driving** 19:17, 22:23, 22:25,
25:21, 27:7, 29:3, 30:18,
34:17 .
**drops** 51:21 .
**during** 18:15, 19:19, 22:21,
42:17 .
**Dyfan** 48:20 .
.
.
**< E >.**
**E.** 1:44, 2:40, 18:3 .
**earlier** 3:16 .
**EAST** 2:14 .
**EASTERN** 1:2 .
**easy** 6:17 .
**edge** 51:8 .
**effect** 11:21, 17:15 .

**effectively** 33:5 .
**eight** 20:21, 23:3, 23:16, 27:19,
28:8, 36:12, 36:19, 38:3 .
**eight-bit** 21:2, 23:14, 23:21 .
**either** 3:20, 10:17, 21:5, 38:12 .
**electric** 5:17 .
**element** 13:1, 42:18, 48:9 .
**elmo** 24:12, 47:14 .
**embodiment** 21:25, 22:4, 23:7,
23:16, 24:6, 24:13, 24:21,
25:20, 26:22, 26:23, 26:24,
26:25, 27:1, 27:5, 27:12,
27:21, 28:12, 28:17, 28:19,
31:21, 32:10, 32:13, 32:18,
32:25, 33:11, 34:7, 35:4, 36:5,
37:11, 38:12 .
**embodiments** 13:12, 21:23,
21:24, 22:6, 23:18, 24:10,
26:19, 26:21, 35:16, 38:6,
38:10, 41:20 .
**emphasize** 3:19 .
**enable** 21:11 .
**enabled** 28:16, 30:19 .
**enabling** 19:4, 19:9, 34:17,
34:18 .
**encapsulates** 39:11 .
**encompass** 31:6, 32:10 .
**encompassed** 21:25, 31:2 .
**encompassing** 36:16 .
**End** 7:15, 54:20 .
**endorsement** 41:11 .
**ends** 47:2 .
**engage** 33:8 .
**engaged** 32:22 .
**engaging** 14:24 .
**engineering** 47:21 .
**enough** 40:7, 41:15, 42:11, 47:9,
53:1, 53:18 .
**entire** 29:23, 38:3 .
**entirely** 4:8 .
**equivocal** 38:12 .
**erase** 36:1 .
**Eric** 4:22 .
**essentially** 39:9, 39:16 .
**establish** 49:7 .
**et** 1:12, 3:3 .
**everyone** 23:2 .
**evidence** 11:11, 41:14, 41:16,
43:2, 43:17, 43:19, 47:7,
51:17, 53:3 .

**evident** 43:9 .
**exact** 36:5, 43:22 .
**exactly** 9:20, 23:19, 24:10, 45:2,
49:25 .
**examination** 50:2 .
**example** 11:6, 23:14, 31:3, 44:9 .
**examples** 54:7 .
**excellent** 42:4, 45:2 .
**exclude** 24:6, 32:13, 32:25, 33:3,
33:13, 50:16 .
**excludes** 27:11, 27:21, 34:7,
35:12 .
**excluding** 28:9 .
**exclusively** 43:5 .
**Excuse** 11:4 .
**exercise** 29:23 .
**Exhibit** 50:4, 50:18 .
**exhibits** 18:18 .
**exist** 27:3 .
**exists** 47:21, 53:8 .
**expect** 14:2, 14:25, 21:21 .
**expert** 10:22, 11:21, 12:1, 12:7,
13:20, 13:23, 14:3, 14:23,
14:24, 15:2, 20:23, 41:8,
42:13, 42:17, 47:5, 51:18 .
**experts** 13:18, 14:22, 15:15 .
**explained** 41:1, 41:8 .
**explains** 39:7, 39:8, 42:13,
42:22, 44:13 .
**explanation** 8:14 .
**explicitly** 18:15 .
**expressly** 24:19, 25:18 .
**extent** 16:22, 24:5, 41:3 .
**eye** 49:18 .
.
.
**< F >.**
**F.3d** 48:16 .
**F.4d** 48:20 .
**fact** 7:8, 7:12, 10:13, 14:22,
18:13, 23:10, 23:18, 24:15,
25:17, 29:18, 33:3, 43:4,
48:13, 48:20, 49:10, 50:6,
52:17 .
**factor** 44:9 .
**fairly** 46:5 .
**falls** 48:14 .
**family** 10:5, 10:8 .
**far** 34:5 .
**fashion** 52:14 .

## Concordance

fault 37:24 .
favor 48:20, 52:20 .
feature 48:2 .
features 50:17 .
FEDERAL 39:17, 39:20, 40:12,
    40:14, 41:11, 43:7, 47:3, 47:8,
    48:14, 55:12 .
FEES 55:4 .
felt 4:24 .
few 30:1, 30:2 .
figure 23:23, 30:16, 30:20,
    30:23, 31:2, 31:3, 31:5, 31:6,
    31:8, 31:12, 31:13, 31:17,
    32:9, 32:10, 32:12, 32:16,
    32:24, 33:9, 34:3, 36:4, 36:7,
    36:8 .
figures 21:23, 21:24 .
file 17:11 .
final 17:6, 17:7, 17:15 .
finality 17:18 .
find 29:8, 32:21, 39:1, 43:23 .
finding 53:3 .
finds 53:6 .
finish 6:11 .
first 4:13, 4:25, 5:2, 5:9, 5:13,
    16:13, 22:3, 22:24, 24:4,
    36:22, 36:25, 38:7, 39:23,
    49:3, 51:2, 51:3, 51:6, 51:7,
    51:11, 51:19, 52:13, 52:14,
    52:23 .
five 34:3 .
flat 8:14 .
FLOOR 2:28 .
focus 3:22 .
focused 4:8, 54:2 .
focusing 39:13 .
following 4:19, 32:23 .
FOREGOING 55:1 .
fork 19:8, 19:11, 22:7, 22:13,
    23:17, 24:21, 27:9, 31:4,
    37:9 .
FORMAT 52:20, 55:5 .
forth 41:15, 41:17, 41:24, 43:6,
    43:10, 46:17, 53:18, 53:24,
    54:1, 54:7 .
forward 42:5 .
found 16:22, 40:13, 40:18, 41:7,
    41:14 .
four 26:20, 36:20 .
four-bit 20:20, 21:3, 23:17,

36:16 .
four-rank 26:25 .
fourth 48:3, 48:4, 48:6 .
frankly 44:1 .
Frog 4:23 .
fulfills 44:23 .
full 21:17 .
function 40:25, 45:10, 45:16,
    48:2, 49:25, 53:14 .
functional 39:8, 40:23, 42:19,
    52:20 .
functionality 30:6 .
.
.

< G > .
game 35:15 .
general 49:18 .
getting 4:7 .
Gilstrap 20:4, 20:8 .
give 10:1, 15:14, 15:23, 28:21,
    29:6, 29:8, 39:4, 40:8, 42:15,
    45:14 .
given 6:1 .
gives 22:1, 40:7, 41:12, 42:10,
    44:20, 54:5 .
giving 42:9 .
goal 45:13, 53:16 .
greater 51:14 .
group 5:13, 9:19 .
guess 34:19 .
guidance 15:14, 15:17, 15:23,
    44:20 .
.
.

< H > .
half 21:1 .
hanging 25:4, 25:5, 25:15, 29:4 .
happened 19:19 .
happening 41:6, 44:11, 44:16 .
happens 35:6, 52:9 .
harder 6:19 .
hardest 32:22 .
hardware 49:11, 49:12, 49:13,
    49:14, 49:16 .
hear 4:9, 7:4, 14:25 .
HEARING 1:22, 3:3, 4:1, 15:1,
    22:21, 36:2 .
hearing. 54:20 .
heavy 23:4 .
Hello 5:6 .

helpful 6:8, 45:3 .
helps 45:6, 45:12 .
here--it 7:24 .
here--that 19:23 .
HEREBY 55:1 .
hiding 25:3 .
Hill 2:33, 2:37, 3:11, 3:15 .
history 4:10, 18:8, 19:7, 23:20,
    25:13, 26:6, 28:4, 30:9, 31:25,
    33:2, 34:9, 38:13 .
Honor--and 40:20 .
HONORABLE 1:24, 4:17 .
hook-up 6:25 .
hope 4:1 .
HOUSTON 1:44, 2:14, 2:27,
    2:29, 2:40 .
.
.

< I > .
idea 29:25 .
identified 4:3 .
identifier 48:17 .
identifies 48:18 .
imagine 8:14 .
implicitly 18:16, 27:20 .
import 12:14, 12:25 .
important 39:23, 39:25, 46:7,
    49:7 .
importantly 43:1 .
imprecision 10:7 .
impression 17:14, 30:13 .
improper 8:8, 33:7 .
in. 33:12 .
INC. 1:5, 1:11 .
include 19:14, 34:2 .
included 18:18, 28:19 .
includes 36:9 .
including 50:15 .
incorporate 37:7 .
increased 26:25 .
indefinite 46:8 .
indefiniteness 49:6 .
independent 5:11, 27:11 .
independently 24:2 .
indicate 7:5, 38:18, 45:18 .
indicates 10:23 .
indication 7:9, 16:24, 43:25,
    44:18 .
inform 45:6, 45:7, 45:25, 46:1,
    46:17, 53:20 .

Concordance

**infringement** 10:14, 12:22, 13:5 .
**inherently** 23:11 .
**input** 48:5 .
**inputs** 40:24 .
**inquiry** 39:25 .
**insert** 21:7 .
**insertion** 24:8 .
**inside** 41:6, 44:11, 44:18 .
**insight** 42:9, 45:15 .
**instance** 40:20, 43:9, 52:7 .
**instances** 28:9 .
**Instead** 39:9, 47:2 .
**instructive** 40:21 .
**insulator** 8:18 .
**Integrations** 39:23, 39:24, 40:20, 41:24, 44:4, 44:9, 46:23, 47:16, 47:19, 52:7, 53:5 .
**intend** 15:14 .
**intent** 3:22, 6:2, 15:19 .
**intentional** 10:6 .
**interconnect** 11:25 .
**interconnects** 8:15 .
**interestingly** 42:16 .
**interface** 11:14, 48:17 .
**interpret** 31:17 .
**interpretation** 8:1, 32:4 .
**intrinsic** 7:24, 13:21, 18:7 .
**introduced** 29:24 .
**introducing** 29:19 .
**invention** 19:8, 28:3, 30:12 .
**involve** 49:19 .
**involving** 23:25 .
**IPR** 16:18, 17:6, 18:13, 18:17 .
**IRELL** 2:3 .
**irony** 49:21 .
**irrelevant** 34:22, 35:16 .
**issue** 10:5, 14:2, 14:7, 14:8, 14:21, 15:24, 16:20, 16:25, 17:18, 24:4, 24:11, 24:13, 24:20, 26:17, 27:15, 31:8, 33:8, 37:7, 37:8, 37:14, 38:7, 38:8, 47:22, 49:25 .
**issue--and** 19:12 .
**issues** 4:12, 15:16, 30:25, 54:14 .
**issues--the** 35:4 .
**issuing** 3:19 .
**it--n-o-n-c-e-y** 51:1 .
**items** 5:25 .

**itself** 9:16, 9:18, 11:13, 21:1, 22:2, 25:12, 39:10, 39:16, 41:12, 41:23, 44:10, 47:1, 47:9, 48:10, 51:18 .
.
.
**< J >.**
**Jason** 2:9, 3:7, 4:15, 10:3, 47:12 .
**jaundiced** 49:18 .
**Judge** 1:25, 20:4, 20:8 .
**JUDICIAL** 55:6 .
**jury** 6:2, 6:6, 6:24, 7:18, 13:15, 21:8, 21:18 .
.
.
**< K >.**
**keep** 29:2, 31:23 .
**keeping** 26:14, 29:22, 30:4, 33:16 .
**key** 39:12 .
**kind** 5:15, 7:25, 8:18, 43:3 .
**known** 14:5, 14:9, 42:14, 43:4, 44:19, 46:10, 50:12, 50:16 .
**knows** 23:2, 35:14 .
.
.
**< L >.**
**language** 5:12, 5:20, 7:1, 9:4, 12:15, 19:15, 21:14, 21:15, 22:2, 24:8, 24:9, 24:19, 25:6, 33:5, 33:21, 33:22, 35:14, 35:21, 39:10, 40:24, 41:5, 44:10, 44:13, 44:18, 46:7, 47:4, 47:22, 52:18, 54:2 .
**larger** 54:5 .
**last** 7:8, 34:16, 48:9 .
**later** 53:4 .
**law** 45:17, 48:19 .
**LDO** 50:15 .
**least** 18:11, 51:1 .
**leaves** 35:3 .
**left** 19:16 .
**lend** 47:9 .
**lended** 44:10 .
**less** 26:20, 43:25 .
**leveling** 16:19, 16:21, 17:2, 17:9 .
**light** 47:5 .
**likely** 46:23 .

**Likewise** 41:13, 43:12 .
**limit** 31:9, 33:19, 33:20, 33:24, 54:6 .
**limitation** 7:9, 7:13, 9:15, 10:9, 10:19, 39:1, 50:10 .
**limited** 9:21, 30:22 .
**limiting** 34:6 .
**line** 5:17, 23:13, 29:9, 33:4, 36:11, 38:6 .
**Linear** 41:7, 46:23 .
**lines** 11:1, 11:16, 11:17, 23:22, 25:2, 25:17, 26:23, 27:25, 28:12, 28:24, 29:19, 29:24, 31:15, 32:3, 50:5, 50:7 .
**literally** 28:25, 49:24 .
**litigation** 18:6, 19:6, 20:18, 22:11, 30:14, 36:6 .
**LLP** 2:3, 2:19, 2:26 .
**load** 24:24, 25:9, 25:14, 26:8, 26:16, 26:25, 28:2, 29:23, 30:5, 30:11, 31:24, 33:17 .
**LOGAN** 2:31, 3:12, 38:22, 42:4, 44:5, 44:8, 45:1, 45:21, 46:22, 47:10, 47:11, 51:25, 53:15, 53:23, 54:10, 54:11 .
**logic** 48:18 .
**long** 45:19, 53:17 .
**longer** 48:19 .
**LONGVIEW** 2:35 .
**Look** 20:6, 20:7, 20:13, 25:1, 31:15, 32:23, 33:9, 35:19, 38:14, 39:23, 40:3, 40:9, 41:24, 42:18, 46:4, 51:4 .
**looked** 50:20, 52:7 .
**looking** 46:18, 47:4 .
**LOS** 2:4, 2:7 .
**lost** 22:9, 22:11, 32:6 .
**lower** 20:24, 21:1, 24:2, 27:6, 27:18, 27:22, 31:1, 31:4, 31:7, 35:6 .
.
.
**< M >.**
**M.** 2:39 .
**Madam** 24:12 .
**MAGISTRATE** 1:25 .
**magnitude** 44:13 .
**magnitudes** 41:1 .
**MANELLA** 2:3 .
**Mangione-smith** 50:19 .

Concordance

manner 45:9 .
MARKMAN 1:22 .
MARSHALL 1:3, 1:12, 1:45, 2:13, 2:15, 2:41 .
Mary 4:23 .
MATTER 13:1, 13:3, 22:6, 29:17, 29:21, 55:3 .
matters 6:4 .
Mckool 2:13, 3:7 .
Mcroberts 1:43, 2:39, 55:9, 55:11 .
mean 10:11, 15:12, 15:19, 36:15, 40:4, 44:1, 53:10 .
meaning 4:11, 13:20, 17:20, 21:17, 22:1, 34:2, 36:17, 39:7, 41:18, 43:3 .
meaning. 48:18 .
means 8:1, 9:20, 15:15, 23:1, 23:3, 23:11, 34:17, 42:23, 43:14, 44:21, 44:23, 45:10, 46:18 .
means-plus-function 38:25, 40:2, 40:15, 41:15, 45:3, 46:17 .
means-plus-function-type 52:16 .
meant 11:5, 20:15, 20:17, 21:4 .
mechanical 52:19 .
meet 41:16 .
meeting 25:21 .
memory 8:3, 8:6, 9:11, 13:17, 16:20, 16:21, 17:2, 17:10, 18:15, 24:24, 25:4, 25:5, 27:1, 28:2, 29:4 .
mentioned 43:4 .
mentions 20:9 .
met 7:10, 46:15, 47:7 .
meta 25:24, 27:15, 37:4, 37:5 .
metal--there 6:15 .
Michael 2:10, 2:24, 3:7, 15:7 .
Micro 6:22 .
Micron 1:11, 3:3, 3:13, 5:7, 6:11, 14:11, 16:20, 18:9, 21:6, 21:11, 21:25, 25:25, 37:6, 37:15, 38:23, 38:24, 39:13, 40:7, 43:22, 45:22, 45:23, 46:8, 46:16, 49:2, 53:16, 54:4 .
Mike 3:12, 5:6, 13:9, 18:24, 35:10 .

mind 6:10, 22:20, 32:7 .
mine 50:22 .
mode 32:18, 33:12 .
module 47:21 .
moment 16:1, 29:7 .
month 18:13 .
morning 3:1, 3:6, 3:11, 3:16, 15:7, 15:9 .
motion 14:25, 54:12, 54:15 .
move 42:5, 53:16 .
Ms 2:11, 3:7, 28:14, 33:10, 37:23, 47:14, 47:24 .
MTD 52:17 .
multiple 22:5, 24:22, 34:17, 35:1, 36:12 .
myself 34:12 .
.
< N > .
N-bit 19:18, 21:14, 21:16, 22:23, 23:1, 35:17, 35:23, 36:25, 37:1 .
name 35:15 .
narrow 32:4 .
natural 44:21 .
necessarily 23:11, 32:13, 34:4, 41:22, 42:11 .
necessary 44:20, 48:21 .
need 6:5, 6:12, 7:4, 16:6, 35:1 .
needs 5:19, 45:25 .
next 16:13, 18:2, 29:1, 42:6 .
nibble 20:20, 20:24, 24:2, 27:6, 27:19, 27:22, 31:1, 31:4 .
nibbles 31:7, 35:6 .
nibbles--that 20:20 .
No. 1:5, 3:4, 37:11, 43:10, 54:10 .
non 10:15 .
nonce 46:9, 46:21, 47:1, 47:20, 48:15, 48:25, 49:4, 49:5, 49:8, 49:11, 49:15, 49:23, 50:4, 50:5, 50:23, 51:3, 51:10, 51:11, 51:14, 51:19, 51:20 .
noncey 50:24, 50:25 .
none 47:7 .
nor 12:3 .
normally 44:3 .
Notably 54:3 .
note 3:16, 4:3, 6:3, 6:6, 6:12, 9:9, 25:11, 46:8, 49:21 .

noted 18:2 .
notes 6:1, 6:2 .
nothing 18:21, 25:11, 25:12, 26:8, 26:13, 28:4, 33:2, 34:6, 35:11, 38:15 .
notice 17:11, 23:1 .
nub 38:10 .
number 21:22, 22:8, 25:3 .
.
.
< O > .
objections 22:12, 22:13 .
observing 7:16, 19:13 .
Obviously 6:14, 10:17, 38:20 .
occasions 47:3 .
occur 12:20 .
occurring 11:12, 27:16 .
occurs 29:18 .
offer 43:11 .
offered 43:19 .
offering 18:10 .
OFFICIAL 2:39, 55:12 .
often 42:6 .
Once 8:5, 11:10, 48:6, 51:20 .
open 29:22, 30:5, 31:23, 33:16 .
open-endedness 50:11 .
opening 50:4 .
operation 16:20, 16:21, 17:2, 17:10, 31:18, 31:19, 47:17, 52:3, 52:4, 52:6 .
operation--sorry 17:3 .
operational 52:10 .
operations 16:17, 18:16 .
opines 13:23 .
opinion 11:21, 13:20 .
opposed 7:9, 20:20, 26:9, 30:21, 31:10, 53:14 .
Opposing 4:17, 7:14, 19:23, 19:25, 52:1, 52:4, 52:12, 52:25 .
order 6:4, 25:9, 26:4, 29:3, 29:10 .
ordinarily 44:1 .
ordinary 15:4, 39:7, 41:9, 53:5 .
others 19:9 .
outcome 45:13 .
output 41:2, 45:5, 45:25, 48:6, 51:16 .
outputs 48:12, 49:17 .
outside 8:6 .

Concordance

**overcome** 53:4 .
**overwhelming** 51:17 .
**OWENS** 2:34 .
**own** 42:17, 48:23, 51:18 .
.
.
**< P >** .
**papers** 16:18 .
**paragraph** 8:11, 8:12, 8:13, 8:19, 8:23, 39:19, 40:13, 49:23, 52:24, 53:24, 53:25 .
**paraphrasing** 37:9 .
**PARKWAY** 2:34 .
**part** 6:1, 21:13, 53:18 .
**particular** 9:14, 9:15, 9:17, 26:20, 51:7 .
**particularly** 50:20 .
**parties** 5:15, 5:21, 6:3, 6:22, 9:8, 35:21, 39:3, 39:12, 40:6, 41:14 .
**party** 4:23, 4:25, 41:17 .
**pass** 29:16 .
**passage** 29:12, 29:25, 43:22, 50:7, 54:5 .
**past** 4:8, 42:17 .
**Patent** 5:10, 5:11, 11:7, 14:14, 16:19, 18:4, 19:1, 23:10, 24:20, 26:11, 36:10, 39:2, 49:14, 49:16, 50:17 .
**Patent--that** 17:8 .
**patent--where** 17:8 .
**patents** 10:5, 10:7, 32:22 .
**path.** 19:24 .
**Pause** 16:4 .
**PAYNE** 1:24 .
**perceived** 24:24, 25:10, 28:2 .
**performing** 45:15 .
**permission** 5:1 .
**person** 41:9 .
**phrase** 12:25, 38:14 .
**physical** 15:12, 15:14, 15:20, 15:22 .
**pieces** 6:15, 36:21 .
**plain** 36:17, 39:7 .
**Plaintiff** 1:7, 2:3, 3:8, 4:14, 4:16, 7:5, 7:7, 7:12, 7:19, 10:2, 10:3, 12:15, 13:10, 13:13, 14:23, 15:1, 17:17, 18:21, 39:6 .
**Plaintiffs** 47:12 .

**planes** 8:15 .
**play** 23:2 .
**Please** 3:1, 4:15, 5:8, 15:18, 22:17 .
**PLLC** 2:33 .
**point** 5:24, 11:25, 14:17, 14:20, 16:16, 16:24, 17:3, 18:4, 18:19, 20:4, 20:19, 21:22, 23:4, 25:17, 32:12, 34:12, 37:21, 39:5, 42:21, 43:21, 48:25, 49:9, 49:21, 50:21, 52:11, 53:16, 53:23 .
**pointed** 8:11, 14:14, 18:6, 18:12, 19:7, 20:19, 20:23, 21:21, 22:9, 26:11, 28:18, 29:9, 36:4, 36:7, 46:2 .
**pointing** 13:21, 19:20, 20:10, 37:11 .
**points** 28:22, 43:22, 45:14 .
**port** 6:25, 7:2, 8:6, 9:11, 10:9, 10:15, 10:18, 10:21, 10:25, 11:2, 11:4, 11:14, 11:19, 11:23, 12:3, 12:5, 12:7, 12:17, 12:20, 13:1, 13:6, 13:16, 13:25, 14:13, 14:16 .
**portion** 23:12, 26:10 .
**portions** 24:3, 28:21 .
**ports** 7:13, 10:9, 11:8, 11:11, 14:15 .
**POSITA** 42:15, 42:22, 43:4, 43:18, 43:20, 44:15, 44:19, 44:20, 44:21, 45:6, 45:7, 45:12, 45:15, 45:24, 45:25, 46:1, 46:11, 46:18 .
**position** 6:11, 13:8, 15:23, 41:15, 47:8, 51:19, 52:20, 54:4 .
**positions** 39:3 .
**possible** 10:19, 12:19, 12:21, 13:4, 19:5, 21:15, 25:7, 27:8 .
**possibly** 30:1, 30:2 .
**post** 53:16 .
**potential** 26:7 .
**potentially** 28:1 .
**Power** 6:16, 39:23, 39:24, 40:20, 41:24, 44:3, 44:9, 47:16, 47:18, 52:7, 53:5 .
**practice** 14:25 .
**precedent** 48:14 .
**precise** 26:5, 46:12 .
**precisely** 25:7 .

**precludes** 25:13 .
**preference** 4:18 .
**preliminaries** 3:22 .
**preliminary** 3:17, 3:19, 4:4, 4:5, 4:24, 18:2, 18:25 .
**premise** 37:25 .
**preponderance** 47:6 .
**PRESCRIBED** 55:5 .
**presence** 10:16, 10:18, 12:6, 27:11 .
**present** 10:21, 15:24, 37:15, 39:5 .
**presentation** 43:13, 53:25 .
**presented** 5:23, 41:11 .
**presents** 39:10 .
**presumed** 38:3 .
**presumption** 53:4 .
**prevent** 3:20 .
**previous** 16:17, 18:15, 26:3 .
**primary** 19:12 .
**prior** 4:7, 4:11, 6:23, 19:3, 20:16, 30:14, 34:24 .
**probably** 19:2 .
**problem** 6:22, 22:8, 27:10, 44:17 .
**problems** 22:3 .
**proceed** 3:14 .
**proceeding** 26:2 .
**PROCEEDINGS** 55:3 .
**proceedings.** 16:4 .
**process** 47:4 .
**produce** 43:2 .
**producing** 45:10 .
**Products** 52:17 .
**programming** 48:17 .
**promoting** 41:14, 41:17 .
**proper** 33:19, 33:24, 41:23 .
**propinquity** 29:17 .
**proposal** 21:25 .
**proposed** 5:14, 21:11, 24:8, 39:6 .
**proposition** 40:12, 46:21, 46:25 .
**prosecution** 4:10, 18:8, 19:7, 23:20, 25:13, 25:24, 26:5, 26:6, 28:4, 30:9, 31:25, 33:2, 34:9, 38:13 .
**proved** 10:16 .
**proves** 14:16 .
**provide** 43:16, 47:17 .

Concordance

provides 47:1, 48:3, 48:10, 53:17, 53:19, 53:20 .
proving 10:14 .
PTAB 16:21 .
pure 53:14 .
purely 49:14 .
purpose 3:19, 10:14, 28:3, 29:23, 30:12, 43:8 .
put 21:20, 39:24, 41:15, 41:17, 41:24, 42:7, 46:13 .
puts 43:6 .
putting 8:5 .
.
.
< Q > .
qua 10:15 .
qualifications 42:7 .
qualify 46:2, 46:6 .
question 10:11, 10:21, 10:22, 12:5, 12:22, 15:13, 28:17, 30:22, 31:21, 32:9, 32:19, 42:5, 42:13, 43:15, 45:2, 45:7, 53:5 .
questions 34:14, 37:18, 51:23, 54:8 .
questions--does 32:25 .
quite 25:23, 37:5 .
quote 39:24 .
quotes"--they're 7:23 .
.
.
< R > .
raise 36:22 .
raised 14:2, 37:2 .
raises 52:24 .
raising 36:23 .
ranks 26:20, 26:21, 27:13, 28:10 .
rather 3:21, 4:9 .
re-present 26:1 .
reached 4:18 .
reader 22:20 .
reading 31:12, 32:17, 45:13, 46:12, 47:5 .
reads 21:8 .
ready 3:8, 3:13 .
really 6:12, 8:11, 9:12, 10:21, 16:16, 16:18, 17:8, 30:15, 36:7, 39:11, 40:5 .
reason 4:6, 13:24, 23:3, 24:23,

31:11, 31:14, 38:13, 40:18, 43:15, 46:24, 47:18, 48:23, 49:6, 51:5 .
reasons 27:16 .
recall 30:14 .
receive 24:2 .
received 4:1 .
receives 48:12, 49:16, 51:16 .
recent 40:22 .
recess 54:19 .
recite 10:17, 18:15 .
recited 27:17, 34:24 .
recites 14:14, 14:15, 14:16, 14:18, 22:2 .
reciting 52:18 .
recollection 31:13 .
RECORD 3:2, 3:5, 3:16, 7:24, 13:22, 18:7, 18:8, 26:13, 26:22, 43:17, 46:3, 55:2 .
red 8:7, 11:3, 19:18 .
reduced 42:20 .
reduction 30:5 .
REDWOOD 2:20, 2:22 .
refer 9:4, 37:1 .
reference 8:22, 37:7, 48:24 .
referred 23:15 .
referring 15:20, 37:5 .
refers 5:12, 19:4, 19:16, 36:19 .
reflected 12:9 .
regardless 9:2 .
regulated 48:4, 48:6 .
reject 27:24 .
related 16:18, 17:8 .
relationship 7:6 .
relevant 16:23, 50:7, 50:10 .
relied 25:25 .
relitigate 19:3 .
relying 8:12 .
remains 30:11 .
remote 22:16 .
remove 48:22 .
render 11:21 .
repeatedly 10:23 .
repeating 34:12 .
reply 19:2, 50:5, 50:18 .
REPORTER 2:39, 51:1, 55:12 .
representative 3:12, 35:22 .
represented 14:3 .
request 9:8 .
require 9:3, 9:4, 9:10, 9:14,

12:18, 26:8, 30:18, 38:17 .
required 18:16, 19:9 .
requirement 42:19 .
requirements 53:12 .
requires 6:20, 6:25, 7:13, 7:20, 7:22, 7:25, 8:2, 9:16, 10:8, 12:16, 13:15, 13:25, 14:5, 14:12, 46:18 .
requiring 12:3, 12:4, 24:17, 24:18, 27:10 .
reserve 3:24 .
respect 5:15 .
respectfully 38:24 .
respective 19:17, 21:2, 21:13, 22:23, 35:17, 35:23 .
respond 10:2 .
response 13:10, 18:18 .
responsive 11:23, 32:19 .
responsiveness 7:22, 7:25, 9:11, 10:18, 13:17 .
rewriting 8:7 .
RMR 1:43, 2:39, 55:11 .
road 19:8, 19:11, 22:7, 22:13, 23:17, 24:21, 26:15, 27:9, 37:10 .
robust 34:2 .
ROY 1:24 .
Rueckheim 2:24, 3:12, 5:5, 5:6, 5:25, 6:7, 6:10, 7:14, 9:18, 9:24, 13:9, 14:8, 15:5, 15:6, 16:10, 16:13, 17:7, 17:16, 18:1, 18:24, 35:10, 37:19 .
running 38:15 .
.
.
< S > .
S. 1:24 .
S/shawn 55:9 .
Sam 2:17, 3:6 .
Samsung 7:16, 10:15, 18:6, 19:6, 19:7, 19:13, 19:19, 19:24, 20:18, 22:11, 22:21, 26:1, 27:14, 29:10, 30:14, 36:6, 37:7 .
sat 7:15 .
satisfy 10:12, 49:2, 49:3, 49:4 .
satisfying 20:11 .
saw 40:22 .
saying 7:8, 13:13, 13:20, 14:10, 23:4, 31:4 .

Concordance

**says** 7:2, 7:22, 7:24, 8:4, 8:24, 9:18, 14:1, 14:13, 19:25, 20:14, 20:18, 21:1, 21:10, 24:19, 35:17, 35:22, 38:14, 40:2, 40:7, 40:8, 49:22, 50:7 .
**scenario** 30:15, 30:18 .
**science** 14:1 .
**scientific** 13:3, 29:21 .
**scope** 28:19 .
**screen** 7:18, 19:22, 35:14 .
**SDRAM** 48:10, 51:8 .
**seated** 3:1 .
**second** 5:13, 24:11, 24:13, 27:24, 29:8, 31:8, 32:12, 33:8, 38:8 .
**section** 21:2, 21:3, 21:13, 21:16, 22:23, 23:1, 23:12, 23:21, 35:17, 35:23, 36:13, 38:1, 38:4, 38:5 .
**section--that** 19:17 .
**sections** 21:3, 23:10 .
**seeking** 4:23, 13:11, 15:17 .
**seen** 27:1 .
**sees** 30:2 .
**selectively** 23:20, 33:6 .
**send** 28:8, 31:18, 31:19 .
**sending** 24:19 .
**sense** 12:23, 21:9 .
**sentence** 54:4 .
**separate** 27:22, 32:2, 33:6, 48:2 .
**separated** 35:5 .
**separately** 14:16 .
**set** 3:17, 9:14, 53:25, 54:7, 54:13 .
**sets** 43:10, 53:1, 53:24 .
**setting** 46:16, 53:18 .
**SHAWN** 1:43, 2:39, 55:11 .
**shawn_mcroberts@txed.uscou rts.gov** 1:47 .
**SHEASBY** 2:9, 3:7, 4:15, 4:16, 4:22, 5:4, 10:3, 12:12, 12:18, 13:8, 14:3, 14:14, 15:25, 22:16, 28:15, 28:20, 29:6, 30:20, 32:21, 34:21, 35:2, 35:3, 37:20, 37:21, 47:12, 51:24, 54:16 .
**shifted** 36:3 .
**SHORELINE** 2:21 .
**shorthand** 21:19 .

**shortly** 39:10 .
**shown** 7:18, 8:7, 8:13, 30:15 .
**shut** 24:22, 25:14, 25:19, 26:9, 28:5, 30:10, 31:10, 31:23, 32:15, 33:22, 35:1 .
**shutting** 25:5, 25:14, 26:7, 26:14, 28:1, 30:3, 30:4, 33:15 .
**side** 3:20 .
**sides** 3:17 .
**signal** 11:24 .
**signals** 41:2, 44:14 .
**similar** 35:20, 52:14 .
**simply** 39:19, 41:15, 46:9 .
**sine** 10:15 .
**single** 21:24, 22:7, 22:10, 22:14, 36:5, 37:10 .
**sir** 5:5 .
**sit** 34:13 .
**situation** 12:24, 27:18, 28:7, 31:9, 33:14, 33:20 .
**size** 8:20, 15:11, 15:12, 15:14, 15:20, 15:22 .
**skill** 14:10, 41:9 .
**skilled** 53:6 .
**skip** 19:12 .
**Slide** 8:13, 15:18, 20:6, 23:6, 35:13, 39:3, 42:6, 43:13, 53:24 .
**slides** 26:18, 28:11, 28:14, 36:4, 37:23, 43:10, 47:24 .
**slightly** 14:8, 37:13 .
**Smith** 2:13, 2:33, 3:7 .
**soft** 44:4 .
**software** 49:12, 49:19 .
**solely** 29:16 .
**someone** 45:13 .
**sorry** 24:15, 26:22 .
**sort** 15:21, 22:20, 24:8, 25:24, 27:15, 37:25 .
**sounds** 14:9 .
**speaks** 23:10, 38:5, 47:19, 49:10 .
**spec** 4:10, 14:1 .
**specific** 8:5, 9:22, 32:18, 40:18, 48:7, 48:11, 49:17, 54:6 .
**specifically** 41:17 .
**specification--and** 25:1 .
**specter** 52:24 .
**spell** 51:2 .

**spirit** 4:2 .
**split** 23:8 .
**splits** 23:16, 23:25 .
**splitting** 27:12 .
**spoke** 23:18 .
**squarely** 48:14 .
**ST.** 2:28 .
**stand** 51:22 .
**standard** 47:7, 53:1, 53:7 .
**STARS** 2:5 .
**start** 8:5, 16:15, 22:18, 44:4, 47:25 .
**starts** 8:13 .
**state** 3:5 .
**stated** 19:8 .
**statement** 49:18, 53:2, 53:4 .
**statements** 18:7, 18:8, 18:12 .
**STATES** 1:1, 1:25, 19:2, 55:7 .
**STE** 2:21 .
**step** 49:3 .
**Stone** 42:13, 43:13, 45:14, 49:9, 49:18, 50:14 .
**stood** 46:25 .
**straightforward** 40:25, 44:12 .
**STRAWN** 2:19, 2:26 .
**STREET** 1:44, 2:40 .
**strength** 15:21 .
**structural** 42:18, 48:1, 48:18, 49:22 .
**structures** 45:19, 45:20, 46:6, 46:14 .
**stub** 8:10, 8:12, 9:12 .
**stubs** 8:22, 9:1 .
**studied** 34:19 .
**subject** 4:18, 4:25, 40:13 .
**submit** 22:12 .
**subpart** 24:7 .
**subset** 29:3, 32:11, 33:1 .
**sufficient** 8:20, 40:5, 40:8, 40:10, 40:17, 40:19, 41:10, 41:12, 41:23, 41:25, 42:15, 43:8, 43:17, 43:20, 45:15, 46:11, 47:2, 47:9, 52:2, 53:3, 53:21 .
**sufficiently** 42:24, 47:18, 53:6, 53:9, 53:13 .
**suggest** 32:1, 51:20 .
**suggested** 52:25 .
**suggesting** 31:5, 38:8 .
**suggestion** 48:19 .

## Concordance

**suggests** 26:14, 43:23 .
**SUITE** 2:6, 2:14 .
**sum** 41:21 .
**summarize** 32:21 .
**support** 8:8, 29:11, 32:4, 40:12 .
**supportable** 37:3 .
**supported** 18:9 .
**supposed** 53:10, 53:11 .
**surrounding** 12:14, 19:15, 45:4 .
**switch** 50:20 .
.
.
**< T >** .
**tail** 7:15 .
**talked** 13:12 .
**talks** 22:22, 23:20, 25:2, 26:19,
    26:20, 28:24, 29:1, 29:13,
    29:14, 47:16 .
**Tech** 41:7 .
**technical** 12:22 .
**technically** 12:19, 12:21 .
**technique** 29:19 .
**Technology** 1:11, 3:3, 46:24 .
**tells** 20:3 .
**tends** 52:20 .
**tentative** 9:9 .
**tentatives** 4:20 .
**terms** 3:18, 4:4, 4:19, 5:16, 6:14,
    16:14, 16:16, 25:21, 30:15,
    34:5, 34:23 .
**terms--'a** 39:8 .
**testifying** 14:3 .
**testimony** 41:8, 42:13, 42:17,
    42:22, 43:13, 46:3, 47:6,
    50:19 .
**TEXAS** 1:2, 1:12, 1:45, 2:15,
    2:29, 2:35, 2:41 .
**Tezyan** 2:10, 3:7, 15:7, 15:8,
    15:10, 15:18, 15:25, 16:3,
    16:5, 17:19, 17:22, 17:25,
    18:21, 22:16, 50:3 .
**them--in** 8:17 .
**themselves** 12:10 .
**theoretically** 10:19 .
**thereby** 31:23 .
**they'll** 4:1 .
**they've** 37:13 .
**thinking** 14:20 .
**third** 10:19, 26:17, 28:6 .
**this--"and** 20:2 .

**though** 6:19, 40:14 .
**three** 22:24, 27:16, 30:25, 34:3,
    37:21, 39:22, 40:11, 41:1,
    44:14 .
**three--power** 46:23 .
**throughout** 39:17 .
**to--and** 21:21 .
**today** 5:9, 36:22, 36:25, 37:12,
    47:15, 54:13 .
**today--a** 21:22 .
**toggle** 29:1, 29:7 .
**toggled** 26:12 .
**took** 10:13 .
**touch** 15:10 .
**TRANSCRIPT** 55:2, 55:4 .
**transmission** 29:13, 36:11 .
**transmit** 23:21, 33:6 .
**traveled** 11:24 .
**traveling** 11:24, 33:21 .
**treats** 26:11 .
**trenchant** 10:11 .
**tri-state** 25:7 .
**trial** 7:16, 19:19, 42:18, 50:19 .
**trial--is** 19:13 .
**tried** 21:6, 21:7, 21:17 .
**tries** 43:12, 52:12 .
**trouble** 47:15 .
**try** 15:24, 22:19, 54:6 .
**trying** 19:3, 27:20 .
**TSV** 8:16 .
**Tsvs** 8:15 .
**turn** 4:13, 9:25, 18:1, 25:8, 29:2,
    32:15, 44:22 .
**turned** 24:18, 27:4, 33:25,
    38:16 .
**Turning** 18:25, 29:22 .
**two-rank** 26:21, 26:23, 26:24,
    27:5, 28:12, 32:6, 32:8 .
**two-step** 49:2 .
**type** 13:17 .
.
.
**< U >** .
**unable** 43:1 .
**uncommonly** 3:25 .
**understand** 7:11, 7:17, 12:8,
    13:7, 14:10, 15:11, 17:16,
    41:10, 42:24, 43:20, 44:15,
    44:22, 45:13 .
**understanding** 12:13, 15:4,

    17:5, 42:15, 42:23, 43:18,
    44:11 .
**Understood** 6:14, 15:5, 41:5,
    44:7 .
**unequivocal** 13:2, 34:8, 38:17 .
**unequivocally** 31:24 .
**UNITED** 1:1, 1:25, 55:7 .
**unknown** 45:24 .
**Unless** 34:13, 51:22, 54:8 .
**unlike** 52:23 .
**unrebutted** 42:21 .
**unused** 30:3 .
**up-front** 13:2 .
**update** 17:18 .
**upper** 20:24, 20:25, 24:2, 27:5,
    27:18, 27:22, 31:1, 31:4, 31:7,
    35:6 .
**urged** 18:9 .
**uses** 9:15, 33:5, 39:9 .
**using** 27:5, 31:16 .
**utterly** 34:22 .
.
.
**< V >** .
**v.** 7:16, 18:6, 19:13 .
**valuable** 34:13 .
**various** 41:18 .
**verbatim** 21:14 .
**versa** 33:16 .
**versus** 3:3, 22:7, 22:14 .
**vice** 33:16 .
**view** 36:13, 36:22, 37:8 .
**vindicating** 28:3 .
**voltage** 42:20, 44:25, 48:4, 48:5,
    48:6, 48:12, 49:17, 49:24,
    51:15, 51:16 .
**vs** 1:9 .
.
.
**< W >** .
**wanted** 16:24, 18:11 .
**wants** 35:19, 43:11 .
**WARD** 2:33 .
**watched** 7:15 .
**ways** 39:11, 40:21 .
**weighed** 41:14 .
**weighing** 47:5, 47:6 .
**well-known** 44:3, 45:20, 50:17 .
**Wesley** 2:37, 3:11 .
**what'converter** 42:23 .

Concordance

**whatever** 3:21, 6:3, 14:4 .
**Whether** 6:20, 8:9, 10:19, 12:5, 12:19, 16:25, 17:9, 17:14, 17:15, 40:1, 40:16, 47:6, 53:5, 53:8, 53:11, 53:13, 53:19, 53:20 .
**wide** 19:18, 21:14, 22:23, 23:1, 35:17, 35:23, 36:12, 36:16, 36:25, 37:1 .
**will** 4:3, 6:3, 14:2, 15:2, 15:15, 17:15, 23:8, 29:8, 37:21, 38:20 .
**William** 2:31, 3:12, 38:22 .
**win** 16:22, 16:24 .
**window** 17:11, 17:21 .
**WINSTON** 2:19, 2:26 .
**wire** 6:14, 6:17 .
**wires** 8:23, 8:24, 9:1 .
**wires--however** 8:17 .
**withdrew** 22:13 .
**within** 5:25, 12:11, 17:10, 17:20, 25:8, 28:19, 39:14, 40:9, 40:16, 40:18, 41:8, 42:23, 44:6, 46:7 .
**without** 11:22, 11:23, 12:6, 12:20, 13:5, 27:5, 42:9 .
**witness** 42:22 .
**won** 16:20 .
**wonderful** 44:9 .
**word** 20:10, 21:10, 40:3, 48:24, 50:25 .
**words** 12:24, 23:2, 32:5, 36:1, 44:11 .
**working** 28:21 .
**works** 5:3 .
**worry** 51:6 .
**worse** 22:8 .
**writing** 31:13, 32:17, 49:21 .
**written** 17:7 .
.
.
**< Y >** .
**y1** 31:13, 31:16, 31:18, 31:22, 32:12, 32:14, 32:17, 33:11, 34:3, 34:7 .
**y2** 31:14, 31:16, 31:18, 31:23, 32:13, 32:14, 32:17, 33:11, 34:3, 34:8 .
**Yanan** 2:11, 3:8 .
**yield** 48:6 .

**yourself** 32:9, 32:24 .
.
.
**< Z >** .
**Zhao** 2:11, 3:8 .