# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-CV-203-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC., | ) | |
| MICRON SEMICONDUCTOR | ) | ███████████████ |
| PRODUCTS INC., MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF NETLIST, INC.'S MOTION TO STRIKE CERTAIN OPINIONS OF DEFENDANTS' EXPERT JOHN B. HALBERT

## TABLE OF CONTENTS

**Page**

I.      Mr. Halbert's Opinion Regarding the "Public Availability of JEDEC Documents" (Opening Report ¶¶ 58-98) Should Be Stricken ...........................................................................1

II.     Mr. Halbert's Opinion about the "Available Alternatives Regarding the DDR5 DIMM Standards" (Rebuttal Report ¶¶ 21-24) Should Be Stricken ......................................5

III.    Mr. Halbert's Opinion Regarding Netlist's Supposed Reasons for Withdrawing from JEDEC and the Supposed Intent of the JEDEC Policy (Opening Report ¶¶49, 54-55) Should Be Stricken..........................................................................................................7

IV.     Mr. Halbert's Opinions as to the Outcome of Certain ITC Investigations Regarding Netlist's Patents (Opening Report ¶ 48) Should Be Stricken ....................................9

V.      Mr. Halbert's Opinions Regarding the Supposed "Contributions" of Netlist and Others to JEDEC Standards Should Be Stricken (Opening Report ¶¶ 5, 21-22; Rebuttal Report ¶¶ 9-20)...........................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrews v. Rosewood Hotels & Resorts, LLC*,
    2021 WL 4709734 (N.D. Tex. Oct. 8, 2021) ........................................................................ 4

*Burleson v. Tex. Dep't. of Criminal Justice*,
    393 F.3d 577 (5th Cir. 2004) ................................................................................................. 8

*CQ, Inc. v. TXU Min. Co., L.P.*,
    565 F.3d 268 (5th Cir. 2009) ................................................................................................. 1

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ............................................................................................................. 13

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
    2017 WL 2651618 (E.D. Tex. June 20, 2017) ..................................................................... 7

*Freeny v. Murphy Oil Corp.*,
    2015 WL 11108703 (E.D. Tex. May 29, 2015) ................................................................... 7

*Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*,
    2020 WL 6581868 (E.D. Tex. Nov. 10, 2020) .............................................................. 14, 15

*Godo Kaisha IP Bridge 1 v. Broadcom Limited*,
    No. 16-cv-134, 2017 WL 2869344 (E.D. Tex. Apr. 20, 2017) ............................................ 6

*GREE Inc. v. Supercell Oy*,
    No. 19-cv-311-JRG, 2021 WL 603726 (E.D. Tex. Feb. 16, 2021) ................................. 4, 12

*Guillory v. Domtar Indus. Inc.*,
    95 F.3d 1320 (5th Cir. 1996) ................................................................................................. 8

*Intell. Ventures I LLC v. T Mobile USA, Inc.*,
    No. 17-cv-577-JRG, Dkt. No. 297 (E.D. Tex. Jan. 14, 2019) ............................................ 10

*Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente
    und Technologie GmbH*, 2018 WL 4289342  (E.D. Tex. July 11, 2018) ................................ 6

*Optis Wireless Tech. LLC v. Apple Inc.*,
    No. 19-cv-66-JRG, Dkt. No. 437 .......................................................................................... 13

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*,
    73 F.3d 546 (5th Cir. 1996) ................................................................................................. 15

**Page**

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.,*
    511 F.3d 1186 (Fed. Cir. 2008) .................................................................... 3

*Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,*
    951 F.2d 684 (5th Cir. 1992) ..................................................................... 10

*Torch Energy Marketing, Inc. v. Pac. Gas & Elec. Co.,*
    2003 WL 22703235 (S.D. Tex. Mar. 31, 2003) ............................................ 8

*Uniloc USA, Inc. v. Microsoft Corp.,*
    632 F.3d 1292 (Fed. Cir. 2011) ............................................................ 12, 13

**Statutes**

35 U.S.C. § 102(b) .............................................................................................. 3

**Rules**

Fed. R. Civ. Proc, § 33(d) ............................................................................... 12

Fed. R. Civ. Proc. § 37(c)(1) ............................................................................. 1

Fed. R. Evid. 402 ........................................................................................... 9, 13

Fed. R. Evid. 403 ............................................................................................... 10

Fed. R. Evid. 702 ........................................................................................... 8, 13

P.R. 3-3 .............................................................................................................. 1

Plaintiff Netlist, Inc. ("Netlist") respectfully requests the Court strike certain opinions presented by Micron's expert John B. Halbert in his opening and rebuttal reports.

## I.   Mr. Halbert's Opinion Regarding the "Public Availability of JEDEC Documents" (Opening Report ¶¶ 58-98) Should Be Stricken

Mr. Halbert's opening report relied on fact evidence not timely disclosed during fact discovery, including dates where certain JEDEC materials were "published" and the search terms that could be used to locate these materials. Local Patent Rule 3-3 requires Micron to disclose "each prior art publication" and identify its "date of publication." P.R. 3-3. Under Federal Rule of Civil Procedure 37(c)(1), if a party fails to provide information as required by Rule 26(e), "the party is not allowed to use that information . . . to supply evidence . . . at trial, unless the failure was substantially justified or it is harmless." Fed. R. Civ. P. 37(c)(1). As this Court explained during the hearing on October 23: "the standard rule is that documents that are not disclosed during discovery can't be used thereafter unless there's some motion for leave." Ex. 8 (2023-10-23 Hearing Tr.) at 93:17-19. In determining whether to apply Rule 37(c), courts consider "(1) [the party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a continuance." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009).

Fact discovery of this Action closed on September 20. Dkt. 182. This deadline was extended from September 5, and upon Micron's request, Netlist agreed that the parties would not "serve written discovery and subpoena requests" after September 5. Dkt. 139 (joint motion to amend DCO) at 3.

In his opening report, Mr. Halbert discussed the authentication and public availability of 17 categories of JEDEC materials, which Micron contends are prior art references. These include JEDEC confidential meeting minutes, ballots, draft proposals, and finalized specifications. Ex. 1 ¶¶ 58-98. Specifically, Mr. Halbert identified dates when these materials were "published" and

search terms that could be used to locate these materials through JEDEC's online portal. *Id.* For example, with respect to Document 10, JC-40 Meeting Minutes No. 148, Mr. Halbert opined:



Ex. 1 ¶¶ 84-85.

Micron never disclosed these "dates," or any other circumstances regarding when these purported prior art references were published, in its invalidity contentions as required by the Patent Local Rules;[1] nor did Micron disclose any "search terms" that could be used to locate these JEDEC materials during fact discovery.

The first time Mr. Halbert disclosed these dates and search terms was on September 30, when he brought "notes" listing these ████████████ and ████████████ prepared by Micron and its counsel with him at a deposition. Ex. 3 (Halbert Depo Notes). Micron's disclosure was 10 days after fact discovery closed and over a month after the last date when Netlist would serve written discovery or subpoenas on third parties. Micron cannot find any justification for its delay—Mr. Halbert is designated as a corporate representative of Micron and identified in Micron's initial disclosures. Further, Mr. Halbert stated that he received information regarding the prior art references and other information listed in his notes directly from Micron:

---

[1] For example, nowhere in Micron's report indicated the publication date of the JC-40 Minutes of Meeting No. 148. Nor did Micron identify the publication date for other JEDEC confidential materials it alleges are prior art references or relevant to show the POSITA's knowledge. *See* Ex. 4 (2022-11-21 Micron's Invalidity Contentions excerpts) at 31-36.



Ex. 7 (2023-09-30 Halbert Tr.) at 13:8-18.  Micron did not dispute the disclosure was late and, in

fact, committed to the Court that it would not rely on Mr. Halbert's notes as evidence.  Ex. 8

(2023-10-23 Hearing Tr. excerpt) at 95:4-7 (MR. RUECKHEIM: This is for him to remember.

There's a lot of dates involved. THE COURT: Okay. Well, I feel safe in saying that those will not

be exhibits.").  Thus, Mr. Halbert should not be allowed to provide analysis with respect to these

by simply switching his hat and acting as an expert witness.

Further, Micron's delay is far from harmless. As detailed in Netlist's motion to strike

Samsung's amended initial disclosures that failed to timely disclose Mr. Halbert and another

witness and the reply brief, Micron's well-calculated late disclosure deprived Netlist's opportunity

to conduct third-party discovery regarding the purported public availability dates, search terms,

and indexing of these JEDEC materials.  *See* Dkt. 197 (Motion); Dkt. 242 (Reply).  A continuation

would not cure such prejudicial effect in light of the forthcoming trial date starting on January

22, 2024, particularly because of the need for third-party discovery.

In addition, Mr. Halbert applies the wrong legal standard and, therefore, is not helpful to

the jury.  A document is prior art only if it is available to the public before the critical date.  *See*

35 U.S.C. § 102(b); *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008) (a

reference is publicly accessible if "such document has been disseminated or otherwise made

available to the extent that persons interested and ordinarily skilled in the subject matter or art

exercising reasonable diligence, can locate it").

Mr. Halbert's opinion is that the documents are available to JEDEC paid members, and

he was ████████████████████████████████████████████████████████. For

example, Mr. Halbert testified:



Ex. 7 (2023-09-30 Halbert Depo Tr.) at 29:8-15; 45:16-19. Furthermore, Mr. Halbert did not provide any opinion with respect to the public availability of these materials *on or before the critical dates* of Netlist's patents in suit or otherwise explain when these materials first became searchable. In any event, Micron cannot justify its delay based on the purported importance of these newly disclosed publication dates or other facts because that "simply underscores Defendants' necessity to have timely" disclosed them. *See Andrews v. Rosewood Hotels & Resorts, LLC*, 2021 WL 4709734, at *3 (N.D. Tex. Oct. 8, 2021).

Thus, Mr. Halbert should not be allowed to provide opinions on these purported publicly available dates, the search terms that could be used to locate these materials in the JEDEC Portal, or other discussions regarding the indexing of JEDEC materials because none of these were disclosed in fact discovery. *See GREE Inc. v. Supercell Oy*, No. 19-cv-311-JRG, 2021 WL 603726, *3 (E.D. Tex. Feb. 16, 2021) (granting motion to strike portions of the expert report relating to source code not disclosed to the plaintiff until *after* fact discovery where the defendant "provide[d] no explanation for how it thought it was complying with its discovery obligations in general by withholding this information and source code until the last day of fact discovery [or after fact discovery], when the source code was in its possession for weeks" and the "late disclosure was not substantially justified or harmless").

## II.     Mr. Halbert's Opinion about the "Available Alternatives Regarding the DDR5 DIMM Standards" (Rebuttal Report ¶¶ 21-24) Should Be Stricken

Mr. Halbert opines in his rebuttal report about alleged non-infringing alternatives to Micron's accused DDR5 products, ███████████████████████████████████ ████████████████████████████████████████ Ex. 2 (2023-10-30 Halbert Rebuttal Report) ¶¶ 21-22.  None of these allegedly non-infringing alternative designs were disclosed by Micron during fact discovery.

On January 11, 2023, Netlist served an interrogatory requesting Micron identify any non-infringing alternative it alleged in the case:

**INTERROGATORY NO. 8:**

For each Netlist Patent-in-Suit, identify and describe in detail any alleged non-infringing alternative that You contend exists or existed to each Netlist Patent-in-Suit or alternatives that you considered implementing, including but not limited to: (i) a description of each alleged noninfringing alternative; (ii) a description of when and how each alleged non-infringing alternative was developed or otherwise available; (iii) the identity of individuals involved in developing and/or most knowledgeable about each alleged non-infringing alternative (if applicable); (iv) costs associated with developing and implementing each alleged non-infringing alternative; (v) steps and the time required to develop and implement each alleged non-infringing alternative; (vi) Dates when each alleged non-infringing alternative was incorporated in an accused product or a commercial product (if applicable); (vii) any known patents covering the alleged non-infringing alternatives; (viii) the acceptability of the alleged non-infringing alternatives (including the differences in performance and costs between the alternative and the asserted claims, and consumers' acceptance of such differences); (ix) any reason(s) for not replacing a current product with the alleged non-infringing alternative; (x) the identity of individuals involved in supporting the reason(s) for not replacing current products with alternatives; and (xi) any other evidence that supports Your belief that the alternative is/was viable from a technical and business perspective.

Ex. 6 (2023-09-20 Micron's 6th Responses to Netlist's First Set of Interrogatory) at 120-21.

In response, Micron identified a handful of supposed alternatives (without explanation) but did ***not*** identify as purported alternatives placing the PMIC on the motherboard or reducing the number of buck converters:



*See id.* at 121-26.

This is not a situation in which an expert was able to access information unavailable to the defendant, and therefore the defendant could not have presented these new NIAs.  To the contrary, Mr. Halbert was designated as a corporate witness for Micron on factual matters.

Allowing Micron to rely on those NIAs raised for the first time in a rebuttal expert report is highly prejudicial because Netlist never had the opportunity to examine Micron's witnesses as to these purported non-infringing alternatives or have its expert witnesses analyze them.  These untimely disclosed NIAs should therefore be stricken. *See Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente und Technologie GmbH*, 2018 WL 4289342, at *3-5 (E.D. Tex. July 11, 2018) (granting motion to strike references from Defendant expert's rebuttal reports regarding non-infringing alternatives, among others, because the defendant's "failure to disclose these alternatives until after the close of fact discovery would significantly prejudice Plaintiff and is not substantially justified. Additionally, the importance of the alternatives is minimal. Dr. Grutter does not explain in his rebuttal report how the SIS Ultraobjective system or the self-sensing cantilevers are non-infringing, or provide any information on the cost or availability of these alternatives"); *Godo Kaisha IP Bridge 1 v. Broadcom Limited*, No. 16-cv-134, 2017 WL 2869344, at *2-3 (E.D. Tex. Apr. 20, 2017) (granting motion to strike expert's rebuttal opinions "regarding non-infringing alternatives that were not previously disclosed" because the defendants

"provide[d] no adequate explanation for failing to disclose its non-infringing alternatives and the prejudice to [the Plaintiff] for failing to respond to the interrogatory is significant); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 2017 WL 2651618, at *12 (E.D. Tex. June 20, 2017) (granting the motion to strike defendant expert's rebuttal opinion raising non-infringing alternatives not disclosed during discovery because "[t]he potential prejudice to [Plaintiff] is significant" and "any continuance would delay trial"); *Freeny v. Murphy Oil Corp.*, 2015 WL 11108703, at *1 (E.D. Tex. May 29, 2015) (granting motion to preclude any evidence or arguments regarding non-infringing alternatives not disclosed during fact discovery where the subject was "fairly covered by Plaintiff's Interrogatory No. 8 and Defendant failed to supplement or offer a reasonable excuse for not providing this information throughout discovery").

### III. Mr. Halbert's Opinion Regarding Netlist's Supposed Reasons for Withdrawing from JEDEC and the Supposed Intent of the JEDEC Policy (Opening Report ¶¶49, 54-55) Should Be Stricken

In his opening report, Mr. Halbert suggested that Netlist left and returned to JEDEC "in ██████████████████████████████████████████ and speculated that ████████████████████████████████████████████████████████ ████████████████████ which behavior is █████████████████ Ex. 1 ¶¶ 54, 55.  Mr. Halbert also implicated that ████████████████████████ ████████████████████████████████████████████████████ ███████████████████████ *Id.* ¶ 49.  These opinions should be stricken.

*First*, Netlist is moving for summary judgment, asking the Court to find that none of the patents at issue is standard essential and dismiss Micron's affirmative defense of breach of RAND license.  Should the Court grant Netlist's motion, there is no issue before the jury with respect to Netlist's JEDEC obligations, and thus, Mr. Halbert's opinion in the pertinent section is entirely irrelevant.  Ex. 1 ¶¶ 49, 54, 55.

*Second*, Mr. Halbert's opinion is rank speculation. Mr. Halbert does not and necessarily **cannot** know what motivated Netlist to withdraw from and later return to JEDEC, and it would be inherently unreliable to allow him to speculate at trial on Netlist's motivations. Fed. R. Evid. 702; *see also Burleson v. Tex. Dep't. of Criminal Justice,* 393 F.3d 577, 587 (5th Cir. 2004) (finding magistrate judge did not err in excluding expert testimony based on "speculation, guesswork, and conjecture."). Indeed, Mr. Halbert's speculation is entirely at odds with the undisputed factual record—Netlist did not file suit against any JEDEC memory module manufacturer until September 2016, more than a year and a half after submitting its February 2015 letter withdrawing from JEDEC. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)("[A]n opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant"); *Torch Energy Marketing, Inc. v. Pac. Gas & Elec. Co.*, 2003 WL 22703235, at *10 (S.D. Tex. Mar. 31, 2003) (striking expert opinion because "[t]he conclusory nature of [the expert]'s statements, coupled with their inaccurate factual basis, make [the expert]'s opinion unreliable and irrelevant."). Having to take up time at trial to address Mr. Halbert's rank speculation unconnected to fact is unfair to Netlist and would do nothing but confuse the jury.

*Third,* Mr. Halbert's subjective judgments of Netlist's conduct as supposedly ████ and ████████████████████ violate Court MILs as well as this Court's rulings in the Samsung case. Ex. 1 at ¶¶ 54-55. First, the suggestion that Netlist's conduct was unethical is pejorative language excluded by both the Court MIL and the Court's ruling in Samsung regarding Mr. Halbert. *See* Ex. 5 (*Samsung I* PTC Tr.) at 223:18-25 ("I'm going to apply the Court's limine orders which clearly in and of themselves prevent pejorative language and assertions made in the presence of the jury. If there's anything this man's going to say, whether it's in his report or not, that could be considered pejorative, you need to come to the bench and you need to tell me what you intend to elicit from him before you do it and get leave of the

Court.").

Further, Mr. Halbert's purported ███████████████████████████████████████

███████████████████████████████████████████████████████████████████.

In the related action, *Netlist, Inc. v. Samsung Elec. Co. Ltd.*, No. 21-cv-463 (E.D. Tex.) ("*Samsung*

*I*"), Judge Gilstrap specifically instructed during the pretrial conference that:

> I do not expect and I will not permit [Mr. Halbert] to become the voice of JEDEC
> and speculate about what JEDEC would do under these circumstances and what
> they wouldn't do. He's not – he is not JEDEC and he's not a representative of
> JEDEC entitled as an agent to take a position for them.
>
> He can talk about what he's seen as a member, he can talk about what he
> understands will happen in circumstances that he's observed, but he needs to
> cabin his testimony about the JEDEC experience with his personal experience
> and his personal knowledge.
>
> I don't think it's a proper use of him to be some kind of CEO of JEDEC that's
> going to come in here and speak for the body, if you will, on any matter and every
> matter and offer opinions about what they would or wouldn't do in hypothetical
> scenarios. That goes too far, and I'm expecting you not to take him there on
> direct. Ex. 5 (Samsung I PTC Tr.) at 228:1-16.

## IV.    Mr. Halbert's Opinions as to the Outcome of Certain ITC Investigations Regarding Netlist's Patents (Opening Report ¶ 48) Should Be Stricken

Mr. Halbert renders opinions regarding the outcome of certain ITC investigations

involving Netlist's patents not at issue in this case. Ex. 1 at ¶ 48. Specifically, Mr. Halbert opines

███████████████████████████████████████████████████████████████████

███████████████████, a company not party to this case, would infringe Netlist's '907 and '623

patents, which are not involved in this case, that those patents were not essential to any JEDEC

standard, and that certain claims in those patents were invalid as obvious. *Id.*

Opining on litigation involving unasserted patents and unrelated parties in unrelated

jurisdictions bears no conceivable relevance to the issues in this case, and accordingly, Mr.

Halbert's opinions should be stricken. Fed. R. Evid. 402. In addition, permitting Mr. Halbert to

opine about such unrelated matters is likely to confuse the jury and cause significant prejudice to

Netlist. Fed. R. Evid. 403; *see also Intell. Ventures I LLC v. T Mobile USA, Inc.*, No. 17-cv-577-JRG, Dkt. No. 297 (E.D. Tex. Jan. 14, 2019) (Pretrial Hearing Transcript) at 175:12-22 (excluding prior litigation); *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 690 n.7 (5th Cir. 1992) (affirming exclusion of evidence regarding prior litigation and noting "a jury might be confused into believing that the opinion's findings are somehow binding in the case at bar" and "the danger of exaggerated importance that the jury might have placed upon the [prior] decision").  This is also consistent with the Court's standard MIL No. 13 ("The parties shall be precluded from introducing evidence, testimony, or argument regarding either party's other litigations . . . .").

In *Samsung I*, Mr. Halbert provided an identical analysis discussing the former ITC Proceedings.  Ex. 9 (2022-12-22 Halbert Report) ¶ 48.  At the pretrial conference on Netlist's motion to strike Mr. Halbert's report, Judge Gilstrap specifically instructed that:

> I don't permit testimony about prior investigations or prior litigation, and a proceeding before the ITC is litigation in the Court's view. . . . without leave of Court. Now, if you think the door's been opened or if you think there's a basis in real time as the case unfolds before the jury to go into something that I've told you as a general rule I don't permit, you can always approach and ask leave. And if I give you leave, you have a clear path in front of you. But without that, you're not and he's not to talk about ITC proceedings, other litigation in Article III courts, other administrative processes such as the Patent Trial and Appeal Board. None of those things are permitted under the Court's limine practice without leave.   Ex. 5 (Samsung I PTC Tr.) at 225:1-15.[2]

Further, as addressed in Netlist's co-pending motion for summary judgment that the Asserted Patents are not standard essential, there is no genuine dispute in this case that the Asserted Patents are not essential. Mr. Halbert's opinion is irrelevant, confusing, and prejudicial for this reason as well.

---

[2] As Judge Gilstrap noted, although he did not explicitly strike this section of Mr. Halbert's report, the "Court has given clear and direct guidance to counsel as to how that report and the information and opinions of that expert are to be presented to the jury, and I expect that guidance to be followed" and only denied the plaintiff's motion in a "technical sense." Ex. 5 (Samsung I PTC Tr.) at 229:4-11.

**V.      Mr. Halbert's Opinions Regarding the Supposed "Contributions" of Netlist and Others to JEDEC Standards Should Be Stricken (Opening Report ¶¶ 5, 21-22; Rebuttal Report ¶¶ 9-20)**

In the opening report, Mr. Halbert listed a chart purportedly to summarize the number of "contributions" he determined were made by Micron, Intel, IBM/Nvidia, Netlist, and other members of JEDEC as relevant to various JEDEC specifications:



Ex. 1 ¶ 21.

Later, on October 30, Mr. Halbert provided his "rebuttal report" stating that:

(1)



Ex. 2 (Halbert Rebuttal Report) ¶¶ 9-12.

(2)

*Id.* ¶¶ 13-16.

(3)

*Id.* ¶¶ 17-20.

Mr. Halbert's opinions regarding these purported "contributions" should be stricken.  There is no analysis that any of these "contributions" presented anything of economic value, or even that these contributions were employed in any of Micron's accused products.  As a result, there is no nexus to actual damages issues in the case.  Mr. Halbert's theory is tantamount to saying there are over 10 million issued US patents, and so how could anyone be valuable.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("To be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place.'").  There are additional basis to strike:

**First**, Micron never identified or produced each and every one of the Micron "contributions" referenced in Mr. Halbert's reports during discovery.  Mr. Halbert also failed to provide a list identifying the production bates or JEDEC committee item numbers of these "contributions."  As early as January 11, 2023, Netlist served an interrogatory, asking Micron to:

> Identify the role played by any Micron employees in JEDEC meetings regarding the design and function of the PMIC present on DDR5 modules, the adoption of distributed buffers in DDR4 LRDIMMs, or the adoption of the Advanced Memory Buffer ("AMB") for DDR2 FBDIMMs, and the Micron employees who first defined these features on Micron DDR5 products, Micron NVDIMM products, Micron FBDIMMs, or Micron LRDIMMs. Ex. 6 at 178 (Rog No. 14).

In response, Micron only stated that it will "produce non-privileged documents responsive to this Interrogatory pursuant to Federal Rule of Civil Procedure 33(d)," but failed to point to any document production in its written responses.  *Id.* at 179.  Thus, Mr. Halbert should not be allowed to rely on this late disclosed evidence regarding Micron's contributions at JEDEC because Netlist never has an opportunity to examine these documents or contributions in response to Mr. Halbert's opinion.  *See GREE*, No. 19-cv-311-JRG, Dkt. 193 (granting motion to strike portion of the expert report relating to information not disclosed during fact discovery).

**Second**, Mr. Halbert's opinion as to the JEDEC contributions is irrelevant, unreliable, and prejudicial.  Mr. Halbert's table in the opening report at best identified a tabulation of raw

numbers of "contributions" reported on the JEDEC site.  Nowhere did Mr. Halbert provide any explanation in its opening report as to (1) how he chose the ███████████████ dates, (2) how did he determine which types of documents to include in his counting and which were not, (3) what types of documents he relied on for the JEDEC specifications other than the DDR4 LRDIMMs, (4) what search terms or database he used to conduct such searches, (5) whether any of these purported "contributions" include presentations that are duplicative or relating to the same subject matters, (6) whether any of these purported contributions are relevant to Netlist's asserted patents or claims in this Action, or (7) what are the technical benefits conferred by any of these contributions to Micron's accused products. Each of these are important to determine the relevance and reliability of Mr. Halbert's opinion.  In fact, as discussed above, Mr. Halbert did not even define the term "contribution" in his opening report.

Because Mr. Halbert does not provide any kind of nexus between these "contributions" and the benefits conferred by the Asserted Patents, his tabulation is irrelevant to any issue in the case.  *See* Fed. R. Evid. 402.  These purported "technical contributions" that have no nexus to the functionality at issue in the case are irrelevant to any issue in the case. *See Uniloc USA*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("To be admissible, expert testimony opining on a reasonable royalty rate must "carefully tie proof of damages to the claimed invention's footprint in the market place.").  In addition, Mr. Halbert's methodology of merely ██████████████████████ ████████████████████████████████████████████████ is an unreliable way of determining what meaningful contributions the various companies made. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993) ("[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"); *Optis Wireless Tech. LLC v. Apple Inc.*, No. 19-cv-66-JRG, Dkt. No. 437 (Pretrial Hearing Transcript) at 90:21-91:2 (ultimately excluding expert opinion that merely

tabulated patents as a methodology of measuring their value and holding that "to the extent it's a global gloss the entire LTE standard is thousands and thousands of patents, and this is just one grain of sand on the seashore and, therefore, insignificant, I think that's -- I think that's – that crosses the line. To give you a 403 analysis, that crosses the line where the prejudicial effect exceeds the probative value.").

**Third**, Mr. Halbert cannot rely on his purported "rebuttal" report to cure these deficiencies.  As an initial matter, even if Mr. Halbert's rebuttal report is taken into consideration, that still does not resolve the lack of nexus between these "contributions" and the benefits conferred by the Asserted Patents, as discussed above.  *Supra* 12-13.

Further, the relevant section of Mr. Halbert's rebuttal report merely supplements Mr. Halbert's opening report without first seeking leave with the Court.  None of Netlist's experts identified in their opening reports the specific numbers of "contributions" made to JEDEC by Netlist or any other members, and no such comparison was conducted. Thus, there is nothing for Mr. Halbert to respond to.  Indeed, Mr. Halbert's 'rebuttal' report also did not identify any specific opening report or expert opinion it purports to "rebut."  Instead, Mr. Halbert only conclusively stated that he prepared the rebuttal because " ███████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████ without pointing to any specific reference. *See* Ex. 2 ¶ 5.

A recent opinion from this District, *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, 2020 WL 6581868, at *2-3 (E.D. Tex. Nov. 10, 2020), is illustrative.  In *Gibson Brands*, the Court explained the difference between a rebuttal report and a supplemental report:  "Under the Federal Rules, rebuttal reports are defined as written expert opinions 'intended to contradict or rebut evidence on the same subject matter' as the other party's expert"; whereas "a supplemental

report 'adds to a previously served report without going beyond the opinions expressed in the report'" and it is a "revised expert report that is consistent with the core opinions expressed in the original expert report."  *Id.* at *1-2 (quotations omitted).  Because the defendant's updated report "builds upon [the expert's] underlying theory and is consistent with the core opinions in the Initial report" and the defendant failed to explain how the additional information rebutted any point of the plaintiff's experts, the *Gibson Brands* court held the defendant's updated report was in fact a belated supplemental report and required the defendant to show good cause. *Id.* at *3-4.

Here, Mr. Halbert's purported "rebuttal report" only builds on its previously disclosed chart mechanically listing the purposed "contributions" made by Micron, Netlist, and other JEDEC members.  The so-called "rebuttal" report only provided additional explanations as to what categories of documents Mr. Halbert looked at and the timeframe when these materials were generated.  These are not to "rebut" or undermine any specific Netlist's expert opinions. Micron never sought leave with the Court before it provided such supplemental information, nor did Micron provide any explanation as to why it could not have disclosed it earlier, together with the initial chart listed in the opening report.  Instead, Micron simply withheld such information until the rebuttal report deadline to deprive Netlist of the opportunity to provide expert opinions responding to Mr. Halbert's analysis. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996) ("The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information.").

For the reasons discussed above, Mr. Halbert's opinions in the opening and "rebuttal" reports regarding the purported "JEDEC contributions" should also be stricken.

Dated: November 14, 2023

Respectfully submitted,

/s/ Jason G. Sheasby

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Andrew J. Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized

to be filed under seal pursuant to the Protective Order entered in this Case.

/s/ Yanan Zhao
Yanan Zhao

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 14, 2023, a copy of the foregoing was served to all counsel of record via Email as agreed by the parties.

*/s/ Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on November 14, 2023, counsel for Netlist met and conferred with Micron's counsel regarding the subject matter of Netlist's motion.  Micron opposes Netlist's motion.

*/s/ Yanan Zhao*
Yanan Zhao