# EXHIBIT 5

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
                          MARSHALL DIVISION

NETLIST, INC.,                     (  CAUSE NO. 2:21-CV-463-JRG
                                   )
          Plaintiff,               (
                                   )
vs.                                (
                                   )
SAMSUNG ELECTRONICS CO., LTD.,     (
et al.,                            )  MARSHALL, TEXAS
                                   (  MARCH 28, 2023
          Defendants.              )  9:00 A.M.
_____


                             VOLUME 1

_____

                       PRETRIAL CONFERENCE

             BEFORE THE HONORABLE RODNEY GILSTRAP
              UNITED STATES CHIEF DISTRICT JUDGE

_____











                    SHAWN McROBERTS, RMR, CRR
                      100 E. HOUSTON STREET
                     MARSHALL, TEXAS  75670
                         (903) 923-8546
                 shawn_mcroberts@txed.uscourts.gov
```

```
                    A P P E A R A N C E S

     FOR THE PLAINTIFF:     IRELL & MANELLA, LLP -
                            LOS ANGELES
                            1800 AVENUE OF THE STARS
                            SUITE 900
                            LOS ANGELES, CA 90067-4276
                            (310) 203-7096
                            BY:  MR. JASON SHEASBY
                                 MS. YANAN ZHAO

                            McKOOL SMITH, P.C. - MARSHALL
                            104 E. HOUSTON ST., SUITE 300
                            MARSHALL, TEXAS  75670
                            (903) 923-9000
                            BY: MR. SAMUEL BAXTER
                                MS. JENNIFER TRUELOVE

     FOR THE DEFENDANTS:    FISH & RICHARDSON PC -
                            WASHINGTON DC
                            1000 MAINE AVE., SW
                            SUITE 1000
                            WASHINGTON, DC 20024
                            (202) 783-5070
                            BY:  MR. RUFFIN CORDELL
                                 MS. LAUREN DEGNAN
                                 MR. BRIAN LIVEDALEN
                                 MR. MATTHEW MOSTELLER
                                 MR. MICHAEL McKEON

                            FISH & RICHARDSON, PC -
                            SAN DIEGO
                            12860 EL CAMINO REAL
                            SUITE 400
                            SAN DIEGO, CA 92130
                            (858) 678-5070
                            BY:  DR. FRANCIS ALBERT

                            FISH & RICHARDSON, PC -
                            DALLAS
                            1717 MAIN STREET, SUITE 5000
                            DALLAS, TEXAS  75201
                            (214) 747-5070
                            BY:  MR. MATTHEW COLVIN
                                 MR. THOMAS REGER
```

```
 1                           FISH & RICHARDSON, PC -
                             NEW YORK
 2                           7 TIMES SQUARE, 20TH FLOOR
                             NEW YORK, NEW YORK  10036
 3                           (404) 724-2764
                             BY:  MS. KATHERINE REARDON
 4
                             GILLAM & SMITH, LLP
 5                           303 SOUTH WASHINGTON AVENUE
                             MARSHALL, TEXAS  75670
 6                           (903) 934-8450
                             BY:  MS. MELISSA SMITH
 7
                             GILLAM & SMITH, LLP
 8                           102 N. COLLEGE, SUITE 800
                             TYLER, TEXAS  75702
 9                           (903) 934-8450
                              BY:  MR. TRAVIS UNDERWOOD
10                                 MR. TOM GORHAM

11         OFFICIAL REPORTER:   SHAWN M. McROBERTS, RMR, CRR
                                100 E. HOUSTON STREET
12                              MARSHALL, TEXAS  75670
                                (903) 923-8546
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Be seated, please.

2     This is the time set for pretrial matters before the

3  Court in the case of Netlist, Inc., versus Samsung Electronics

4  Company, Ltd., et al.  This is Civil Case No. 2:21-CV-463.

5     The Court will ask for announcements at this time.  What

6  says the Plaintiff?

7          MS. TRUELOVE:  Good morning, Your Honor.  Jennifer

8  Truelove here for Plaintiff.  With me today at counsel table,

9  we have Mr. Jason Sheasby, Ms. Yanan Zhao, and Mr. Michael

10 Rosen.

11    We are ready to proceed.

12         THE COURT:  Thank you.

13    What's the announcement for the Samsung Defendants?

14         MS. SMITH:  Good morning, Your Honor.  Melissa Smith

15 on behalf of Samsung.

16    I have many people in the courtroom that have joined me

17 today, but what I'd like to do is introduce Your Honor to

18 those that will be arguing today on behalf of Samsung in the

19 order of argument:  Mr. Ruffin Cordell, Mr. Mike McKeon, Ms.

20 Lauren Degnan, Dr. Frank Albert, Mr. Brian Livedalen, Mr. Matt

21 Colvin, Mr. Matthew Mosteller, Mr. Tom Reger, and in the back

22 Ms. Katherine Reardon.

23    Your Honor, we also have a client representative in the

24 courtroom today, Mr. Michael Nguyen, and we're ready to

25 proceed, Your Honor.

1   greatly exceeded by the risk of confusion and prejudice.
2          Therefore, I'm going to grant the motion and strike the
3   portions of Mr. Kennedy's report that relate to his RAND
4   opinions.
5          The balance of the motion, I'm going to deny.  And that
6   will be the ruling on Document 205.
7          All right.  Let's go next to Document 207, which is
8   Netlist's motion to strike certain opinions of Defendants'
9   expert, John B. Halbert.
10         Let me hear from Netlist on this.
11             MR. SHEASBY:  Yes, Your Honor.  Give me one moment.
12         Your Honor, may I approach?
13             THE COURT:  You may.
14             MR. SHEASBY:  May it please the Court.
15             THE COURT:  Please proceed.
16             MR. SHEASBY:  One of the issues that is -- I think
17  Samsung is attempting to inject into this case is sort of a
18  suggestion in front of the jury that we acted improperly with
19  JEDEC.  And obviously since standard essentiality is not in
20  this case, we don't believe that any sort of allegations of
21  impropriety in front of JEDEC have a place in front of this
22  jury.
23         I should note that that's never been pled, there's never
24  been a pleading that JEDEC is -- is something that we had
25  obligations to JEDEC that were breached from a legal

1  standpoint.  There is equitable claims, but there's no legal
2  claims regarding this issue.  And, in fact, the only damages
3  relationship that they talk about the JEDEC standards are --
4  is that we should not be seeking lost profits under them.
5      And so I would submit that anything about the speculative
6  nature of Mr. -- of our behavior in front of JEDEC -- and let
7  me just give you an example of this.  Netlist was motivated by
8  its patent litigation strategies and opportunistic behavior,
9  that we violated in some sense the good faith of JEDEC, that
10 we were trying to subvert the JEDEC process, that we acted
11 dishonorably, that we acted opportunistically.  None of that
12 is appropriate subject for the jury because there's not a
13 defense based on -- on JEDEC disclosure in front of the jury,
14 and so that should be stricken.
15     I'll move on to the second issue.  The second issue is
16 Mr. Halbert speaks at length about some ITC proceedings that
17 involve other patents in the same families.  Those should all
18 be stricken as well.  There's no place for -- there's no place
19 for discussion of extraneous ITC proceedings involving other
20 patents in front of the jury.
21     And then the last point I'll speak about, and this is an
22 example of the -- the lack of connection between the ITC
23 proceeding they talk about in this case.  I think there's some
24 suggestion that -- that they want to indicate that we've lost
25 a previous proceeding.  I would like to do that as well if I'm

1  a defendant.  I just don't think it's relevant in front of
2  this jury.
3       The last issue is this idea of, quote, JEDEC
4  contributions versus Netlist and others are fraud.  And here's
5  what I mean by this.  So there's these DDR4, DDR5, standards
6  and they're massive.  They have tens of thousands of pages.
7       And what Mr. Halbert does is he calculates for the
8  standards as a whole what percentage of them are contributed
9  by Netlist, what percentages are contributed by Samsung, what
10 percentage of them are contributed by third parties.
11      And he says something very important, and I'll quote it
12 right here:  "I have not parsed which contributions relate
13 specifically to each individual standard."  That is exactly,
14 exactly, the point.  It's no different from saying, here is
15 10,000 patents, how could Netlist product be any good.
16      These patents aren't standard essential.  Discussing
17 JEDEC contributions has tangential relevance to begin with.
18 And this methodology of totaling up, quote, contributions
19 without connecting them to the patents or -- not only not to
20 the patents, but to the features accused of infringement in
21 this case, is not a rigorous methodology.
22      I'll stand on that, Your Honor unless you have any
23 questions.  Thank you, Your Honor.
24           THE COURT:  All right.  Let me hear Samsung's
25 response.

1          MR. MOSTELLER:  May I approach?
2          THE COURT:  You may.  All right, Mr. Mosteller.  You
3  may proceed.
4          MR. MOSTELLER:  Thank you, Your Honor.  May it
5  please the Court.
6      Your Honor, you heard a lot about JEDEC today --
7          THE COURT:  Yes, I have.
8          MR. MOSTELLER:  -- and for good reason.  So all the
9  products in this case, the DDR4, the DDR5, the HBM products,
10 there's no dispute that those products all practice the JEDEC
11 standards.  Your Honor is aware, you're very familiar with
12 JEDEC, you understand that it's a giant effort.  There is
13 hundreds of companies involved.  As counsel on the other side
14 just mentioned, some of the JEDEC standards are tens of
15 thousands of pages.  There is a lot that goes into these
16 products.
17     Now, Your Honor, the issues that Mr. Halbert opines on
18 and that Netlist takes issue with relate not to the standard
19 essentiality of the patents that are at issue, but rather they
20 relate to other issues, both that are equitable and those that
21 are before the jury, including damages, that are still live in
22 this case.
23     And so, Your Honor, if I can, Mr. Burton, go straight to
24 slide 13, please.
25         Trying to move this along for Your Honor.

1       So there's really three categories of opinions that
2   Netlist is seeking to strike.  The first one relates to the
3   JEDEC practices.  And, Your Honor, these are relevant to the
4   equitable issues that we've discussed briefly as well as the
5   issues of willfulness and, in the same vein, indirect
6   infringement that we discussed quite at length this morning.
7           THE COURT:  Let me stop you there, Counsel.
8           MR. MOSTELLER:  Sure.
9           THE COURT:  Where there are equitable defenses that
10  have been raised, which there are some in this case, those are
11  for the Court, not for the jury.  But in several earlier
12  trials where equitable issues were raised, there has been
13  evidence that both relate to those equitable defenses but also
14  relate to some of the issues that are live before the jury in
15  the trial on the merits.
16          MR. MOSTELLER:  Correct.
17          THE COURT:  Where there's evidence that applies to
18  both the equitable defenses and the issues the jury are asked
19  to decide, I have routinely allowed that evidence to be
20  produced and put on during the trial before the jury, and when
21  we get to the bench trial that follows the verdict, there's no
22  need to repeat that because I've heard that evidence.
23      However, if the evidence only relates to the equitable
24  issues and has no nexus with the issues the jury's asked to
25  decide, then I have routinely instructed counsel not to

1  present it during the jury trial based on a risk of confusion
2  since it doesn't relate to what the jury's going to be asked
3  to decide, but to hold it and then present it for the first
4  time at the bench trial that follows.
5       That's the approach I want to follow in this case.
6              MR. MOSTELLER:  And, Your Honor, that's what we
7  intend to do as well.
8              THE COURT:  Okay.  I just want to make sure we're
9  all on the same page.
10      Now, with regard to these paragraphs 49, 55, and 57, Mr.
11 Halbert is not going to disparage Netlist any more than I'm
12 going to let any of their witnesses disparage Samsung.  This
13 is not a case about who can throw the most mud at the other
14 side.
15      So language like subverted, opportunistic behavior,
16 dishonorably, misappropriated, those are pejorative terms in
17 the Court's view.  And while I'm not going to strike them per
18 se from the report, I'm going to apply the Court's limine
19 orders which clearly in and of themselves prevent pejorative
20 language and assertions made in the presence of the jury.
21      If there's anything this man's going to say, whether it's
22 in his report or not, that could be considered pejorative, you
23 need to come to the bench and you need to tell me what you
24 intend to elicit from him before you do it and get leave of
25 the Court.  And he needs to be instructed before he goes on

1  the witness stand that he's not to involuntarily offer or
2  voluntarily, I guess I should say, offer pejorative language
3  in his testimony.  If he does, he's going to be in hot water
4  with me.
5        So I can go through and pick out particular words in this
6  report and I can say this adjective is out and this one is
7  out, but rather than do that at a high level, I'm just telling
8  you I don't expect him to testify using pejorative terms and I
9  don't expect the other side to launch pejorative language at
10 him on cross-examination or at your client any more than I'm
11 going to let him do that to the Plaintiff in the case.
12       Are we clear on that?
13           MR. MOSTELLER:  Very clear, Your Honor.
14           THE COURT:  Okay.  Well, I think with that
15 understanding, the rest of paragraphs 49, 55, and 57 can
16 survive.
17           MR. MOSTELLER:  Thank you, Your Honor.
18     If we can jump ahead then to the next section of Mr.
19 Halbert's report at issue, which is paragraph 48.  And if we
20 can just go to slide 21, I think we can cover one paragraph in
21 just one slide, Your Honor.
22     Here, as counsel mentioned, Mr. Halbert has some
23 discussion of the prior ITC investigations.  And to be clear,
24 we understand that the Court does not permit opinions about
25 prior investigations.

1          THE COURT:  I don't permit testimony about prior
2    investigations or prior litigation, and a proceeding before
3    the ITC is litigation in the Court's view --
4          MR. MOSTELLER:  Correct.
5          THE COURT:  -- without leave of Court.  Now, if you
6    think the door's been opened or if you think there's a basis
7    in real time as the case unfolds before the jury to go into
8    something that I've told you as a general rule I don't permit,
9    you can always approach and ask leave.  And if I give you
10   leave, you have a clear path in front of you.
11         But without that, you're not and he's not to talk about
12   ITC proceedings, other litigation in Article III courts, other
13   administrative processes such as the Patent Trial and Appeal
14   Board.  None of those things are permitted under the Court's
15   limine practice without leave.
16         MR. MOSTELLER:  Understood, Your Honor.  And we have
17   no need to have Mr. Halbert provide testimony or opinions
18   about those prior investigations.
19         The purpose of the testimony that's given there in
20   paragraph 48 really relates to Samsung's willfulness defenses
21   and its defenses to indirect infringement as to the knowledge
22   and the intent prongs of Netlist's claims, specifically that
23   there are, amongst other obligations, that Netlist as a member
24   of JEDEC has to the organization is to disclose patents that
25   it is aware of, that it knows are relevant to particular

1    standards that have been developed by JEDEC.
2            THE COURT:  I'm not going to try and block your
3    attempt the defend against the willfulness allegations that
4    are live in the case, but there are ways you can defend
5    against those without expressly explaining, going into, and
6    creating innumerable rabbit trails about other lawsuits and
7    other litigations and other proceedings before other
8    tribunals.
9            MR. MOSTELLER:  Understood, Your Honor.
10           THE COURT:  So that's my guidance to you on that.
11           MR. MOSTELLER:  Thank you, Your Honor.
12       I believe the last issue that Mr. Sheasby raised was in
13   regards to the rebuttal analysis that Doctor Halbert or Mr.
14   Halbert provided in his rebuttal report related to the
15   contributions to the various standards.  And, again, as I just
16   mentioned, Your Honor, the products at issue in this case
17   practice the JEDEC standards.
18       And so the technologies and any apportionment that should
19   be given to any contributions by the patents in this case need
20   to take into account the JEDEC standards, the contributions of
21   companies, including Netlist, and including everyone else, to
22   those standards.
23       What Mr. Halbert did, as -- as counsel discussed, is he
24   went through, he performed an analysis of who contributed what
25   to the relevant standards.  We have DDR4 products, DDR5

1   products, HBM products.  And what Mr. Halbert did is he went
2   and looked at the contributions in JEDEC to the development of
3   the standards, both by Netlist and by others, to see
4   effectively how many contributions went into those standards,
5   how many of those contributions are attributable to Netlist.
6        There are numerous opinions in Mr. Halbert's report in
7   terms of what he did and did not do in arriving at that
8   analysis, and if counsel would like to cross examine Mr.
9   Halbert on his analysis and how he conducted that, they're
10  free to do so.
11       But Your Honor, the analysis that's in Mr. Halbert's
12  report is directly responsive, both to Mr. Kennedy's analysis
13  as well as to Mr. Meyer's analysis in which he is trying to
14  apportion to any value to give the patents for the products
15  that are accused.
16            THE COURT:  Well, I have no problem with him
17  responding to Mr. Kennedy's calculations and his responses can
18  certainly be tested as to their reasonableness when he's on
19  cross.  So I don't see any compelling reason to strike those
20  portions of his report.
21       I do want to go back and clarify one additional thing for
22  you, though.  I understand this witness is going to talk about
23  his personal experience as a member of JEDEC, and I think as
24  long as he stays within what he knows of his own personal
25  knowledge is fine.

1     I do not expect and I will not permit him to become the
2  voice of JEDEC and speculate about what JEDEC would do under
3  these circumstances and what they wouldn't do.  He's not -- he
4  is not JEDEC and he's not a representative of JEDEC entitled
5  as an agent to take a position for them.
6     He can talk about what he's seen as a member, he can talk
7  about what he understands will happen in circumstances that
8  he's observed, but he needs to cabin his testimony about the
9  JEDEC experience with his personal experience and his personal
10 knowledge.
11    I don't think it's a proper use of him to be some kind of
12 CEO of JEDEC that's going to come in here and speak for the
13 body, if you will, on any matter and every matter and offer
14 opinions about what they would or wouldn't do in hypothetical
15 scenarios.  That goes too far, and I'm expecting you not to
16 take him there on direct.  And if you do, I'm expecting
17 Plaintiff to object.  And if any of that happens, I'm likely
18 to just exactly do what I'm telling you right now.
19         MR. MOSTELLER:  Understood, Your Honor.
20    One thing I would ask to clarify is that Netlist also has
21 their own JEDEC expert in this case, Mr. Gillingham.
22         THE COURT:  What's good for the goose is good for
23 the gander.
24         MR. MOSTELLER:  I appreciate that, Your Honor.  I
25 will stand down.

1   THE COURT: We will get to that witness when we get
2  to that witness.
3   MR. MOSTELLER: Sounds good, sir.
4   THE COURT: All right. Thank you, sir.
5  Let's turn to -- by the way, for the record those are the
6  rulings on Document 207. While the Court has not expressly
7  struck any of the portions of Mr. Halbert's report, the Court
8  has given clear and direct guidance to counsel as to how that
9  report and the information and opinions of that expert are to
10 be presented to the jury, and I expect that guidance to be
11 followed.
12 Okay. So in a technical sense, the motion by the
13 Plaintiff is denied there with the guidance and clarifications
14 that I've clearly put into the record.
15 All right. Let's turn to Document 214. This is
16 Plaintiff's motion to strike portions of the rebuttal expert
17 report of Paul K. Meyer. This is one of those situations,
18 Counsel, that I've referred to earlier in the day because I
19 count 11 subparts to this one motion, and that's part of why
20 we have such a tremendous load of material to get through
21 during the two days I've allocated to pretrial.
22 But without further delay, let's get into this motion.
23 Let me hear from Plaintiff on it.
24   MR. SHEASBY: May it please the Court. Jason
25 Sheasby.