**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-CV-203-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC., | ) | |
| MICRON SEMICONDUCTOR | ) | ███████████████ |
| PRODUCTS INC., MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF NETLIST, INC.'S MOTION TO STRIKE CERTAIN**
**OPINIONS OF DEFENDANTS' EXPERT DR. HAROLD STONE**

# TABLE OF CONTENTS

**Page**

I.     Dr. Stone's Essentiality Opinions Should be Stricken (Stone Rebuttal, ¶¶ 172-177) ............1

II.    Dr. Stone's Non-Infringing Alternatives ("NIAs") That Were Not Disclosed in Fact Discovery Should be Stricken (Stone Rebuttal, ¶¶ 178-182) .....................................................4

III.   Dr. Stone's Speculative Theory About What JEDEC Members Would or Would Not have Done Should Be Stricken (Stone Rebuttal, ¶ 182) ..............................................................7

IV.   Undisclosed Non-Infringement Theories Should Be Stricken......................................................9

     A.     Dr. Stone's Theory that a Combination of LDOs Cannot be a "Converter Circuit" Was Not Disclosed in Discovery (Stone Rebuttal, ¶¶ 45-48) ......................9

     B.     Dr. Stone's Theory That the PMIC Internal Circuits Are Not "coupled to the PCB" Was Not Disclosed In Discovery (Stone Rebuttal, ¶¶ 49-56)..................11

V.     Dr. Stone's SSPPU Theory Should Be Stricken (Stone Rebuttal, ¶¶ 183-185) .....................13

     A.     Dr. Stone's SSPPU Theory Was Never Disclosed in Fact Discovery.....................13

     B.     Dr. Stone's SSPPU Theory Contradicts the Court's Claim Construction and the Language of the Claims ........................................................................................13

VI.   Dr. Stone's Analysis Regarding the "Operable State" Limitations Are Inconsistent with the Court's Claim Construction (Stone Opening, ¶¶ 125-127) .......................................14

VII.   Dr. Stone's Opinions Regarding Keller and Certain JEDEC Materials Should be Stricken Because These Are Not Printed Publications (Stone Opening, ¶¶ 276-278, 293-295, 301-304)...........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Med. Sys., Inc. v. Laser Peripherals, LLC,*
    712 F. Supp. 2d 885 (D. Minn. 2010) ................................................................................3

*Dishman v. BBVA Compass Bank,*
    2011 WL 13217108 (E.D. Tex. Mar. 3, 2011) ...................................................................2

*Ericsson Inc. v. TCL Commc'n. Tech. Holdings, Ltd.,*
    2017 WL 5137401 (E.D. Tex. Nov. 4, 2017) .....................................................................6

*HTC Corp. v. Telefonaktiebolaget LM Ericsson,*
    2019 WL 4734950 (E.D. Tex. May 22, 2019) ....................................................................2

*Hutchins v. Zoll Medical Corp.,*
    492 F.3d 1377 (Fed. Cir. 2007) .........................................................................................2

*Hynix Semiconductor Inc. v. Rambus Inc.,*
    645 F.3d 1336 (Fed. Cir. 2011) .........................................................................................9

*Johnson v. Arkema, Inc.,*
    685 F.3d 452 (5th Cir. 2012) .............................................................................................8

*Meyers v. Asics Corp.,*
    974 F.2d 1304 (Fed. Cir. 1992) .........................................................................................9

*Navico Inc. v. Garmin Int'l, Inc.,*
    2017 WL 3750252 (E.D. Tex. Jul. 28, 2017) ...................................................................15

*Ultravision Techs., LLC v. GoVision LLC,*
    2021 WL 2144788 (E.D. Tex. May 26, 2021) ..................................................................14

*Wilson v. Woods,*
    163 F.3d 935 (5th Cir. 1999) .............................................................................................7

**Other Authorities**

FRE 702 ....................................................................................................................................7

Plaintiff Netlist, Inc. ("Netlist") respectfully requests the Court strike certain opinions presented by Micron's expert Dr. Harold Stone in his opening and rebuttal reports. Exs. 1, 2.

## I.   Dr. Stone's Essentiality Opinions Should be Stricken (Stone Rebuttal, ¶¶ 172-177)

In his opening report, Dr. Stone relies on the non-essentiality of the '918 and '054 patents



to argue ████████████████████████████. *See* Stone Opening, ¶ 348 ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████. In his rebuttal report, Dr. Stone further relies on the non-essentiality of the '918 and '054 patents to argue that Micron's accused products do not infringe. This is a necessary position for Dr. Stone to take in order to contest infringement because he ████████████████████████████████████████████████████ ██████████████████████████████ Stone Rebuttal ¶ 31.

But Dr. Stone also opines that if the accused products do infringe, then ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████. *Id.*, ¶¶ 172-177.

This opinion should be stricken. Dr. Stone ignores the JEDEC Patent Policy and its definition of Essential Patent Claims in rendering this opinion. According to JM21, "Essential Patent Claims" ***exclude*** claims which cover sections that are marked "example":

> NOTE Essential Patent Claims do not include Patent claims covering aspects that are not required to comply with a JEDEC Standard, ***or are required only for compliance with sections that are marked "example,"*** "non-normative," or otherwise indicated as not being required for compliance, or related to underlying enabling technologies or manufacturing techniques not specified in the standard.

Ex. 5, JM21 at § 8.2.1.

First, the report does not contain a mapping of each element of any claim of the patents

to a required portion of any JEDEC specification. Simply stating that under Netlist's theory the patents are infringed without an element-by-element analysis is no different than announcing without an element-by-element analysis that a patent claim is invalid or infringed. In all cases the analysis is legally deficient. *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007) ("Patent infringement requires that every element and limitation in a correctly construed claim is embodied in the accused system either literally or, if embodied by an equivalent, in compliance with the rules of equivalency . . . ."). Moreover, because Micron is raising JEDEC essentiality in support of its affirmative defenses of breach of RAND obligation, essentiality is an issue on which it bears the burden. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 2019 WL 4734950, at *5 (E.D. Tex. May 22, 2019) ("The burden of proof in a breach of contract claim rests on the party alleging breach.").

Second, the JESD 301-1 and JESD 301-2 standards depict designs of regulators as "example schematics." Ex. 3 (JESD 301-1) at 19-20; Ex. 4 (JESD 301-2) at 23-24. These schematics set out the design of regulators that can output required voltages, but do ***not*** require a particular implementation. This is undisputed, as Micron's corporate representative testified

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ Ex. 6 (2023-08-17 Ross Tr.) at 81:17-82:21. Micron's corporate representative further testified that ████████████████████████████████████████████

████████ *Id.* 13:15-14:14. Dr. Stone does not discuss the fact that JESD 301-1 and 301-2 are exemplary, and does not discuss this limitation on Essential Patent Claims at all in his report.

First, he ignored the JEDEC Patent Policy's definition of "Essential Patent Claims," and performed no analysis as to whether JESD 301-1 and 301-2 are required portions of the JEDEC standard under the JEDEC Patent Policy. *See Dishman v. BBVA Compass Bank*, 2011 WL 13217108, at *4-5 (E.D. Tex. Mar. 3, 2011) (striking expert report that failed to apply statutory

"prudent investor" standard, explaining that "Mr. Nielsen's report, while paying lip service to the idea of a prudent investor, in effect makes up his own evaluation criteria"); *Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 901 (D. Minn. 2010) ("Knox's opinions are inadmissible because they are based on incorrect legal standards.") (citing *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories.")). Nor has Micron performed that analysis for Dr. Stone to rely on, as confirmed by Micron's JEDEC representative and 30(b)(6) designee Mr. Frank Ross. Ex. 6, 80:1-5 ██████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ Thus Dr. Stone's opinions are not grounded in the facts of this case.

Third, Dr. Stone ignored that JESD 301-1 and 301-2 do not mandate a particular implementation, and are only exemplary. The fact that JESD 301-1 and 301-2 can be implemented in various ways is dispositive. As noted above, "Essential Patent Claims" are not claims covering aspects of a section marked with "example." Moreover, as Micron's JEDEC expert in this case, Mr. Halbert, explains:



Halbert Opening, ¶ 41.

To be clear, there is no dispute regarding the fact that JESD 301-1 and 301-2 do not mandate implementation. Not only do the standards themselves state that, and not only does ██████████████████████████████████████████████████████ ████████████████████████████████ For example, MPS's corporate representative Ms.

Hoang 

Ex. 7, 24:17-26:8 (emphasis added).



Ex. 8, 49:8-11 (emphasis added).

In sum, because Dr. Stone failed to consider JM21's definition of "Essential Patent Claims," because Dr. Stone failed to provide an element-by-element analysis, and because Dr. Stone failed to identify any "required" portion of the standard that Netlist's claims read on, his essentiality analysis is unreliable, and thus improper and prejudicial. It should be stricken from his report.

## II.     Dr. Stone's Non-Infringing Alternatives ("NIAs") That Were Not Disclosed in Fact Discovery Should be Stricken (Stone Rebuttal, ¶¶ 178-182)

On January 11, 2023, Netlist served Interrogatory No. 8, which asked Micron to identify NIAs to the '918 and '054 patents. Ex. 16 at 15-16 ("For each Netlist Patent-in-Suit, identify and describe in detail any alleged non-infringing alternative that You contend exists or existed to each Netlist Patent-in-Suit or alternatives that you considered implementing…"). Micron first

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████ Ex. 17 at 122-123. Micron supplemented its interrogatory responses five more times over the next month and a half. In its Sixth Supplemental Interrogatory Responses, served at 11:55pm CT on September 20, 2023—the final day of fact discovery—Micron for the

█████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

*Id.* at 123-126.

Micron claims in its interrogatory responses that its ███████████████████████

███████████████████████████████████████████████

████████████████████████████████████ *Id.* This is not a real argument. Micron never moved to compel further infringement contentions, nor has it ever moved to strike Netlist's infringement contentions for lack of detail. This alleged excuse is nothing more than a last minute (or last 5-minutes) attempt to explain away its inexcusable delay in identifying NIAs. Moreover, Micron conceded that by June 2023, Netlist had produced its "very detailed expert reports" from *Samsung I*, including the opening report of Dr. Mangione-Smith. Dkt. 220 (Micron's Opposition to Netlist's Motion to Strike Micron's Supplemental Interrogatory Responses) at 3 (admitting Netlist served "very detailed expert reports" at the end of June 2023). Dr. Mangione-Smith's report from that case included a ███████████████

███████████████████████████████████████████████

██████████████████████ *See, e.g.*, Ex. 10 at 2-3 ("NIAs to the Asserted DDR5 Claims"). Micron simply wanted to hide the ball on NIAs.

Because Micron never identified NIAs in fact discovery, Netlist was never able to explore any of Micron's alleged NIA theories, and was not able to address them in Netlist's experts' opening reports. To be clear, Netlist tried to seek this information, even beyond interrogatories, during discovery. Micron's corporate representative on the issue of non-infringement and PMIC operation, Mr. Holbrook, was asked whether █████████████████████████████

███████████████████████ Ex. 11, 55:10-16 ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████) (objection omitted); Ex. 12 (08-25-2023 Park Email) (designating Mr. Holbrook on topics #14-18 and #89); Ex. 13 (Netlist's First 30(b)(6) notice) at 13-14 (topics #14-18 directed at operation of Micron's DDR5 DIMMs and on-module PMICs on those DIMMs), 29 (topic #89 directed to non-infringement).

The issue is further compounded by the fact that, in his rebuttal expert report, Dr. Stone for the first time purports to identify "numerous" NIAs, including:

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

Stone Rebuttal, ¶¶ 178-181. These are again **new** NIAs that are not even disclosed in Micron's eleventh hour interrogatory responses, nor anywhere else in fact discovery. These opinions are untimely and prejudicial, and thus must be stricken from Dr. Stone's report. *Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente und Tech. GMbH*, 2018 WL 4289342, *4 (E.D. Tex. July 11, 2018) (granting motion to strike non-infringing alternatives not mentioned in interrogatory responses and disclosed for the first time in expert rebuttal report); *Ericsson Inc. v. TCL Commc'n. Tech. Holdings, Ltd.*, 2017 WL 5137401, at *12-14 (E.D. Tex. Nov. 4, 2017) (striking portions of expert report related to undisclosed NIAs).

To be clear, this is not a case where Micron has taken a principled position that NIAs are not proper fact discovery, given that Micron ultimately did identify alleged NIAs in its interrogatory responses. This is not a case in which Dr. Stone had access to confidential information that Micron and its witnesses did not have access to and therefore came up with additional NIAs that could not have been disclosed in fact discovery. There is thus no excuse for not disclosing Dr. Stone's alleged NIAs at any point in this case, and these opinions should be stricken from his report.

### III. Dr. Stone's Speculative Theory About What JEDEC Members Would or Would Not have Done Should Be Stricken (Stone Rebuttal, ¶ 182)

Dr. Stone hypothesizes that, had ████████████████████████████████ ███████████████████████████████████████████████:



Stone Rebuttal, ¶ 182.

Dr. Stone does not purport to be a JEDEC expert. Indeed, he has never participated in a JEDEC committee meeting regarding DDR4 or DDR5. Dr. Stone also does not purport to have any factual knowledge of the discussions that led to the DDR5 PMIC standardization. Dr. Stone also does not purport to have an expertise in how companies make decisions at the interface between patents and standardization. His opinion is pure speculation by a witness who has not satisfied the FRE 702. *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999) (upholding district court's finding that expert "lacked the requisite qualifications" for testimony). Dr. Stone did not interview JEDEC members in coming to his opinion. He did not analyze any potential alternatives JEDEC was considering at the time, and does not identify any actual alternatives JEDEC members were considering at the time the DDR5 standards were set. And he does not opine that Micron or any

other JEDEC member would have considered any other alternative acceptable. Such rank speculation must be stricken from his report. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (expert opinion must "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief") (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999).

Even if Netlist took "full credit for the benefits of using on-DIMM PMICs," there is no evidence that would have resulted in additional options for NIAs. To the contrary, Micron's JEDEC expert Mr. Halbert ███████████████████████████ ██ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████:

███████████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████
████████████████████████████

Ex. 14, 107:6-13. This is consistent with the patent policy itself, which makes only one reference to when a work-around for a patent should be explored: when there is a refusal to RAND. Ex. 5, at 25 ("JEDEC committees and task groups shall consider reasonable workarounds and technical alternatives (**but are not required to implement such workarounds or alternatives**) within the earlier of: a) balloting, or b) one-hundred twenty (120) calendar days of receiving Notice of Refusal to offer Licenses on RAND Terms.").

Micron has taken the position throughout this litigation that Netlist has offered the '918 and '054 patents on RAND terms, should any claims of those patents be Essential Patent Claims. This opinion regarding alleged alternatives seems to be a way for Dr. Stone to provide backdoor support for Micron's standards-based estoppel defense. Standards-based estoppel requires proof that there was an actual alternative that could have been implemented to the patents-in-suit, *i.e.*,

that the defendant would have acted differently in some way. *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992) (reversing determination that equitable estoppel and laches barred the plaintiff's claims where evidence "does not show that any of the defendants would have acted differently"). But that would have required Dr. Stone to address this issue in his opening report, and not his rebuttal report, which he failed to do. This is because Micron bears the burden on its standards-based estoppel defense. *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011) (accused infringer must prove estoppel defense by clear and convincing evidence).

## IV. Undisclosed Non-Infringement Theories Should Be Stricken

### A. Dr. Stone's Theory that a Combination of LDOs Cannot be a "Converter Circuit" Was Not Disclosed in Discovery (Stone Rebuttal, ¶¶ 45-48)

For Micron's DDR5 DIMMs, Dr. Stone contends that the ████████████████████ ████████████████████████████████████████████████████████████████ *See, e.g.*, Stone Rebuttal, ¶ 45 ████████████████████████████████████████████ ███████████████████████████████████ ¶ 48 ████████████████████████ ███████████████████████████████████ This theory was not disclosed in discovery, and should be stricken.

Netlist's September 8, 2022 preliminary infringement contentions identified multiple possibilities for the claimed "converter circuit." For example, for Element 1(b), Netlist noted that in ████████████████████████████████████████████████████████████ ████████████████████████████████████). Ex. 15 at 10-11; *see also id.* at 23-24 (████████████████████████████████████████████████████████████ ███████████████████████████████) Netlist's contentions also noted that, when the VIN_MGMT input voltage is not available, LDOs are configured to produce the 1.0V or 1.8V output voltage from VIN_BULK instead. *Id.* at 97 ("███████████████████████ ████████████████████████████████████████████████████████████)



██████████████████████████████); *see also id.* at 72-75 (for claim 13, noting that "[t]█████████████████████ ████████████████████*rte*██████t ████████████████████/████████████████████████████████ ██████████████████████████."). Netlist also illustrated that, when VIN_MGMT is not available, the LDOs providing VOUT_1.0V and VOUT_1.8V can receive VIN_BULK indirectly. *Id.* at 74-75 (████████████████████"); *see also id.* at 97 (incorporating by reference analysis for claim 13 for "converter circuit" limitation of claim 16).

Micron also had notice of this theory via Netlist's production of Dr. Mangione-Smith's opening report from *Samsung I*, which Netlist produced in this case in June 2023. In that report, Dr. Mangione-Smith explained that ████████████████████████ ████████████████████████████████████████████ ████████████████ *See, e.g.*, Ex. 9, ¶ 240 ████████████████ ██ ████████████████████████████████████████████ ████████████/████████████████████████████/██ ████████████████ *see also id.*, ¶ 236 (████████████████ ████ *id.*, ¶ 235 (████████████████████). Micron's DDR5 DIMMs also include PMICs used by TI and MPS. *See* Stone Rebuttal, ¶¶ 41-43.

Netlist served an interrogatory requesting Micron's factual basis for non-infringement on January 11, 2023. Ex. 16 at 12-13. Micron's Feb. 17, 2023 response ██████████████ ██████. Ex. 17 at 5-6. Micron supplemented its interrogatory response six times, but failed to ████████████████████████████████████████████ ██████ Micron's August 7, 2023 supplemental response simply asserted that ██████████ ██████████████████████████ *Id.* at 62 ████████████████████████████████████████████ Micron's September 14, 2023 supplemental response asserted that the ██████████████



██████████████████████████████████████████████

(*id.* at 91) but did not disclose ████████████████████████████████████

████ thereby depriving Netlist's expert from addressing Micron's argument.

Compounding the prejudice to Netlist, by the time Dr. Stone submitted his rebuttal report, Netlist had deposed all of the corporate representatives from Micron's main PMIC suppliers, including MPS, Richtek, Renesas, and TI. Micron thus deprived Netlist of any opportunity to test Micron's non-infringement theory through fact discovery. To the extent Micron argues that the upcoming depositions of Samir Mittal and Boe Holbrook alleviate this prejudice, Micron has repeatedly represented that its witnesses are not knowledgeable about PMICs. *See, e.g.*, Dkt. 220 at 1 (contending Micron engineer Mr. Holbrook "was not knowledgeable regarding the relevant features because Micron does not design or manufacture the third party PMIC components at issue"); *id.* at 3-4 ("[B]ecause the PMIC components are third party components, Micron anticipates that any additional deponent will have the same scope of knowledge as Mr. Holbrook."). This non-infringement theory should be stricken.

### B. Dr. Stone's Theory That the PMIC Internal Circuits Are Not "coupled to the PCB" Was Not Disclosed In Discovery (Stone Rebuttal, ¶¶ 49-56)

Claim 16 of the '918 patent requires "a converter circuit configured to reduce the pre-regulated input voltage to provide a fourth regulated voltage," and "a plurality of components coupled to the PCB . . . each component of the plurality of components coupled to one or more regulated voltages of the first, second, third and fourth regulated voltages." ████████████

██████████████████████████████████████████████

████████████████████████ *See* Mangione-Smith Opening, Ex. B, ¶¶ 329-339. In Paragraphs 49-56 of his rebuttal report, Dr. Stone contends that '918 claim 16 is not infringed because the

███████████████████████████████████████████ This non-infringement theory was never disclosed in Micron's interrogatory responses, and should be stricken.

Netlist's September 8, 2022 preliminary infringement contentions identified the PMIC as one of the components "coupled to the PCB" for element (1c):





Ex. 15, at 27-28 (annotated to highlight PMIC coupled to the PCB); *see also id.* at 106-112 (incorporating by reference analysis for (1c) for "coupled to the PCB" limitation of claim 16).

Micron also had notice of this theory via Netlist's production of Dr. Mangione-Smith's opening report from *Samsung I*, which Netlist produced in this case in June 2023. In that report, Dr. Mangione-Smith ███████████████████████████████████████████████ ██████████████████████████████████████████████████. *E.g.*, Ex. 9, ¶ 236 (█ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████ ¶ 240 (████████). Micron also uses ███████████████████████████ *See* Stone Rebuttal, ¶¶ 41-43.

Dr. Mangione-Smith's *Samsung I* report also identifies the PMIC internal circuitry as one of the "plurality of components coupled to the PCB." Ex. 9, ¶ 253 ████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████████).

As detailed above, Micron set forth limited non-infringement arguments regarding the "converter circuit" limitation in its supplemental interrogatory responses. None of Micron's supplemental responses disclosed its theory that the PMIC internal circuits are not "coupled to

the PCB." *See* Ex. 17 at 91-100. Dr. Stone's non-infringement theory should be stricken.

## V.     Dr. Stone's SSPPU Theory Should Be Stricken (Stone Rebuttal, ¶¶ 183-185)

### A.  Dr. Stone's SSPPU Theory Was Never Disclosed in Fact Discovery

Dr. Stone opines in his rebuttal report that 

Stone Rebuttal, ¶ 183; *see also id.*, ¶¶ 184-185 (contending that

). This position was not disclosed in Micron's interrogatory

responses. Netlist sent Micron an interrogatory asking Micron to "Set Forth the Complete Basis

for Your position regarding the theories, amounts, and methods of calculating the damages to

which Netlist will be entitled if Micron is found to infringe each Asserted Patent […]." Ex. 17 at

174-175. Micron's response makes no mention of the theory that the PMIC is the SSPPU. *Id.* at

174-176. Micron has no excuse for this litigation-by-ambush tactic. The sole factual basis for Dr.

Stone's SSPPU theory is

. *See* Stone Rebuttal, ¶¶ 183, 185. There is thus no excuse for Micron's refusal to provide

this information in fact discovery. By failing to disclose this position during fact discovery, Micron

deprived Netlist's experts of an opportunity to address Micron's SSPPU theory.

### B.  Dr. Stone's SSPPU Theory Contradicts the Court's Claim Construction and the Language of the Claims

Dr. Stone repeatedly mischaracterizes the inventions of the '918/'054 patents in his report

as limited to the PMICs on board the claimed memory module. For example, Dr. Stone contends

that if the claims of the '918 and '054 patent are found to be infringed,

Stone

Rebuttal, ¶ 185 (emphasis added); *see also id.*, ¶ 184

(emphasis added). This opinion contradicts the claim language and the

Court's claim construction order, and should be stricken. *See Ultravision Techs., LLC v. GoVision LLC*, 2021 WL 2144788, *2 (E.D. Tex. May 26, 2021) (citing *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2016)) ("Incorrect claim construction statements go to the relevance of the expert's opinion, and thus form a basis to exclude an expert's opinion.").

First, the claim language clearly requires "a memory module,"[1] along with multiple components of the memory module. Second, Netlist's claimed on-module power management technology requires more than the PMIC. As just one example, claim 1 of the '918 patent requires, in addition to buck converters and converter circuits that comprise the PMIC ('918, 38:18-52):

- "a printed circuit board (PCB) having an interface configured to fit into a corresponding slot connector of a host system, the interface including a plurality of edge connections configured to couple power, data, address and control signals between the memory module and the host system";
- "the plurality of components comprising: a plurality of synchronous dynamic random access memory (SDRAM) devices coupled to the first regulated voltage, and";
- "at least one circuit coupled between a first portion of the plurality of edge connections and the plurality of SDRAM devices, the at least one circuit operable to (i) receive a first plurality of address and control signals via the first portion of the plurality of edge connections, and (ii) output a second plurality of address and control signals to the plurality of SDRAM devices, the at least one circuit coupled to both the second regulated voltage and the fourth regulated voltage, wherein a first one of the second and fourth voltage amplitudes is less than a second one of the second and fourth voltage amplitudes."

Dr. Stone's analysis ignores elements plainly required by the claims, and should be stricken.

## VI. Dr. Stone's Analysis Regarding the "Operable State" Limitations Are Inconsistent with the Court's Claim Construction (Stone Opening, ¶¶ 125-127)

Dr. Stone contends that the terms "first operable state" and "second operable state" lack written description support. Stone Opening, ¶¶ 125-127. Specifically, Dr. Stone opines that the

---

[1] The Court construed the preamble of the '918/'054 claims as limiting, and adopted its reasoning in its order from *Samsung I*, which explained that a POSA would understand that a "memory module" has "essential structural requirements" including the structure necessary to connect to a memory controller." Dkt. 249 at 28; Ex 18 (*Samsung I* Order) at 28.

specification fails to describe a situation "where the memory module ***is not operable*** in that second state." *Id.*, ¶ 125 (emphasis added); *see also id.*, ¶ 126 ███████████████████

████████████████████████████████████████████████████

███). This argument contradicts the Court's claim construction of the "operable state" terms, and should be stricken. Specifically, the Court construed "first operable state" to mean a "state in which the memory module is operated before transition" and "second operable state" a "state in which the memory module is operated after transition." Dkt. 249 at 44. Neither of these constructions refers to a state where the memory module is "not operable," which Dr. Stone now contends the claims require. Stone Opening, ¶¶ 125-126. These paragraphs should be stricken.

## VII.   Dr. Stone's Opinions Regarding Keller and Certain JEDEC Materials Should be Stricken Because These Are Not Printed Publications (Stone Opening, ¶¶ 276-278, 293-295, 301-304).

As detailed in Netlist's motion for summary judgment, Dr. Stone provides no evidence in his opening invalidity report that the Keller thesis was publicly available as of the critical date of 2007-2008. He provides no evidence of when Keller was catalogued or shelved, when or how it was made searchable, when a member of the public could have obtained a copy of Keller, or any general cataloguing practices from the University of Illinois, where Keller purportedly originated. He simply assumes so based on the 2006 copyright date, which is insufficient. Stone Opening, ¶ 276. *See Navico Inc. v. Garmin Int'l, Inc.*, 2017 WL 3750252 at *3 (E.D. Tex. Jul. 28, 2017) ("Here, Garmin ***relies only on the Manual's copyright and revision dates***, and presents no evidence about the extent of its distribution. Moreover, Garmin fails to show how any interested member of the public could have obtained a copy. . . . Thus, the Court concludes Garmin does not have enough evidence of public accessibility of the 2007 Operator Manual to carry its burden at trial."), *report & recommendation adopted*, 2017 WL 3764213 (E.D. Tex. Aug 29, 2017) (Gilstrap, J.).

Dated: November 14, 2023

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Andrew J. Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Jason Sheasby*
Jason Sheasby

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 14, 2023, a copy of the foregoing was served to all counsel of record via Email as agreed by the parties.

*/s/ Jason Sheasby*
Jason Sheasby

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on November 14, 2023, counsel for Netlist met and conferred with Micron's counsel regarding the subject matter of Netlist's motion. Micron opposes Netlist's motion.

*/s/ Jason Sheasby*
Jason Sheasby