# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:22-CV-203-JRG |
| vs. ) | |
| ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC., ) | |
| MICRON SEMICONDUCTOR ) | ▮▮▮▮▮▮▮▮▮▮▮▮ |
| PRODUCTS INC., MICRON ) | |
| TECHNOLOGY TEXAS LLC, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF NETLIST, INC.'S MOTION FOR SUMMARY JUDGMENT
ON MICRON'S EQUITABLE DEFENSES**

# **TABLE OF CONTENTS**

**Page**

I. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ............................. 1

II. STATEMENT OF UNDISPUTED FACTS ............................................................... 1

III. ARGUMENT .................................................................................................................. 3

    A. Prosecution Laches ............................................................................................. 3

    B. Equitable / Standards-Based Estoppel ............................................................ 5

        1. '918 and '054 Patents ............................................................................. 6

            a) There Is No Evidence of Breach of Duty .................................. 6

            b) There Is No Evidence of Material Prejudice ............................. 7

        2. '060 and '160 Patents ............................................................................. 8

    C. Prosecution History Estoppel ............................................................................ 9

IV. CONCLUSION ............................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abbott Labs. v. Dey, L.P.*,
  287 F.3d 1097 (Fed. Cir. 2002) ..................................................................................................10

*Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*,
  625 F.3d 7249 (Fed. Cir. 2010) ....................................................................................................3

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002) ....................................................................................................10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  535 U.S. 722 (2002) ....................................................................................................................10

*Function Media, LLC v. Google, Inc.*,
  2011 WL 4017953 (E.D. Tex. Sep. 9, 2011) ................................................................................4

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  645 F.3d 1336 (Fed. Cir. 2011) ................................................................................................5, 7

*Meyers v. Asics Corp.*,
  974 F.2d 1304 (Fed. Cir. 1992) ....................................................................................................7

*Radio Sys. Corp. v. Lalor*,
  709 F.3d 1124 (Fed. Cir. 2013) ....................................................................................................5

*Seagen Inc. v. Daiichi Sankyo Co.*,
  2022 WL 2789901 (E.D. Tex. July 15, 2022) ..............................................................................3

*Shire Orphan Therapies LLC v. Fresenius Kabi USA, LLC*,
  2018 WL 2684097 (D. Del. June 5, 2018) ...................................................................................5

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
  728 F.3d 1309 (Fed. Cir. 2013) ...............................................................................................9, 10

Netlist respectfully moves for summary judgment dismissing Micron's equitable defenses of prosecution laches, standards-based estoppel, and prosecution history estoppel (Affirmative Defenses Nos. 4, 5, and 15). Micron has not presented evidence sufficient to create a genuine dispute on any such defense. Further, these defenses largely repeat arguments this Court already rejected following the bench trial in *Netlist v. Samsung. See* No. 2:21-cv-463, Dkt. 550 (Ex. 1).

## I.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether summary judgment should issue dismissing Micron's equitable defenses?

## II.   STATEMENT OF UNDISPUTED FACTS

1. The '918 and '054 Patents both claim priority to U.S. Provisional Patent App. No. 60/941,586 (the "'586 provisional application"), which was filed on June 1, 2007, and non-provisional Patent App. No. 12/131,873 (the "'873 application"), filed on June 2, 2008. Ex. 1 at FF6.

2. On September 29, 2008, Netlist filed U.S. Patent App. No. 12/240,916, a continuation of the '873 application. Ex. 2. During prosecution of the '916 application, the PTO issued a restriction requirement requiring Netlist to elect a subset of its originally filed claims for prosecution. (Ex. 2 at 118–24.) On May 20, 2011, Netlist elected to first prosecute Group III in the '916 application. (Ex. 2 at 133).

3. Between 2008 and 2022, Netlist prosecuted applications in the patent family of the '918 and '054 Patents, including U.S. Patent App. No. 12/240,916 discussed above, U.S. Patent App. No. 13/559,476 (filed Jul. 26, 2012 and issued October 28, 2014 as Patent No. 8,874,831), U.S. Patent App. No. 14/489,269 (filed Sep. 17, 2014 and issued Oct. 13, 2015 as Patent No. 9,158,684), U.S. Patent App. No. 14/840,865 (filed Aug. 31, 2015 and issued Mar. 27, 2018 as Patent No. 9,928,186), U.S. Patent App. No. 15/934,416 (filed Mar. 23, 2018). '918 at pgs. 1-5, '054 at pgs. 1-5.

4.  Netlist filed the applications for the '918 and '054 Patents on December 30, 2020 and May 24, 2021, respectively. Netlist sought expedited examination of both applications, *see* Ex. 3 at 436; Ex. 4 at 487, and both patents issued within a year after the applications were filed. '918 at 1, '054 at 1. The '918 and '054 Patents have the same expiration date as the original parent patent to which they claim priority.

5.  JEDEC policies are set out in the JEDEC Manual of Organization and Procedure, JM21. Ex. 5. Section 8.2.3 of JM21 addresses the duty of disclosure for potentially essential patents. It provides that the duty of disclosure to JEDEC is specific to Representatives, i.e., the individual who represents the company at JEDEC meetings, and is limited to potentially essential patents of which the representative has personal knowledge. Ex. 1 at FF24; Ex. 5 (JM21) at § 8.2.3, *see also id.* §§ 3.4, 8.2.1, Annex A.1; Ex. 6 (Halbert Depo.) at 92:19-24 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Neither the Representative nor Committee Member has any obligation to conduct a search for potentially essential patents. *Id.*; Ex. 6 (Halbert Depo.) at 57:21-58:1 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

6.  The "Representative" is "an individual nominated by the member company to represent the member company on the committee." Ex. 5 at § 8.2.1 (defining "Representative" as "An individual who represents a Committee Member."). Netlist's JEDEC representative is Mario Martinez. Ex. 7 (Milton Depo.) at 11:6-10; Ex. 8 (Hobbs Depo.) at 28:6-8; Ex. 1 at CL7, CL8.

7.  Mr. Martinez testified that he did not have personal knowledge of any essential patents. Ex. 9 (Martinez Depo.) at 198:10-21 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████

8. The JEDEC Patent Policy states that "Disclosure of a patent is deemed to include all patents claiming priority of a single filing." Ex. 5 (JM21U) at § 8.2.1. ████████████ ███████████████████████████████████████████████████ Ex. 10 (JEDEC00035875) at -893, -895; Ex. 11 (NETLIST_SAMSUNG_EDTX00022012) at -042, -044. The '918/'054 Patents claim priority to the same filing as the '833/'831 Patents, non-provisional appl. No. 12/131,873 and provisional applications Nos. 61/512,871, 60/941,586.

9. The term "array dies" was present in the original claims of both the '060 and '160 Patents. Ex. 12 ('060 File History) at 495; Ex. 13 ('160 File History) at 185.

### III. ARGUMENT

#### A. Prosecution Laches

Micron alleges a defense of prosecution laches as to the '918 and '054 Patents. Ex. 14 (Micron Sixth Suppl. Resp. to 1st ROGs) at 129-135. "Prosecution laches as a defense to infringement requires proof of two elements: (a) that the patentee's delay in prosecution was unreasonable and inexcusable under the totality of the circumstances; and (b) that the accused infringer or the public suffered prejudice attributable to the delay." *Seagen Inc. v. Daiichi Sankyo Co.*, 2022 WL 2789901, at *4 (E.D. Tex. July 15, 2022) (citing *Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*, 625 F.3d 724, 728-29 (Fed. Cir. 2010)). Micron has the burden of proving this defense by clear and convincing evidence. *Id.* at *4. Here, Micron has introduced no evidence sufficient to create a genuine dispute of material fact regarding either element of its defense.

Micron's prosecution laches theory is that Netlist purportedly delayed in prosecuting claims that ████████████████████████████████████████ Ex. 14

(Interrogatory Resp.) at 131. This is the exact same theory of laches this Court rejected following the bench trial in *Netlist v. Samsung*, where the Court found that Netlist engaged in no unreasonable or unexplained delay in prosecuting such claims:

> In this case, Netlist's prosecution of the '918 and '054 Patent claims—including its decision of when and how to prosecute disclosed inventions and their embodiments, such as those directed to hybrid memory and those that are not—does not amount to an "unreasonable and unexplained delay in prosecution that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances" so as to warrant a finding of prosecution laches.

Ex. 1 at 36; *see also id.* at 37 ("The prosecution history of the '918 and '054 Patent family further indicates that Netlist showed at least some reasonable diligence in prosecuting each of the patent applications that arose from the disclosure set forth in the '918 and '054 Patent family specification from the time Netlist first filed its initial application in 2008.").

Micron identifies no evidence to support a contrary conclusion here. There is no dispute that as the Court found in *Samsung*, "Netlist continuously filed patent applications between 2008 to the present day," that "Netlist has done nothing to extend its patent term," and that (contrary to the allegations of delay) "Netlist sought, and was granted, expedited prosecution for the '918 and '054 Patents." Ex. 1 at 37-39, Exs. 3, 4 (File Histories). Micron has put forward no contrary evidence – indeed, Micron has put forward no expert testimony at all on prosecution laches, much less any identifying an unreasonable or unexplained conduct during prosecution. *See, e.g.*, *Function Media, LLC v. Google, Inc.*, 2011 WL 4017953, at *2 (E.D. Tex. Sep. 9, 2011) (granting JMOL of no invalidity where defendant failed to present supporting expert testimony).

Summary judgment is also appropriate for the independent reason that Micron has no evidence that it suffered prejudice, which is a required element of prosecution laches. Micron's only allegation of prejudice is a single sentence in its Interrogatory response asserting (without citation to evidence) that it "invested in and worked on manufacturing the accused DDR5 products during the period of Netlist's delayed prosecution." Ex. 14 at 135. But proving prejudice

requires more: "To show that a party was 'adversely affected,' it must show that the holder of intervening rights would have either done something differently or experienced a change in economic position as a result of the alleged delay in issuance of the patent-in-suit." *Shire Orphan Therapies LLC v. Fresenius Kabi USA, LLC*, 2018 WL 2684097, at *23 (D. Del. June 5, 2018).

Here, Micron has not even asserted, much less put forward evidence, that it would have done something differently or that its economic position would have changed if the patents were prosecuted sooner. In fact the evidence is the opposite—Micron's corporate representative testified he was not aware of any investigation into whether Micron used Netlist's patents prior to this lawsuit. Ex. 15 (Ross Depo.) at 76:17-22 ▮; 77:7-15 ▮). Micron therefore could not have detrimentally relied on any alleged delay by Netlist.

### B.  Equitable / Standards-Based Estoppel

Micron alleges a defense of standards-based estoppel as to the '918, '054, '060, and '160 Patents. Ex. 14 (Micron Sixth Suppl. Resp. to 1st ROGs) at 135-136 ('918/'054 Patents), 167-168 ('060/'160 Patents). Once again, this is the same defense this Court rejected in *Samsung*.

Equitable estoppel applies where: "(1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013). In the context of standard setting organizations, the alleged infringer must prove by clear and convincing evidence that "the

patentee had a duty of disclosure to the standard setting organization" and "the patentee breached that duty." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011).

1. **'918 and '054 Patents**

    a) <u>There Is No Evidence of Breach of Duty</u>

Micron's estoppel theory is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 14 at 136. This Court already found, in its bench trial ruling in *Netlist v. Samsung*, that "The duty of disclosure is specific **to Representatives**, i.e., the individual who represents the company at JEDEC meetings, and is limited to potentially essential patents of which the representative has personal knowledge." Ex. 1 at FF24 (emphasis added); *see also id.* FF4-FF27; Ex. 5 (JM21U). The Court further found that there was no evidence any Netlist representative violated a duty of disclosure as to the '918 and '054 Patents: "Samsung has not demonstrated that Netlist had a duty to disclose the '918 and '054 Patents, at least based on the testimony of Mr. Martinez, Netlist's Representative in JEDEC committees, who was not shown to have personal knowledge of any Netlist patents that were essential or potentially essential to any JEDEC standard. Samsung has not identified any other individual having a duty of disclosure with respect to essential or potentially essential patents personally known to such individual that Netlist could have violated." Ex. 1 at CL7, CL8.

Micron has put forward no such evidence either. The record in this case confirms that Mr. Martinez is Netlist's JEDEC representative. Ex. 7 (Milton Depo.) at 11:6-10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 8 (Hobbs Depo.) at 28:6-8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Micron has not identified **any** evidence that Mr. Martinez had personal knowledge of the '918 and '054 Patents and failed to disclose them to JEDEC. To the contrary, Mr. Martinez testified he did not have knowledge of any potentially essential patents. Ex. 9 (Martinez) at 198:10-15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████████████████████ Nor has Micron identified any other individual at Netlist who was a JEDEC representative, had a duty of disclosure, and who failed to comply with that duty. Moreover, as addressed in Netlist's co-pending motion, there is no genuine dispute the '918 and '054 Patents are not standard-essential and thus there was no duty to disclose them even if a representative had known of them.

Further, Micron's allegation that Netlist purportedly failed to disclose the '918 and '054 Patents has been disavowed by Micron's own expert. The JEDEC patent policy provides that "Disclosure of a patent is deemed to include all patents claiming priority of a single filing." Ex. 5 at § 8.2.1. Micron's expert Dr. Lynde affirmatively acknowledges that Netlist disclosed the '918 and '054 Patents pursuant to this rule. Ex. 16 (Lynde Rpt.) at ¶ 105 ██████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████ Netlist has disclosed to JEDEC other parent patents to the '918 and '054 Patents as well, such as U.S. Patent Nos. 8,301,833 and 8,874,831, which both claim priority to the same filings. Ex. 10, Ex. 11 (Disclosure Forms). Micron's concession that the patents were disclosed defeats its defense. *See Hynix*, 645 F.3d at 1348 (patentee did not breach its duty of disclosure to JEDEC where, as Netlist did here, "it disclosed to JEDEC its '703 patent, a member of the '898 patent family").

b) There Is No Evidence of Material Prejudice

Summary judgment is also appropriate for the independent reason that Micron has no evidence of prejudice. Prejudice requires proving that Micron "would have acted differently" had there been disclosure. *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992).

Here Micron cannot show it would have acted differently, because Micron's corporate representative testified that he was not aware of Micron checking the patents disclosed to JEDEC. Ex. 15 (Ross Depo.) at 76:6-10 ▮▮▮, 76:23-77:2 ▮▮▮ He further testified that he was not aware of Micron investigating whether its DDR5 products used any Netlist patents. Ex. 15 (Ross Depo.) at 76:17-22 ▮▮▮; 77:7-11 ▮▮▮. Micron likewise does not identify any evidence that JEDEC was considering or would have adopted any different proposal had additional disclosures occurred, or that any such alternative would have been viable.

The conclusory opinions offered in Mr. Halbert's rebuttal report regarding alleged alternatives to the DDR5 DIMM Standards do not create a genuine dispute on prejudice either. Ex. 17 (Halbert Rebuttal) at ¶¶ 21-24. As addressed in Netlist's co-pending motion to strike Mr. Halbert's report, Micron cannot rely on these opinions as supporting estoppel because (as the party bearing the burden of proof), Micron was required to identify any opinions regarding estoppel in any opening report. But even if considered, Mr. Halbert's opinions do not help Micron, because Micron does not identify any alternatives JEDEC was actually considering. To the contrary, Mr. Halbert states he is not aware of JEDEC discussing his alleged alternative. Ex. 17 (Halbert Rebuttal) at ¶ 23 ▮▮▮

### 2. '060 and '160 Patents

Micron's defense of standards-based estoppel for the '060 and '160 Patents fails for the same reasons. Once again, Micron has put forward no evidence that Mr. Martinez (or any other Netlist JEDEC representative) knew of the '060 and '160 Patents, thought that they were potentially essential, and failed to disclose them. Micron likewise has no expert or other evidence that the '060 and '160 Patents are potentially essential to any JEDEC standard. In fact, Mr. Halbert conceded that JEDEC does not require specific TSV configurations, while the '060 and '160 patent claims all place certain restrictions on how the die interconnects (*e.g.*, TSVs) are to be configured.   Ex. 6 (Halbert Tr.) at 131:22-25

Further, as with the '918 and '054 Patents, Micron has not put forward any evidence of prejudice. Micron's Interrogatory response does not allege any prejudice, and Micron has not put forward any fact or expert testimony identifying any prejudice. And again, Micron's corporate representative testified he was not aware of Micron even investigating whether its HBM products used any Netlist patents. Ex. 15 (Ross Depo.) at 77:12-15

### C. Prosecution History Estoppel

Micron asserts a defense of prosecution history estoppel as to the '060 and '160 Patents, claiming that                                                                                                                                                                                                                                      Ex. 14 (Micron ROG Resp.) at 168-169.

Micron conflates prosecution disclaimer with prosecution history estoppel. While this Court held in *Samsung* there was a disclaimer as to the term "array die" and the Parties agreed to that construction here, Micron has not identified any evidence of the different defense of

prosecution history estoppel. Prosecution history estoppel is a "distinct" doctrine from prosecution disclaimer. *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013). "Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." *Id.* "Prosecution disclaimer, on the other hand, affects claim construction and applies where an applicant's actions during prosecution prospectively narrow the literal scope of an otherwise more expansive claim limitation." *Id.*

Prosecution history estoppel "arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002). Here, Micron has not identified any narrowing amendment of the term "array die" that could give rise to estoppel. The term "array dies" was present in the original claims of both the '060 and '160 Patents. Ex. 12 ('060 File History) at 495 (original claims requiring "array dies"); Ex. 13 ('160 File History) at 185 (same). Where a limitation "was not amended during prosecution" "there can be no amendment-based estoppel with respect to this claim limitation." *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1103 (Fed. Cir. 2002); *see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 813 (Fed. Cir. 2002) (reversing finding of prosecution history estoppel where "the applicants did not amend this language regarding the location of the terminals"). Further, Micron's expert, Dr. Woods, does not opine there is any prosecution history estoppel for this term. Summary judgment is therefore appropriate.

**IV.   CONCLUSION**

Netlist respectfully requests summary judgment as discussed above.


Dated: November 14, 2023                    Respectfully submitted,

                                            */s/ Jason G. Sheasby*

                Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Andrew J. Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

                */s/ Yanan Zhao*
                Yanan Zhao

### CERTIFICATE OF SERVICE

I hereby certify that, on November 14, 2023, a copy of the foregoing was served to all

counsel of record via Email as agreed by the parties.

/s/ *Yanan Zhao*
Yanan Zhao