**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS INC., MICRON TECHNOLOGY TEXAS LLC,<br><br>Defendants. | ) | Case No. 2:22-CV-203-JRG<br><br>JURY TRIAL DEMANDED<br><br>[redacted] |

**NETLIST INC.'S MOTION FOR SUMMARY JUDGMENT THAT THE ASSERTED PATENTS ARE NOT STANDARD-ESSENTIAL**

**TABLE OF CONTENTS**

**Page**

I. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT .......... 1

II. STATEMENT OF UNDISPUTED FACTS .......... 1

III. ARGUMENT .......... 2

A. The ’060 and ’160 Patents .......... 2

B. The ’918 and ’054 Patents .......... 4

IV. CONCLUSION .......... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................2

*Intel Corp. v. Future Link Sys., LLC*,
268 F.Supp.3d 605 (D. Del. 2017)....................4, 5, 6

**Rules**

Fed. R. Civ. P. 56(g) ....................2

Netlist respectfully requests summary judgment that the Asserted Patents are not standard essential. Netlist does not contend any of the Asserted Patents are essential, and Micron has put forward no evidence sufficient to create a genuine dispute on essentiality.

## I. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether the Court should enter summary judgment that the Asserted Patents are not standard essential?

## II. STATEMENT OF UNDISPUTED FACTS

1. Netlist does not contend any of the asserted claims of any patent-in-suit is standard essential. Ex. 4 (Netlist Second Supp. Resp. to Interrogatory No. 15) at 129.

2. The JEDEC Patent Policy (JM21U) defines an "Essential Patent" as "A Patent containing one or more Essential Patent Claims." Ex. 1 at § 8.2.1. It further defines "Essential Patent Claims" as "Those Patent claims the use of which would necessarily be infringed by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard." *Id.* The policy also states that "Essential Patent Claims do not include Patent claims covering aspects that are not required to comply with a JEDEC Standard, or are required only for compliance with sections that are marked 'example,' 'non-normative,' or otherwise indicated as not being required for compliance, or related to underlying enabling technologies or manufacturing techniques not specified in the standard." *Id.*

3. Micron's corporate representative regarding JEDEC, Mr. Ross, testified he had not done any analysis of whether the Asserted Patents are standard-essential. Ex. 2 (Ross Tr.) at 15:15-22

[REDACTED]

80:1-80:5

[redacted] Micron's corporate representative regarding Micron's "Breach of Rand Licensing Obligation" defense similarly testified he did not know whether any Asserted Patent was standard-essential. Ex. 3 (Westergard Depo.) at 77:4-12 [redacted] 77:22-78:5.

## III. ARGUMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may "enter an order stating any material fact . . . that is not genuinely in dispute and treat[] the fact as established in the case." Fed. R. Civ. P. 56(g). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### A. The '060 and '160 Patents

There is no genuine dispute of fact that the '060 and '160 Patents are not standard-essential. Netlist does not contend that the '060 and '160 Patents are standard essential, and has expressly stated this in its Interrogatory responses. Ex. 4 (Netlist Second Supp. Resp. to Interrogatory No. 15) at 129

[redacted]

Micron's technical expert regarding the '060 and '160 Patents, Dr. Woods, does not opine that either patent is standard essential, and in fact does not address essentiality at all. Micron's JEDEC expert, Mr. Halbert, similarly does not opine any Asserted Patent is essential. Ex. 5 (Halbert Depo.) at 60:11-14 [redacted] 131:22-25 [redacted]

Micron's corporate representative regarding JEDEC, Mr. Ross, similarly testified he did no analysis as to whether any Asserted Patents was standard essential. Ex. 2 (Ross Tr.) at 15:15-22 [redacted] And Micron's corporate representative regarding Micron's RAND defense testified he did not know whether any Asserted Patent was standard-essential. Ex. 3 (Westergard Depo.) at 77:4-12 [redacted] 77:22-78:5.

Micron did attempt, in an Interrogatory response, to take a position that the Asserted Patents are not standard-essential for purposes of infringement, but are standard-essential for purposes of damages. Ex. 6 (Micron Resp. to Interrogatory No. 24) at 5. While Micron appears to have abandoned this position as to the '060 and '160 Patents as it did not address it in expert reports, to the extent Micron maintains it, a contention without evidence does not create a triable issue of fact.

Here, Micron has not put forward any evidence or technical analysis establishing that any claim of the '060 or '160 Patents meets the requirements for essentiality under JEDEC policy – i.e., that it "would necessarily be infringed by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard." Ex. 1. In fact, its corporate representative, Mr. Halbert, affirmatively stated that the JEDEC specifications do not require or restrict how TSVs in the accused HBM products are to be configured. Ex. 5 (Halbert Depo.) at 131:22-25 [redacted] TSV configuration is one element of the claims. *See* '060 patent, claim 1 (having elements directed to how "die interconnect(s)" are to be

configured); '160 patent, claim 1 (same). Because there is no technical analysis in the record as to whether any asserted claim is essential, summary judgment is appropriate on this issue. *Intel Corp. v. Future Link Sys., LLC*, 268 F.Supp.3d 605 (D. Del. 2017) is instructive. There, the District Court granted summary judgment that there was no RAND obligation where defendants' technical experts failed to provide complete analysis that claims were necessary to practice a standard. *Id.* at 610-12.

### B. The '918 and '054 Patents

There likewise is no genuine dispute of fact that the '918 and '054 Patents are not standard-essential. Netlist does not contend that either patent is standard-essential and confirmed this in its Interrogatory responses. Ex. 4 (Netlist Second Supp. Resp. to Interrogatory No. 15) at 129.

Micron has no evidence sufficient to create a triable issue of fact about whether the '918 and '054 Patents are standard essential. Indeed, Micron's technical expert regarding the '918 and '054 Patents, Dr. Stone, relies on non-essentiality in his obviousness analysis. Ex. 7 (Stone Opening Rpt.) at ¶ 348 [redacted]

Consistent with Micron's strategy of taking whatever position on essentiality benefits it in the moment — Dr. Stone attempts to assert the opposite opinion in his rebuttal report that [redacted] Ex. 8 (Stone Rebuttal Rpt.) at ¶ 172. But this does not create a genuine dispute of fact because Dr. Stone does not support this assertion with actual analysis establishing that, as is required by the JEDEC policy, any claim of the '918 or '054 Patents "would necessarily be infringed by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard." Ex. 1.

Dr. Stone's section on "essentiality" is limited to five paragraphs (Ex. 8 ¶¶ 172-177) and

contains no analysis comparing the complete claim elements of any claim of the '918 and '054 Patents to the JEDEC standards, much less establishing that any claim is necessarily infringed by practicing the standard. Most of these paragraphs do not address essentiality at all, instead concerning the different issues of whether [REDACTED] (¶¶ 173-175), and where Micron sources its PMIC components (¶ 177). The only paragraph that even arguably addresses essentiality is Paragraph 174, which asserts without explanation that [REDACTED] Ex. 8. This is not sufficient to create a genuine dispute.

***First***, the claims of the '918 and '054 Patents are not limited to a buck converter, and contain many other elements (such as, for example in the '918 Patent, a printed circuit board with a specific configuration, a converter circuit, enumerated output voltages and their supply of the voltages to on-DIMM components such as SDRAM devices, and additional coupled circuits). Therefore, even accepting arguendo that Dr. Stone is correct that a single element of the '918 and '054 Patent claims (a buck converter) is present in the JEDEC standards, this is not the test for essentiality, which requires that the complete claim would "necessarily ***be infringed***," i.e., that ***all*** elements are present in required portions of the standard. Ex. 1 (JM21U) at § 8.2.1 (emphasis added). Dr. Stone provides no analysis establishing this for any claim. Nor does any other Micron witness. Ex. 5 (Halbert Depo.) at 60:11-14 (Micron JEDEC Expert did not analyze essentiality); Ex. 2 (Ross Tr.) at 15:15-22 (same for Micron corporate representative regarding JEDEC); Ex. 3 (Westergard Depo.) at 77:4-12, 77:22-78:5 (same for Micron corporate representative regarding alleged breach of RAND obligation).

*Intel*, 268 F.Supp.3d 605 again is instructive. There, Defendants' expert "wrongly classifies claims as 'Necessary Claims' when '***any element*** of the claim—not the claim as a whole—is necessarily embodied by products that implement a PCI–SIG [(PCI Special Interest Group)]

standard.'" *Id.* at 610. Like JEDEC, the standard-setting organization at issue in that case defined an essential claim as one that is "necessarily infringed by 'an implementation of a Specification.'" *Id.* at 611. The Court in *Intel* granted summary judgment and found the analysis of Defendant's expert insufficient to create a genuine dispute, explaining "The Court agrees with Future Link that Intel's interpretation of 'Necessary Claim'—as including claims even when only some elements are infringed (even when non-infringed elements are merely enabling technologies)—improperly expands the Scope of a 'Necessary Claim' beyond the definition provided for by the Bylaws." *Id.* at 611. So too here, Micron's attempt to argue that the claims are essential because a single element (the buck converter) is present in the standards is contrary to the JEDEC definition of essentiality.

***Second***, whether or not Micron's products comply with the DDR5 standards does not address the separate question of whether Netlist's patent claims cover required portions of the standard. Micron's corporate representative admitted that Micron did not analyze the latter question, and Micron's experts do not address it either. Ex. 2 (Ross. Depo.) at 80:1-80:5 [REDACTED]. Further, Micron's JEDEC expert Mr. Halbert testified that just because an infringing product is standards-compliant does not mean the patent claim is essential. Ex. 5 (Halbert Depo.) at 58:23-59:9 [REDACTED] Mr. Halbert further confirms in his report that [REDACTED] Ex. 9 (Halbert Opening Rpt.) at ¶ 41.

***Third***, Netlist's expert Dr. Mangione-Smith explains that the arrangement of buck converters and converter circuits in the infringing Micron products is not required by the JEDEC standard, but rather is part of an optional [REDACTED] Ex. 10 (Mangione-Smith Rebut.) at ¶¶ 107-109. He similarly explained that the JEDEC standard does not require any specific structures to generate voltages. *Id.* at ¶ 118. This is confirmed by the JEDEC standard itself, which states that the example reference designs are not required and that departure from them may be required to meet the standard: "Reference design examples are included which provide an initial basis for DDR5 DIMM and LRDIMM designs. Modifications to these reference designs may be required to meet all system timing, signal integrity, and thermal requirements." *Id.* at ¶ 119 (quoting JESD305 R/LRDIMM Specification).

Dr. Mangione-Smith's analysis is not rebutted by Micron, and is consistent with the testimony by Micron's PMIC suppliers. Notably, JESD301-1 and JESD301-2 are specifications on PMICs. PMIC suppliers also testified that JEDEC does not specify how the outputs from the PMICs are to be used. Ex. 11 (Hoang Tr.) at 24:17-22 [REDACTED] 25:1-4 [REDACTED] Ex. 12 (Lo Tr.) at 45:13-16 [REDACTED] (objections omitted), 46:12-16 [REDACTED] (objections omitted). In contrast, Netlist's claims require that the enumerated output voltages from the recited buck converters and converter circuit are to be coupled to components on the DIMMs. For instance, [REDACTED]. *See, e.g.*, Ex. 13 (Mangione-Smith Opening Rpt.) at Ex. B ¶¶ 95-100, 112. But these couplings are not required by the PMIC specifications.

The JEDEC policy is clear that "Essential Patent Claims" exclude those that cover sections of the standards marked as "example." Ex. 1 (JM21U) at § 8.2.1 ("NOTE Essential Patent Claims do not include Patent claims covering aspects that are not required to comply with a JEDEC Standard, or are required only for compliance with sections that are marked 'example,' 'non-normative,' or otherwise indicated as not being required for compliance, or related to underlying enabling technologies or manufacturing techniques not specified in the standard."). Micron's corporate representative regarding JEDEC agreed the example diagrams in the JEDEC specification are not required by the standard. Ex. 2 (Ross Depo.) at 13:15-14:14 Mr. Ross further admitted that the JEDEC standards do not mandate any particular implementation:

*Id.* at 81:23-82:21. In short, there is no evidence in the record that creates a genuine dispute on essentiality as actually defined in the JEDEC policy.

## IV. CONCLUSION

Netlist respectfully requests summary judgment that the Asserted Patents are not essential.

Dated: November 14, 2023

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 14, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao