# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:22-cv-203-JRG |
| | ) |
| MICRON TECHNOLOGY, INC.; | ) JURY TRIAL DEMANDED |
| MICRONSEMICONDUCTOR | ) |
| PRODUCTS, INC.; MICRON | ) ▓▓▓▓▓▓▓▓ |
| TECHNOLOGY TEXAS LLC,. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF NETLIST INC.'S MOTION FOR
SUMMARY JUDGMENT OF NO PATENT MISUSE**

**TABLE OF CONTENTS**

**Page**

I. STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ............................1

II. STATEMENT OF UNDISPUTED FACTS.................................................................................1

III. LEGAL STANDARD ........................................................................................3

IV. ARGUMENT........................................................................................................3

    A. Micron Has Not Established Any Facts Contradicting The Plain Reading Of The Hynix Agreement, Which Is Not Restrictive.....................................3

    B. Micron Cannot Demonstrate Patent Misuse Even If Its Misreading Of The ▓▓▓▓▓e Were Correct......................................................................5

    C. Patent-To-Patent Tying Does Not Constitute Misuse....................................6

    D. Micron's Tying Claim Must Be Dismissed Because There Is No Evidence Netlist Has The Requisite Market Power.......................................8

    E. Micron's Allegations Of FRAND Violations Do Not Constitute Misuse............................................................................................................9

V. CONCLUSION ..................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple v. Samsung*,
   2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ...........9

*Bayer AG v. House Pharms., Inc.*,
   228 F. Supp. 2d 467 (D. Del. 2002)...........6

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
   65 F.3d 1406 (7th Cir. 1995)...........4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...........3

*Compagnie Financiere De CIC Et De L'Union Europeenne, Mgmt. Invest. Funding Ltd. v. Merrill Lynch*,
   232 F.3d 153 (2d Cir. 2000)...........5

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451 (1992)...........8

*First Nat'l Bank of Jackson v. Pursue Energy Corp.*,
   799 F.2d 149 (5th Cir. 1986)...........5

*Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd.*,
   2017 WL 750700 (D. Del. Feb. 27, 2017) ...........7

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
   547 U.S. 28 (2006)...........8

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
   2013 U.S. Dist. LEXIS 177836 (E.D. Va. Dec. 18, 2013) ...........9

*Monsanto v. Scruggs*,
   459 F.3d 1328 (Fed. Cir. 2006)...........3, 4

*No Spill LLC v. Scepter Canada, Inc.*,
   2022 WL 1078435 (D. Kan. Apr. 6, 2022) ...........5

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 883 F.2d 1101 (1st Cir. 1989) ...........4

*On Track Innov. Ltd. v. T-Mobile USA, Inc.*,
   106 F. Supp. 3d 369, 404 (S.D.N.Y. 2015)...........6

*Princo Corp. v. ITC*,
    616 F.3d 1318 (Fed. Cir. 2010) ................................................................................................*passim*

*St. Lawrence Communs. LLC v. Motorola Mobility LLC*,
    2018 U.S. Dist. LEXIS 25229 (E.D. Tex. Feb. 15, 2018) ....................................... 3, 6, 8, 9

*Sycamore IP Holdings LLC v. AT&T Corp.*,
    294 F. Supp. 3d 620 (E.D. Tex. 2018) .................................................................................. 9

*Trinity Indus. v. Rd. Sys.*,
    235 F. Supp. 2d 536 (E.D. Tex. 2002) .................................................................................. 3

*U.S. Philips Corp. v. Int'l Trade Comm'n*,
    424 F.3d 1179 (Fed. Cir. 2005) .......................................................................................... 7, 8

**Rules**

Fed. R. Civ. Proc. 56(a) ............................................................................................................... 3

Netlist respectfully requests that the Court grant summary judgment dismissing Micron's affirmative defense of patent misuse[1] because Micron cannot meet its burden to show Netlist has engaged in one of the "handful of specific practices" falling within the "narrow scope" of patent misuse. *Princo Corp. v. ITC*, 616 F.3d 1318, 1328-29 (Fed. Cir. 2010).

## I. STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

Whether summary judgment should be granted of no patent misuse.

## II. STATEMENT OF UNDISPUTED FACTS

1) Micron raised the affirmative defense of patent misuse on August 30, 2023, three weeks before the close of fact discovery. Dkts. 160, 182 at 3. Micron's Answer alleges that Netlist "leveraged market power created as a result of the [JEDEC] standard-setting process" through a "secret, anticompetitive agreement with its competitor SK hynix." Dkt. 160 (Answer) at ¶ 58.

2) The license between Netlist and SK hynix contains ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 193-2.

3) The Hynix agreement provides that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[1] As detailed in Netlist's Motion to Strike Micron's Affirmative Defense of Patent Misuse, Dkt. 193, Micron's patent misuse defense should be dismissed because it is both procedurally improper and facially deficient. If this Court finds Micron's pleadings on patent misuse sufficient, it should grant this motion for summary judgment because Micron cannot meet its burden.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ *Id.*

4) The Agreement further provides that ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ *Id.*

5) Nothing in the ████████ or any other provision of the SK hynix License restricts Netlist's ability to negotiate different terms with other licensees (including licenses with different scopes or royalty rates). Nor does it give SK hynix control over the terms of any such license.

6) Netlist's CEO, Mr. Hong, testified that Netlist does not treat the Hynix Agreement as placing any legal limits on the terms of ████████████████████████ and that Netlist ████████ ████████████████████████ Ex. 1 (Hong Depo Tr.) at 157:12-158:9.

7) Netlist's Interrogatory No. 10, first served on January 11, 2023, requests that Micron "Set Forth Your Complete Basis for your affirmative defenses." Ex. 2 (Micron's Sixth Suppl. Responses). Micron's Sixth Supplemental Responses to Netlist's First Set of Interrogatories, served on September 20, 2023, did not identify a patent misuse defense as being asserted, and did not provide any basis for its patent misuse defense either in response to Interrogatory No. 10, or Interrogatory No. 9 where Micron provided factual bases for its other asserted affirmative defenses. *Id.*

8) Micron provided no expert testimony in support of its patent misuse defense and did not

designate a witness on Netlist's 30(b)(6) Topic 88 requesting a witness on "[a]ny factual bases for Micron's affirmative defenses." Ex. 3.

### III. LEGAL STANDARD

Micron bears the burden of "presenting evidence that persuades the court that [Netlist's] conduct amounted to patent misuse as a matter of law." *Trinity Indus. v. Rd. Sys.*, 235 F. Supp. 2d 536, 542 (E.D. Tex. 2002). Rule 56(a) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Courts in this district require a defendant to establish patent misuse "by clear and convincing evidence." *St. Lawrence Communs. LLC v. Motorola Mobility LLC*, 2018 U.S. Dist. LEXIS 25229, *15 (E.D. Tex. Feb. 15, 2018).

"In determining whether a particular licensing condition has the effect of impermissibly broadening the patent grant, courts have noted that the patentee begins with substantial rights under the patent grant—'includ[ing] the right to suppress the invention while continuing to prevent all others from using it, to license others, or to refuse to license, . . . to charge such royalty as the leverage of the patent monopoly permits,' and to limit the scope of the license to a particular 'field of use.'" *Princo*, 616 F.3d at 1328-29. "Establishing patent misuse requires… evidence that the patent holder has impermissibly broadened the scope of the patent grant causing an anticompetitive effect." *Trinity*, 235 F. Supp. 2d at 542. "Where the patentee has not leveraged its patent beyond the scope of rights granted by the Patent Act, misuse has not been found." *Princo*, 616 F.3d at 1328; *Monsanto v. Scruggs*, 459 F.3d 1328, 1339 (Fed. Cir. 2006) ("[i]n the cases in which [a] restriction is reasonably within the patent grant, the patent misuse defense can never succeed.").

### IV. ARGUMENT

**A.     Micron Has Not Established Any Facts Contradicting The Plain Reading Of**

- 3 -

### The Hynix Agreement, Which Is Not Restrictive

Micron's patent misuse defense is premised solely on the theory that the Hynix Agreement somehow restricts Netlist's ability to offer licensing terms to its patents.  Specifically, Micron's Answer alleges that the Agreement "determines the lowest price Netlist may offer Micron for a license," and "condition[s] the grant of a patent license on the payment of royalties on products that do not use the teaching of any patent asserted by Netlist."  Dkt. 160 at ¶ 59. But the Agreement does no such thing.

Instead, the Hynix Agreement contains a  Dkt. 193-2 § 7.12. *Id.* Further, this assessment only applies to *Id.* § 7.12. The terms of the Hynix license thus only impact the terms of Netlist's already-granted license to **Sk hynix**, not a future license to any other party.

The mere inclusion of a ▇ in an agreement cannot establish patent misuse. Such clauses "are standard devices by which buyers try to bargain for low prices, by getting the seller to agree to treat them as favorably as any of their other customers." *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995). They do not constitute "price fixing." *Id.* On the contrary, courts have held that such standard agreements **further** competition rather than harm it. *Id.; see also Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 883 F.2d 1101,

1110 (1st Cir. 1989) ("'[A] policy of insisting on a supplier's lowest price—assuming that the price is not 'predatory' or below the supplier's incremental cost—tends to further competition on the merits and, as a matter of law, is not exclusionary.'"); *No Spill LLC v. Scepter Canada, Inc.*, 2022 WL 1078435, at *10 (D. Kan. Apr. 6, 2022) ("[m]ost-favored-nation clauses" in a patent license "generally foster competition rather than hinder it") (granting motion to dismiss).

Because the plain text of the ▮▮▮▮▮▮▮▮ contradicts Micron's clear misreading of the agreement, Micron's patent misuse defense fails as a matter of law. *First Nat'l Bank of Jackson v. Pursue Energy Corp.*, 799 F.2d 149, 151 (5th Cir. 1986) (an unambiguous contract is interpreted as a matter of law.). Even assuming the agreement is ambiguous, however, Micron has failed to introduce any extrinsic evidence to support its interpretation. *Compagnie Financiere De CIC Et De L'Union Europeenne, Mgmt. Invest. Funding Ltd. v. Merrill Lynch*, 232 F.3d 153, 158 (2d Cir. 2000) ("A court may also grant summary judgment regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting the party's interpretation of the language.").

The only testimony Micron elicited on this topic—from Netlist's CEO, Mr. Hong—contradicts Micron's reading. When asked ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 (Hong Depo Tr.) at 157:12-158:9. Micron has not offered any evidence to contradict Mr. Hong's testimony or the plain reading of the Hynix Agreement. The only evidence in the record thus shows that there is no material dispute of fact on this issue.

### B. Micron Cannot Demonstrate Patent Misuse Even If Its Misreading Of The ▮▮▮▮▮▮▮▮ Were Correct

Even if the SK Hynix Agreement were restrictive in some manner, it would not constitute patent misuse. This is because (1) an alleged patent-to-patent tying arrangement does not constitute

- 5 -

patent misuse; (2) Micron has failed to produce any evidence that Netlist has market power; and (3) Micron's allegations of FRAND violations cannot serve as the basis for a patent misuse defense.

### C. Patent-To-Patent Tying Does Not Constitute Misuse

"[T]he key inquiry under the patent misuse doctrine is whether, by imposing the condition in question, the patentee has impermissibly broadened the physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects." *Princo*, 616 F.3d at 1328. Micron has produced no such evidence here. Micron's theory is that, under the terms of the Hynix Agreement, Netlist will only offer a license for "all of [its] patents," including both Netlist's essential and non-essential patents. Dkt. 221 at 2. Even setting Micron's blatant misreading of the Hynix Agreement aside, Micron's tying theory fails as a matter of law for multiple reasons.

As an initial matter, Micron has presented no evidence that Netlist has ever refused a request from Micron to license Netlist's patents on an individual basis or that Netlist has declined to engage in good faith licensing negotiations with Micron. This alone is fatal to its patent misuse defense. *Bayer AG v. House Pharms., Inc.*, 228 F. Supp. 2d 467 (D. Del. 2002) (granting summary judgment of no patent misuse where alleged infringer "provided no evidence of proposing a licensing arrangement to pay for actual use. Rather, they blame [patentee] for not doing so.").[2]

Moreover, even if Netlist had ever refused to license Micron its patents on an individual basis, this would not constitute patent misuse. Package licenses are commonly used in high-tech industries. Such licenses "help[] both parties avoid the extraordinary transaction costs of litigating or licensing a global patent portfolio… country-by-country or patent-by-patent." *Saint Lawrence*, 2018 WL 915125, at *9 (patentee licensing portfolio only on a worldwide basis was not misuse for improper tying); *see*

---

[2] A patentee's offer to license patents as a package does not constitute patent misuse where the offer was never consummated. *On Track Innov. Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 404 (S.D.N.Y. 2015) ("Many courts have concluded that mere offers cannot constitute patent misuse unless they are ultimately consummated.").

*also Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd.*, 2017 WL 750700, at *8 (D. Del. Feb. 27, 2017) (recommending dismissal of patent misuse counterclaim that was based on allegation that patentee had refused to separately license three asserted patents rather than entire patent portfolio). Moreover, as the Federal Circuit has explained, portfolio license arrangements do not raise the same anticompetitive concerns as would be raised by, for example, patent-to-product tying arrangements whereby a patentee requires a licensee to purchase its products in addition to taking a patent license:

> [A] package licensing agreement that includes both essential and nonessential patents does not impose any requirement on the licensee. It does not bar the licensee from using any alternative technology that may be offered by a competitor of the licensor. Nor does it foreclose the competitor from licensing his alternative technology; it merely puts the competitor in the same position he would be in if he were competing with unpatented technology. *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1190 (Fed. Cir. 2005).

Even assuming that a patent-to-patent tying arrangement could constitute patent misuse under certain circumstances, Micron has produced no evidence that Netlist's alleged tying arrangement here had any "anticompetitive effects" that would warrant a finding of patent misuse. *Princo Corp.*, 616 F.3d at 1328. In particular, Micron has produced no evidence that Netlist's supposed package license requirements have in any way foreclosed manufacturers from being able to use certain technology, or even that Netlist's alleged misconduct has "had any market effect at all." *Id.* at 1340; *see also U.S. Philips Corp.*, 424 F.3d at 1198 (reversing finding of patent misuse where "the evidence did not show that including those patents in the patent packages had a negative effect on commercially available technology."). Indeed, Micron has not even attempted to proffer an expert report analyzing the supposed effects of Netlist's licensing conduct.

> Moreover, it is well established that package licenses have numerous pro-competitive benefits:

> [P]ackage licensing reduces transaction costs by eliminating the need for multiple contracts and reducing licensors' administrative and monitoring costs…can also obviate any potential patent disputes between a licensor and a licensee and thus reduce the likelihood that a licensee will find itself involved in costly litigation over unlicensed patents with potentially adverse consequences for both parties…[and] grouping licenses in a package allows the parties to price the package based on their estimate of what it is

- 7 -

worth to practice a particular technology, which is typically much easier to calculate than determining the marginal benefit provided by a license to each individual patent.

*U.S. Philips Corp.*, 424 F.3d at 1192-93. Even assuming Netlist had insisted on package-licensing its patents, Micron has produced no evidence that these pro-competitive benefits would not apply here.

### D. Micron's Tying Claim Must Be Dismissed Because There Is No Evidence Netlist Has The Requisite Market Power

Micron's tying theory further fails because Micron has not presented any evidence that Netlist has market power. Section 271(d)(5) provides that a patentee does not engage in patent misuse if it "condition[s] the license of any rights to the patent … on the acquisition of a license to rights in another patent …, unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned." *See also Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 42 (2006) ("[F]airly read, [§ 271(d)] provides that without proof that [patent holder] had market power in the relevant market, its conduct . . . was neither 'misuse' nor an 'illegal extension of the patent right.'"). Accordingly, this Court has recognized that to establish "patent misuse with respect to tying… [f]irst, the defendant must demonstrate that the patent holder has market power in a clearly defined market." *St. Lawrence*, 2018 U.S. Dist. LEXIS 25229, at *22. Micron cannot meet this burden.

Market power is "the ability of a single seller to raise price and restrict output." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992). Micron has produced no evidence that Netlist has such power in any market. For example, Micron has never alleged let alone attempted to prove that Netlist has the "predominant share" of the market for any particular technology thereby allowing it to essentially control output and prices. *Id.* To the contrary, Micron's damages expert, Dr. Lynde, has equated Netlist's position in the market to an individual who has no connection to the memory market at all. Ex. 4 (Lynde) at ¶ 245

While Micron's answer alleges in conclusory fashion that Netlist has charged "supracompetitive" prices, it has provided no evidence, such as expert analysis, to support this. Micron's conclusory allegations are insufficient to survive dismissal let alone summary judgment. *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 2013 U.S. Dist. LEXIS 177836, at *20-*21 (E.D. Va. Dec. 18, 2013) (dismissing antitrust complaint where plaintiff "provides nothing other than conclusory allegations that [patentee] has demanded and received 'supracompetitive prices'").

Further, if Micron intends to argue that Netlist has leveraged standard essential patents to create market power, this theory also fails. Micron has failed to show, or even allege, that Netlist holds any standard essential patents. Instead, it alleges only that Netlist has patents it has "asserted to be essential." Dkt. 160, ¶ 58. The mere assertion that a patent is essential does not give Netlist the power to do anything. *Apple v. Samsung*, 2011 WL 4948567, *4 n.6 (N.D. Cal. Oct. 18, 2011) ("If, as Apple alleges, some Samsung patents are not essential to the standard, it will likely be difficult for Apple to establish that Samsung's conduct has antitrust implications") (dismissing antitrust claims).

### E. Micron's Allegations Of FRAND Violations Do Not Constitute Misuse

Finally, Micron's Answer alleges that Netlist has committed patent misuse by failing to offer a license on FRAND terms. Dkt. 160, ¶ 58. But even assuming this is true, it cannot constitute patent misuse as a matter of law. This Court has held that "a breach of FRAND is not determinative of patent misuse," particularly because "the Federal Circuit has cautioned against a broad application of the patent misuse doctrine." *Saint Lawrence*, 2018 WL 915125, at *7. Moreover, an alleged FRAND violation by itself does not show Netlist "impermissibly broadened the physical or temporal scope of the patent grant." *Sycamore IP Holdings LLC v. AT&T Corp.*, 294 F. Supp. 3d 620, 657 (E.D. Tex. 2018).

### V. CONCLUSION

Netlist respectfully requests that the Court grant summary judgment of no patent misuse.

- 9 -

Dated: November 14, 2023

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

**Attorneys for Plaintiff Netlist, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 14, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao