**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MICRON TECHNOLOGY, INC.; MICRONSEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC,.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:22-cv-203-JRG<br><br>JURY TRIAL DEMANDED<br><br>[redacted] |

**PLAINTIFF NETLIST INC.'S OPPOSITION TO MOTION TO STRIKE EXPERT TESTIMONY OF DR. MANGIONE-SMITH (DKT. 282)**

**TABLE OF CONTENTS**

**Page**

A. Opinions Regarding Distributed Buffer Technology ........ 1

B. Dr. Mangione-Smith's Discussion of Netlist's Interactions with Micron and Indirect Infringement is Proper (Exhibit B, ¶¶ 631-675) ........ 2

C. Dr. Mangione-Smith's Infringement Theories Were Disclosed in Discovery ........ 6

D. Dr. Mangione-Smith Applies the Plain and Ordinary Meaning of "converter circuit" ........ 10

E. Dr. Mangione-Smith's Doctrine of Equivalents Opinions Are Timely ........ 12

F. Dr. Mangione-Smith's Technical Benefits Opinions Are Proper and Timely ........ 13

G. Reference to *Netlist v. Samsung* Is Proper ........ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*,
2016 WL 3655302 (E.D. Tex. Mar. 21, 2016) ..... 7, 9, 10

*Intell. Ventures II LLC*,
2019 WL 1987172 (E.D. Tex. May 2, 2019 ..... 5

*Mobile Telecomms. Techs., LLC v. ZTE (USA) Inc.*,
No. 13-cv-00946-JRG, ECF No. 251 (E.D. Tex. Aug. 23, 2016) ..... 5

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) ..... 13

*Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*,
2018 WL 626355 (E.D. Tex. Jan. 30, 2018) ..... 3, 6

*Sprint Commc'ns Co. v. Time Warner Cable, Inc.*,
760 F. App'x 977 (Fed. Cir. 2019) ..... 15

*Tinnus Enters., LLC v. Telebrands Corp.*,
2018 WL 6423377 (E.D. Tex. Oct. 31, 2018) ..... 5

*WCM Indus., Inc. v. IPS Corp.*,
721 F. Appx. 959 (Fed. Cir. 2018) ..... 5

Netlist respectfully requests that the Court deny Micron's motion to strike.

**A. <u>Opinions Regarding Distributed Buffer Technology</u>**

Netlist has dropped the '506 and '339 patents from this case, and as such no one will discuss those patents at trial. Micron's motion is far too broad, however, and seeks to strike every paragraph with the phrase "distributed buffer" in it. In performing this motion to strike by way of keyword search, Micron has snuck a number of paragraphs into its motion that have no connection to the '506 and '339 patents, and are directly relevant to other issues in this case.

For example, Micron seeks to strike paragraphs 37 and 41 from Exhibit B of Dr. Mangione-Smith's report simply because they use the words "distributed buffer." *See* Dkt. 282-05. Exhibit B of Dr. Mangione-Smith's report addresses the '918 and '054 Patents, which are directed to on-DIMM voltage regulation. [REDACTED] There is no reason to strike these discussions from Dr. Mangione-Smith's report. They are directly relevant to the invention story of

the '918 and '054 Patents and relevant to the industry and Micron's knowledge of Netlist's technology. The same holds true for most of the enumerated paragraphs Micron identifies in its Exhibit 3.

As another example, Micron seeks to strike paragraph 22 of Exhibit F to Dr. Mangione-Smith's report, [REDACTED] Dr. Mangione-Smith will not tell the jury that [REDACTED] but the rest of the discussion is relevant and should not be stricken. For these reasons, the Court should deny Micron's motion to the extent it seeks to strike any discussions beyond a direct discussion of the '506 and/or '339 Patents.

**B. Dr. Mangione-Smith's Discussion of Netlist's Interactions with Micron and Indirect Infringement is Proper (Exhibit B, ¶¶ 631-675)**

Micron seeks to strike dozens of paragraphs of Dr. Mangione-Smith's opening report that it characterizes as opinions about Micron's "state of mind." Micron mischaracterizes Dr. Mangione-Smith's opinions and their relevance to this case. All of these paragraphs are part of Dr. Mangione-Smith's discussion of Netlist's development of the patented technology and indirect infringement.[1]

[REDACTED]

[1] Micron's arguments as to the '339 and '506 Patents are moot as discussed above.

[redacted]

Micron identifies no reason why it is improper for Dr. Mangione-Smith to provide technical input regarding the underlying facts that are relevant to indirect infringement and willfulness. To be clear, Dr. Mangione-Smith will not offer an opinion on Micron's state of mind. But Dr. Mangione-Smith should be permitted to provide technical input on evidence relevant to that inquiry. That is the same approach that the Court adopted in the *Samsung* case. Ex. 2 (*Samsung* PTC Tr. Vol. 2) at 39:21-40:12 (the Court gave the instruction that experts were not to offer ultimate opinions on state of mind, but did ***not*** strike portions of the paragraphs that merely discussed factual evidence).

The factual basis supporting that Micron had access to and was on notice of the patents-in-suit involves a series of disclosures in technical presentations to Micron. Dr. Mangione-Smith's opinions [redacted] will aid the jury in determining whether and when Micron had knowledge of Netlist's patented inventions and the source of those inventions. *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, 2018 WL 626355, at *3 (E.D. Tex. Jan. 30, 2018) (holding, in response to allegations that expert opinions relate to state of mind, that an expert is "permitted to offer opinions concerning the purpose, importance, or content of technical documents in order to assist the jury's understanding of such documents."). Micron's argument that the jury is capable of understanding these presentations without an expert's help is incorrect. These are technical presentations, and Dr. Mangione-Smith's testimony will aid the jury in

understanding what was actually disclosed in them. [redacted]. Ex. 1 ¶ 46. Expert testimony is required to explain that diagram (reproduced at right) to the jury.

[redacted]

Micron also challenges Dr. Mangione-Smith's discussion of [redacted] Ex. 1 Ex. B at ¶¶ 646-647; Ex. 25 (NL-MIC-203_00042010) at 14. [redacted]. Ex.1 Ex. B at ¶ 646.

Micron argues that Dr. Mangione-Smith should not be allowed to discuss these presentations because it disagrees whether they occurred. Disputes about interpretation and weight of the facts are matters for cross-examination. Further, there is contemporaneous documentary evidence the meetings occurred and that the presentations were made. Ex. 3 (NL-MIC-203_00042009) ([redacted]); Ex. 4 (NL-MIC-203_00042083) (email with subject "[redacted]"). Numerous witnesses likewise testified the presentations were made to Micron, including Noel Whitley, a participant at the meetings. Ex. 5 (Whitley 2-3-17 Tr., NL-MIC-203_00046468) at 160:18-161:5 [redacted]

[redacted] *see also* Ex. 6 (Hong) at 169:23-170:1, 174:20-25, 181:6-8; Ex. 7 (Milton) at 38:23-39:9. Mr. Whitley also submitted a sworn declaration confirming [redacted] Ex. 26 ¶¶ 3-5.

Micron suggests that this evidence is "inadmissible," but offers no evidentiary basis, authority, or explanation. Micron is wrong in any event, as the Netlist documents are certified business records and Netlist's witnesses can testify to the facts. Ex. 8 (Milton Business Records Declaration). Further, even if the presentations were hearsay, "[e]xperts may rely on hearsay evidence in forming their opinions." *Tinnus Enters., LLC v. Telebrands Corp.*, 2018 WL 6423377, at *3 (E.D. Tex. Oct. 31, 2018).

Micron also contends that the 2015 presentations are irrelevant because they occurred before the '918 and '054 Patents issued. But the Federal Circuit has rejected that argument. In *WCM Indus., Inc. v. IPS Corp.*, 721 F. Appx. 959, 970 (Fed. Cir. 2018), the Federal Circuit considered the knowledge requirement in the context of willfulness, and upheld the verdict where the accused infringer knew of the patents before they issued, and defendant's employee "had monitored [patent owner's] products for decades and possessed . . . literature indicating that [patent owners'] products were marked with 'patent pending.'" *Id.* at 971. Micron's argument that the patent office has found claims of the '833 Patent invalid is irrelevant to whether Micron knew of Netlist's inventions and the '918/'054 Patents.

Micron's cited cases contradict its argument. In *Mobile Telecomms. Techs., LLC v. ZTE (USA) Inc.*, No. 13-cv-00946-JRG, ECF No. 251, at *2 (E.D. Tex. Aug. 23, 2016), the Court "overruled" the motion to strike the expert's testimony "on indirect infringement," which supports admissibility of Dr. Mangione-Smith's testimony on indirect infringement here. In *Intell. Ventures II LLC*, 2019 WL 1987172, at *2 (E.D. Tex. May 2, 2019), this Court confirmed that there is proper evidence of willfulness "where the asserted patent itself or an embodiment thereof was identified to the defendant in some way." That is the case here, where Netlist identified to Micron its intelligent on-module power

invention. And *Quintel Tech. Ltd v. Huawei Techs. USA, Inc.*, 2018 WL 626355, at *3 (E.D. Tex. Jan. 30, 2018) merely precluded an expert from offering ultimate opinions about "thoughts and beliefs," but held the expert was "permitted to offer opinions concerning the purpose, importance, or content of technical documents in order to assist the jury's understanding of such documents."

Micron also asserts that Dr. Mangione-Smith's discussion of its participation in JEDEC is supposedly unreliable. Most of the paragraphs Micron cites do not even reference JEDEC (e.g. Ex. B, ¶¶ 639-640, 644-645, 656 [Ex. 1]), but rather discuss [REDACTED] Ex.1, Ex. B, ¶ 642; Ex. 9 (JM21U) at § 8.2.1. There is nothing unreliable about this testimony—Micron's own experts have relied on these same disclosures as evidence of effective disclosure of the '918/'054 Patents. Ex. 10 (Lynde Rpt.) ¶ 105. Micron likewise objects to what it characterizes as statements on its "position in the marketplace" (citing Ex. B, ¶¶ 637, 653-656). But these paragraphs merely discuss facts supporting that Micron knows its products are being sold in the U.S.. There is nothing unreliable about this.

### C. Dr. Mangione-Smith's Infringement Theories Were Disclosed in Discovery

Micron claims that Netlist did not disclose certain infringement theories in Dr. Mangione-Smith's report in its initial contentions. As discussed below, each of the identified theories is disclosed in Netlist's initial contentions. And Micron's claim of prejudice rings hollow. Netlist produced Dr. Mangione-Smith's opening infringement report from the *Samsung* litigation in June. That report contained the exact same infringement theories that Dr. Mangione-Smith has put forward in this case.

**"voltage monitor circuit."** Micron contends that Netlist did not disclose that the voltage monitor circuit is located in the PMIC of the accused products, and instead identified that the accused products include an [REDACTED] Mot. at 6-7. This is incorrect. Netlist identified in

in its initial disclosures [redacted] Ex. 11 (‘918 Infringement Contentions) at 51. Netlist further disclosed that [redacted]

This is exactly what Dr. Mangione-Smith identified as well. Dr. Mangione-Smith identifies the voltage monitor circuit in the PMICs of the accused products that operate in the same way as disclosed in the infringement contentions (Ex. B, ¶¶ 192-193, [Ex. 1] emphases added):

[redacted]

Infringement contentions are for the purpose of disclosing theories, not analysis and evidence. Expert reports properly add consistent details and supporting analysis to theories presented in contentions. *Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 3655302, at *4 (E.D. Tex. Mar. 21, 2016).

Micron’s arguments are also belied by its interrogatory responses. In its motion, Micron claims that Netlist never disclosed the infringement theory that the “voltage monitor circuit” was infringed

"through the functionality of an unidentified component of a PMIC located on the accused products." Mot. at 6. But in Micron's interrogatory responses served on September 14, 2023, Micron responded directly to that argument [REDACTED] Thus the suggestion that this infringement theory was not disclosed is baseless, and Micron's motion should be denied.

**"input voltage" monitored by "voltage monitor circuit."** Dr. Mangione-Smith identifies [REDACTED] ¶ 192. Micron argues that Netlist limited the claimed [REDACTED]. Mot. at 7. This is wrong. First, Micron focuses on pages 51-56 of Netlist's infringement contentions, but those contentions relate to claim 5, not claim 16—Micron is seeking to strike claim 16 of the '918, not claim 5. Claim 5, dependent on claim 1, accuses only RDIMMs with VIN_BULK of 12V. Claim 16 additionally accuses SODIMMs and UDIMMs whose VIN_BULK is 5V. *See* Ex. 11 at 98, 101.

Second, Netlist identified [REDACTED] Netlist also identified [REDACTED] *Id.* at 98 and 101:

[REDACTED]

[redacted] Netlist put Micron on notice that [redacted]—and this is exactly what Dr. Mangione-Smith opined. This is what is required under the local rules. *Core Wireless Licensing, S.A.R.L.*, 2016 WL 3655302, at *4.

**"converter circuit" (RDIMMs)**. Micron contends that Netlist did not disclose that the converter circuit could be the "combination of an internal LDO and the 1.8V [or 1.0V] LDO" to reduce VIN_BULK to 1.0V or 1.8V, and that "the 'converter circuit' limitations are met by an 'internal LDO to reduce the pre-regulated 12V VIN_BULK to a voltage around 3V [or 3.3V] to power PMIC's internal circuitry.'" Mot. at 8. This is incorrect. First, Netlist disclosed in its contentions that [redacted]. Netlist thus put Micron on notice of the theory that the converter circuits are ones that produce the recited fourth voltage. As to the exact circuit structure—a single LDO, another type of voltage conversion circuit, or a cascade of LDOs—that is evidence to support the theory, not the theory itself. *Core Wireless Licensing, S.A.R.L.*, 2016 WL 3655302, at *4. Second, Netlist disclosed [redacted] Determining the specific components within the accused products requires third party discovery not available at the time of infringement contentions. This is why "[t]he Patent

Local Rules do not require the disclosure of specific evidence" in infringement contentions. *Core Wireless Licensing, S.A.R.L.*, 2016 WL 3655302, at *4.

**"converter circuit" (UDIMMs and SODIMMs)**. Micron argues that Netlist only disclosed a converter circuit that is supplied by VIN_Bulk after a VIN_Mgmt input voltage switchover to the VIN_Bulk input voltage, and that Dr. Mangione-Smith opines that the converter circuit is supplied by VIN_Bulk regardless of whether there is a "switchover." This is incorrect. First, Netlist disclosed [redacted] Second, and to the same point, Micron is mixing up RDIMMs with UDIMMs and SODIMMs. As Netlist showed in its infringement contentions, [redacted]

Thus, Netlist disclosed that [redacted]

**D. <u>Dr. Mangione-Smith Applies the Plain and Ordinary Meaning of "converter circuit"</u>**

Micron claims that Dr. Mangione-Smith has improperly construed "converter circuit" by identifying an LDO as a converter circuit, because he opines that an LDO "converts a higher input voltage to a lower output voltage." Mot. at 10. Micron also contends that Dr. Mangione-Smith's opinion somehow contradicts Netlist's position during claim construction. Micron further contends

that the contention that an LDO is a converter circuit is a "new infringement theory should be struck because it was not previously disclosed in Netlist's Infringement Contentions." *Id.* at 11.[2]

In claim construction, Netlist contended that converter circuit should be given its "plain and ordinary meaning, i.e., a circuit for voltage conversion." Dkt. 97 at 18. Dr. Mangione-Smith, in turn, opined that

This is the plain and ordinary meaning Netlist put forward, and is consistent with the Court's observation that the related term "converter" is broadly defined in technical dictionaries. *See* Dkt. 249 at 32 (quoting definitions of converter such as "a circuit for changing ac to dc or vice versa" and "a generic term used in the area of power electronics to describe a rectifier, inverter, or other power electronic device that transforms electrical power from one frequency and voltage to another."). It is also exactly how Micron's corporate representatives testified an LDO operates:



Ex. 14 (Holbrook Depo.) at 32:19-23. Micron's corporate representative Mr. Ross also testified that the VOUT_1.0V LDO "converts" voltages:



Ex. 15 (Ross Depo.) at 180:18-181:7. Micron's expert Dr. Stone testified similarly (Ex. 16 at 19:12-20:6.):

[2] Micron argues that "[m]any of Dr. Mangione-Smith's proposed constructions are also erroneous, and should be excluded," but identifies only a single alleged construction it seeks to strike, "converter circuit." Mot. at 9-10.



[redacted]

Micron's argument that Netlist did not disclose that an LDO could be a converter circuit in infringement contentions makes no sense. As discussed above, [redacted] *See, e.g.*, Ex. 11 at 97 [redacted] Micron's suggestion that Netlist hid the ball on this issue is belied by the fact that Netlist expressly identified in claim construction briefing that Micron improperly sought to exclude LDO from the scope of the asserted claims:

> Micron seeks means-plus-function treatment of this term in order to exclude an LDO from the scope of the claim. But its own expert describes "LDO" circuits as an "LDO converter." *Id.* at 19:19-25, 20:3-18.

Dkt. 110 at 7. Netlist ***further*** explained that, at the *Samsung I* trial, "Dr. Mangione-Smith mapped the claimed 'converter circuit' to an LDO." *Id.* at 8. And in Micron's own interrogatory responses it stated: "the '918 Patent Accused Products include a Low Drop Out (LDO) regulator. Netlist identifies this LDO as the alleged 'converter circuit.'" Ex. 17 (3rd Responses) at 62. Micron should not be faulted by advocating for its client, but it has a duty to report the facts faithfully to the Court.

**E. <u>Dr. Mangione-Smith's Doctrine of Equivalents Opinions Are Timely</u>**

Micron's motion is a close to verbatim copy-and-paste of Samsung's motion to strike Dr. Mangione-Smith's DOE opinions as to "converter circuit" and "non-volatile memory" in *Samsung I*. 2:21-cv-00463-JRG, Dkt. 204 at 7. The Court denied Samsung's arguments the first time around. 2:21-cv-00463-JRG, Dkt. 432 at 6. During fact discovery, Micron received Dr. Mangione-Smith's infringement report from the *Samsung* case. Netlist incorporated this infringement report in its August

17, 2023 response to Micron's interrogatory regarding infringement (Rog No. 2). Ex. 18 at 59. Therefore, all of Dr. Mangione Smith's DOE opinions were disclosed during fact discovery.

In any event, Micron is wrong. Netlist identified it was asserting the doctrine of equivalents in its initial infringement contentions. Ex. 19 at 2, 8. The Federal Circuit has repeatedly held that the same evidence that proves literal infringement can prove doctrine of equivalents; [REDACTED] *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1305 (Fed. Cir. 2007). Moreover, Micron did not identify its actual non-infringement arguments until September 14, 2023, six days before the close of fact discovery. Netlist served interrogatories asking for Micron's non-infringement positions on January 11, 2023. Nine months later, Micron disclosed in supplemental responses that [REDACTED]." Ex. 13 at 91-95. As explained in Netlist's Motion to Strike Micron's supplemental responses, Dkt. 184, there was no excuse for Micron's delay in disclosing these non-infringement arguments, and any "untimeliness" is entirely of Micron's own making.

**F. <u>Dr. Mangione-Smith's Technical Benefits Opinions Are Proper and Timely</u>**

Micron again repurposes Samsung's motion to strike Dr. Mangione-Smith's opinions, essentially word for word. *Compare SS I* Dkt. 204 at 14, with Mot. at 13-14. The Court rejected these arguments in that case. *SS I*, Dkt. 432 at 6 ("Concerning technical valuation opinions, the Court

DENIED the motion. (Id. at 47:15–20.)").

Micron first argues that Dr. Mangione-Smith "failed to provide any analysis that associates power efficiency with any alleged benefit of the '918 and '054 patents." Mot. at 14. This dispute over Dr. Mangione-Smith's opinion goes to the weight of his testimony, not its propriety. Nevertheless, Dr. Mangione-Smith [REDACTED]

Micron appears to ignore the entirety of Dr. Mangione-Smith's Exhibit F, which explain exactly why and how the asserted claims impact the accused devices.

Micron next argues that the technical benefits of the asserted patents and potential alternatives were not identified in fact discovery. It appears that in copying Samsung's motion, Micron failed to actually review Netlist's interrogatory responses. For example, in interrogatory responses served over two months ago, Netlist stated (Ex. 21 at 106):

[REDACTED]

This is the exact analysis Dr. Mangione-Smith applied in this case. Micron's motion should be denied.

### G. **Reference to *Netlist v. Samsung* Is Proper**

Micron seeks to strike references to the "*Netlist-Samsung* case," but does not identify what paragraphs of the report this supposedly applies to. However, Micron's witnesses admitted that its accused DDR5 products operate similarly to the Samsung products Micron was aware were found to infringe in the Samsung litigation. Ex. 22 (Beal) at 86:8-87:10 [REDACTED]. Further, Micron sources PMIC components in its DDR5 modules from some of the same suppliers as Samsung, and Micron's witnesses conceded these components "don't operate in a different way" across suppliers. Ex. 14 (Holbrook) at 43:19-44:4; Ex. 1, Ex. B ¶ 86. Dr. Mangione-Smith also discusses the fact that [REDACTED]. The Federal Circuit holds that this is relevant and admissible evidence of knowledge and willfulness. *See Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 980 (Fed. Cir. 2019) (prior verdict on "same technology" asserted against different competitor admissible, including because it was relevant to willfulness). However, if the Court excludes the Samsung verdict, then Dr. Mangione-Smith can discuss his technical opinions without referencing the litigation or verdict.

Micron also includes a single sentence seeking to strike "testimony from Samsung employees." It is unclear what this is directed to, as Dr. Mangione-Smith does not cite any deposition testimony of Samsung employees in his opening report. Dr. Mangione does [REDACTED] The Parties agreed to reproduction of deposition testimony from Samsung in this case, and there is nothing improper about Dr. Mangione-Smith relying on it. The Park testimony does not refer to the *Netlist v. Samsung* litigation.

Dated: November 28, 2023

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 28, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Jason Sheasby*
Jason Sheasby

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Jason Sheasby*
Jason Sheasby