## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:22-cv-203-JRG |
| | ) | |
| MICRON TECHNOLOGY, INC.; | ) | JURY TRIAL DEMANDED |
| MICRONSEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | ██████████████ |
| TECHNOLOGY TEXAS LLC,. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF NETLIST INC.'S OPPOSITION TO MOTION TO STRIKE EXPERT TESTIMONY OF MR. DAVID KENNEDY (DKT. 273)

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

A.   Mr. Kennedy's Discussion of the Samsung Litigation Verdict Is Relevant and Proper........1

B.   Mr. Kennedy's Opinions Regarding The Rambus License Agreement Are Proper ..............6

C.   Mr. Kennedy's Opinions Regarding HBM3E Products Are Proper........................................9

D.   Mr. Kennedy's Discussion of the 2015 Presentations is Proper .............................................13

E.   Conclusion..........................................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan Sales, LLC v. UCB, Inc.*,
   No. 2:15-CV-01001-JRG-RSP, 2016 WL 8222619 (E.D. Tex. Nov. 7, 2016) ........................ 11, 12

*Applied Med. Resources Corp. v. U.S. Surgical Corp.*,
   435 F.3d 1356 (Fed. Cir. 2006) ................................................................................................ 1

*Arthrex*,
   2016 WL 11750176 .................................................................................................................. 13

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
   909 F.3d 398 (Fed. Cir. 2018) ................................................................................................ 12

*K-TEC, Inc. v. Vita-Mix Corp.*,
   696 F.3d 1364 (Fed. Cir. 2012) ........................................................................................ 13, 14

*Metrologic Ins, Inc. v. PSC, Inc.*,
   2004 WL 2851955 (D. N.J. Dec. 13, 2004) ............................................................................ 13

*Netlist, Inc. v. Samsung Elecs. Co. Ltd., et al.*,
   2:21-cv-00463-JRG, Dkt. 550, 1-2 ................................................................................. *passim*

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
   No. 2:15-CV-349-JRG, 2017 WL 3476978 (E.D. Tex. May 8, 2017) .................................... 4

*Sprint Commc'ns Co., L.P. v. Time Warner*,
   760 F. Appx. 977 (Fed. Cir. 2019) ........................................................................................... 1

*Sprint Communications Co. v. Time Warner Cable, Inc.*,
   760 Fed. Appx. 977 (Fed. Cir. 2019) ............................................................................... 1, 2, 3

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,
   802 F.3d 1283 (Fed. Cir. 2015) .............................................................................................. 12

*SynQor, Inc. v. Artesyn Techs., Inc.*,
   2011 WL 3624957 (E.D. Tex. Aug. 17, 2011), *aff'd*, 709 F.3d 1365 (Fed. Cir.
   2013) ......................................................................................................................................... 14

*Tinnus Enters., LLC v. Telebrands Corp.*,
   2018 WL 6423377 (E.D. Tex. Oct. 31, 2018) ........................................................................ 15

*VirnetX Inc. v. Apple Inc.*,
   No. 6:12-CV-00855-RWS, 2020 WL 11647826 (E.D. Tex. Sept. 1, 2020) ............................ 5

**Page**

*WCM Indus., Inc. v. IPS Corp.*,
    721 F. App'x 959 (Fed. Cir. 2018) ...................................................................................14

**Rules**

Fed. R. Civ. P. 58 .........................................................................................................................5

Fed. R. Evid. 702(a) ....................................................................................................................12

A.     **Mr. Kennedy's Discussion of the Samsung Litigation Verdict Is Relevant and Proper**

Mr. Kennedy discusses the Samsung jury verdict as relevant to the hypothetical negotiation in this case.  There is no rule that prohibits a patent damages expert from relying on a prior jury verdict.  Rather, the Federal Circuit "has held that such evidence can be admissible if it is relevant for some legitimate purpose. *Sprint Communications Co. v. Time Warner Cable, Inc.*, 760 Fed. Appx. 977, 980 (Fed. Cir. 2019); *Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1365–66 (Fed. Cir. 2006) (affirming the admission of a prior verdict as relevant to the reasonable royalty analysis and the Defendant's state of mind).  One legitimate purpose is damages.  The Federal Circuit has upheld prior verdict evidence in similar scenarios.  For example, in *Sprint*, the district court "admitted the prior verdict evidence as relevant to willfulness, to Time Warner's equitable defenses, and 'to the extent that it informs Sprint's executive concerning what [they] might expect as a reasonable royalty.'" *Sprint Commc'ns Co., L.P. v. Time Warner*, 760 F. Appx. 977, 981 (Fed. Cir. 2019).

In *Sprint*, Sprint previously sued a third party, Vonage, in a case involving the "same technology at issue" in the *Sprint* case, which resulted in a damages award.  Time Warner contended "that the admission of the evidence relating to the Vonage verdict prejudiced it" and the district court erred in allowing the verdict to be presented to the jury.  Time Warner's argument was based on the fact that "differences between the Vonage case and this case were such that the district court should have excluded the Vonage evidence on relevance grounds," that "there were several patents raised in each case that were not raised in the other," and that "Sprint's counsel made inflammatory use of the prior verdict before the jury." *Id.* at 980.  The Federal Circuit rejected each argument.  As to prejudice, the Federal Circuit expressly noted that the district court "gave the jury an instruction limiting the use of [the verdict] to the jury's consideration of the issues of damages and willfulness," and in fact "[t]he court gave such an instruction at Time Warner's request both times evidence of the Vonage verdict was introduced and in the court's final jury charge." *Id.* at 980.  The Federal Circuit also noted that

while different patents were raised in each case, there was no evidence that "the technology asserted in the Vonage case was materially different from the technology raised in" the *Sprint* case. *Id.* Further, "[a]ny differences between the two proceedings, moreover, were available to Time Warner to argue to the jury; the differences did not require exclusion of the Vonage verdict." *Id.*

The Federal Circuit also highlighted the relevance of the prior verdict. For example, the Federal Circuit recognized that the district court admitted the prior verdict "to the extent that it informs Sprint's executives concerning what [they] might expect as a reasonable royalty," and "the verdict would be a factor of which the parties would have been aware at the time of their hypothetical negotiation in 2010, and a reasonable jury could well conclude that the verdict and the amount of damages awarded in a similar prior litigation would have influenced the outcome of a hypothetical negotiation in the case at bar." *Id.*

The Federal Circuit's ruling in *Sprint* applies directly to the facts in this case.

| *Sprint* Decision | This Case |
|---|---|
| "several patents raised in each case that were not raised in the other" | The 918, '054, '060, and '160 patents were all raised in *Samsung I*. |
| "Time Warner has not shown in its briefs any reason to believe that the technology asserted in the Vonage case was materially different from the technology raised in this case." | The accused products in *Samsung I* included DDR4 and DDR5 DIMMs, and HBM2, HBM2E and HBM3(E) products. The accused products in this case are DDR5 DIMMs and HBM3E products. DDR4 and DDR5 DIMMs are successor generations of the same product type, designed for the same applications. Similarly, HBM2 and HBM3 are successor generations of the same product type, designed for the same applications. As noted below, Mr. Kennedy ███████████████████████████████████████. |
| "the verdict would be a factor of which the parties would have been aware at the time of their hypothetical negotiation in 2010, and a reasonable jury could well conclude that the verdict and the amount of damages awarded in a similar prior litigation would have influence the outcome of | The *Samsung I* verdict occurred in April 2023. The hypothetical negotiation for the '060 and '160 Patents is July 2023.<br>The parties were aware of it at the time of that hypothetical negotiation. Ex. 1 Expert Report of Mr. David Kennedy, October 4, 2023, ¶ 78; *see also* Ex. 2-_ (Westergard Depo.) at 57:3-19 ██████████████████████████ |

| a hypothetical negotiation in the case at bar." |  |
|---|---|
| "the court admitted the prior verdict evidence as relevant to willfulness, to Time Warner's equitable defenses, and "to the extent that it informs Sprint's executives concerning what [they] might expect as a reasonable royalty." | Netlist's CEO Mr. Chuck Hong testified that ████████  ████ Ex. 3_ (Hong Depo.) (discussing deposition Ex. 3)at 56:25-57:8 ████████  ████████ ; Ex. 4_ (Hong Depo Ex. 3) at 7 ████ ) |

Here, the *Samsung I* case involved the same patents and the same accused product types as at

issue here, Micron was aware of the litigation (in fact they attended the trial and heard the verdict),

████████████████████████████████████

████████████████  To be clear, just like in *Sprint*, Micron was aware of

the previous proceeding and verdict.  Mr. Kennedy explains, based on testimony from Micron's

corporate representatives that "████████████████████

████████████████████████████████

████████████." Ex. 1_ ¶78; *see also* Ex. 2_ (Westergard Depo.)

at 57:3-19 ████████████████████████

████████████████████████████████

████████████. Micron was also aware of the operation of Samsung's products,

and thus Micron's awareness of Samsung's infringement verdict would support a finding of

willfulness.  Mr. Kennedy explains that ████████████████████

████████████████████

████████████████████

████████████████████



Ex. 1 ¶¶ 110-112.  Likewise, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

     *See also* Ex. 6_ (Royer Depo.) at 27:13-15 ████████████████████████

████████████████████████.  Micron's concerns regarding prejudice are misplaced,

and Micron's cited case law is inapposite.  For example, Micron relies on *Saint Lawrence* to suggest that

a "final decision has not concluded" in *Samsung I* just like in *Saint Lawrence*.  But in *Saint Lawrence* the

Court had not yet entered a final judgment, as there was still a bench trial on equitable issues to come.

*See Saint Lawrence Commc'ns LLC v. ZTE Corp.,* No. 2:15-CV-349-JRG, 2017 WL 3476978, at *2 (E.D.

Tex. May 8, 2017) ("[T]he Court finds, as a separate concern not raised in the briefing, that, to date,

the Court has yet to enter final judgment in the Motorola case. […] As part of th[e post-trial] process,

the Court will consider certain equitable defenses, not previously addressed during trial.").  In *Samsung*

*I*, the Court already held a bench trial and entered a 43-page order rejecting Samsung's equitable

defenses.  *See Netlist, Inc. v. Samsung Elecs. Co. Ltd., et al.,* 2:21-cv-00463-JRG, Dkt. 550, 1-2

("Specifically, the Court finds that the '918 and '054 Patents are not unenforceable due to equitable

estoppel, prosecution laches, and unclean hands. The Court finds that the '339 Patent is not

unenforceable due to unclean hands."). Thereafter, the Court entered final judgment. *Id.*, Dkt. 551, 2 ("Pursuant to Rule 58 of the Federal Rules of Civil Procedure, and in accordance with the jury's unanimous verdict and the entirety of the record, the Court hereby ORDERS and ENTERS JUDGMENT as follows…").

Micron also argues that jury verdicts subsequent to the hypothetical negotiation are not admissible, but this is wrong for at least two reasons. First, the hypothetical negotiation in this case for the '060 and '160 Patents is in July 2023, when Micron first imported its infringing HBM3E products to the United States. Ex. 1 (Kennedy Report) ¶ 893. Thus, at least as to those two patents, the jury verdict pre-dates the hypothetical negotiation. And as to the DDR5 products, the hypothetical negotiation (May 2021) is close in time to the Samsung jury verdict (April 2023), is identical in time to the hypothetical negotiation in *Samsung I*,[1] and reflects additional knowledge the parties would have under the Book of Wisdom regarding the value of the patents-in-suit.

Micron relies on Judge Schroeder's opinion in *VirnetX*, but there Judge Schroeder rejected a blanket exclusion of prior jury verdicts and even recognized that "some verdicts issued after the hypothetical negotiation date may be admissible," as long as their probative value is not outweighed by a risk of unfair prejudice. *VirnetX Inc. v. Apple Inc.*, No. 6:12-CV-00855-RWS, 2020 WL 11647826, at *5 (E.D. Tex. Sept. 1, 2020). Micron further argues that the use of the Book of Wisdom is inappropriate because it "relates only to probative value and is ***typically*** applied to infringers' sales." Mot. at 5 (emphasis added). But again, the relative question is probativeness, and probativeness here is high.

Micron's concerns regarding prejudice can be assuaged by jury instructions that make clear to the jury that infringement must be determined based on an analysis of the asserted claims against only

---

[1] Ex. 7 (Trial Tr.) 685:22-686:1 ("Q. When does the hypothetical negotiation take place for this case? A. It's at the date of first infringement. […] And for…DDR5, it was…May of 2021.").

Micron's accused products.  Micron identifies what it claims are "important problems," but each is either irrelevant or can be fully addressed through proper jury instructions or cross examination.  For example, Micron argues that "no DDR4 products are at issue in this case as they were in the Samsung-Netlist case," but the *Samsung* verdict was broken out by accused products and asserted patents.  Ex. _8_ (Verdict Form). Thus, the jury in this case would not be told anything regarding DDR4 products, or any patents not at issue in this case.  For the same reason, Micron's concern that "the Samsung-Netlist jury verdict rested in part on the '339 patent, which is no longer at issue here" is misplaced, as the jury here will not be informed of the *Samsung* verdict as to the '339 patent.

Micron next argues that it was improper for Mr. Kennedy to discuss the implications of the Samsung jury verdict over the life of the patents.  Mot. at 7.  Micron claims that  Mot. at 1.  This is simply wrong.  Mr. Kennedy does not propose applying the Samsung verdict directly to Micron in this case.  Rather,

Because the *Samsung* verdict is directly relevant to willfulness and the hypothetical negotiation, Mr. Kennedy's discussion of the verdict in his report should not be stricken.

**B.     Mr. Kennedy's Opinions Regarding The Rambus License Agreement Are Proper**

Mr. Kennedy presented the Rambus license to the jury in the *Samsung* litigation as sufficiently comparable to be relevant to the hypothetical negotiation. Ex. 7 (Trial Transcript) 687:10-19 (A. Sure. And one other factor that I considered was the fact that Samsung entered into a license in a very similar situation as this situation, and it involved memory patents and they agreed to pay up to $1.1

billion plus give a cross license to Rambus to their patents. Q. So at a high level, what was the impact of these on how you're thinking about the parties approaching a hypothetical negotiation? A. So these are all important factors that place upward adjustment on the royalty rate, significant upward adjustment.").[2]  Micron, having had its counsel sit in on the *Samsung* trial, prevented all discovery into the Rambus license and forced Netlist to file a motion to compel to obtain the license in this case. Micron's counsel claimed that Micron knew that this issue was more properly addressed at the *Daubert* staged but that it unilaterally withheld this discovery until very late in the fact discovery period because it did not like how the Rambus agreement was presented during the *Samsung* trial (despite the fact Mr. Kennedy's opinions on the Rambus agreement had survived the *Daubert* process):

> And we have withheld the Rambus agreement. We've offered to produce the Rambus agreement with the royalty amount redacted out. And the problem here, Your Honor -- and I agree with Mr. Sheasby that this can be addressed at a MIL stage or a *Daubert* stage or an admissibility-type argument, but the problem here is I did attend the Samsung/Netlist trial, and as stated in Netlist's own briefing--this is from the joint status report they filed last night--they mentioned that the royalty amount, this amount was mentioned repeatedly at trial. […]

> THE COURT: All right. I don't see any basis to redact the amount during discovery if you're not able to show that it is not discoverable. And I understand that you take the position that improper use was allowed of the amount at a prior trial. I don't know what to do with that argument.  You're saying the Court is not able to properly control the arguments of counsel? I'm not sure what.

> MR. RUECKHEIM: No, Your Honor. I do think this can be addressed in MIL or *Daubert*. This -- so the reason we're withholding is lack of relevance.  This is a non-technically comparable license. Counsel for Netlist just said it was technically comparable, but its own expert in the Samsung case said the opposite; it shouldn't be used to determine the royalty amount. And so that's the reason for withholding it, but I do understand Your Honor's point that this can also be addressed at a later time.

> THE COURT: All right. Well, with respect to the Rambus license, I will order that it be produced unredacted.  [Ex 9 2023-08-22 MTC Hearing Transcript at 8:15-10:11].

The Court orally ordered the agreement produced at the hearing, on August 22, 2023.  The Court then filed an order granting Netlist's motion on August 29, 2023, about three weeks before the

---

[2] ████████████████████████████████████████████████████████████████████████████

close of fact discovery.  Dkt. 158 at 1.  Micron inexplicably delayed another 13 days after that order and produced the agreement on September 11, 2023—only nine days before the end of fact discovery.

Micron now seeks to strike Mr. Kennedy's discussion of the Rambus agreement in this case. Mr. Kennedy opines that, ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████   The ***only*** basis Micron proffers for striking Mr. Kennedy's opinion on the relevance of the Rambus agreement is that Dr. Mangione-Smith's technical comparability opinion was based on the '506 Patent and the case has now been narrowed so that this patent will no longer be tried.  This is not a proper basis to strike Mr. Kennedy's opinion.  Dr. Mangione-Smith opines that the ██████████

████████████████████████████████████████████████████████████████████████████

███████████████████   Ex. 10 (Mangione-Smith Opening Report Ex. C) ¶ 155.  Dr. Mangione-Smith did not limit that opinion to the '506 Patent, nor would it make sense to do so given the products accused of infringement of the '918 and '054 patents are DDR SDRAM modules—specifically, DDR5 DIMMs.  Dr. Mangione-Smith █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████).  Micron has not moved to strike these opinions from Dr. Mangione-Smith's report, which means Dr. Mangione-Smith is entitled to present these opinions to the jury.  ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████ If Micron disagrees that the Rambus licensed patents are comparable to the Asserted Patents, it can cross-examine him to that extent.

In addition, 7 days after the delayed deposition of Micron's witness Dr. Mittal,[3] Dr. Mangione-Smith rendered a supplemental opinion ████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ This provides adequate support for Mr. Kennedy's opinion. Mr. Kennedy's report states (¶ 692):



Mr. Kennedy's opinion is thus still supported by Dr. Mangione-Smith, and he can properly discuss the Rambus Agreement before the jury.

## C.   Mr. Kennedy's Opinions Regarding HBM3E Products Are Proper

Micron's motion to strike shows a fundamental misunderstanding of Mr. Kennedy's opinions as to Micron's HBM3E products. Mr. Kennedy calculates the value Micron has gained (as a running royalty) and will gain (as a lump sum) from Micron's use of the '060 and '160 Patents in its HBM3E products. Both of these analyses are appropriate.

Micron has not disclosed sales nor has it yet provided updated information regarding its infringing HBM3E products. It is clear, however, that Micron has imported the infringing HBM3E products into the United States and provided them to third parties for qualification. Ex. 12 (Morton Depo) at 17:11-12 (███████████████████████); Ex. 13 (MICNL203-00210850) (internal

---

[3] The deposition was delayed until after expert reports were served because Micron declined to make the witness available without a Court order. Dkt. 255 at 3.

Micron document stating ██████████████████ Ex. 14_ ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████ Micron's HBM witness Zach Stordahl testified that ██████████████

████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Ex. 15 (Stordahl Depo.) 82:9-21.  As noted by Mr. Kennedy, any such sample deliveries are infringing, and should attract an appropriate reasonable royalty rate.

Having determined there are infringing products at issue, Mr. Kennedy analyzed ██████

Mr. Kennedy further determined, ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████



Ex. _1 ¶ 407.  Using this information, Mr. Kennedy determined that ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████            *Id.*, ¶ 408.  Mr. Kennedy further explains ████████████████

████████████████████   This analysis reflects the best information available to the parties at the

hypothetical negotiation of the value of the asserted patents to the infringer, Micron.

    Micron's reliance on *Allergan Sales* to suggest that Mr. Kennedy cannot "opine on a future

royalty that may, or may not, accrue from infringement that has not yet occurred" is misplaced.  In

*Allergan Sales*, the expert proposed "a total damages figure based both on 'total reasonable royalties

due' and 'potential future royalties that may arise [from future sales] post-trial given the current facts

and assumptions,'" such that "[p]ast damages range[d] from roughly $15-$17 million, and 'post-trial'

damages range[d] from about $34-$57 million." *Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-CV-01001-

JRG-RSP, 2016 WL 8222619, at *1 (E.D. Tex. Nov. 7, 2016).  This is improper, as it is based on

infringing sales that had not occurred.  This Court thus contrasted this approach to a lump sum royalty

approach, and excluded the expert's royalty. *Id.* at \*3 ("Any opinion on a future royalty that may accrue from infringement that has not yet occurred (as opposed to a lump-sum royalty) is properly excludable under Rule 702(a) as being contrary to law or as not helpful to the trier of fact to determine 'a fact in issue.'"). Mr. Kennedy is not opining on a future royalty, but is instead setting a royalty **rate** that would only apply to actual infringing units. Separately, in his lump sum analysis, Mr. Kennedy has determined the amount to which the parties would agree if they chose to enter into a lump sum agreement. Micron has not contended this is improper, nor could it. *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 412 (Fed. Cir. 2018) ("we have held that a jury may award a lump-sum, paid-in-full royalty in lieu of a running royalty on future sales"); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1301 (Fed. Cir. 2015) ("[patentee]'s expert admitted that a lump-sum award would compensate [plaintiff] through the life of the patent").

Micron's contention that Mr. Kennedy is relying on HBM2E as a "proxy" for HBM3E products is also wrong and misses the point. First, Mr. Kennedy does not use HBM2E as a "proxy." Mr. Kennedy's report does not use the word "proxy" and Micron has inappropriately misquoted Mr. Kennedy's report in its motion. Mr. Kennedy relies on ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████  ████████████ ████████████████████████████████████████████████ ██████████████████████████████████████ Again, this is the best information available to the parties at the hypothetical negotiation, and Micron does not contend otherwise.

With respect to the proper damages base at trial, Netlist expects that Micron will provide the number of infringing units it has imported into the United States shortly before trial. Should Micron seek to hide this information, Netlist will seek an emergency order from the Court as needed.

**D.      Mr. Kennedy's Discussion of the 2015 Presentations is Proper**

Micron seeks to strike Mr. Kennedy's ███████████████████████████████ ████████████████████████████████ and identifies 76 paragraphs subject to its motion.  Mot. 10 (identifying ¶¶ 60-136).  Micron then proceeds to only discuss the paragraphs relating to the ████████████████████████████████  As such, Micron's motion should be denied as to the other paragraphs in Mr. Kennedy's report, as Micron has provided the Court with no basis to strike any of those paragraphs.

With respect to Mr. Kennedy's discussion of the slide decks, Micron's motion should be denied as well.  Mr. Kennedy discusses the 2015 presentations primarily with respect to two issues— the history of the patented inventions, and notice to Micron.  Both issues are proper for Mr. Kennedy to discuss in front of the jury.  Mr. Kennedy explains what the presentations disclose and how it is relevant to Micron's awareness of Netlist's patented technology.  This is necessary because the presentations in certain instances cite the parents of the patents in suit.

Micron does not actually contend the presentations are not relevant to notice, but instead argues they are irrelevant to willfulness because they only disclose the '833, which is a parent patent to the '918 and '054.  *See* Mot. at 10-12.  First, Micron's waiver as to the notice argument provides an independent basis to deny its motion.  Regardless, however, the provision of notice regarding a parent patent can suffice to provide notice of children of that parent. *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378-79 (Fed. Cir. 2012) (affirming denial of summary judgment where patent owner "proffered evidence that (1) it provided notice that the MP container infringed various claims of the '117 patent's parent patent in March 2005."); *Arthrex*, 2016 WL 11750176 at *3 (concluding that a "reasonable juror could conclude that the scope of notice [regarding a parent patent]….expanded to include notice of infringement of the [child] patent after the [child] patent issued."); *Metrologic Ins, Inc. v. PSC, Inc.*, 2004 WL 2851955, at *20 (D. N.J. Dec. 13, 2004) ("allegations of infringement of the parent patent (the

'342) would provide sufficient notice of infringement of the continuations (the '027, '717, and '049 patents) as well"). Similarly, notice may occur before a product launches. *K-TEC*, 696 F.3d at 1378 (earlier notice as to "MP container" product effective as to later-released "XP container" product).

Second, Micron's willfulness argument fails as well. Mr. Kennedy will not opine on the ultimate issue of willfulness. But Micron has not moved for summary judgment of no willfulness, so Netlist will be entitled to raise its willfulness arguments and evidence before the jury. That evidence will include Micron's knowledge of the patents-in-suit. Micron argues that the slide decks are irrelevant to the '918 and '054 because a parent patent was discussed. This is both irrelevant and incorrect. It is irrelevant because the slide decks expressly identify the '060 Patent, which is asserted in this case. Thus, the jury is entitled to know that Netlist informed Micron of the '060 Patent in 2015. It is incorrect because not only did Netlist disclose the '833 parent patent, but as discussed by Mr. Kennedy Netlist also ███████████████████████████████████████ ███████████████████████████████████████████████. The Federal Circuit has confirmed that knowledge of the patent is not necessary to support a finding of willful infringement where an accused infringer ignores a risk of infringement so obvious that it should have been known, such as when a patentee identifies that it has a patent pending. *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018) (rejecting that "a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge" and upholding finding that "risk of infringement that was either known or so obvious that it should have been known" where accused infringer was aware that patent holder had indicated its products were "patent pending"); *See also SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 WL 3624957, at *4 (E.D. Tex. Aug. 17, 2011), *aff'd,* 709 F.3d 1365 (Fed. Cir. 2013) (holding that a "jury could reasonably conclude that [defendant] . . . learned of the [continuation] patent once it issued" based on evidence that "continuation patents are common" and those in the industry "would have recognized that a continuation application could potentially be filed" on the parent patent.).

Micron also argues in a parenthetical that there is no "admissible support" for the 2015 presentations, but as explained in Netlist's opposition to Micron's motion for summary judgment on the issue of pre-suit damages, Micron has not raised any credible admissibility arguments regarding the 2015 presentations, and multiple Netlist witnesses (and contemporaneous evidence) explained the veracity and significance of the presentations.   To the extent Micron raises an untimely hearsay argument in its reply, "[e]xperts may rely on hearsay evidence in forming their opinions. *Tinnus Enters., LLC v. Telebrands Corp.*, 2018 WL 6423377, at *3 (E.D. Tex. Oct. 31, 2018).

Micron's suggestion that the Court struck similar expert opinion (from Dr. Mangione-Smith, not Mr. Kennedy) in *Samsung* is incorrect.   There, the Court did not strike any opinions but instead cautioned that experts should not opine on the ultimate issue of Samsung's state of mind:

> MR. SHEASBY: That would apply here as well. And that would be a blanket thing, but the paragraphs contain lots of perfectly appropriate things about notice and state of mind. So on those paragraphs I would just ask that the Court apply the same standard. If the Court has any questions, I'll move on to the next one.

> THE COURT: No. I mean, my intention here from the briefing and hearing Defendant's argument until you addressed it was to basically say Doctor Mangione-Smith is not going to be permitted to opine on Samsung's state of mind. Now, that should be adequate guidance without going back and taking paragraphs and saying this sentence is in and this sentence is out. And there's no reason why counsel for both sides can't do that with the kind of high-level guidance I'm giving. But that is the Court's guidance--the witness is not going to opine on Samsung's state of mind.

Ex. _16_ (*Samsung* PTC Tr. Vol. 2) at 39:21-40:12. The same approach is appropriate here. Mr. Kennedy is not going to opine on Micron's state of mind, or on ultimate issues of willfulness. But Mr. Kennedy must be able to explain to the jury facts directly relevant to the hypothetical negotiation, including the history of the asserted patents, and when and the extent to which Micron first learned about Netlist's patented technology in this case.

**E.   Conclusion**

Netlist respectfully requests that the Court deny Micron's motion to strike.

Dated: November 28, 2023

Respectfully submitted,

*/s/ Jason G. Sheasby*
_____

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on November 28, 2023, a copy of the foregoing was served to all counsel of record.

<u>/s/ Jason Sheasby</u>
Jason Sheasby

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

<u>/s/ Jason Sheasby</u>
Jason Sheasby