# EXHIBIT 9

```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF TEXAS
                             MARSHALL DIVISION

NETLIST, INC.,                       (  CAUSE NO. 2:22-CV-203-JRG
                                     )
         Plaintiff,                  (
                                     )
vs.                                  (
                                     )
MICRON TECHNOLOGY, INC.,             (
et al.,                              )  MARSHALL, TEXAS
                                     (  AUGUST 22, 2023
         Defendants.                 )  9:00 A.M.
```
_____

_____

MOTION HEARING

BEFORE THE HONORABLE ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

_____

SHAWN McROBERTS, RMR, CRR
100 E. HOUSTON STREET
MARSHALL, TEXAS  75670
(903) 923-8546
shawn_mcroberts@txed.uscourts.gov

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

1  we're not just going to do that, that would be something we
2  could engage, but I've seen no principled reason for the
3  10-year cutoff.  It doesn't in any way relate to the nature of
4  the case or the technology.  The patents-in-suit were filed
5  more than 10 years ago, and so the technology is a vintage
6  that's actually much older than 10 years.  So there is also a
7  concern about that arbitrary 10-year cutoff.
8             THE COURT:  What year does the damages model begin?
9             MR. SHEASBY:  So the damages model began for the two
10 patents-in-suit that relate to DDR4.  DDR4 began to be
11 developed in 2011, I believe, and I believe our patents were
12 filed in 2004 and 2007.
13            THE COURT:  All right.  Thank you, Mr. Sheasby.
14            MR. RUECKHEIM:  Your Honor, Mike Rueckheim on behalf
15 of the Micron Defendants.
16      Your Honor asked how Netlist defines the relevant
17 technology here, and Mr. Sheasby I think focused in on DRAM.
18 Netlist has already defined the relevant technology here, and
19 this is mentioned in Micron's briefing.  There is three --
20 Netlist served a document request type letter first thing in
21 the case with hundreds of different topics in it, and there's
22 three topics in there, 33, 44, and 75--it might be four; I
23 think 62 as well is mentioned in our briefing--that defines
24 -- that says, We want license agreements relating to L R dim
25 data buffer retiming features as used in LRDIMM.  We have

1   license agreements relating to implementing power management
2   circuitry on the modular board and the DDR5 DIMM.
3       And so that's what we did.  We produced -- there's a
4   little difference, I think, maybe in the disagreement or
5   changed in scope as to what Netlist is seeking in its motion
6   versus what they asked us to produce or we did produce.  And
7   as far as the relevant time frame, most of the patents, four
8   of them in this case, issued in 2020 to more recent, so just
9   within the last couple of years.  There is the two patents
10  that relate to what's called HBM, or they're accusing HBM
11  products that issued earlier in time, 2016, 2014, but the
12  first accused sale of HBM products wasn't until 2021.  So we
13  chose 10 years because it's well before any hypothetical
14  negotiation in this case.
15      So that takes us to I think the real problem, as --
16  counsel for Netlist focused in on this Rambus agreement.
17  That's the real dispute here--whether or not we should produce
18  this Rambus agreement.  And we have withheld the Rambus
19  agreement.  We've offered to produce the Rambus agreement with
20  the royalty amount redacted out.  And the problem here, Your
21  Honor -- and I agree with Mr. Sheasby that this can be
22  addressed at a MIL stage or a *Daubert* stage or an
23  admissibility-type argument, but the problem here is I did
24  attend the Samsung/Netlist trial, and as stated in Netlist's
25  own briefing--this is from the joint status report they filed

1    last night--they mentioned that the royalty amount, this
2    amount was mentioned repeatedly at trial.  And they did.  They
3    mentioned this huge amount of the Samsung/Rambus license
4    repeatedly at trial, yet when they're talking to Judge
5    Gilstrap in the pretrial proceedings--and we've quoted a lot
6    of these--this is Netlist's counsel says, "Mr. Cordell,
7    Samsung's counsel, is right.  If the expert would have come in
8    and said X hundred million dollars is what they paid Rambus,
9    give us that.  That would be totally inappropriate."  Totally
10   inappropriate.  And it is totally inappropriate.  To give the
11   jury such a high number like that, it risks jury confusion,
12   and that's exactly why we're offering the license with the
13   license amount redacted.
14         There's a lot of issues that can come up at MILs and we
15   can address it then, we can address it at *Daubert*, but to make
16   sure this issue was addressed, because it's an important
17   issue, we are offering to produce it with that amount
18   redacted.
19              THE COURT:  All right.  I don't see any basis to
20   redact the amount during discovery if you're not able to show
21   that it is not discoverable.  And I understand that you take
22   the position that improper use was allowed of the amount at a
23   prior trial.  I don't know what to do with that argument.
24   You're saying the Court is not able to properly control the
25   arguments of counsel?  I'm not sure what.

1          MR. RUECKHEIM:  No, Your Honor.
2      I do think this can be addressed in MIL or *Daubert*.
3  This -- so the reason we're withholding is lack of relevance.
4  This is a non-technically comparable license.  Counsel for
5  Netlist just said it was technically comparable, but its own
6  expert in the Samsung case said the opposite; it shouldn't be
7  used to determine the royalty amount.  And so that's the
8  reason for withholding it, but I do understand Your Honor's
9  point that this can also be addressed at a later time.
10         THE COURT:  All right.  Well, with respect to the
11  Rambus license, I will order that it be produced unredacted.
12     With respect to other licenses, point me to the
13  description that you say is in your brief of the relevant
14  technology.
15         MR. RUECKHEIM:  If Your Honor has -- I think we
16  copied into the joint status report that was filed last
17  night --
18         THE COURT:  All right.
19         MR. RUECKHEIM:  -- as -- I don't have the docket
20  number, but it was filed last night.
21         THE COURT:  That was Docket No. 152.
22         MR. RUECKHEIM:  152?  And on page 3, if you see near
23  the bottom of the page, there's some wording in bold.  That's
24  directly quoting Netlist document requests in this case.
25         THE COURT:  And what you're saying is that the only

1    licenses that they have requested in discovery are those that
2    are described at the bottom of page 3 of your joint notice?
3              MR. RUECKHEIM:  That is correct, Your Honor.
4              THE COURT:  All right.  Well, let me hear the
5    response to that.  Thank you, Mr. Rueckheim.
6              MR. SHEASBY:  Your Honor, that's not accurate.
7    There was an original letter that was sent out to begin to
8    discuss documents that are relevant.  We asked for certain
9    license agreements.  We listed 163 categories of license
10   agreements; 163 categories of topics that we wanted discovery
11   on.  It soon became apparent to us that we were not
12   comfortable with the way Micron was identifying the buffer or
13   relating to buffer or relating to HBM or relating to on-module
14   power management because that would require it to literally go
15   through each of the patents that were licensed to make a
16   determination, which I -- they could not do and I -- it's not
17   proper for them -- it would be -- it's inconceivable -- it's
18   unfeasible for them to represent that they went through each
19   of the license agreements and identified a patent that relates
20   to a buffer or relates to on-module power management or
21   relates to some feature of an LRDIMM.
22        And so what we did in our subsequent meet and confers is
23   we just said basically, Give us anything that relates to
24   semiconductor or semiconductor manufacturing, because DRAMs
25   and HBM are made--HBMs in particular are made using a

1     MR. RUECKHEIM:  Thank you, Your Honor.
2     THE COURT:  All right.  Thank you.
3 And we're adjourned.
4                    (End of hearing.)

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

```
 1              I HEREBY CERTIFY THAT THE FOREGOING IS A
 2         CORRECT TRANSCRIPT FROM THE RECORD OF
 3         PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
 4         I FURTHER CERTIFY THAT THE TRANSCRIPT FEES
 5         FORMAT COMPLY WITH THOSE PRESCRIBED BY THE
 6         COURT AND THE JUDICIAL CONFERENCE OF THE
 7         UNITED STATES.
 8
 9         S/Shawn McRoberts                 08/24/2023
10         _____DATE_____
           SHAWN McROBERTS, RMR, CRR
11         FEDERAL OFFICIAL COURT REPORTER
```