# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-CV-203-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC., | ) | |
| MICRON SEMICONDUCTOR | ) | ███████████████████ |
| PRODUCTS INC., MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## NETLIST INC.'S OPPOSITION TO MICRON'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 8,787,060 AND 9,318,160 (DKT. 279)

**TABLE OF CONTENTS**

Page

I.  RESPONSE TO STATEMENT OF ISSUES...........................................................................1

II.  RESPONSE TO MICRON'S STATEMENT OF UNDISPUTED FACTS.........................1

    A.  Asserted Claims & Accused Products. ................................................................1

    B.  The "array die" Term .........................................................................................2

    C.  The "electrical communication" Term ...............................................................3

    D.  The "data conduit" Term ...................................................................................4

III.  ARGUMENT ...................................................................................................................4

    A.  Netlist Voluntarily Dropped HBM2E and the Unasserted Claims..............................4

    B.  A Reasonable Fact Finder Can Find that Each Core Die in Micron's HBM Products is an "array die that is different from a DRAM circuit" ..............................5

        i.  The Construction of "array die" Was Based on Structural Disclaimer of Rajan's DRAM Circuits...........................................................................5

        ii.  Testimony from Micron's Witnesses Confirms the HBM Core Dies Are Different from DRAM Circuits ...........................................................6

        iii.  Dr. Brogioli's Analysis Applies the Agreed-on Construction of "array die"…..................................................................................................11

    C.  Micron's HBM3 Products Practice the "electrical communication" Limitations .................................................................................................12

        i.  Micron's Motion Depends on an Interpretation of "electrical communication" That Was Expressly Rejected by the Court's Claim Construction Order. .............................................................................12

        ii.  Dr. Brogioli Cites to Ample Evidence That █████████████ ████████████████████████...........14

    D.  Micron's HBM3 Products Practice the "Data Conduit" Limitations ........................16

        i.  Micron Misapprehends Dr. Brogioli's Analysis of the "data conduit" Terms ...........................................................................................16

        ii.  ███████████████████████████████ ████████.......................................................................18

**Page**

iii.  ███████████████████████████████████████
      ██████ .................................................................. 18

iv.   █████████████ .................................................................. 20

v.    ███████████████████████████████ .........................21

vi.   There is a Genuine Dispute of Material Fact Regarding the Location of the
      ██████████ .................................................................. 21

IV.   CONCLUSION ..........................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*,
 745 F.3d 1180 (Fed. Cir. 2014) ........................................................................................... 4, 5

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*
 2017 WL 2651618 (E.D. Tex. June 20, 2017), *report and recommendation adopted*,
 2017 WL 4693971 (E.D. Tex. July 31, 2017) ........................................................................ 4

*Finjan, Inc. v. Secure Computing Corp.*,
 626 F.3d 1197 (Fed. Cir. 2010) ............................................................................................ 19

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
 29 F.4th 1365 (Fed. Cir. 2022) ............................................................................................. 12

*SanDisk Corp. v. Kingston Tech. Co.*,
 695 F.3d 1348 (Fed. Cir. 2012) .............................................................................................. 4

*Treehouse Avatar LLC v. Valve Corp.*,
 54 F.4th 709 (Fed. Cir. 2022) .............................................................................................. 12

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

Micron's motion for summary judgment of non-infringement of the asserted '060 and '160 Patents advances four primary bases for non-infringement, each of which should be rejected.[1]

## I.      RESPONSE TO STATEMENT OF ISSUES

**A.**      Whether summary judgment of non-infringement is proper on products Netlist is no longer accusing of infringement (HBM2E) or claims Netlist is longer asserting (claims 11-14, 16-21, and 23-28 of the '060 Patent and claims 2 and 4 of the '160 Patent, the "Unasserted Claims").

**B.**      Whether Micron's HBM3 products infringe the '060 and '160 Patents, where the parties agree that the term "array die" means "array die that is different from a DRAM circuit," the experts disagree on the meaning of "DRAM circuit," and the Court previously denied Samsung's identical motion for summary judgment on this issue.

**C.**      Whether Micron's HBM3 products infringe the '060 and '160 Patents, where the Court's claim construction order rejected Micron's expert's position that "electrical communication" is the same as "electrical connection," and Micron's witnesses confirm that ██████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████

**D.**      Whether Micron's HBM3 products infringe the asserted claims of the '060 and '160 Patents, where Dr. Brogioli highlighted several modes in which two or more "data conduit(s)" are connected between a "data terminal" and two or more die interconnects.

## II.      RESPONSE TO MICRON'S STATEMENT OF UNDISPUTED FACTS

**A.      Asserted Claims & Accused Products.**

1-4.      Not disputed, but as Netlist made clear at the Oct. 23 hearing, Micron forced Netlist's hand by obfuscating discovery into its HBM products. Dkt. 279-04, 50:14-15 ("[I]t is an accurate

---

[1] Unless indicated otherwise, emphases are added and objections from testimony are omitted.

statement that there is no allegation against HBM2E. One of the reasons for that is I think of insufficiency of the documents that have been produced."). Netlist dropped the Unasserted Claims to streamline its case. Micron is not seeking a declaratory judgment of non-infringement. Dkt. 160 at 28.

**B.    The "array die" Term**

5.      Disputed. Micron glosses over claim language indicating that the asserted claims of the '060/'160 Patents require "array die(s)" with specific features. For example, claim 1 of the '060 Patent requires "a plurality of stacked array dies including a first group of array dies and a second group of at least one array die, each array die having data ports." '060 Patent, 23:58-64. Claim 1 further requires a "first die interconnect in electrical communication with the first group of array dies and not in electrical communication with the second group of at least one array die," and a "second die interconnect in electrical communication with the second group of at least one array die and not in electrical communication with the first group of array dies." *Id.*, 23:65-24:5. The memory package of claim 1 also includes a "control die" with a "first data conduit" and a "second data conduit" connected to "first die interconnect" and "second die interconnect" respectively. *Id.*, 24:6-15. Claim 1 of the '160 Patent recites similar limitations. *See* '160 Patent, 23:46-24:3.

6.      Disputed. The parties agreed to adopt the Court's construction of "array die" as "array die that is different from a DRAM circuit" from *Netlist v. Samsung*, 21-cv-463 ("*Samsung I*"). Dkt 111-1 at 3; Ex. 1 (Micron's counsel stating "Micron can agree to adopt the parties' agreed-upon constructions **or the court's constructions from the Netlist v. Samsung, 21-cv-463 (EDTX)** case: 'array die' . . . "array die that is different from a DRAM circuit"). In *Samsung I*, the Court left it "for the experts" to explain what "DRAM circuit" means. Ex. 19, 33:15-34:11. This construction derived from an argument made during prosecution that an "array die" is different from "DRAM circuits" 206A-D in Rajan. *See Samsung I*, Dkt. 114 at 32 ("Netlist structurally distinguished 'stacked DRAM circuits' from 'stacked array dies' to obtain the patent. Based on that distinction, the Court construes

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

'array die' as 'array die that is different from a DRAM circuit.'"). The Court denied Samsung's motion for summary judgment on this construction of "array die." *Samsung* I, Dkt. 432 at 2 ("The Court found that there are outstanding issues of material fact that preclude a grant of summary judgment.").

7. Disputed. Netlist's complaint does not state that the DRAM core dies are the same as "DRAM circuits." To the extent Micron contends that all "DRAM dies" are "DRAM circuits," Micron never sought such a construction, and Micron's own witnesses testified to the contrary. *See* III.B.ii-iii.

## C. The "electrical communication" Term

8-11. Not disputed that the term "electrical communication" appears in every asserted claim of the '060/'160 Patents, for example, claim 1 of the '060 Patent, which recites "at least a first die interconnect and a second die interconnect" and "the first die interconnect in electrical communication with the first group of array dies and not in electrical communication with the second group of at least one array die, the second die interconnect in electrical communication with the second group of at least one array die and not in electrical communication with the first group of array dies." And while Micron is correct that the Court held that the term "electrical communication" is to be construed according to its plain meaning, the Court's order rejected Micron's position that "electrical communication" is the same as "electrical connection." Dkt. 249 at 10. The Court's order noted— and rejected—the view of Micron's claim construction expert Dr. Stone that "electrical communication" exists between a die interconnect and a stub because waves purportedly travel between the two. *See id.* (noting Dr. Stone's testimony, Dkt. 110-2 at 95 ("[Q]. Is it your testimony that the connection between a TSV and a stub is electrical communication? A. Yeah. This demonstrates it, because the wave travels on that. Q. Okay. What does the word "electrical communication" mean to you? A. Electrical connection. That's -- I got that from the patent. I can show you where he says that."). As explained below and in Netlist's motion to strike, Micron's expert Dr. Woods improperly applies Dr. Stone's rejected construction. *See* III.C.i; Dkt. 270 at 4-6.

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

### D.    The "data conduit" Term

12-14.  Not disputed that Micron accurately reproduced the claim language. Each of these elements is present in Micron's HBM3 products. *See* III.D. Note, however, claim 1 of the '160 Patent recites "the first data conduit including first drivers each having a first driver size and configured to drive a data signal ***from a corresponding data terminal*** to the first group of array dies" and "the second data conduit including second drivers each having a second driver size and configured to drive a data signal ***from a corresponding data terminal*** to the second group of at least one array die." The second clause does not refer back to the earlier-mentioned "corresponding data terminal."

## III.    ARGUMENT

### A.    Netlist Voluntarily Dropped HBM2E and the Unasserted Claims

Under Federal Circuit precedent, notice by the patentee that it is no longer pursuing certain claims is "akin to either a Federal Rule of Civil Procedure 15 amendment to the complaint . . . or a Rule 41(a) voluntary dismissal of claims without prejudice." *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012); *see also Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014) (citing *SanDisk* and explaining that no formal motion or stipulation is required to remove claims from a case). Citing *SanDisk*, in *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, this Court denied a motion for summary judgment of non-infringement as to products that were previously asserted but not addressed in the patentee's expert report. 2017 WL 2651618, at *4 (E.D. Tex. June 20, 2017), *report and recommendation adopted*, 2017 WL 4693971 (E.D. Tex. July 31, 2017) ("Elbit voluntarily dropped the GMR-1 products before expert discovery—an action that is similar to amending a complaint or voluntarily dismissing claims without prejudice.").

Here too, Netlist dropped the HBM2E products and Unasserted Claims before expert discovery, and will not pursue these products or claims at trial. Micron is also not asserting any counterclaims for declaratory judgment of non-infringement, further underscoring that there is no live

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

issue with respect to the dropped products or claims. *See Alcon*, 735 F.3d at 1193 ("[I]f the accused infringer does not file a counterclaim, then it is up to the patentee to decide what claims are to be litigated and decided at trial."). Thus, Micron's motion for summary judgment as to the HBM2E products and Unasserted Claims should be denied.

**B.  A Reasonable Fact Finder Can Find that Each Core Die in Micron's HBM Products is an "array die that is different from a DRAM circuit"**

Micron argues that summary judgment of non-infringement based on the "array die" limitation is proper because "no material dispute exists that the semiconductor dies in Micron's HBM3 Gen2 product are DRAM dies and thus DRAM circuits."[2] Mot. at 8. In *Samsung I*, this Court denied Samsung's near-identical motion for summary judgment of non-infringement, which similarly argued that DRAM dies in Samsung's HBM products were not "different from a DRAM circuit" *Samsung I*, Dkt. 197 at 6-7; Dkt. 432 at 2 ("The Court found that there were outstanding issues of material fact that preclude a grant of summary judgment."). Here too, there is ample evidence that the DRAM dies in Micron's HBM3 are different from "DRAM circuits."

i.  The Construction of "array die" Was Based on Structural Disclaimer of Rajan's DRAM Circuits

Micron's motion is based on an incorrect application of the Court's prior construction of "array die" from *Samsung I*. The Court's construction was based on Netlist's arguments during prosecution of the '060 Patent, where the Examiner rejected the pending claims based on Rajan, citing Figure 2B of Rajan. *See, e.g.*, Ex. 2 (Oct. 11, 2013 Office Action) at 4-5. In response, Netlist asserted that "Rajan does not disclose 'a plurality of stacked array dies.' Rajan merely stacks DRAM circuits 206A-D, which are different from array dies." Ex. 3 (Jan. 13, 2014 Amendment) at 11-12. The Court found that Netlist's arguments in the prosecution of the '060 Patent regarding Rajan's "DRAM circuits

---

[2] In the parallel IPRs, Samsung and Micron have taken the position that array dies can include "DRAM dies." *E.g.*, Ex. 14 (Pet. in IPR2022-01427) at 90 (mapping array dies to "SDRAM chips D0-D15").

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

206A-D" affected a structural disclaimer, and thus held that "array die" means "array die that is different from a DRAM circuit." *Samsung I*, Dkt. 114 at 31-32, 35.

The common structural element in Rajan's Figures 2A-D is that each DRAM circuit is connected to the buffer chip by long wires running externally from the side of die to the buffer. Ex. 4 (Rajan), [0050] ("data signals may be **wired** as one common bus, several busses or as an individual bus to each DRAM circuit 206A-D."); Dkt. 271-02 (Brogioli Opening) ¶¶ 73, 89. Consistent with the use of external connections, Rajan [0018] discloses that DRAM circuits are monolithic. Ex. 4 (Rajan), [0018]; Dkt. 271-02 (Brogioli Opening) ¶ 76.



FIGURE 2B

Ex. 4 (Rajan), Fig. 2B.

[0018]   For example, in various embodiments, one or more of the memory circuits 104A, 104B, 104N may include a monolithic memory circuit. For instance, such monolithic memory circuit may take the form of dynamic random access memory (DRAM). Such DRAM may take any form including, but not limited to synchronous (SDRAM), double data rate synchronous (DDR DRAM, DDR2 DRAM, DDR3 DRAM, etc.), quad data rate (QDR DRAM), direct RAM-BUS (DRDRAM), fast page mode (FPM DRAM), video (VDRAM), extended data out (EDO DRAM), burst EDO (BEDO DRAM), multibank (MDRAM), synchronous graphics (SGRAM), and/or any other type of DRAM. Of course, one or more of the memory circuits 104A, 104B, 104N may include other types of memory such as magnetic random access memory (MRAM), intelligent random access memory (IRAM), distributed network architecture (DNA) memory, window random access memory (WRAM), flash memory (e.g. NAND, NOR, or others, etc.), pseudostatic random access memory (PSRAM), wetware memory, and/or any other type of memory circuit that meets the above definition.

Ex. 4 (Rajan), [0018]

ii.   <u>Testimony from Micron's Witnesses Confirms the HBM Core Dies Are Different from DRAM Circuits</u>

Micron's chief engineer responsible for HBMs, Dr. Samir Mittal, ██████████████

██████████████████████████████████████████



**CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**

Ex. 5 (Mittal Tr.) 40:10-17; *see also* Ex. 6 (Royer Tr.), 69:14-16 ██████████████

██████████████████████████

Micron designated Mr. Roman Royer, a ████████████████████████████

████████, as its corporate representative on the accused HBM products. Ex. 6 (Royer Tr.), 8:16-9:8.

Mr. Royer confirmed that ████████████████████████████████████

████████████████████████████████████





Ex. 6 (Royer Tr.), 144:24-145:12; *see also* Ex. 7 (Royer Ex. 117) at 4 (reproduced above).

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

Mr. Royer then confirmed that ███████████████████████████████████████



Ex. 6 (Royer Tr.), 145:13-21; *see also* Ex. 7 (Royer Ex. 117) at 6 (reproduced above).

Likewise, Dr. Mittal ██████████████████████████████████████



Ex. 5 (Mittal Tr.), 38:20-40:17; *id.*, 8:8-22. Contradicting Micron's position that "DRAM dies" are

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

necessarily "DRAM circuits," ████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████

Micron's witnesses also ████████████████████████████████████████

████████████, which is how Rajan defines DRAM circuits. Ex. 4 (Rajan), [0018]. For example,

████████████████████████████████████████████████████████████████████████████████████████

████████████

██████████████████████████████████████████████████████████████████

Ex. 6 (Royer Tr.), 132:5-14. Mr. Royer also confirmed that the ████████████████████████

████████████████████████████████████:



Ex. 6 (Royer Tr.), 136:6-137:2. As another example, Mr. Royer confirmed that ████████████████

████████████████████████████ (*id.*, 137:9-138:15):

██████████████████████████████████████

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



Micron's corporate witness, Mr. Halbert testified that ███████████████

█████████████████████████████████████████████████

███ Ex. 8 (Halbert Tr.), 120:21-121:9. ██████████████████████

HBM3E's core dies would be different from a DRAM circuit at least because they have substantial

additional structure as described above.

Likewise, Mr. Brent Keeth, co-inventor of Micron's older form of stacked memory (the

Hybrid Memory Cube), testified that the type of circuits differ from one type of DRAM to another,

e.g., different I/O circuits (Ex. 9 (Keeth Tr.), 81:11-24):



Micron's ████████████████████████. Ex. 5, 37:12-18 (Dr. Mittal

explaining that ████████████████████ ████████████████

████████████████████ Ex. 6 (Royer Tr.), 136:6-137:2

(quoted above); 137:9-138:7 ████████████████████████

████████████████████████████████████████████

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



████████████████████████████████████████████; Ex. 9 (Keeth Tr.), 44:1-6████████████████████████████████████████████

      iii.      Dr. Brogioli's Analysis Applies the Agreed-on Construction of "array die"

Dr. Brogioli demonstrates that the Accused HBM Products feature core dies with DRAM cells that are different from "DRAM circuits." *See, e.g.*, Dkt. 279-02 ¶¶ 203-218. For example, Dr. Brogioli explains that ████████████████████████████████████████████ *Id.* ¶ 203; Ex. 6 (Royer Tr.), 69:14-16 ████████████████████████████████████████████. Among other things, Dr. Brogioli cites to ████████████████████████████████████████████ Dkt. 279-02 ¶¶ 208-210. He also relies on Mr. Royer's testimony that ████████████████████████████████████████████ (*id.* ¶ 211), which is consistent with Dr. Mittal's testimony shown above.

Dr. Brogioli also explains other differences between "DRAM circuits" in the context of the '060 intrinsic record and core dies in HBM3E. ████████████████████████████████████████████." *Id.* ¶ 216 ████████████████████████████████████████████ *id.* ¶¶ 212-218 (████████████████████████████████████████████

A reasonable jury, in light of the evidence presented above, could conclude that the core dies in Micron's accused HBM products meet the "array die" limitations of the '060/'160 claims under the Court's construction differentiating "DRAM circuits." The sole case cited by Micron is inapposite. In

**CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**

*Treehouse Avatar LLC v. Valve Corp.*, the Federal Circuit affirmed the district court's grant of summary judgment of non-infringement where the patentee's expert failed to even recite, let alone apply, the Court's construction. 54 F.4th 709, 714 (Fed. Cir. 2022) ("There is no dispute that Mr. Friedman failed to address the construction of the CE limitation in his report. . . . He did not acknowledge or recite the district court's construction of the CE limitation in his report."). By contrast, Dr. Brogioli applied the Court's previous construction of "array die," which Micron's counsel agreed to adopt. Ex. 1 at 1.

Dr. Woods, meanwhile, applies his own gloss to the agreed-on construction of "array die." As explained in Netlist's motion to strike portions of Dr. Woods' expert report, ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████. Dkt. 270 at 3-4. Rajan's disclosure is limited to wire-bonded DRAM circuits, and does not mention "TSVs" anywhere, which Dr. Woods does not dispute. *E.g.*, ████████████████████████████████████████████████████ ██████ Under similar circumstances, the Federal Circuit in *Genuine Enabling* rejected an attempt to expand the scope of prosecution disclaimer beyond the applicant's basis for distinguishing the reference in examination. *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1375-76 (Fed. Cir. 2022). The Court found "disavowal of signals below the audio frequency spectrum," but rejected the notion that the applicant broadly "disavowed signals based on their content or nature" because the applicant's arguments did not "clearly and unmistakably demonstrate any such disclaimer." *Id.* Here too, the Court should reject Dr. Woods' attempt to expand the scope of the disclaimer to encompass all types of DRAM based on a disclaimer of Rajan's "DRAM circuits 206A-D."

## C. Micron's HBM3 Products Practice the "electrical communication" Limitations

i. <u>Micron's Motion Depends on an Interpretation of "electrical communication" That Was Expressly Rejected by the Court's Claim Construction Order.</u>

Micron argues that summary judgment of non-infringement is proper because ████████ ████

- 12 -

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████ Mot. at 10 (citing Woods Rebuttal ¶¶ 239-241). As detailed in Netlist's motion to strike, these paragraphs of Dr. Woods report contradict the Court's claim construction order, and should be stricken. *See* Dkt. 270 at 4-6. The statement is also factually incorrect because as shown below, ██████████████████████████

██████████████████████



Rather than apply the plain meaning of "electrical communication," Dr. Woods construes that term to mean "the act of transmitting," just as Micron's claim construction expert Dr. Stone did previously. Ex. 11 (Stone Tr.), 95:10-13 ████████████████████████

████████████████████████████████████████

████████████ 96:19-97:8 ████████████████████

████████████. The Court's claim construction order expressly rejected Dr. Stone's interpretation of "electrical communication." Dkt. 249 at 10 ("But given the testimony of Micron's expert, *see* Dkt. No. 110 at 1,[3] a dispute about scope exists and must be resolved. Considering the specification's use of the term, the Court agrees the plain and ordinary meaning of 'electrical communication' is different

from 'electrical connection.'"); Dkt. 110 at 1 (reproducing Dr. Stone's testimony).

      ii.      <u>Dr. Brogioli Cites to Ample Evidence That TSVs in Micron's HBM3Es Are In "Electrical Communication" with Some but Not All Array Dies</u>

Contrary to Micron's assertion, Dr. Brogioli does not point to the mere presence of "data ports" as evidence of "electrical communication." Mot. at 9-10. For example, Dr. Brogioli cites to the diagram below from a Micron presentation ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

████████████. *Id.* ¶ 225; *see also id.* ¶¶ 226-227.

Micron's corporate representative Mr. Royer confirmed that ████████████████████████

**CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**

██████████████████████████████████████████. Ex. 6 (Royer Tr.), 34:18-22 ████████

█████████████████████████████████████████████████████████████████████████

████████████████████████████████████████; Dkt. 271-02 (Brogioli Opening) ¶ 225. Dr. Mittal

also confirmed ███████████████████████████████████████████████████████████████

██████████████████████:

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

Ex. 5 (Mittal Tr.), 58:14-59:7; *see also id.* 35:20-25 ████████████████████████████

█████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

Likewise, Dr. Brogioli explains, with reference to ███████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

██████████████████" Dkt. 279-02 ¶ 228; *see also id.* ¶¶ 226-227.

While mere presence of data ports may not be sufficient for finding infringement, the fact is

in Micron's accused products, █████████████████████████████████████████████, (Dkt.

271-02 ¶ 200 (citing Royer (Ex. 6), 22:23-23:6), ████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████.

Dkt. 279-02 ¶ 225, 229; '060 Patent, 8:52-62 ("electrical connections leading from the TSV of the array

- 15 -

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

dies that are not configured to be in electrical communication with the die interconnect … may be stubs. These stubs are not configured to provide electrical communication with the memory cells of the array die."). The '060 Patent, 8:35-62 describes electrical communication as being absent when an interconnect passes through an array die because of the presence of "stubs." In other words, there is an absence of physical structure. ███████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████ This is contrasted to a design, for example, in which there was a switch that, although turned off, if turned on would allow transfer of data.

Thus, Dr. Brogioli presented ample evidence that TSVs in Micron's HBM3Es are in "electrical communication" with every other array die, and does not rely on the mere presence of data ports.

### D.  Micron's HBM3 Products Practice the "Data Conduit" Limitations

#### i.  Micron Misapprehends Dr. Brogioli's Analysis of the "data conduit" Terms

The claims of the '060 and '160 Patents require "first data conduit[s]" and "second data conduit[s]" with other specific limitations. For example, claim 1 of the '060 Patent requires "a control die comprising at least a first data conduit between the first die interconnect and a first data terminal of the plurality of data terminals, at least a second data conduit between the second die interconnect and the first data terminal." In his opening report, Dr. Brogioli identifies ███████████████

███████████████████ *E.g.*, 271-02 ¶ 134 ██████████████████

███████████████████████████████████████████████████ rminals

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████
███████████████████████████████████████

**CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**



Dkt. 271-02 ¶ 233. ███████████████████████████████████ the ███████████████████████████████████████. *See, e.g., id.* ¶ 234 ████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████ *see also id.* ¶¶ 139-140, 196 ████████████████ ¶¶ 140-141,
196 ████████████████ ¶¶ 190-197. ████████████████████████████
████████████ at 42-46 (████████████████████████████████
████████████████████████████); Ex. 12 at 21 ████████████
████████████████████████ Ex. 15 at 15-16 (████████████████████
████████████████████████████

After Dr. Brogioli submitted his opening report (and several weeks after the close of fact
discovery), ████████████████████████████████████████████
████████████████████████████████████████████████████
████████ Ex. 16; Ex. 20, ¶ 17. ████████████████████████████████,
████████████████████████████████████████████████████
████████████████████████████. *See* Ex. 20, ¶¶ 17-19, 23, 26 (Dr.
Brogioli's supplemental report ████████████████████████).

For reasons below, Micron's motion should be denied because there are at least genuine issue
of material facts in dispute. In many cases, the undisputed facts favor a ruling against Micron.

**CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**

ii.   ██████████████████████████████████████████████

Micron argues that the ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

████. Mot. at 14-15. Even if true, that is irrelevant because the claims at issue are all apparatus claims

and the undisputed fact is that the accused structural features are available in the final products. Ex.

17 (Stordahl Tr.), 27:19-27:23 ██████████████████████████████████████

███████████████████████████████████   And even if active use of the circuitry were

required for finding infringement of apparatus claims (it is not), Micron's motion would still fail

because it is undisputed that ███████████████████████████████████████

█████████████████████████   *Id.*, 82:15-21 ████████████████████████████████w

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████); Ex. 18 (Kariya Tr.), 9:19-10:3 (█████████████████

████████████████████████████ ██████████████████████████████████████

████████████████████████████. Ex. 17, 11:24-12:5 ████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████

iii.   ██████████████████████████████████████████

Micron argues that █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ Mot. at 15. ████████████████████████████████████████████████

███████████████████████████████████████████. Dkt. 279-02 ¶¶ 235-236. ████████

**CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**

███████████████████████████████████████████

██████████. Ex. 13 █████ at 44; Ex. 6 (Royer Tr.), 70:6-71:4 █████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████. Ex. 6, 127:14-127:21

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████ Thus, even if the "data conduit" term is a functional limitation (as Micron now appears to contend), Micron's HBM3E products would still infringe because the asserted claims of the '060/'160 patents are apparatus claims. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1203-05 (Fed. Cir. 2010) (apparatus claims infringed where code for performing claimed functions existed in the accused products when sold, even if that code was turned off—"in the same way that an automobile engine for propulsion exists in a car even when the car is turned off").



Ex. 13 █████ at 44.

███████████████████████████████████████████

- 19 -



Ex. 17 (Stordahl Tr.), 25:16-27:7. Dr. Brogioli pointed to the ███████████████████

███████████████ Dkt. 279-02 ¶¶ 190-191Ex. 15 at 16 ██████████████████████

██████████████████ Evidence thus shows that ████████████████████████████

Furthermore, based on the newly produced Excel spreadsheet, ████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████. Ex. 16 at 1; Ex. 20 (Brogioli Supplemental Rpt.), ¶ 42. Dr.

Brogioli has previously opined that ███████████████████████████████████████████

███████████████████ (see, e.g., Dkt. 279-02 ¶¶ 167, 192), ████████████████████

███████████████████████████████████████████████████████████████████████████.

Ex. 16 at 1.

      iv.  ███████████████████

    The ██████████████████████████ and Mr. Stordahl's testimony also supports Dr.

Brogioli's opinion that ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

**CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**



Ex. 17 (Stordahl Tr.), 74:22-75:11. A reasonable jury, based on the above, could reasonably find that

the limitations are satisfied.

v. 

Micron's assertion of non-infringement ████████ is undermined by its own expert's

depiction of ███████████████████████████████████

██████████████. *See, e.g.*, Dkt. 279-03 (Woods Rebuttal) ¶ 391 (reproduced

below). A reasonable jury could reject Micron's argument based on its own expert's description of the

accused products.



vi. <u>There is a Genuine Dispute of Material Fact Regarding the Location of the</u>
█████████

Based on Netlist's review of Micron source code, Dr. Brogioli identifies ██████████

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

█████████████████████████████████████. Dkt. 271-02 ¶ 144 ███████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████. *See* Dkt. 279-02, Appendix B.

     Micron submitted a declaration from Mr. Stordahl ████████████████████ ██████████████████████. Mot. at 12; Dkt. 279-08 (Stordahl Decl.) ¶ 3. Based on this, Micron concludes ████████████████████████████████████████████ ████████████████████████ Mot. at 12. Mr. Stordahl's declaration does not include any evidence supporting his conclusory statement. Moreover, while Dr. Woods has access to Micron engineers and has attached relevant schematics, including those for ███████, not once did he mention in his expert report that the ████████████████████████████. *See* Woods ¶¶ 154, 261-270. In fact, he does not take issue with the circuit representation presented by Dr. Brogioli.

     There is therefore a genuine dispute of material fact ██████████████████ ████████████████████████████████████████████ Dr. Woods does not disagree, but Mr. Stordahl states otherwise. A jury is entitled to weigh the credibility of the witnesses and determine the facts.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████. Ex. 17 (Stordahl Tr.), 27:15-27:23.

## IV.   CONCLUSION

     For the foregoing reasons, Netlist respectfully submits Micron's motion should be denied.

**CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**

Dated: November 28, 2023

Respectfully submitted,

*/s/ Jason G. Sheasby*
_____

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

**CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY**

## CERTIFICATE OF SERVICE

I hereby certify that, on November 28, 2023, a copy of the foregoing was served to all counsel of record.

/s/ Jason Sheasby
Jason Sheasby

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

/s/ Jason Sheasby
Jason Sheasby