UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:22-CV-203-JRG |
| vs. | ) |
| | ) JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC., | ) |
| MICRON SEMICONDUCTOR | ) |
| PRODUCTS INC., MICRON | ) |
| TECHNOLOGY TEXAS LLC, | ) |
| | ) |
| Defendants. | ) |

**NETLIST INC.'S OPPOSITION TO MICRON'S MOTION TO STRIKE
EXPERT REPORT OF DR. BROGIOLI**

**TABLE OF CONTENTS**

**Page**

I. Dr. Brogioli's Discussion of Netlist's and Micron's HBM Technology Is Proper (¶¶ 103, 109, 112, 121-122, 215, 221-224, 324-325, 362, 370) ........................................................... 1

II. Dr. Brogioli's Discussion of Indirect Infringement is Proper (¶¶ 359–379, 383–386) ........... 4

III. Dr. Brogioli Does Not Offer Economics Opinions (¶¶ 67, 297-299, 323, 327, 330) ............. 6

IV. Dr. Brogioli's Analysis of "array die" is Proper (¶¶ 60-100, 206-218, and 272) ..................... 7

    A. Micron Agreed to the Court's Construction of "array die" from *Samsung I* ............... 7

    B. Dr. Brogioli's Analysis is Proper Expert Opinion .......................................................... 8

        1. Dr. Brogioli Explains what a POSA Understands "DRAM circuit" to mean .......... 8

        2. Dr. Brogioli Analyzes Micron Documents and Testimony that show each Core Die in HBM3E is an "array die that is different from a DRAM circuit" ....................... 10

V. Dr. Brogioli's Analysis of "electrical communication" is Proper (¶¶ 225-228 and 232) ...... 11

VI. Dr. Brogioli's Infringement Theories are Not "New" (¶¶ 144-148, 234, 259, 279-283, and Appendix B at pp. 1-5) ............................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
　435 F.3d 1356 (Fed. Cir. 2006) ................................................................................................ 3

*Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*,
　2016 WL 3655302 (E.D. Tex. Mar. 21, 2016) ....................................................................... 15

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
　2017 WL 2869331 (E.D. Tex. Apr. 27, 2017) ....................................................................... 14

*Jauipuria v. LinkedIn Corp.*
　2013 WL 12146741 (E.D. Tex. Mar. 27, 2013) ..................................................................... 15

*Nat'l Presto Indus., Inc. v. West Bond Co.*,
　76 F.3d 1185 (Fed. Cir. 1996) .................................................................................................. 5

*Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*,
　2018 WL 626355 (E.D. Tex. Jan. 30, 2018) ............................................................................ 4

*ROY-G-BIV Corp. v. ABB Ltd.*,
　63 F. Supp. 3d 690 (E.D. Tex. 2014) ..................................................................................... 15

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
　330 F. Supp. 3d 574 (D. Mass. 2018) ...................................................................................... 5

*Solas OLED Ltd. v. Samsung Elecs.*,
　2022 WL 1912864 (E.D. Tex. May 30, 2022) ............................................................... 2, 4, 14

*Sprint Commc'ns Co. v. Time Warner Cable, Inc.*,
　760 F. App'x 977 (Fed. Cir. 2018) ........................................................................................... 3

*Treehouse Avatar LLC v. Valve Corporation*,
　54 F.4th 709 (Fed. Cir. 2022) ................................................................................................... 8

*WCM Indus., Inc. v. IPS Corp.*,
　721 F. App'x. 959 (Fed. Cir. 2018) .......................................................................................... 5

Micron's motion to strike portions of Dr. Brogioli's report should be denied.

**I.  Dr. Brogioli's Discussion of Netlist's and Micron's HBM Technology Is Proper (¶¶ 103, 109, 112, 121-122, 215, 221-224, 324-325, 362, 370)**

Micron characterizes these paragraphs of Dr. Brogioli's report as purportedly discussing "the Netlist-Samsung Litigation." This is wrong. In reality most of these paragraphs do not refer to the Samsung litigation at all, but rather discuss technical aspects of Netlist's HBM technology and Micron's accused HBM products, including how Micron developed its products.

¶¶ <u>109, 112, 121-122, 221-224, 324-325</u>. The '060 and '160 Patents teach (among other things) HBM products having TSVs configured such that die interconnects selectively communicate with some, but not all, of the array dies. Dkt. 271-02 ¶¶ 50-62. This configuration helps reduce power consumption and driver size, among other benefits. *Id.* ¶ 52.

Paragraphs 109, 112, and 120-121 are part of a discussion of Micron's development of the accused HBM products. For example, in Paragraph 109 Dr. Brogioli explains that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (¶ 109). He explains this proved technically inferior and not successful, and that Micron found itself behind in the market. Dr. Brogioli explains that as a result Micron adopted the TSV structure taught in Netlist's patents (¶¶ 112-113). Similarly, paragraphs 121-122 are part of Dr. Brogioli's "overview of Micron's HBM products" and discusses how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, motivating Micron to adopt the teachings of Netlist's patents. This is evidence of the importance and technical benefits of Netlist's invention and the inadequacy of alternatives, which is highly relevant to infringement, willfulness, and damages.

Likewise, paragraphs 221-224 discuss ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Once again, this is important technical evidence

that to remain competitive, Micron chose to adopt the TSV configuration taught in Netlist's patents. Paragraphs 324-325 also discuss this issue, noting that

Micron's argument that these paragraphs will cause the jury to "substitute the verdict in the case against a different defendant and different products for the correct factual determination to be done in this case" is baseless. These paragraphs do not mention the Samsung litigation or verdict at all. Nor do they invite the jury to compare Samsung and Micron's products for purposes of infringement. The paragraphs are focused on the development of Micron's products, including

.

Similarly, Micron is wrong that Dr. Brogioli relies on Samsung documents Micron lacks access to. The material cited and discussed in these paragraphs was produced to Micron in this case or is part of the publicly available trial record from the *Samsung* case (and in the IPRs in which Micron counsel appeared). Micron does not identify a single document cited in these paragraphs that it did not have access to. Instead, Micron alleges different documents listed in Dr. Brogioli's materials considered with the bates prefix "SAM-NET" were not produced in this case. None of these documents are cited in the body of Dr. Brogioli's report, and Netlist has since served a corrected materials considered list to correct this clerical error. This portion of Micron's motion is therefore moot.[1]

Micron's further argument that Dr. Brogioli's discussion of Micron's product "is conclusory and incomplete" goes to weight and not admissibility. Nor does Dr. Brogioli need to conduct an element-by-element comparison of the Samsung and Micron products because Dr. Brogioli was not,

---

[1] Micron objects to one other document in the materials considered list with a different prefix (NETLIST_SAMSUNG_EDTX00064034). This document was produced to Micron as part of NETLIST_SAMSUNG_EDTX00064006–68.

as Micron contends, trying to prove infringement by comparing Micron's products to Samsung's instead of comparing the claim elements to Micron's products. Instead, he was providing technical background regarding how Micron's design came to be. There is no basis to strike this discussion.

¶ 215. In this paragraph, Dr. Brogioli is providing his infringement analysis of Micron's products and explains that ███████████████████████████████████████████████████████████████████████████████████████ Micron identifies nothing improper about this technical opinion. And Dr. Brogioli can offer this technical opinion without referencing his prior testimony.

¶¶ 103, 362, 370. These paragraphs are part of Dr. Brogioli's discussion of indirect infringement. In paragraph 362, Dr. Brogioli discusses how ███████████████████████████████████████████████████████████████████████████████████████ ███████ All of this is proper evidence of Micron's knowledge and intent (which are elements of inducement), and none of it discusses the Samsung litigation or verdict.

With respect to discussions at the end of paragraphs 362 and 103 and in paragraph 370, the fact that ███████████████████████████████████████████████████████████████████████████████████████ is highly relevant to knowledge and willfulness, and has been held admissible by the Federal Circuit. *See Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 980 (Fed. Cir. 2018) (prior verdict on "same technology" asserted against different competitor admissible, including because it was relevant to willfulness); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1365–66 (Fed. Cir. 2006) (affirming admission of a prior verdict against an earlier version of defendant's product). However, to the extent the Court excludes the Samsung verdict, then Dr. Brogioli can still discuss the technical opinions in these paragraphs without referencing the Samsung litigation or verdict.

## II. Dr. Brogioli's Discussion of Indirect Infringement is Proper (¶¶ 359–379, 383–386)

Micron seeks to strike broad swaths of Dr. Brogioli's report that it characterizes as opinions about Micron's "state of mind." Micron mischaracterizes Dr. Brogioli's opinions and their relevance to this case. All of these paragraphs are part of Dr. Brogioli's discussion of indirect infringement. Paragraphs 359-367 discuss evidence showing that Micron knew of Netlist's HBM patents, including discussions of technical presentations that Netlist made to Micron regarding the '060 Patent. Similarly, Paragraphs 368-379 discuss evidence of inducement, including materials and direction Micron provides to its customers, collaboration between Micron and customers, Micron's marketing of the accused products, and other ways that Micron encourages use of the patented invention. Paragraphs 383-386 address contributory infringement and incorporate this earlier discussion.

The factual basis supporting that Micron had access to and was on notice of the patents-in-suit involves a series of disclosures in technical presentations to Micron. Dr. Brogioli's opinions that these documents evidence disclosure of certain concepts from the asserted patents will aid the jury in determining when Micron had knowledge of Netlist's patented inventions and the source of those inventions. *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, 2018 WL 626355, at *3 (E.D. Tex. Jan. 30, 2018) (holding, in response to allegations that expert opinions relate to state of mind, that an expert is "permitted to offer opinions concerning the purpose, importance, or content of technical documents in order to assist the jury's understanding of such documents").

Micron identifies no reason why it is improper for Dr. Brogioli to provide technical input regarding the underlying facts that are relevant to indirect infringement. To be clear, Dr. Brogioli is not offering an opinion on Micron's state of mind. But Dr. Brogioli should be permitted to discuss factual evidence that is relevant to the jury's determination of indirect infringement. This is the same approach that the Court adopted in the *Samsung* case. Ex. 1 (*Samsung* PTC Tr. Vol. 2) at 39:21-40:12 (the Court gave the instruction that experts were not to offer ultimate opinions on state of mind, but

did **not** strike portions of the paragraphs that merely discussed factual evidence).

Micron also argues that Dr. Brogioli's discussion of certain documents that show Micron's knowledge of Netlist's patents is "unreliable." These arguments go to the weight of the evidence and are at most material for cross examination, not exclusion. For example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Dkt. 271-02 ¶ 362. This evidence is not only relevant to Micron's reverse-copying argument, but is also relevant to knowledge in the context of willfulness under *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x. 959, 970 (Fed. Cir. 2018). In *WCM*, the Federal Circuit upheld the verdict where the accused infringer knew of the patents before they issued, and defendant's employee "had monitored [patent owner's] products for decades and possessed . . . literature indicating that [patent owners'] products were marked with 'patent pending.'" *Id.* at 971.[2] Micron's further argument that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. 2 (NETLIST_SAMSUNG_EDTX00054760).

Micron's citation to *Nat'l Presto Indus., Inc. v. West Bond Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996) does not support its argument. There, the Federal Circuit merely held that there is no liability for indirect infringement under section 271(b) "before issuance of the adverse patent." The Federal Circuit did not hold that events occurring before the patent issued are irrelevant to infringement after the patent issues, and subsequently confirmed in *WCM* that pre-issuance events are relevant.

Dr. Brogioli also discusses an ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[2] Courts have recognized that *WCM* "cast[s] significant doubt" on the line of district court cases holding "neither general knowledge of a patent portfolio nor actual knowledge of a patent application or of related patents, without more, is sufficient." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 608-09 (D. Mass. 2018).

███████████████████████████████████████████████

███████████████████████████████████████████. Dkt. 271-02 ¶ 363; Ex. 3 (NL-MIC-203_00042085) at 29. Dr. Brogioli offers technical analysis explaining that the accused Micron HBM3E products incorporate the features Netlist presented. Dkt. 271-02 ¶ 363.

Contrary to Micron's argument, there is evidence that the meeting occurred in April 2015 and that the presentation was made to Micron. Ex. 4 (NL-MIC-203_00042083) at 1-2 (email re "Micron Meeting -- 4/21" stating "We had a good meeting with Micron today. It lasted for 2 and 1/2 hours listed below is a summary . . . I've also attached a copy of the presentation we shared with them.").

There is also witness testimony confirming the presentations were made to Micron. *See* Ex. 5 (Whitley 2-3-17 Depo., NL-MIC-203_00046468) at 160:18-161:5 (███████████████ ███████████████████████████████████); Ex. 6 (Hong Depo.) at 174:20-25 (███████████████████████████████), 181:6-8 ███████████████████████ ███████████████████████████████████████);[3] Ex. 7 (Milton Depo.) at 38:23-39:9 (███████████████████████████████████████ ███████████████████████████). Mr. Whitley also submitted a sworn declaration ███████████████████████████████████████████████ ███████████████████████████████████████████. Ex. 8 ¶¶ 3-5.

### III. Dr. Brogioli Does Not Offer Economics Opinions (¶¶ 67, 297-299, 323, 327, 330)

Micron's argument that Dr. Brogioli offers improper opinions on "financial success" outside his expertise again mischaracterizes his report. The paragraphs Micron identifies are part of Dr. Brogioli's analysis of Micron's development of the accused HBM products, their technical benefits, and rebutting Micron's alleged non-infringing alternatives. As part of this analysis, Dr. Brogioli discusses the fact that Micron ███████████████████████████████████

---

[3] Micron's quotation of other portions of Mr. Hong's testimony is incomplete. ███████████ ███████████████████████████████



(e.g. ¶¶ 67, 297-299). Dr. Brogioli refers in this analysis to testimony by Micron witnesses admitting that ▓▓▓▓ and ▓▓▓▓ leading Micron to adopt Netlist's patented technology. *Id.* Dr. Brogioli then explains that, ▓▓▓▓. *Id.* ¶ 299.

Paragraphs 323, 327, and 330 likewise relate to the technical benefits of the '060/'160 Patents, including specifically the impact on capacity. Dr. Brogioli opines within this discussion that the fact ▓▓▓▓ confirms those alleged alternatives were not in fact viable (¶ 323). He further explains that, as a technical matter, even if ▓▓▓▓ (¶¶ 327, 330). All of this is properly within Dr. Brogioli's expertise as a technical expert.

In these paragraphs, the only references to commercial performance are based on testimony from Micron's own witnesses admitting ▓▓▓▓, which Dr. Brogioli properly relies on when discussing the technical benefits of the invention and inadequacy of alternatives. As a technical expert, Dr. Brogioli is fully qualified to opine on what renders a product competitive in terms of technical performance. There is no basis to strike these paragraphs.

IV. **Dr. Brogioli's Analysis of "array die" is Proper (¶¶ 60-100, 206-218, and 272)**

    A. **Micron Agreed to the Court's Construction of "array die" from *Samsung I***

Micron seeks to strike paragraphs of Dr. Brogioli's report analyzing the "array die" term as untimely claim construction. Mot at 9-12.[4] Micron's motion rehashes the same arguments made in Samsung's motion to strike Dr. Brogioli's report in *Samsung I*, which the Court denied. Ex. 9 (*Samsung*

---

[4] Micron's identification of "¶¶ 60-100" appears to be an error. The discussion of Rajan begins in ¶ 69.

*I*, Dkt. 432) at 8 (denying Samsung's Motion to Strike Expert Testimony of Dr. Michael Brogioli).

Contrary to Micron's assertion, (Mot. at 9-10), Dr. Brogioli applied the agreed-to construction that "array die" means "array die that different from a DRAM circuit." This is the same construction adopted by the Court in *Samsung I* and agreed to by Micron. *Samsung I*, Dkt. 114 at 31-32, 35; Ex. 10 (2023-04-04 Park email) ("[F]or the following terms, Micron can agree to adopt the parties' agreed-upon constructions **or the court's constructions from the Netlist v. Samsung, 21-cv-463 (EDTX)** case: . . . 'array die' . . . "array die that is different from a DRAM circuit"'"). The Court left it "for the experts" to determine what "DRAM circuit" means. Ex. 11 (*Markman* Tr.), 33:15-34:11. These facts make this case distinguishable from *Treehouse Avatar LLC v. Valve Corporation*, 54 F.4th 709, 711 (Fed. Cir. 2022), because contrary to the facts there, Micron's counsel agreed to adopt "the **court's** construction" of "array die." Moreover, unlike *Treehouse*, (*id.*), Dr. Brogioli not only recited but also applied the Court's construction of "array die" with detailed explanation of why the DRAM dies in Micron's HBM3E differ from a DRAM circuit.

### B. Dr. Brogioli's Analysis is Proper Expert Opinion

#### 1. Dr. Brogioli Explains what a POSA Understands "DRAM circuit" to mean

In *Samsung I*, the Court found that Netlist's arguments in the prosecution of the '060 Patent regarding Rajan's "DRAM circuits 206A-D" affected a structural disclaimer, and thus held that "array die" means "array die that is different from a DRAM circuit." *Samsung I*, Dkt. 114 at 31-32, 35. As Dr. Brogioli explains, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 271-02 ¶ 73; *id.* ¶¶ 72, 76; Ex. 12 (Rajan), [0050] ("data signals may be wired as one common bus, several busses or as an individual bus to each DRAM circuit 206A-D."). Consistent with the use of external connections, Rajan [0018] discloses that DRAM circuits are monolithic. *Id.* [0018].



FIGURE 2B

[0018] For example, in various embodiments, one or more of the memory circuits 104A, 104B, 104N may include a monolithic memory circuit. For instance, such monolithic memory circuit may take the form of dynamic random access memory (DRAM). Such DRAM may take any form including, but not limited to synchronous (SDRAM), double data rate synchronous (DDR DRAM, DDR2 DRAM, DDR3 DRAM, etc.), quad data rate (QDR DRAM), direct RAMBUS (DRDRAM), fast page mode (FPM DRAM), video (VDRAM), extended data out (EDO DRAM), burst EDO (BEDO DRAM), multibank (MDRAM), synchronous graphics (SGRAM), and/or any other type of DRAM. Of course, one or more of the memory circuits 104A, 104B, 104N may include other types of memory such as magnetic random access memory (MRAM), intelligent random access memory (IRAM), distributed network architecture (DNA) memory, window random access memory (WRAM), flash memory (e.g. NAND, NOR, or others, etc.), pseudostatic random access memory (PSRAM), wetware memory, and/or any other type of memory circuit that meets the above definition.

Micron argues that Dr. Brogioli's interpretation of "DRAM circuit" as limited to Rajan's external wire-bonded "DRAM circuits" was "not previously disclosed or agreed" to. *Id.* at 11. Micron misunderstood Dr. Brogioli's opinion. Dr. Brogioli's position is that the only intrinsic evidence regarding "DRAM circuits" appears in Rajan, so one should consult Rajan to understand the term, especially in light of the fact that the term "DRAM circuit" is admittedly not a term of art. Ex. 21 (Halbert Depo.), 120:21-121:9 (███████████████████████████████████████

███████████████████).

Dr. Brogioli's explanation of the structural features of DRAM circuits in light of Rajan should also not come as a shock to Micron because it is consistent with his testimony at the *Samsung I* trial that Micron's counsel attended, and Dr. Brogioli's *Samsung I* report produced to Micron. Ex. 13 (Brogioli Cross), 556:17-21 ("Q. Okay. So it's your opinion, as you sit here, that if somebody sees the phrase 'memory circuit', you've got to think of these little wires coming off of the edges. Right? A. **In the context of these DRAM circuits, yes, that there's external connections**."); Ex. 14 (2023-07-26 Markman Hearing Tr.), 7:15-16 (Counsel for Micron: "I sat in and watched the tail end of the *Netlist v. Samsung trial*"); Ex. 15 (Dr. Brogioli's *Samsung I* opening report) ¶ 64. There is no sandbagging or

gamesmanship here.

      2.      <u>Dr. Brogioli Analyzes Micron Documents and Testimony that show each Core Die in HBM3E is an "array die that is different from a DRAM circuit"</u>

As detailed in Netlist's opposition to Micron's motion for summary judgment of non-infringement, Dr. Brogioli demonstrates that the Accused HBM Products feature core dies with DRAM cells that are different from "DRAM circuits." Dkt. 271-02 ¶¶ 203-218, 272. For example, Dr. Brogioli explains that ▮▮▮▮▮. *Id.* ¶ 203; Ex. 16 (Royer Depo.), 69:14-16 (▮▮▮▮▮). Among others, Dr. Brogioli cites to Micron's internal documents and testimony from Mr. Royer to confirm that ▮▮▮▮▮ Dkt. 271-02 ¶¶ 208-210. He also relies on Mr. Royer's testimony that ▮▮▮▮▮ (*id.* ¶ 211):

 

Ex. 16 (Royer Depo.), 144:24-145:21.     Ex. 18 (Royer Ex. 117) at 6.

Dr. Brogioli also explains other differences between "DRAM circuits" in the context of the '060 intrinsic record and Micron's core dies in HBM3E. He notes that while DRAM circuits ▮▮

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶ 216; *see also id.* ¶¶ 212-218 (analyzing structural differences between wire-bonded DRAM stacks and HBM3 core dies).

### V.    Dr. Brogioli's Analysis of "electrical communication" is Proper (¶¶ 225-228 and 232)

Contrary to Micron's assertion, Dr. Brogioli does not point to the mere presence of "data ports" as evidence of "electrical communication." Mot. at 9-10. For example, Dr. Brogioli cites to the diagram below from a Micron presentation illustrating the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, where Micron acknowledges that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶ 225; *see also id.* ¶¶ 226-227.



Ex. 17 (SC-13B) at 1.             Ex. 17 (SC-13B) at 1.

Dr. Brogioli explains, for example, that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. 271-02 ¶ 225. Likewise, Dr. Brogioli explains, with reference to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

██████████████████████████████

██████████████████████████████ *Id.* ¶ 228.

While mere presence of data ports may not be sufficient for finding infringement, the fact is in Micron's accused products, ██████████████████ (Dkt. 271-02 ¶ 200 (citing Royer, 22:23-23:6)), which would evidence electrical communication under any interpretation of "electrical communication." Similarly, ██████████████████ there is no electrical communication in the context of the '060 and '160 Patents. *Id.* ¶ 229; *see also* '060 Patent, 8:52-62 ("electrical connections leading from the TSV of the array dies that are not configured to be in electrical communication with the die interconnect … may be stubs. These stubs are not configured to provide electrical communication with the memory cells of the array die.").

Thus, Dr. Brogioli presented ample evidence that ██████████████████ ██████████████████

## VI.  Dr. Brogioli's Infringement Theories are Not "New" (¶¶ 144-148, 234, 259, 279-283, and Appendix B at pp. 1-5)

Micron seeks to strike certain portions of Dr. Brogioli's analysis of the "data conduit" limitations of the '060/'160 Patents that discuss a particular circuit called ██████████ ██████████████████ Mot. at 13-15. Dr. Brogioli identifies ██████████ ██████████████████ *See, e.g.*, Dkt. 271-02 ¶¶ 144-148. Micron argues that Netlist failed to identify this specific circuit in its infringement contentions, and thus Dr. Brogioli's opinions should be stricken. *Id.* ██████████████████ ██████████████████ ██████████████████ *Id.* at 14. And as detailed in Netlist's motion to show cause, Micron's efforts to impede Netlist's source code review

███████████████████████████████████████████████████

continued through the end of fact discovery. Dkt. 178 at 2-6. For example, even after the Court ordered Micron to identify the authoritative RTL tree for its source code (Dkt. 158 at 2), Micron failed to comply with the Court's clear instructions, frustrating Netlist's ability to complete code review in the waning days of fact discovery. *See* Dkt. 248-06 (Barr declaration) ¶¶ 5-7.

While Netlist did not update its infringement contentions with citations to the ███████ ███ Micron cannot credibly argue that Dr. Brogioli's theories are different than those in Netlist's infringement contentions. For example, claim 1 of the '160 Patent requires a "control die" comprising a "first data conduit including first drivers" and "second data conduit including second drivers," and further recites "the second driver size being different from the first driver size." *See* Dkt. 271-08 (Netlist's '160 infringement contentions) at 22 (Element 1d). Netlist's contentions disclosed the theory that the "drivers" could include test circuitry. *Id.* ("████████████████████████████ ████████████████████"). This is exactly what Dr. Brogioli contends ███████████ does in his report. *Id.* ¶ 144 ("██████████████████████████████████"). Similarly, for the "driver size" limitation, Netlist's contentions pointed to differences in test circuitry as an example. Dkt. 271-08 ('160 contentions) at 22 ████████████████████████████████ ████████████████████████████/████████████████████████ ██████████████████████). This again mirrors Dr. Brogioli's analysis in his report. *Id.* ¶ 259 (opining that "████████████████████████████████████ ████████████████████████████"). Netlist's contentions also illustrate its theories by citing to a publicly available Micron technical brief that depicted the "data drivers and interconnections between data terminals and data ports on memory die in the DWORD [data] regions." Dkt. 271-08 at 22). But the ██████████████████████████████ ██████ which Micron does not dispute.

For the '060 Patent, Micron similarly argues that Netlist's contentions did not identify ████

- 13 -

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ for the "data conduit" element. Mot. at 13. As a preliminary matter, Micron has not explained how Dr. Brogioli's analysis for the '060 Patent is different from that presented in its infringement contentions. Nor can it. For the "data conduit" limitation (1d), Netlist's contentions noted that the state of the conduits may change depending on the operating mode. Ex. 19 ('060 contentions), at 26 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Netlist's '060 contentions also cite the same Micron technical brief noted above. *Id.* at 29. And for limitation (1c), Netlist's contentions identify a variety of potentially infringing operating modes, including test mode. *Id.* at 23 (identifying multiple potential modes of infringement e.g., "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"). This is consistent with Dr. Brogioli's analysis, as explained above.

Even if Netlist's infringement contentions did not adequately disclose its theories regarding the "data conduit" limitation, Micron has made no showing that exclusion of those theories from Dr. Brogioli's report would be a proper remedy. *See Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 2869331 at *3 (E.D. Tex. Apr. 27, 2017) (denying motion to strike where there was no prejudice because "Defendants had an opportunity to depose IP Bridge's experts on these DOE theories" and "Defendants do not identify anything they would have done differently"). Here too, Micron does not explain how, if at all, it was prejudiced by the alleged failure to disclose, nor does it explain what it would have done differently had Netlist amended its infringement contentions to include source code citations less than two months after they were made available. *See Solas OLED Ltd. v. Samsung Elecs.*, 2022 WL 1912864, at *3 (E.D. Tex. May 30, 2022) (denying motion to strike and noting that prejudice

- 14 -

to accused infringer was "minimized by the minor differences in time, a matter of weeks, between when Solas could have updated its infringement contentions and when it served Mr. Zeidman's report"). In fact, by July 2023 Netlist had produced Dr. Brogioli's detailed report from *Samsung I*, which contained substantially the same theories of infringement as in his expert report in this case. Netlist also incorporated Dr. Brogioli's report in its response to Micron's integratory No. 2, further putting Micron on notice of the theories Netlist intended to pursue.

Micron's cited authority is inapposite. In *Jauipuria v. LinkedIn Corp.*, the Court ordered the plaintiffs to supplement infringement contentions that merely recited the claim language as support that a limitation was met. 2013 WL 12146741 at *2 (E.D. Tex. Mar. 27, 2013) ("Plaintiffs have failed to go beyond the language of the claims and actually explain how the accused products meet the asserted claim elements."). In contrast, Micron never moved to strike Netlist's contentions or asked Netlist to supplement its contentions with analysis of the late-disclosed source code, and Netlist's contentions do not merely parrot the claim language. In every other case cited by Micron, the Court denied a motion to strike allegedly undisclosed infringement theories from an expert report. *ROY-G-BIV Corp. v. ABB Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014) (denying motion to strike and noting "[i]nfringement contentions need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case'"); *Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 3655302, at *4 (E.D. Tex. Mar. 21, 2016) (denying motion to strike and noting "Core's infringement contentions were not required to cite all the evidence its experts would rely upon, nor was Core required to disclose the details of its experts' analyses"). Here too, Micron's motion should be denied.

| | |
|---|---|
| Dated: November 28, 2023 | Respectfully submitted, |
| | */s/ Jason G. Sheasby* |
| | Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>Texas State Bar No. 24012906<br>jtruelove@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street Suite 300<br>Marshall, TX 75670<br>Telephone: (903) 923-9000<br>Facsimile: (903) 923-9099 |
| | Jason Sheasby (*pro hac vice*)<br>jsheasby@irell.com<br>Annita Zhong, PhD (*pro hac vice*)<br>hzhong@irell.com<br>Thomas C. Werner (*pro hac vice*)<br>twerner@irell.com<br>Andrew Strabone (*pro hac vice*)<br>astrabone@irell.com<br>Yanan Zhao (*pro hac vice*)<br>yzhao@irell.com<br>Michael W. Tezyan (*pro hac vice*)<br>mtezyan@irell.com<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel. (310) 277-1010<br>Fax (310) 203-7199 |
| | Rebecca Carson (*pro hac vice*)<br>rcarson@irell.com<br>**IRELL & MANELLA LLP**<br>840 Newport Center Drive, Suite 400<br>Newport Beach, CA 92660 |
| | **Attorneys for Plaintiff Netlist, Inc.** |

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that, on November 28, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Jason Sheasby*
Jason Sheasby