IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>    *Plaintiff*,<br><br>v.<br><br>MICRON TECHNOLOGY, INC. *et al.*,<br><br>    *Defendants*. | CIVIL ACTION NO. 2:22-cv-203-JRG-RSP |

## MEMORANDUM ORDER

Netlist's Motion seeks to strike portions of Micron's technical expert Dr. Gary Woods's opening and rebuttal reports regarding the '060 and '160 Patents. **Dkt. No. 270**; Dkt. No. 270-2 ("Opening Report"); Dkt. No. 270-3 ("Rebuttal Report"). Micron opposed the Motion with a response and sur-reply. Dkt. No. 291; Dkt. No. 360.

### I. BACKGROUND

Netlist's Complaint originally asserted six patents, U.S. Patent Nos. 10,860,506; 10,949,339; 11,016,918; 11,232,054; 8,787,060; and 9,318,160. Dkt. No. 1. Netlist has since dropped the '506 and '339 Patents from this case. *See* Dkt. No. 406 at 108; Dkt. No. 250.

Generally, the Asserted Patents relate to computer memory. U.S. Patents 11,016,918 and 11,232,054, which are related and share a common specification, concern computer memory devices that use different types of memory. '918 Patent at 1:66–2:2; *see also* '054 Patent at 1:66–2:2. U.S. Patents 8,787,060 and 9,318,160, which are related and share a common specification, concern "systems and methods for reducing the load of drivers of memory packages included on memory modules." '060 Patent at 1:19–21; *see also* '160 Patent at 1:21–23.

## II. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law)

("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III. ANALYSIS

#### A. Written Description Opinions

Netlist asserts that paragraphs 178–179 of the Opening Report should be stricken because claim 20 of the '060 Patent is no longer asserted. Dkt. No. 270 at 5. Micron responds that the paragraphs relate to more than just that claim. Dkt. No. 291 at 5.

Upon review of the disputed paragraphs, the Court finds that paragraphs 178–179 are directed only at claim 20. Further, Micron's assertion that they can be applied outside of claim 20 is unpersuasive because Dr. Woods is using the claim 20 language in contradiction to the Court's construction of "electrical communication" as discussed below. Accordingly, Opening Report ¶¶ 178–179 are stricken.

### B. Claim Construction Opinions

#### 1. "electrical communication"

First, Netlist asserts that paragraphs 180–183 are in contravention of the Court's claim construction of "electrical communication." Dkt. No. 270 at 5–6. Netlist also asserts that Dr. Woods's Opening Report paragraph 177 uses a meaning of "electrical communication" inconsistent with the Court's claim construction that "electrical communication" and "electrical connection" are distinct. Dkt. No. 270 at 6; *see* Dkt. No. 249 at 9. Micron responds that Dr. Woods applies the Court's construction. Dkt. No. 291 at 6.

Upon review of Dr. Woods's opening report, the Court finds that it does not apply a contradictory construction within paragraphs 180–183. However, contrary to Micron's assertion, Dr. Woods does not acknowledge the Court's construction of "electrical communication." Rather, Dr. Woods acknowledges that Netlist's position is that "electrical communication", and "electrical connection" are distinct. *See* Opening Report ¶ 176. The following paragraph seemingly attempts to contradict that acknowledged position by indicating:

> The specifications for the '060 and '160 Patent lacks sufficient written description of such an interpretation of "in electrical communication with." This is because the specification of the '060 and '160 Patent uses the term "electrical communication" and "electrical connection" interchangeably only and does not provide sufficient explanation of how a POSITA should distinguish "electrical communication" with "electrical connection."

Opening Report ¶ 177. This paragraph is clearly inconsistent with the Court's construction. Accordingly, Opening Report ¶ 177 is stricken.

Second, Netlist asserts that Dr. Woods's Rebuttal Report ¶¶ 234–243 "recognizes that the Court construed 'electrical communication' as having its 'plain and ordinary meaning' but explains that he is not applying the plain meaning." Dkt. No. 270 at 8. Netlist contends that Dr. Woods is construing the plain meaning as "the act of transmitting." *Id.* at 9. Micron responds that

4

"the Court gave examples that the plain and ordinary meaning of the term 'electrical communication' encompasses the act of transmitting" and in turn "Dr. Woods applies that plain and ordinary meaning." Dkt. No. 291 at 7.

The Court finds that the parties' dispute is really whether transmitting meets the claim limitation involving "electrical communication." As such, the Court does not strike Dr. Woods' discussion of the term which is not inconsistent with the Court's construction of the term. *See* Rebuttal Report ¶¶ 234–236.

### 2. Definiteness of Claim 7

Netlist asserts that the definiteness of claim 7 was determined at the claim construction stage. Dkt. No. 270 at 6–7. Micron agrees. Dkt. No. 291 at 10. The Court finds that Opening Report ¶¶ 189–191 are stricken as no longer being relevant.

### 3. "array die"

The parties agreed to construe the term "array die" to mean "array die that is different from a DRAM circuit." Dkt. No. 270 at 7. First, Netlist asserts that Dr. Woods's Rebuttal Report relies on extrinsic evidence to alter the meaning of "DRAM Circuit." Dkt. No. 270 at 7. Netlist contends that Dr. Woods's use of the "Rajan" reference in a disclaimer argument is asserted out of time since it was not raised at the claim construction stage. *Id.*

Regarding Rebuttal Report ¶¶ 41–75, Micron responds that Dr. Woods's Rebuttal Report is in response to positions taken by Dr. Brogioli and the decision to strike rises and falls with the decision on striking Dr. Brogioli's Opening Report ¶¶ 69–100. The Court has found that Dr. Brogioli has not used an impermissible construction of "array die" and finds that Dr. Woods does not as well in Rebuttal Report ¶¶ 41–75.

Regarding Rebuttal Report ¶¶ 183–186, 205, 224–227, and 317, Micron responds that the paragraphs consist solely of non-infringement analysis and do not contain improper claim construction. Dkt. No. 291 at 9–10. The Court does not find that Rebuttal Report ¶¶ 183–186, 205, 224–227, and 317 use an incorrect construction of "array dies."

Second, Netlist asserts that Rebuttal Report ¶¶ 301–303 use an improper claim construction with regards to selecting array dies, contending "the Court never held that the memory package automatically selects the number of array dies in the first group of array dies or the second group of at least one array die." Dkt. No. 270 at 10–11. In short, Netlist asserts that Dr. Woods is applying a "non-existent construction." *Id.* at 11. Micron responds that Dr. Woods applied the Court's construction. Dkt. No. 291 at 11. The Court does not find that Rebuttal Report ¶¶ 301–303 are in contradiction of the Court's construction of "array dies."

### C. Hearsay from Undisclosed Engineers

Netlist asserts that Rebuttal Report ¶¶ 261, 270, 322 claim support from discussions with undisclosed Micron engineers. Dkt. No. 270 at 11. Micron responds that paragraphs 261 and 322 were obtained from Mr. Stordahl who was later deposed by Netlist and paragraph 270 does not involve information derived from an engineer. Dkt. No. 291 at 11.

In pertinent part Dr. Woods's Rebuttal Report states:

> First, I understand, based on my discussions with Micron's engineers, that the "TsvForce" and "Pass Gate" circuits are enabled during production testing only, which is performed entirely outside the United States, and more specifically in Taiwan. . . .
>
> ***
>
> . . . This agrees with its actual use described Micron engineers, as I mentioned above.
>
> ***
>
> As explained above, I understand based on my discussions with Micron's engineers that the "TsvForce" and "Pass Gate" circuits are enabled during production testing

6

only, which is performed entirely outside the United States, and more specifically in Taiwan. . . .

Rebuttal Report ¶¶ 261, 270, 322.  Mr. Zach Stordahl's name does not appear in the report. The Court finds that Dr. Woods' reference to Micron engineers is insufficient to support the opinions attributed because the information was not timely disclosed.  Accordingly, Rebuttal Report ¶¶ 261 (all), 270 (last sentence only), and 322 (all) are stricken.

### D.  Opinions Outside Area of Expertise

Netlist asserts that Rebuttal Report ¶¶ 349–352 reflect opinions regarding manufacturing processes outside the area of expertise for Dr. Woods. Dkt. No. 270 at 11–12. Micron responds that Dr. Woods has the requisite background. Dkt. No. 291 at 12. After review of Dr. Woods' background, the Court finds that he has the sufficient training and experience to opine on the procedures of a "fabless" company.

### E.  Prior Art Opinions

Netlist asserts that several portions of Dr. Woods' reports are excludable for being improper prior art opinions.

First, Netlist asserts that Dr. Woods' Rebuttal Report includes opinions that Micron practices the prior art that are improper since "[p]racticing the prior art is not a defense to infringement." Dkt. No. 270 at 12–13. Micron responds that the paragraphs do not include infringement related opinions and "merely rebut Netlist's expert opinion on the purported incremental value of the '060 and '160 patents . . ." Dkt. No. 291 at 13. Further, Micron contends that the opinions are relevant "because the issue of invalidity and non-infringement are intricately tied together." *Id.* The Court finds that the disputed paragraphs are not improper and should not be stricken. *See* Rebuttal Report ¶¶ 358, 365, 377–379, 402–408.

7

Second, Netlist asserts that Rebuttal Report ¶¶ 370–383 include improper opinions that individual claim elements exist in the prior art. Dkt. No. 270 at 14. Netlist contends "Dr. Woods appears to be opining that the elements of the claims were known in the art and therefore the patents-in-suit cannot reflect meaningful value . . . The Federal Circuit has expressly rejected this argument." Dkt. No. 270 at 14 (citing *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015)). Micron responds again that Dr. Woods is only offering rebuttal opinion for incremental value. Dkt. No. 291 at 14. The Court finds that Netlist's dispute is with competing interpretations of the prior art and whether the patents in suit provided technical benefits over the prior art. Accordingly, the factual disputes closely tied to invalidity are reserved for the jury and Netlist's concerns with Dr. Woods' opinions can be addressed through vigorous cross-examination.

Third, Netlist asserts that certain non-infringing alternatives (NIA) discussed in Dr. Woods' Opening Report were not timely disclosed. Dkt. No. 270 at 15. Netlist contends that "Dr. Woods is just using pre-existing Micron products and a public document to craft new NIAs." *Id.* Netlist also asserts that the "U.S. Patent No. 6,243,283, 'Bertin'" reference was not disclosed in Micron's invalidity contentions. *Id.* at 16. With regards to the "Bertin" reference, Micron responds that Dr. Woods only relies on the Bertin reference to rebut incremental technical value testimony. Dkt. No. 291 at 19.

The Court finds upon examination of the invalidity contentions that the invalidity positions with regards to Micron's accused products were timely disclosed. Regarding the "Bertin" reference, the Court finds that Dr. Woods is relying on the reference for invalidity purposes. While Micron contends that it is only for "incremental technical benefit," the paragraphs read in context are seeking to demonstrate that "asymmetric die interconnections in stacked die packages" were

already well known in the art. *See* Rebuttal Report ¶¶ 381–382. Micron cannot persuasively argue that the "incremental technical value rebuttal" is both outside the scope of non-infringement opinions and also not relevant to invalidity to dodge Netlist's objections. *Compare* Dkt. No. 291 at 13, 14, *with* Dkt. No. 291 at 19. Since Micron does not contest that the reference was not disclosed, the Court finds that the use of "Bertin" Fig. 11 in Rebuttal Report ¶¶ 381–382 must be stricken. *See* Rebuttal Report at 223–25 (including two other references as support for the invalidity propositions); Dkt. No. 291 at 18–19.

### F. Anticipation Opinions

Netlist asserts that Dr. Woods' use of the e80a Design Review document "must be stricken from his report because the document is not prior art." Dkt. No. 270 at 16. Netlist also asserts that the document is the only factual support for Micron's anticipation opinions, cross-referencing their concurrently filed motion for summary judgment on the same topic. *Id.*; *see* Dkt. No. 272.

The Court has recently ruled that the document is not prior art but carried the decision on admissibility of the document. Here, the Court finds that Dr. Woods' opinions are not solely based on the e80a Design Review document and that the document is admissible as corroborating evidence of reduction to practice.

### G. Obviousness Opinions

Netlist asserts that several portions of Dr. Woods' opinions are "improper surreptitious obviousness opinions." Dkt. No. 270 at 17–18.

First, Netlist asserts that Opening Report ¶¶ 204–209 contain improper opinions that use "unelected, undisclosed prior art to allege obviousness of certain elements" to make improper "contemporaneous invention" arguments. Dkt. No. 270 at 17 (citing *Immunex Corp. v. Sandoz, Inc.*, 964 F.3d 1049, 1067 (Fed. Cir. 2020); *Endo Pharmaceuticals Inc. v. Actavis LLC*, 922 F.3d

9

1365 (Fed. Cir. 2019)). Micron responds that Dr. Woods "properly analyzes and rebuts the secondary indicia of non-obviousness." Dkt. No. 291 at 16. Particularly, Micron contends that paragraphs 204–209 identify "contemporaneous patents and patent publications that disclose selective communications to stacked dies." *Id.* at 17.

The Court finds that Dr. Woods is not engaging in an improper method of analysis as Netlist asserts, and instead is presenting a competing interpretation of the state of the art to support theories of invalidity. Accordingly, the opinions are not stricken and Netlist's concerns with the conclusions of the paragraphs can be addressed through cross-examination.

Second, Netlist asserts that Opening Report ¶¶ 210–215 "comprises of new obviousness combinations without providing any actual obviousness analysis," contending that Dr. Woods "has not opined that anyone would have a motivation to combine Shaffer with anything else . . . ." Dkt. No. 270 at 18. Micron responds that Dr. Woods is explaining "how there were little (if any) long-felt needs for array die grouping and selective electrical communications to the groups because skilled artisans were already aware of such design choices." Dkt. No. 291 at 17.

Netlist does not cite any authority to support striking these paragraphs for not explicitly opining on motivation to combine, nor the passing assertion that the obviousness combinations are new. The Court finds that Netlist's disputes with these paragraphs are concerned with aspects of Dr. Woods' testimony that can adequately be addressed through cross-examination.

### H. Copying

Netlist asserts that Dr. Woods "alleges that Netlist copied Micron's inventions" and that "[t]he suggestion that 'Netlist copied ideas from a product announcement and tried to capture it in its patent application' is a surreptitious invalidity through derivation argument that Micron has not raised in this case . . . ." Dkt. No. 270 at 18–19. Micron responds that Dr. Woods is not opining on

10

derivation but rather that "array die grouping and selective electrical communications to the groups . . . had already been developed at Micron." Dkt. No. 291 at 17. Micron does not otherwise contend that if the opinion is a derivation theory that it was disclosed in the invalidity contentions.

The Court finds that paragraphs 217 and 218 do not contain undisclosed derivation opinions, but the Court finds that paragraph 219 goes beyond just rebutting expert opinion of first inventorship. *See* Opening Report ¶ 219. Dr. Woods uses comparison of two provisional applications bookending a press release from Micron for the ultimate conclusion "[t]his suggests to a POSITA that Netlist copied ideas from a product announcement and tried to capture it in its patent application." Opening Report ¶ 219. This is not mere opinions supporting that Micron products invalidate the '060 and '160 Patents but that Netlist derived the inventive concept from a Micron press release. Accordingly, Opening Report ¶ 219 is stricken.

## I. Incorporation of Rebuttal Report

Netlist asserts that Opening Report ¶ 218 is an improper incorporation of a later report. Dkt. No. 270 at 19. Opening Report ¶ 218 states "and as I will explain in my rebuttal non-infringement report, some of the key Hybrid Memory Cube inventions were adopted for use in Micron's later products, including HBM2E and HBM3 (Gen. 2)." Opening Report ¶ 218. Micron responds that Dr. Woods is just providing advance notice and does not incorporate any portions of the rebuttal report by reference or otherwise. Dkt. No. 291 at 19.

The Court finds that ¶ 218 expresses an opinion without providing the basis therefor. It is not consistent with Rule 26(a)(2) to simply say the basis will be disclosed in a later report. Accordingly, Opening Report ¶ 218 is stricken.

## IV.  CONCLUSION

For the foregoing reasons, Netlist's Motion to Strike Opinions of Gary Woods, Dkt. No. 270, is **GRANTED-IN-PART** as specified above.

**SIGNED this 27th day of January, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE